1  DAVID H. KRAMER, State Bar No. 168452
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   650 Page Mill Road
3  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
4  Facsimile:  (650) 565-5100

5  Attorneys for Defendant/Counterclaimant
   Google Inc.
6

7              UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9                    SAN JOSE DIVISION

10

11 DIGITAL ENVOY, INC.,                )   CASE NO.:  C 04 01497 RS
                                       )
12        Plaintiff/Counterdefendant,  )   **GOOGLE INC.'S NOTICE OF**
                                       )   **MOTION AND MOTION FOR**
13    v.                               )   **ENTRY OF A PROTECTIVE**
                                       )   **ORDER STAGING DISCOVERY**
14 GOOGLE INC.,                        )
                                       )   Judge:     Hon. Richard Seeborg
15        Defendant/Counterclaimant.   )   Courtroom: 4, 5th Floor
                                       )   Date:      September 22, 2004
16                                     )   Time:      9:00 a.m.
                                       )
17

GOOGLE'S MOTION FOR ENTRY OF                          C:\NrPortbl\PALIB1\DAG\2510942_2.DOC
PROTECTIVE ORDER STAGING DISCOVERY
C 04 01497 RSP

Dockets.Justia.com

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on September 22, 2004 at 9:00 a.m., defendant/counterclaimant Google Inc. ("Google") will move and hereby does move, pursuant to Fed. R. Civ. P. 26(b)(2), (c), and 42(b), for entry of a protective order limiting the initial scope of discovery in this case to Google's potentially dispositive license defense. This approach is likely to enable the parties to avoid the costs of extremely burdensome and unnecessary discovery.

Google's motion is supported by the following memorandum, the accompanying declarations of David H. Kramer and Michael Kwun, the argument of counsel and any other matters properly before the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

By this motion, defendant Google seeks to temporarily limit discovery in this action to a single case dispositive issue. Such an approach potentially will allow the parties to avoid substantial, unnecessary burden and expense without prejudicing either side.

This case arises from a dispute over the scope of a technology license that Digital Envoy, Inc. ("Digital Envoy") granted to Google in November 2000 (the "Agreement"). Google contends that the license (for which it paid $8,000 a month) authorizes it to use Digital Envoy's technology as it sees fit to support its business. Digital Envoy has taken the position that Google's use of the technology in certain advertising programs exceeds the scope of the license. But instead of styling its claim as one of breach of contract, Digital Envoy claims that Google is guilty of willful trade secret misappropriation and has demanded untold millions of dollars along with punitive damages.

Digital Envoy's hyperbole aside, it must recognize that if the parties' contract means what Google says, Digital Envoy's claims go nowhere. The U.S. District Court for the Northern District of Georgia has already made that clear in its Order transferring this case here.

Recognizing that the interpretation of the license is likely to dispose of the case, Google has proposed a brief, initial phase of discovery limited to questions of contract interpretation,

1  culminating in a motion by Google for summary judgment.  Digital Envoy has rejected that
2  proposal.  It seeks instead to launch a massive discovery campaign into virtually every aspect of
3  Google's business, seeking all related financial information and strategic business plans as well.
4  Digital Envoy has also signaled its intention to seek the depositions of Google's highest-ranking
5  executives, including its founders, CEO and general counsel on these issues.  But the substantial
6  costs that Digital Envoy's discovery would impose upon Google are likely to be unnecessary; the
7  discovery would be mooted by a finding that the parties' Agreement authorized Google's use of
8  the technology.  And Google believes that such a finding is compelled by the plain language of
9  the Agreement as well as the parole evidence, even accepting as true Digital Envoy's allegations
10 concerning Google's use of the technology.

11 Digital Envoy's insistence on onerous discovery from the outset of this case is at best
12 misguided, and perhaps intentionally abusive, given that an early summary judgment motion will
13 likely end the case.  Should Digital Envoy's claims survive the motion, the parties could then
14 expand their discovery to address Digital Envoy's tort and damages theories.  Case law, case
15 management, and common sense all support this approach.  Accordingly, Google asks that the
16 Court stage discovery proceedings in this fashion.

## BACKGROUND

### The Parties' Agreement

Digital Envoy is one of several companies that has developed technology that assists users in making an educated guess about the approximate geographic location of a visitor to a website.  Google contacted Digital Envoy when it was seeking a provider of such technology in mid-2000.

During the parties' discussions, Google made clear that it wanted an "all you can eat" license to the technology so that it would not have to predict how it would use the technology in the future.  Declaration of David H. Kramer ("Kramer Decl."), Ex. A. (email chain between Steve Schimmel and Rob Friedman).  Digital Envoy's CEO responded that his company's proposal was indeed for "all you can eat" and stated "*you can use it for everything* and there is

1  no volume cap." *Id.* (emphasis supplied).  Google then reiterated that it would choose Digital

2  Envoy as its vendor if Digital Envoy met a list of terms, including *"[u]nlimited volume and use*

3  for country targeting (ie. advertising, customized country pages and internal research purposes)

4  for ~$3,000/mth total."  Kramer Decl., Ex. B. (emphasis supplied).  Digital Envoy accepted, and

5  the terms of the parties November 2000 Agreement reflect the sweeping authorization Digital

6  Envoy granted to Google.  Kramer Decl., Ex. C.

7        The Agreement authorizes Google to use Digital Envoy's technology in Google's

8  "Business"  -- broadly defined as "the business of producing and maintaining information search

9  technology."  Google was expressly authorized to use the technology at any of its "offices and

10  data centers" and to "develop indices, services, or applications that are provided to third parties."

11  Kramer Decl., Ex. C. at § 3.

12        The parties extended their arrangement several times, with Google increasing its monthly

13  license fee from $3000 to $8000.  Google principally used the technology in its advertising

14  programs, allowing those advertisers who wanted it, the chance to geographically target

15  messages based upon the perceived location of an Internet user.  Over the years, Google rolled

16  out several new advertising programs with this add-on functionality.  Digital Envoy was aware

17  of and even participated in these programs, never suggesting that Google's use of the technology

18  was somehow improper.  Kramer Decl., Ex. D (emails showing Digital Envoy's participation in

19  Google advertising programs)

20        In February of this year, amid a flurry of news articles speculating about Google's

21  impending initial public offering, Digital Envoy demanded exponentially higher license fees

22  from Google.  It claimed for the first time that Google was exceeding the scope of the license

23  granted to it.  Specifically, it claimed that if Google used the technology to display

24  advertisements that were not presented in direct response to an end-user's search query, its use

25  was unlicensed.  Google vehemently disagreed.

26        The plain language of the license grant authorizes any use of the technology that helps

27  Google to "*produce and maintain"* its information search technology.  Kramer Decl., Ex. C. at

28  §3.  Google's advertising programs undeniably serve that function.  And to the extent there is

any ambiguity in the license grant, Google's request during negotiations for "unlimited volume and use (ie. advertising….)" [Kramer Decl., Ex. B] and Digital Envoy's promise that Google could use the technology "for everything" necessarily resolve that ambiguity in Google's favor. Thus, *even accepting Digital Envoy's allegations about the manner in which Google was using the Digital Envoy technology*, the Court can and ultimately should conclude that such use was licensed as a matter of law.

**This Litigation**

When Google rejected Digital Envoy's opportunistic demands for more money, Digital Envoy brought an action against Google in Georgia, thereby violating the forum selection clause in the parties' Agreement. In response, Google filed this suit for declaratory relief and breach of contract, and moved to transfer or dismiss the Georgia case. That motion was granted by Order dated May 21, 2004, with the Georgia court transferring the suit here. *Digital Envoy Inc. v. Google, Inc.*, 319 F. Supp. 2d 1377 (N.D. Ga. 2004).[1]

In its Order effecting the transfer, the Georgia court concluded that the differing interpretations of the Agreement were at the heart of the parties' dispute: "[O]ne of the central issues in this case – if not *the* central issue in this case – is whether that agreement extends to Google's current use of Digital Envoy's technology." *Digital Envoy*, 319 F. Supp. at 1380. (emphasis in original). The Georgia court also recognized that the proper interpretation of the license could be case dispositive, stating that Digital Envoy's claims "will almost certainly fail if Google's use of its technology is found to be within the scope of the agreement." *Id.*

**Digital Envoy's Threatened Discovery Campaign**

Despite the potentially dispositive impact of Google's license defense, Digital Envoy has refused Google's repeated suggestion that discovery be limited in the first instance to issues of contract interpretation. Instead, Digital Envoy has made clear that it intends to subject Google to highly burdensome discovery concerning any Google program that in any way uses Digital

---

[1] The parties subsequently stipulated to dismiss the transferred action and proceed with the instant case after realigning the parties.

GOOGLE'S MOTION FOR ENTRY OF
PROTECTIVE ORDER STAGING  DISCOVERY
C 04 01497 RSP

4

C:\NrPortbl\PALIB1\DAG\2510942_2.DOC

Envoy's technology. *See* Joint Report, pp. 20-23, Kramer Decl., Ex. E (describing contemplated discovery as "including details regarding the manner of use, the scope of the use, financial information pertaining to paid search revenue, accounting methods or other analytic data to consider revenue, expenses, allocated overhead, profits, click-through rates comparison for geotargeted vs. non-geotargeted advertising" and discovery "pertaining to interaction between Google and its advertisers and Google and its website owner customers, including all of the specifics set forth above."). In fact, Digital Envoy recently served document requests in this action seeking, virtually all documents relating to Google's advertising programs, including a list of all websites on which Google has placed ads, the identity of all advertisers who paid for Google on any website, the dates and amounts of payments, and all information provided by Google relating to its advertising programs.[2] Digital Envoy has also listed Google's founders, CEO, General counsel and many other senior executives as expected witnesses in its initial disclosures.[3]

It is no exaggeration to suggest that the discovery onslaught Digital Envoy envisions would be highly disruptive, call for the disclosure of sensitive business information, and cost Google many hundreds of thousands of dollars. *See* Declaration of Michael Kwun at ¶¶ 3-4. It would be excessive under any circumstances. But here, where a compelling summary judgment motion may well moot the discovery altogether, the discovery cannot be justified.

## ARGUMENT

### I.     The Court Has The Power To Limit Discovery

The Court has the inherent power to limit discovery in order to conserve judicial resources and to avoid undue prejudice. One source of this power is Federal Rule of Civil Procedure Rule 26, which allows the Court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,

---

[2] *See* Digital Envoy, Inc.'s First Set of Requests for Production, Kramer Decl., Ex. F.
[3] *See* Digital Envoy, Inc.'s Rule 26(a)(1) Disclosures, § A, Kramer Decl., Ex. G.

including … that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters[.]" Fed. R. Civ. P. 26(c).[4]

Additionally, Rule 42(b) gives the Court the power "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, [to] order a separate trial of … any separate issue[.]" Fed. R. Civ. P. 42(b).  Reasoning that "[o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues" this Circuit has held that "[i]t is implicit that the court also had the power to limit discovery to the segregated issues." *Ellingson Timber Co, v. Great Northern Ry. Co.,* 424 F.2d 497, 499 (9th Cir. 1970). *See also Reliance Ins. Co. v. Wilson*, No. C 90-20006 JPV, 1990 WL 751025, at *2 (N.D. Cal. Oct. 3, 1990) ("The court has the power to limit discovery to certain issues to defer costly and possibly unnecessary proceedings pending resolution of potentially dispositive issues."); *Sperberg v. Firestone Tire & Rubber Co.,* 61 F.R.D. 70, 74 (N.D. Ohio 1973) ("Professor Wright has noted that where an issue may be dispositive of a case the Court has discretion to stay discovery on other issues until the critical issue is decided."), *citing* C.A. Wright, *Discovery*, 35 F.R.D. 39, 60 (1964).  Accordingly, it is well within this Court's powers to grant the relief requested by Google in the interests of justice and economy.

**II.     The Court Should Initially Limit Discovery To Google's License Defense**

In deciding whether to stage discovery, the Court must balance the harm of staying discovery with the benefit of allowing discovery to continue. *GTE Wireless, Inc. v. Qualcomm, Inc.,* 192 F.R.D. 284 (S.D. Cal. 2000).  This balance weighs heavily in favor of limiting the first phase of discovery to Google's potentially dispositive license defense.

Here, the broad-based discovery proposed by Digital Envoy would be both costly and disruptive.  Conversely, Digital Envoy would suffer no prejudice from Google's proposed discovery limitations because *Google is not seeking to bar Digital Envoy from obtaining*

---

[4] *See also* Rule 16(c), providing that the Court "may take appropriate action, with respect to … the control and scheduling of discovery …." Fed. R. Civ. P. 16(c).

1  *discovery.* Instead, Google is simply suggesting a common sense approach to the *sequence* of

2  discovery. If Google is correct about the scope of the license, its summary judgment motion will

3  end the case. If Digital Envoy's claims survive Google's motion, Digital Envoy can then seek

4  broader discovery relating to its tort and damages claims.

5        The court faced a similar situation in *GTE Wireless v. Qualcomm, Inc.,* 192 F.R.D. 284,

6  289 (S.D. Cal. 2000). There, a patent infringement defendant sought a stay of damages-related

7  discovery pending a ruling on its motion for summary judgment. *Id*. at 285. The Ninth Circuit

8  agreed that phased discovery was appropriate under the circumstances:

9  > The Court finds that here, if discovery regarding the quantification of damages
> were to continue, Defendant would be significantly burdened. Defendant would
10 > be forced to turn over highly sensitive and proprietary information to Plaintiff and
> Defendant would have to sort through a vast amount of information. If
11 > Defendant's motion for summary adjudication is granted, then everything
> discovered in regards to the quantification of certain damages will have been
12 > wasted. Additionally, the quantification of damages has no probative value
> whatsoever in determining whether Plaintiff would successfully defeat
13 > Defendant's summary adjudication motion.

14 *Id*. at 289. Ultimately, the Court [found] that on balance, the harm of allowing discovery to

15 continue regarding the quantification of certain damages significantly outweighed the harm of

16 staying discovery. *Id*. at 290.

17       *Reliance Ins. Co. v. Wilson*, 1990 WL 751025 (N.D. Cal. Oct. 3, 1990) is also on point.

18 There, the plaintiff moved to bifurcate trial and stay certain counterclaims and the discovery

19 relating to those counterclaims. *Id*., at *1. The court granted the motion, finding that a stay of

20 discovery relevant to those issues "will serve judicial economy and potentially save the parties

21 needless expense." *Id*., at *2. Notably, the court was not persuaded by defendant's argument that

22 witnesses would be inconvenienced because they would have to be deposed twice:

23 > This assumes, however, that defendant will prevail on the underlying claim. If
> defendant loses on the initial issue of coverage, then the substantial discovery on
24 > the counterclaim would have been utterly wasted. Witnesses would have been
> inconvenienced by unnecessarily long depositions, parties may well have had to
25 > devote resources to producing superfluous discovery material, and the court
> would have devoted valuable time to supervising contested discovery issues that
26 > could have been avoided. By contrast, if defendant prevails at the first stage of
> trial, discovery will proceed then in precisely the manner in which it would have
27 > proceeded now were all the claims being tried together.

28 *Id*.

The same reasoning applies with equal force here. Confining the initial phase of discovery to Google's license defense affords the opportunity for a quick and relatively inexpensive resolution of the litigation without requiring highly burdensome and potentially unnecessary discovery.

In addition, this is not a case in which there should be disputes as to the effect of the staged proceedings. In the first stage, discovery pertaining to the negotiation and interpretation of the parties' Agreement would be permissible; discovery regarding Google's supposed use of the technology, its finances, its advertisers, and its business plans would not, as such inquiries go only to Digital Envoy's liability and damages claims.[5] Again, Google's planned motion for summary judgment does not implicate such information. Under these circumstances, an order limiting discovery is appropriate. *See ASM America, Inc. v. Genus, Inc.,* No. 01-2190 EDL, 2002 WL 24444, at *6 (N.D. Cal. Jan. 9, 2002) (limiting discovery where a stay would "simplify the case, avoid confusion, and reduce the burden and costs imposed on the Court, the attorneys, and the parties by deferring the burdensome and expensive discovery that would necessarily arise from litigation of the antitrust claims, and possibly avoiding it altogether"); *Children's Hosp. Med. Ctr. of N. Cal. v. Cal. Nurses Ass'n.,* 283 F.3d 1188, 1190 n.4 (9th Cir. 2002) ("Because damages could be awarded only if CHO received a declaration that the no-strike clause prohibited sympathy strikes, in the interests of efficiency the district court bifurcated discovery so that the contract interpretation issues would be resolved prior to any damages discovery.").

**CONCLUSION**

This is precisely the sort of case in which discovery proceedings should be staged. Google should not be forced to incur the substantial disruption and expense of discovery that is likely to be mooted by its early summary judgment motion. And Digital Envoy suffers no

---

[5] Any staging order would certainly be subject to modification for good cause shown. Google thus would have an incentive to minimize any disputes, lest the Court rescind the protections afforded by the staging order.

1 prejudice from having to hold off on its discovery offensive until after it shows its case can
2 survive an obvious obstacle.
3     For the foregoing reasons, Defendant Google Inc. respectfully requests that the Court order
4 staged discovery proceedings in the case, staying all discovery other than that directed to the
5 negotiation and interpretation of the parties' contract until after the resolution of Google's motion
6 for summary judgment on its license defense.

8 Respectfully Submitted:

9 Dated: August 16, 2004                                    WILSON SONSINI GOODRICH & ROSATI
                                                              Professional Corporation

                                                           By:     /s/ David H. Kramer
                                                                 David H. Kramer

                                                           Attorneys for Defendant/Counterclaimant
                                                           Google Inc.