1  P. CRAIG CARDON, Cal. Bar No. 168646
   BRIAN R. BLACKMAN, Cal. Bar No. 196996
2  KENDALL M. BURTON, Cal. Bar No. 228720
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3  Four Embarcadero Center, 17th Floor
   San Francisco, California  94111-4106
4  Telephone:    415-434-9100
   Facsimile:    415-434-3947
5

6  TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
   LUKE ANDERSON (Admitted *Pro Hac Vice*)
7  MCGUIRE WOODS, L.L.P
   1170 Peachtree Street, N.E., Suite 2100
8  Atlanta, Georgia 30309
   Telephone: 404.443.5500
9  Facsimile:  404.443.5751

10 Attorneys for DIGITAL ENVOY, INC.

11                       UNITED STATES DISTRICT COURT

12                      NORTHERN DISTRICT OF CALIFORNIA

13                               SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC., | Case No. C 04 01497 RS |
| Plaintiff/Counterdefendant, | **DIGITAL ENVOY, INC.'S PRELIMINARY OPPOSITION TO GOOGLE'S MOTION TO STAGE DISCOVERY** |
| v. | |
| GOOGLE, INC., | |
| Defendant/Counterclaimant. | |

## I. Introduction

Google's motion to stage discovery is simply a bad idea and is completely unfair to Digital Envoy. If granted, discovery cost and use of judicial resource will increase and completion of the matter whether by settlement or resolution on the merits will be delayed. Google suggests Digital

-1-
W02-SF:5CC\61425545.1                DIGITAL ENVOY, INC.'S PRELIMINARY
                                     OPPOSITION TO GOOGLE'S MOTION TO STAGE
                                     DISCOVERY

Dockets.Justia.com

Envoy's "hyperbole" should be set aside[1], but stripped of its own rhetoric, there is no substance to Google's motion at all.

**A.      Google's Complaint About Discovery Burden Is Not Compelling**

Ironically, much of what Google claims to be burdensome discovery requests by Digital Envoy are mirrors of Google's earlier requests of Digital Envoy. And the timing of Google's discovery requests and the present motion is also ironic and demonstrates the unfairness of Google's motion. Google has already requested Digital Envoy to produce voluminous records well beyond what is contemplated in this staging motion, including the following:

- All DOCUMENTS RELATING TO COMMUNICATIONS RELATING TO GOOGLE'S and DIGITAL ENVOY's performance under the AGREEMENT.[2]

- All DOCUMENTS RELATING TO COMMUNICATIONS RELATING TO any alleged breach of the AGREEMENT by GOOGLE.

- All DOCUMENTS RELATING TO COMMUNICATIONS RELATING TO any alleged breach of the AGREEMENT by DIGITAL ENVOY.

- All DOCUMENTS RELATING TO the negotiation or interpretation of any agreement between DIGITAL ENVOY and any third party under which DIGITAL ENVOY has in any way authorized the third party to use any DIGITAL ENVOY technology.

- All DOCUMENTS RELATING TO GOOGLE.

- All DOCUMENTS RELATING TO any COMMUNICATION with GOOGLE.

- All DOCUMENTS RELATING TO and COMMUNICATION between YOU and any PERSON regarding GOOGLE.

- All DOCUMENTS RELATING TO DIGITAL ENVOY'S enrollment in GOOGLE's AdWords program.

As a result of Google serving these broad requests on the earliest possible day, Digital Envoy timely responded to these requests on August 16, 2004. In its response committed to producing nearly everything Google has asked for, and Digital Envoy has thereby already gathered the documents requested and is in process of labeling and copying those voluminous records. On

---

[1]   Google offensively refers to Digital Envoy's "hyperbole" when it has not done anything in the case other than to assert its claims and disclose discoverable information. Yet, in Google's present motion, it outrageously accuses without support Digital Envoy and its counsel of "perhaps intentionally abusive" conduct. In this Google, not Digital Envoy, sets the tone for the remainder of the litigation.

[2]   Each of the words or phrases in all caps represents a defined term which broadens the scope of the request.

the same day it received Digital Envoy's response to its discovery and after Digital Envoy incurred most of the document production expense and more than three months after first suggesting the concept of staging discovery to Digital Envoy, Google files this motion just two days before the Initial Case Management Conference.

Ignoring its own conduct and Digital Envoy's expenses already incurred as a result, Google swears that the cost of searching its own records for information could "easily run into the hundreds of thousands of dollars" an eye-popping number from a company who measures its ability to search much greater material in milliseconds. Yet this is the only real burden to anyone Google misguidedly seeks to avoid. Given the substantial disparity of available resources to the parties in this litigation, Digital Envoy has far more reason to be concerned about the costs of this litigation. If anything, deference should be given to Digital Envoy's position regarding ways to control litigation costs and it is telling that it opposes Google's proposed staging of discovery because the burden on its limited resources will be substantially greater.

Google turns toward anticipated discovery disputes pertaining to the witnesses who Digital Envoy may at some time during discovery seek to depose. Although not before the Court because Digital Envoy has not so sought, the witnesses disclosed by Digital Envoy in compliance with federal rule are all persons with potentially discoverable information. Regarding Google's "founders" and other high level persons within the Google organization, Digital Envoy is aware of various admissions by those persons and has reason to believe they have knowledge pertaining to a variety of issues, including the issues to which Google seeks to initially limit discovery. In any event, there are practical and procedural safeguards against frivolous depositions and the Court can certainly consider Google's objection to any particular deposition at an appropriate time.

Google also contends that some portion of the information sought by Digital Envoy is both "extremely and highly" sensitive. Google does not contend that Digital Envoy does not have a legitimate need for this information. As with depositions, there are practical and procedural safeguards against abuse in handling this information by Digital Envoy and in fact, the parties have successfully negotiated a protective order which provides those safeguards.

**B.     Google's Proposed Discovery Limitation Is Flawed**

The claimed benefit in staging discovery in the manner proposed by Google is non-existent because Google's proposal is flawed.

First, Google overreaches by seeking to restrict discovery regarding the details of its use of Digital Envoy's technology. Google's use is moot only if the Agreement is interpreted to grant Google unlimited rights. Yet the Agreement plainly is a restricted use, limited license and says so on its face. Accordingly, the contemplated motion at the end of the staged discovery will at best be half a motion requesting interpretation of a contract in a vacuum and not dispositive at all. At a minimum, broader discovery will be required to accomplish Google's stated objective – early resolution of its license defense.

Second, Google improperly seeks to restrict discovery of certain parole evidence while relying on certain other select parole evidence in describing its un-filed but anticipated interim dispositive motion. Even though it claims its contract interpretation is found in the plain language of the contract, it principally relies on out-of-context e-mail threads regarding Google's plans for the technology and incorrect claims regarding Digital Envoy's awareness of Google's uses (ironically, uses of which Google now seeks to delay Digital Envoy's discovery). Although the motion is un-filed and presumably un-drafted, Google is reasonably expected to rely on parole evidence in making its argument. Once it does so, the entire range of parole evidence[3] may be considered and is certainly discoverable by Digital Envoy before response.

Accordingly, if the staging motion is granted, there is little chance that the contemplated motion can be properly considered. As a result, Google's proposed staging of discovery will accomplish nothing other than to increase costs and delay. Moreover, modifying the staging order to include discovery regarding Google's use of Digital Envoy's technology and the full scope of parole evidence will defeat any legitimate purpose for staging discovery at all.

---

[3] Without limitation, contemplated discovery of parole evidence would include: all communication between the parties during the negotiation *and* performance of the contract, internal communication during the same period regarding any aspect of the contract, communication with third parties on the use of Digital Envoy's technology, the course of conduct by the parties including the evolution of Google's business, industry practices and standards, and Google's business planning.

1   Third, there is no clear delineation in Google's proposed staging order between what
2   would be discoverable in the first stage and what would not. The problem is the parties may have
3   differing views on what questions would be "directed to the . . . interpretation" of the Agreement.
4   Moreover, Digital Envoy would be placed in the prejudicial position of having to disclose its
5   strategic purpose for asking any question before receiving an answer.

6   **C.    Google's Un-filed But Anticipated Interim Dispositive Motion Has No Merit**

7   Digital Envoy's claims are straightforward, based on the plain contractual language and
8   will not be defeated by Google's present explanation of its defenses. In short, Digital Envoy sold
9   to Google the nonexclusive "*limited,* worldwide right to use *in its Business (and not distribute to*
10  *any third party in whole or in part)*" Digital Envoy's technology. Google's "Business" is defined
11  and restricted to "the business of producing and maintaining information search technology".
12  Google's rights were also "*strictly limited*" by prohibiting Google from selling, licensing,
13  distributing, sharing or otherwise given (in any form) to any other party. This is the language
14  agreed upon by the parties arising from negotiations, a portion of which are recited by Google out
15  of context.

16  Digital Envoy will first rely on the four corners of the document in establishing the
17  parameters of the restricted license. If called upon, Digital Envoy will discover and present
18  compelling parole evidence in support of its interpretation.

19  Digital Envoy's claims that Google has exceeded the scope of its limited license are
20  equally straight-forward. Digital Envoy will discover and present compelling evidence that
21  Google's business evolved from information search, to include a number of distinct businesses,
22  including contextual advertising. Google's contextual advertising is distinct from the "Business"
23  set forth in the contract – its technology is different, the parties who benefit are different, it is
24  commonly accepted in the industry to be distinct and Google has repeatedly acknowledged this.
25  Thus, when Google used Digital Envoy's technology in its contextual advertising, which it did
26  extensively, its use was beyond the scope of its permitted license. Digital Envoy will discover
27  complete information regarding all aspects of Google's use of Digital Envoy's technology and
28  prove that Google is liable to Digital Envoy for its conduct.

-5-

Meanwhile, Google jumps from the statement that its un-filed but anticipated interim motion on contract interpretation would be dispositive of the case[4] to repeated statements that its motion is likely to end the case. Naturally, Digital Envoy disputes this and will set forth its full response in detail once the motion is made. However, a "peak"[5] at the motion to come exposes the flaw in the staging motion.

Google claims, principally relying on parole evidence, that its use of Digital Envoy's technology is unrestricted. In essence, Google supports an interpretation whereby Digital Envoy effectively sold the entire commercial use of its technology to a company better equipped to compete for customers for $3,000 per month. It takes little leap in logic to foresee that Digital Envoy can prove that it did not intend to do that.

The evidence relied upon in describing its un-filed but contemplated interim dispositive motion is that Digital Envoy offered its technology on an "all you can eat" basis, and words to the like to indicate, Google claims, that there was no intended restriction on Google's use of Digital Envoy's technology. This interpretation defies logic.

First, Digital Envoy will prove (with properly permitted discovery) that Google did not contemplate its current use of Digital Envoy's technology and in fact that it had no business plans to even be in the business of placing ads on third party web sites – the basic act complained of by Digital Envoy. Digital Envoy will further prove that there is a substantial difference – technologically, in industry understanding and Google's own business practices and communication – between the "business" it was in when the contract was negotiated and the new business it evolved into. And this difference is at the heart of this controversy.

---

[4] Digital Envoy disputes Google's claim that a favorable ruling on the interpretation of the contract would defeat all of Digital Envoy's causes of action, but defers discussion of the interplay of Google's request for an interpretation with Digital Envoy's claims until the motion is actually filed.

[5] "Peak" comes from the case cited by Google – *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284 (S.D. Cal. 2000) – in the context of requiring movant to make a showing that it has some degree of certainty that its motion would be granted. Google does not engage in this exercise other than to suggest its potential basis for the motion.

-6-

1   Among other things, the evidence Digital Envoy seeks to discovery will expose the
2   absurdity of Google's present interpretation of the agreement and the "all you can eat" language in
3   particular. Google's interpretation is akin to buying a single plate at an all you can eat salad bar,
4   and then invite thousands of your friends to eat off your plate. And then charge those friends for
5   their meal, pocketing a huge profit.

**D.    The Negative Consequences of the Proposed Staging of Discovery Are Substantial**

Google's proposal necessarily lengthens the time to trial and the length of the time for discovery, which substantially adds to litigation expense. Google's proposal also contemplates a substantial number of re-depositions of witnesses, and thus a substantial increase of legal fees and expense to Digital Envoy. Digital Envoy is thus faced with the double burden of added litigation cost and delay in recovery of its damages, factors which are considered as prejudice in determining motions to bifurcate discovery. *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992) (Whyte, J.).

Google's proposal also necessarily increases the potential use of judicial resources on this litigation in two ways. First, the staging order will add a layer of discovery disputes, potentially question by question, over whether the otherwise discoverable information is within the scope of information that may have a bearing on contract interpretation. Second, the staging order will add a layer of dispute over the interim dispositive motion as to whether Digital Envoy was prevented by the staging order from obtaining discovery that should be considered. If discovery progresses as it normally does, neither of these potential disputes can arise.

Google's proposal also necessarily delays meaningful settlement discussion. Digital Envoy will be unable to evaluate its claims and thereby unwilling to negotiate settlement without discovery of certain information sought to be delayed. Such a consideration is viewed in favor of not bifurcating discovery as "complete discovery will educate the parties regarding the strengths and weaknesses of their positions and will facilitate settlement." *eBay, Inc. v. Bidder's Edge, Inc.*, 2000 WL 1863564, 56 U.S.P.Q.2d 1856 (N.D. Cal. 2000) (Whyte, J.). Restricting discovery in this case enhances this phenomenon since Digital Envoy could make no evaluation of the value of the case without sufficient discovery since Google controls the most pertinent information.

-7-

**E.    Google Fails To Meet Its Burden Of Proof On The Motion**

Although certainly within the discretion of this Court to stage discovery in the manner proposed by Google, it is equally certain that Google bears the "burden of proving that the bifurcation will promote judicial economy and avoid inconvenience or prejudice to the parties." *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992) (Whyte, J.). Simply, Google does not meet this burden. First, Google does not make any argument that judicial economy is promoted. In fact, Google's proposal provides no conceivable potential to reduce the use of this Court's time and effort. Instead, the Court will have the case brought to it in pieces and on an incomplete record. As set forth above, there will be a significant potential for additional discovery disputes and an additional procedural layer for the court to consider when addressing the interim dispositive motion. Further, the potential for early negotiated resolution of the matter is destroyed by Google's proposed staging of discovery.

Second, Google's proposal certainly does not avoid inconvenience or prejudice to Digital Envoy. By force occasioned through Google's litigation activities, Digital Envoy has already expended the majority of effort in producing documents in response to comprehensive requests. So the proposal saves Digital Envoy practically nothing. By contrast, the prejudice to Digital Envoy in increased costs, delay in resolving the dispute, and placing it at a strategic disadvantage in questioning witnesses is substantial.

And even Google only possibly avoids incremental discovery costs if it can win its early, ill-conceived dispositive motion while keeping the scope of discovery restricted so that only the parole evidence of its choosing gets discovered and considered. Digital Envoy suggests that even that improbable result will cost Google more than it saves since the prospect of having a motion granted on parole evidence where the full scope of discovery on other parole evidence was prohibited is of ephemeral benefit when reversed and remanded. Otherwise, Google's motion imposes additional expense, time and trouble on itself, along with Digital Envoy and the Court.

## II. Conclusion

For the foregoing reasons, Digital Envoy respectfully requests that Google's motion to stage discovery be DENIED.

DATED: August 18, 2004

                        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By              /s/
              P. CRAIG CARDON
         Attorneys for DIGITAL ENVOY, INC.