1 | DAVID H. KRAMER, State Bar No. 168452
2 | STEPHEN C. HOLMES, State Bar No. 200727
   | WILSON SONSINI GOODRICH & ROSATI
   | Professional Corporation
3 | 650 Page Mill Road
   | Palo Alto, CA 94304-1050
4 | Telephone: (650) 493-9300
   | Facsimile: (650) 565-5100
5 |
6 | Attorneys for Defendant/Counterclaimant
   | Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC., | CASE NO.: C 04 01497 RS |
| Plaintiff/Counterdefendant, | **ANSWER TO AMENDED COMPLAINT OF DIGITAL ENVOY AND COUNTERCLAIMS FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT** |
| v. | |
| GOOGLE INC., | |
| Defendant/Counterclaimant. | Jury Trial Requested |

ANSWER TO AMENDED COMPLAINT AND
COUNTERCLAIMS FOR BREACH OF CONTRACT
AND DECLARATORY JUDGMENT

C:\NrPortbl\PALIB1\DAG\2541165_2.DOC

**ANSWER**

Google Inc. ("Google") hereby responds to the Amended Complaint of Digital Envoy, Inc. ("Digital Envoy") below. To the extent not specifically admitted, each and every allegation in the Amended Complaint is denied.

1. Google denies the allegations contained in Paragraph 1 as they relate to Google or its conduct. Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and on that basis denies them.

2. Google admits that it entered into a license agreement in November of 2000 with Digital Envoy, but denies Digital Envoy's characterization and interpretation of the license agreement. Google admits that at all times it has properly complied with the terms of the Agreement between itself and Digital Envoy. Google denies the remaining allegations of Paragraph 2.

3. Google denies the allegations contained in Paragraph 3.

**Jurisdiction**

4. Google admits that Digital Envoy does business in Norcross, Georgia. Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and on that basis denies the allegations therein.

5. Google admits the allegations contained in Paragraph 5.

6. Google admits that jurisdiction over Digital Envoy's counterclaims in this Court is proper under 28 U.S.C. § 1332 based on diversity of citizenship. To the extent not expressly admitted, Google denies the allegations of Paragraph 6.

7. Google admits that the district and division identified in Paragraph 7 is the proper venue for the present action and all related claims. To the extent not expressly admitted, Google denies the allegations of Paragraph 7.

**Factual Allegations**

8. Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and on that basis denies the allegations therein.

9. Google admits that there are over 4 billion possible addresses in the address space for IP ("Internet Protocol") version 4, sometimes referred to as IPv4. Google admits that numerical IP addresses do not, in and of themselves, convey geographical information. Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9, and on that basis denies the allegations contained therein.

10. Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10, and on that basis denies the allegations contained therein.

11. Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11, and on that basis denies the allegations contained therein.

12. Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12, and on that basis denies the allegations contained therein.

13. Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13, and on that basis denies the allegations contained therein.

14. Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14, and on that basis denies the allegations contained therein.

15. Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15, and on that basis denies the allegations contained therein.

16. Google is informed and believes, and on that basis admits, that some advertisers find attractive the ability to target advertising in one or more ways. Google is informed and believes, and on that basis admits, that the availability of advertising targeting options may affect ad performance and/or profitability. Google is without knowledge or information sufficient to

1  form a belief as to the truth of the remaining allegations contained in Paragraph 16, and on that
2  basis denies the allegations contained therein.

3  17.    Google is without knowledge or information sufficient to form a belief as to the
4  truth of the allegations contained in Paragraph 17, and on that basis denies the allegations
5  contained therein.

6  18.    Google admits that it was formed in approximately September 1998, that it
7  operates an Internet search engine, that it offers various search technologies, that it has made
8  excellent technological innovations, and that it has strong financial backing. Google further
9  admits that one of its search technologies is an Internet search engine, and that it has, for years,
10 been one of the most popular Internet search engines. Google is informed and believes, and on
11 that basis admits, that by mid-2000 it was, in at least some respect, operating the largest search
12 engine on the Internet. To the extent not expressly admitted, Google denies the allegations of
13 Paragraph 18.

14 19.    Google admits the name "Google" is a play on the word "googol" which is 10 to
15 the 100th power. Google admits that the company's mission is to make the world's information
16 universally accessible and useful. To the extent not specifically admitted, Google denies the
17 allegations of Paragraph 19.

18 20.    Google admits that it was started by two Stanford University students with
19 innovative ideas, that the company's first office was attached to a garage of a friend, and that it
20 has so portrayed itself. Google further admits that its Googleplex headquarters includes many
21 lava lamps, that there often are dogs of various sizes at the Googleplex, that it employs a chef
22 who formerly cooked for the Grateful Dead, and that there is room in its parking lot for roller
23 hockey games. Google admits that the user interface for its Internet search engine is available in
24 many languages, including the Klingon language. To the extent not specifically admitted,
25 Google denies the allegations of Paragraph 20.

26 21.    Google admits it is backed by funding from leading venture capital firms, and has
27 an outstanding management team, board of directors, and technical advisory council. Google
28 further admits its revenues for 2003 were nearly $1 billion, the majority of which was obtained

1  through sales of advertising. Google lacks information sufficient to form a belief as to the
2  remaining allegations of Paragraph 21, and on that basis denies those allegations.

3  22. Google admits that the company overall has been profitable since fiscal year
4  2001. Google admits that one source of its revenues has been and continues to be marketing
5  search technology to other companies. Google further admits that it has, for several years,
6  displayed advertisements on certain pages displaying results to users' search queries, and that is
7  has earned revenue through that practice. To the extent not specifically admitted, Google denies
8  the allegations of Paragraph 22.

9  23. Google admits that part of Google's advertising program known as AdWords
10 permits advertisers to the display advertisements on pages containing the results to users' search
11 queries. To the extent not specifically admitted, Google denies the allegations of Paragraph 23.

12 24. Google admits it believes that technology that estimates the physical location of
13 users can play a role in providing relevant advertisements to users of its services depending
14 upon, among other things, the accuracy of the technology and the nature of the advertisement.
15 Google further admits that it was, for a number of reasons, interested in technology that could
16 provide Google with an educated guess regarding the physical location of users of its services.
17 To the extent not specifically admitted, Google denies the allegations of Paragraph 24.

18 25. Google admits that it negotiated with Digital Envoy in November 2000 over an
19 agreement allowing Google to make use of certain Digital Envoy technology. To the extent not
20 specifically admitted, Google denies the allegations of Paragraph 25.

21 26. Google admits the allegation contained in Paragraph 26.

22 27. Google admits under the parties' agreement dated November 30, 2000 (the
23 "Agreement"), Google was licensed to use Digital Envoy's technology as it saw fit in its
24 "Business", and that the license was non-exclusive. Google denies the interpretation or
25 characterization based on Digital Envoy's selective paraphrasing and highlighting of the
26 language of the Agreement. To the extent not specifically admitted, Google denies the
27 allegations of Paragraph 27.

28

28. Google admits that Section 7.1 of the Agreement states: "As between the parties hereto, Licensor shall be the sole owner of the Database Libraries, including any patents copyrights, or trade secrets associated with the Database Libraries or the underlying applications." Google further admits that Section 7.2 of the Agreement states: "Licensee shall hold all of Licensor's product information, including the results of any evaluation or testing thereof by Licensee in strict confidence and shall in no event share such information with any third parties." To the extent not specifically admitted, Google denies the allegations of Paragraph 28.

29. Google admits that paragraph 7.4 of the Agreement states: "In the event either party discovers an instance of possible infringement of Licensor's rights in the Database Libraries, such party shall promptly notify the other. The parties shall consult with one another with respect to the action that may be appropriate to stop or remedy such infringement." To the extent not specifically admitted, Google denies the allegations of Paragraph 29.

30. Google admits that it originally paid Digital Envoy $3,000 per month under the Agreement, with payments escalating to $8,000 per month as a result of amendments. To the extent not specifically admitted, Google denies the allegations of Paragraph 30.

31. Google admits that it has used Digital Envoy's technology to attempt to ascertain the physical geographic location of users for purposes of improving the targeting of advertisements to users. Google further admits it has promoted the potential for targeting generally as a feature of its AdWords program. To the extent not specifically admitted, Google denies the allegations of Paragraph 31.

32. Google admits that its advertising program for advertisers is known as "AdWords." Google further admits it has offered a "Premium Sponsorship" program for certain advertisers, and that it continues to offer certain services designated as "premium" services for certain advertisers. Google further admits that participants in the AdWords program pay for advertising on a "cost-per-click basis," meaning that an advertiser generally pays Google based upon the number of times users click on its advertisements displayed in the AdWords program. To the extent not specifically admitted, Google denies the allegations of Paragraph 32.

33. Google admits that at least some advertisers participating in the AdWords program are offered the option of potentially targeting their advertisements to particular geographic areas. To the extent not specifically admitted, Google denies the allegations of Paragraph 33.

34. Google avers that the allegations of Paragraph 34 are vague, ambiguous and unintelligible. Google thus lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and on that basis denies those allegations.

35. Google admits that it was not placing third party advertisements on the Internet web sites of other companies in November 2000. Google further admits that it was then and is now in the business of producing and maintaining information search technology. Google denies the remaining allegations of Paragraph 35.

36. Google admits that by mid-2001, it had signed up more than 350 Premium Sponsorship advertisers, and thousands of AdWords advertisers. Google is informed and believes, and on that basis admits, that at that time, the clickthrough rates on Google advertisements were four to five times higher than clickthrough rates for then-traditional Internet banner ads. Google is without information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36, and on that basis denies those allegations.

37. Google admits that by August 2002, Google was placing AdWords advertisements on third party web sites. To the extent not specifically admitted, Google denies the allegations of Paragraph 37.

38. Google admits that in approximately February 2003, it announced an advertising program under which it would search the content of third party web pages and advertisements and match the two based on its assessment of an advertisement's relevance to a web page's content. To the extent not specifically admitted, Google denies the allegations of Paragraph 38.

39. Google admits that in June 2003 it stated that the Google AdSense contextual advertising program was designed to allow website publishers to "maximize the revenue potential of their websites" by providing "ads that are highly relevant to their content." Google admits that it shares revenues generated from ads placed on a publisher's website with that

1 publisher, typically based on some measure of the success of the advertisements on that 2 publisher's website. Google admits that as of June 2003, the website publishers using Google 3 AdSense contextual ads included ABC.com, HowStuffWorks, Internet Broadcasting Systems, 4 Inc., Lycos Europe, New York Post Online Edition, Reed Business Information, and U.S.News 5 & World Report. Google admits that it sometimes collectively refers to the sites who publish 6 targeted AdWords ads on their web pages as the "Google ad network." To the extent not 7 specifically admitted, Google denies the allegations of Paragraph 39.

8  40. Google denies the allegations contained in Paragraph 40.

9  41. Google admits that its revenues for the 2003 fiscal year were more than double its 10 revenues for the 2002 fiscal year, and that the AdSense program was an important part of that 11 success. To the extent not specifically admitted, Google denies the allegations of Paragraph 41.

12  42. Google denies it has made any unauthorized use of Digital Envoy's technology, 13 and otherwise denies the allegations of Paragraph 42.

14  43. Google admits that Digital Envoy notified Google in February of 2004 that 15 Digital Envoy believed Google was exceeding the scope of its license with Digital Envoy. 16 Google denies that it has exceeded the scope of its license, and to the extent not specifically 17 admitted, Google denies the allegations of Paragraph 43.

18 **Count I**

19  44. Google incorporates its responses contained in paragraphs 1 through 43 as if fully 20 stated herein.

21  45. Google is without knowledge or information sufficient to form a belief as to the 22 truth of the allegations contained in Paragraph 45, and on that basis denies the allegations 23 contained therein.

24  46. Google denies the allegations contained in Paragraph 46.

25  47. Google denies the allegations contained in Paragraph 47.

26  48. Google denies the allegations contained in Paragraph 48.

27  49. Google denies the allegations contained in Paragraph 49.

28  50. Google denies the allegations contained in Paragraph 50.

**Count II**

51. Google incorporates its responses contained in paragraphs 1 through 50 as if fully stated herein.

52. Google denies the allegations contained in Paragraph 52.

53. Google denies the allegations contained in Paragraph 53.

54. Google denies the allegations contained in Paragraph 54.

55. Google denies the allegations contained in Paragraph 55.

**Count III**

56. Google incorporates its responses contained in Paragraphs 1 through 55 as if fully stated herein.

57. Google denies the allegations contained in Paragraph 57.

58. Google denies the allegations contained in Paragraph 58.

59. Google denies the allegations contained in Paragraph 59.

60. Google denies the allegations contained in Paragraph 60.

**Count IV**

61. Google incorporates its responses contained in Paragraphs 1 through 60 as if fully stated herein.

62. Google denies the allegations contained in Paragraph 62.

63. Google denies the allegations contained in Paragraph 63.

64. Google denies the allegations contained in Paragraph 64.

65. Google denies the allegations contained in Paragraph 65.

**Count V**

66. Google incorporates its responses contained in Paragraphs 1 through 65 as if fully stated herein.

67. Google denies the allegations contained in Paragraph 67.

68. Google denies the allegations contained in Paragraph 68.

69. Google denies the allegations contained in Paragraph 69.

70. Google denies the allegations contained in Paragraph 70.

## Count VI

71. Google incorporates its responses contained in Paragraphs 1 through 70 as if fully stated herein.

72. Google admits that on November 30, 2000, Google and Digital Envoy entered into the Agreement under which, among other things, Google pays a monthly fee to Digital Envoy. To the extent not specifically admitted, Google denies the allegations of Paragraph 72.

73. Google denies the allegations contained in Paragraph 73.

74. Google denies the allegations contained in Paragraph 74.

75. Google denies the allegations contained in Paragraph 75.

## **AFFIRMATIVE DEFENSES**

Google alleges the following separate affirmative defenses to Digital Envoy's claims, and in doing so, does not assume the burden to establish any fact or proposition necessary to that affirmative defense where that burden is properly imposed on Digital Envoy.

### First Affirmative Defense

(Failure to State a Claim)

The Amended Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

(Privilege of Competition)

Digital Envoy is barred from recovery against Google because, all, or part, of the alleged actions or inactions taken by Google were taken under the privilege of competition and cannot serve as a basis for imposing liability against Google.

### Third Affirmative Defense

(Consent)

Digital Envoy is barred from recovery against Google because, all, or part, of the alleged actions or inactions taken by Google were taken with Digital Envoy's consent.

**Fourth Affirmative Defense**

(Laches)

Digital Envoy is barred from recovery against Google by reason of the doctrine of laches.

**Fifth Affirmative Defense**

(Unclean Hands)

As a result of the acts and omissions in the matters relevant to the Amended Complaint, Digital Envoy has unclean hands and is therefore barred from asserting any claims against Google.

**Sixth Affirmative Defense**

(Waiver)

Digital Envoy has voluntarily waived, relinquished and/or abandoned all claims for relief against Google.

**Seventh Affirmative Defense**

(Estoppel)

Digital Envoy is barred from recovery against Google by reason of the doctrine of estoppel.

**Eighth Affirmative Defense**

(License)

Digital Envoy is barred from recovery against Google because, all, or part, of the alleged actions or inactions taken by Google were licensed and authorized by Digital Envoy.

**Ninth Affirmative Defense**

(Good Faith)

Digital Envoy's claims are barred, in whole or in part, because Google's actions were based on good, sufficient, and legal cause, upon reasonable grounds for belief in their justification, and were taken in good faith and without malice or ill will for Digital Envoy.

### Tenth Affirmative Defense

(Preemption)

Digital Envoy's claims are preempted, in whole or in part, by the USTA and California's enactment thereof.

### Eleventh Affirmative Defense

(Contractual Provisions)

Digital Envoy's claims are barred, in whole or in part, by the provisions of the agreement between the parties.

### Twelfth Affirmative Defense

(Statute of Limitations)

Digital Envoy's claims are barred, in whole or in part, by the applicable statutes of limitations.

### Thirteenth Affirmative Defense

(Contractual Provisions)

To the extent Digital Envoy sustained any damages, which Google denies, Digital Envoy's recovery of damages is barred, in whole or in part, by the provisions of the agreement between the parties.

### Fourteenth Affirmative Defense

(Failure to Mitigate)

To the extent Digital Envoy sustained any damages, which Google denies, Digital Envoy is barred from recovering any damages because it has and failed, and continues to fail, to make reasonable efforts to mitigate such damages, which would have prevented such alleged damages, if any.

### Fifteenth Affirmative Defense

(Contributory Fault)

To the extent Digital Envoy sustained any damages, which Google denies, such damages were caused, in whole or in part, by Digital Envoy's contributory fault which bars or limits Digital Envoy's recovery.

**Additional Affirmative Defenses**

Google may have additional, as yet unidentified defenses available. Google reserves the right to assert additional defenses that are revealed through further investigation or through discovery in a timely fashion after the facts to support such defenses become known to it.

**PRAYER**

WHEREFORE, Google prays that

1. Digital Envoy take nothing by the Amended Complaint;
2. That Google be awarded judgment on Digital Envoy's Amended Complaint;
3. That Google be awarded its costs of suit including reasonable attorneys' fees; and
4. That the Court award Google any such other and further relief as the Court deems just and proper.

//

//

//

//

# COUNTERCLAIMS

## Introduction

1. By this Counterclaim, Google Inc. ("Google") seeks declaratory relief in a dispute with Digital Envoy, Inc. ("Digital Envoy") regarding a contract between the parties. Google further seeks redress for Digital Envoy's breach of the forum selection clause in its contract with Google. Despite a provision that expressly requires the parties to file any lawsuit regarding the contract in Santa Clara County, California, Digital Envoy has sued Google in Georgia on claims regarding the contract.

## The Parties

2. Defendant/Counterclaimant Google Inc. is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043. Google is the surviving corporation of a merger between Google Technology, Inc., a California corporation (formerly known as Google, Inc., a California corporation) and Google, Inc., a Delaware corporation.

3. Plaintiff/Counterdefendant Digital Envoy, Inc. is a Georgia corporation with its principal place of business at 250 Scientific Drive, Suite 800, Norcross, Georgia 30092.

## Jurisdiction

4. This action is between citizens of different states and the amount in controversy exceeds $75,000, thus there is diversity jurisdiction under 28 U.S.C. section 1332.

## Venue

5. Venue is proper in the Northern District of California, San Jose Division, under 28 U.S.C. section 1391 because a substantial part of the events or omissions that give rise to the claims and controversy occurred in the Northern District of California, San Jose Division, and in addition, a substantial part of the material that is a subject of the claims and controversy is situated in the Northern District of California, San Jose Division. Moreover, venue is proper in the Northern District of California, San Jose Division, because the forum selection clause in the parties' November 30, 2000 Product and Electronic Database Evaluation and License Agreement

1  – the contract at the heart of this case – states in Section 12 that "[a]ny lawsuit regarding this Agreement shall be filed in the state or federal courts in Santa Clara County, California."

**Factual Allegations**

6. Google is the world's leading Internet search company. It provides search-related services in a variety of different Internet-based applications.

7. Digital Envoy, Inc. is one of several companies offering technology that allows one to ascertain certain geographic information from a computer's Internet Protocol (IP) address. This "geo-targeting" capability can be used to tailor the content of websites based upon a visitor's assumed location.

8. On or about November 30, 2000, Google and Digital Envoy entered into a license agreement that gave Google contractual rights to use Digital Envoy's "Personum product" and "certain geographic/IP address databases" (the "licensed technology"). A copy of this contract (with its two amendments and subsequent ratification) is attached as Exhibit A (the "Agreement").

9. Under the Agreement, Google was granted the right to use the licensed technology in its "Business" at its "offices and data centers." In particular, the Agreement expressly permits Google to "use the Database Libraries to develop indices, services, or applications that are provided to third parties." In exchange for these rights, Google initially agreed to make monthly payments to Digital Envoy of $3000, and as a result of amendments raised the payment to $8000 per month.

10. The Agreement is governed by California law and requires that any lawsuit regarding the Agreement be filed in the state or federal courts of Santa Clara County, California.

**The Present Dispute**

11. Google has fully performed under the parties' Agreement. Further, Google has used Digital Envoy's technology only within the scope of the license granted by Digital Envoy under the Agreement.

12. In February 2004 Digital Envoy contacted Google and demanded that Google increase its payments to Digital Envoy. Digital Envoy eventually explained that after signing its contract with Google for payments of $8,000 a month, it had separately licensed its technology to a major partner for $35,000 a month and had promised its partner that the partner would receive the best price Digital Envoy offered to any customer for a similar deal. Digital Envoy in fact demanded that Google pay as least as much as the $35,000 per month paid by this partner, and indicated that in no event would it accept any counteroffer that did not at least match the $35,000 per month paid by the partner.

13. As a pretext for its demand of increased payment, Digital Envoy claimed that Google was using the licensed technology beyond the activities permitted by the Agreement. Specifically, it claimed that Google's use of the technology in connection with Google's AdSense program, was not permitted by the Agreement. It made this claim for the first time in February 2004, even though the program had been in existence for many months, and Digital Envoy had long been aware of it.

14. Digital Envoy's claim was false. To the extent Google used Digital Envoy's technology in its AdSense program, such use was authorized by the Agreement. Google thus rejected Digital Envoy's demands for increased payment.

15. On March 29, 2004, Digital Envoy filed a lawsuit against Google in which its principal contention is that Google's use of Digital Envoy's technology in the AdSense program was not authorized by the parties' Agreement. Despite the express forum selection clause in the Agreement calling for any lawsuit "regarding" the Agreement to be filed in Santa Clara County, California, Digital Envoy improperly filed the suit in Georgia. Digital Envoy thus breached the parties' Agreement and has and will put Google to needless expense of responding to the suit in Georgia.

### **First Cause of Action – Breach of Contract**

16. Google incorporates all of the allegations contains in Paragraphs 1-15 of this Counterclaim.

1    17.    Google and Digital Envoy entered the Agreement on or about November 30, 2000.

    18.    Google has performed all obligations required of Google under the Agreement, except for those obligations that have been excused or waived.

    19.    Digital Envoy breached Section 12 of the Agreement, the forum selection clause, by filing a lawsuit regarding the parties' Agreement against Google in Georgia.

    20.    As a proximate cause of Digital Envoy's breach of contract, Google has been damaged in an amount to be determined at trial.

## Second Cause of Action – Declaratory Judgment

    21.    Google incorporates each of the allegations contained in Paragraphs 1-20 of this Counterclaim.

    22.    There is an actual and justiciable controversy between the parties concerning the scope of Google's license under the Agreement to use Digital Envoy's technology.  Digital Envoy has demanded money from Google for actions allegedly outside the scope of the license. Google denies any unlicensed activity, and denies that any further money is owned to Digital Envoy.  Further, on March 29, 2004, Digital Envoy filed a lawsuit against Google in the United States District Court for the Northern District of Georgia, Atlanta Division, alleging that Google had exceeded the scope of the license granted by the Agreement.

    23.    Google therefore seeks a declaration that it has not exceeded the scope of its license with Digital Envoy, that it has not otherwise breached the Agreement with Digital Envoy and that it has not misused any supposed intellectual property licensed to Google by Digital Envoy under the Agreement.

## PRAYER

WHEREFORE, Google prays for a judgment:

A.    Declaring that Google has not exceeded the scope of its license with Digital Envoy under the Agreement, that Google has not otherwise breached the Agreement and that Google has not misused any intellectual property licensed by Digital Envoy to Google under the Agreement;

ANSWER TO AMENDED COMPLAINT AND                    -17-                    C:\NrPortbl\PALIB1\DAG\2541165_2.DOC
COUNTERCLAIMS FOR BREACH OF CONTRACT
AND DECLARATORY JUDGMENT

B.     Finding Digital Envoy in breach of Section 12 of the Agreement and awarding Google damages as proven for that breach along with applicable interest;

C.     Awarding Google its costs of suit; and

D.     Awarding Google any other relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Google demands a jury trial on all claims so triable.

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations of person, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:  Kleiner, Perkins, Caulfield & Byers and Sequoia Capital (and various affiliated entities of Kleiner, Perkins, Caulfield & Byers and Sequoia Capital).

Dated:  October 7, 2004

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:     /s/ David H. Kramer
        David H. Kramer

Attorneys for Defendant and Counterclaimant
Google Inc.

ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT      -18-      C:\NrPortbl\PALIB1\DAG\2541165_2.DOC