DAVID H. KRAMER, State Bar No. 168452
STEPHEN C. HOLMES, State Bar No. 200727
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendant/Counterclaimant
Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC.,<br><br>         Plaintiff/Counterdefendant,<br><br>  v.<br><br>GOOGLE INC.,<br><br>         Defendant/Counterclaimant. | CASE NO.: C 04 01497 RS<br><br>**GOOGLE INC.'S NOTICE OF MOTION AND MOTION FOR LEAVE TO AMEND ITS COUNTERCLAIMS AND FOR RELIEF FROM CASE MANAGEMENT SCHEDULE**<br><br>Date: February 9, 2005<br>Time: 9:30 a.m.<br>Courtroom: 4, 5th Floor<br>Judge: Hon. Richard Seeborg |

**GOOGLE'S MTN TO AMEND COUNTERCLAIMS AND FOR RELIEF FROM CASE MANAGEMENT SCHEDULE**
**CASE NO. 04-0197 RS**

C:\NrPortbl\PALIB1\DAG\2581187_1.DOC


## NOTICE OF MOTION AND MOTION

TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 9, 2005, at 9:30 a.m. in Courtroom 4, Fifth Floor of the United States District Court for the Northern District of California, United States Courthouse, 280 South First Street, San Jose, California, defendant/counterclaimant Google Inc. ("Google") shall move the court for an order granting leave to file its Amended Counterclaims (attached to the Declaration of Stephen C. Holmes as Exhibit A) and for relief from the scheduling order pursuant to Fed. R. Civ. P. 15(a) and 16(b).

This motion is based upon these moving papers, the Declaration of Stephen C. Holmes, the proposed Amended Counterclaims, the pleadings on the file herein, matters of which the court may take judicial notice, and upon such other and further oral and documentary argument and evidence as the Court may permit at the hearing of this motion.

Dated: December 28, 2004

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:  /s/ Stephen C. Holmes

Stephen C. Holmes
Attorneys for Defendant/Counterclaimant
Google Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Through recent discovery in this case, Google has learned that Digital Envoy has disclosed to Google's direct competitors information about the parties' relationship and the manner in which Google used Digital Envoy's technology. Such disclosures were prohibited by two separate contracts between the parties and Google expressly and repeatedly instructed Digital Envoy not to make such disclosures. Digital Envoy's conduct constitutes obvious breaches of the parties' non-disclosure and license agreements as well as trade secret misappropriation. Because Google did not know of and could not earlier have discovered Digital Envoy's misconduct, it now seeks leave to amend its counterclaims to add additional causes of action seeking redress.

Google's motion is timely, and the claims it wishes to add would be most efficiently adjudicated as part of the current litigation. Digital Envoy faces no unfair prejudice from the amendments. Trial is over ten months away. Discovery does not close for another four months, and virtually all of the information relevant to the claims is already in Digital Envoy's possession.

Although Google did not oppose Digital Envoy's earlier request to add claims to this action, Digital Envoy has inexplicably refused to consent to Google's requested amendments. Accordingly, Google seeks leave to amend its counterclaims in the action.

## II.  BACKGROUND

### The Parties' Agreements

Digital Envoy is one of several companies that has developed technology that assists users in making an educated guess about the approximate geographic location of a visitor to a website. Google contacted Digital Envoy when it was seeking a provider of such technology in mid-2000.

Google and Digital Envoy entered into two agreements in November 2000 that placed restrictions on Digital Envoy's use of information concerning the parties' relationship. The first, a standard non-disclosure agreement (the "NDA"), generally prohibits Digital Envoy from

making unauthorized use of Google's confidential information and specifically bars advertising or publicity relating to such information.   (Holmes Decl. Ex. B, §§ 4, 5.)

The second agreement is a license under which Digital Envoy granted Google expansive rights to use Digital Envoy's technology in Google's business (the "License Agreement") (Holmes Decl., Ex. C.).  In discussions over the License Agreement, Digital Envoy specifically requested that it be given the right to tell others about the Google/Digital Envoy relationship. Google refused the request explaining:

> [A]ll information regarding technology sources is to be treated as confidential … As the leading search technology vendor, competitors constantly try to discover how we do what we do.  If we go outside our company for technology/expertise, we treat this knowledge as one of our competitive advantages.

(Holmes Decl. Ex. D, Email 11/17/2000 from Schimmel to Friedman).  The parties then included a provision in the License agreement expressly prohibiting Digital Envoy from using the relationship with Google for marketing purposes:

> [Digital Envoy] must first obtain [Google's] written consent before making any public use of Licensee's trade name, trademarks, service marks, logos, or other distinctive brand features, such public use including but not being limited to press releases and other marketing efforts.

(Holmes Decl. Ex. C, at § 15).

After the License Agreement was signed, Digital Envoy repeatedly sought Google's permission to disclose information about the parties' relationship and Google's uses of Digital Envoy's data to third parties.  Google denied those requests, reiterating that Digital Envoy was not to use the specifics of the Google relationship for marketing purposes. *See, e.g.,* Holmes Decl., Ex. E. (March 2002 email from Google responding to request from Digital Envoy: "Whenever we go outside our company for technology/expertise, we treat this knowledge as one of our competitive advantages. … [W]e do not care to have the specifics of our use publicized.").

### Google's Discovery of Digital Envoy's Misconduct

Digital Envoy improperly commenced this action in Georgia in March 2004, claiming that Google was using Digital Envoy's technology outside the scope of the license granted to it. *See Digital Envoy Inc. v. Google, Inc.*, 319 F. Supp. 2d 1377 (N.D. Ga. 2004).  After the action

1  was transferred here, on August 27, 2004, the Court issued a Case Management Scheduling

2  Order setting that same day as the deadline for amending the pleadings.[1]  The Court also set a

3  fact discovery cut-off of April 29, 2005 and a trial date of October 24, 2005.  Holmes Decl. at ¶7.

4       After the deadline for amending pleadings had passed, Google received its first

5  production of documents from Digital Envoy.  Included among the documents Google received,

6  were several indicating that Digital Envoy had repeatedly shared information regarding the

7  parties' relationship with Google's fiercest competitors.  Holmes Decl. at ¶8.

8       On November 17, 2004, Google deposed Mr. Rob Friedman, Digital Envoy's vice

9  president of corporate development and corporate counsel, pursuant to Fed. R. Civ. P. 30(b)(6).

10  During the deposition, Mr. Friedman confirmed what the documents suggested – in marketing its

11  services to third parties, Digital Envoy made a practice of sharing information about its

12  relationship with Google and Google's various uses of its technology.  Holmes Decl. at ¶9.

13       There is little question but that Digital Envoy's disclosures violate both the NDA and

14  License Agreement.  Digital Envoy revealed to Google's competitors the very information that

15  Google had expressly identified as providing it with a competitive advantage.  Digital Envoy

16  plainly believed that disclosing details about its association with Google provided credibility for

17  its technology, and made the technology more attractive to others.  Digital Envoy's disclosures

18  thus damaged Google and unjustly enriched Digital Envoy.  Because some of the disclosed

19  information constituted Google trade secrets, Digital Envoy's conduct also gives rise to a claim

20  for misappropriation.

21       Shortly after Mr. Friedman's deposition (just before the Thanksgiving holiday), Google

22  contacted Digital Envoy seeking a stipulation to allow Google to file amended counterclaims.

23  Digital Envoy refused that request.  It refused a second request in mid-December.  Holmes Decl.

24  at ¶10.

---

[1] That same day, Digital Envoy sought leave to file an amended complaint.  Google did not oppose the request.  *See* Google Statement of Nonopposition, dated September 15, 2004.

GOOGLE'S MTN TO AMEND COUNTERCLAIMS AND  -4-
FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
CASE NO. 04-0197 RS

### III. ARGUMENT

**Rule 15(a)'s Liberal Policy Regarding Amendments to Pleadings Requires that Leave to Amend Be Granted**

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires," and reflects and underlying policy that disputes should be determined on their merits, and not on the technicalities of the pleading rules. *See* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 181-82 (1962). Decisions from the Ninth Circuit and this Court consistently apply this policy of favoring amended pleadings with "extreme liberality." *See DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) ("Rule 15's policy of favoring amendments to pleadings should be applied with 'extreme liberality'"); *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 989 F. Supp. 1237, 1241 (N.D. Cal. 1997) ("[T]he court must be very liberal in granting leave to amend").

When the party seeking leave to amend gives a legitimate reason for amendment, the burden shifts to the opposing party to demonstrate why leave to amend should not be granted. *Id*, 989 F. Supp. at 1241. Here, the reason for the proposed amendments is obvious: Google has only recently learned of Digital Envoy's misconduct. It could not have known that Digital Envoy had been secretly flouting the parties' agreements and disclosing confidential information.

Digital Envoy has no legitimate reason for opposing the requested amendments. Under the present schedule, fact discovery does not close for four months. Digital Envoy thus has plenty of time to conduct discovery concerning Google's new claims if it deems such discovery necessary.[2] Accordingly, granting Google's request for leave does not unfairly prejudice Digital Envoy and does not necessitate changes to the current case management schedule.[3]

---

[2] In reality, the facts concerning Google's new claims are almost exclusively in Digital Envoy's possession. Digital Envoy certainly knows of the extent of its improper disclosures, and has the information showing the benefits it derived from them.

[3] Google does request a minor modification of the scheduling order pursuant to Fed. R. Civ. P. 16(b) to permit Google to file its amended counterclaims. As noted, Google first learned of the facts supporting its counterclaims after the original August 27, 2004 deadline for

(continued...)

GOOGLE'S MTN TO AMEND COUNTERCLAIMS AND
FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
CASE NO. 04-0197 RS

-5-

1    Digital Envoy also cannot show that Google acted in bad faith or unduly delayed in
2 requesting leave to amend. As explained above, the opposite is true. In the normal course of
3 discovery, Google uncovered facts that not only support its claims, but leave little doubt as to
4 Digital Envoy's liability on them. Promptly after its discovery, Google contacted Digital
5 Envoy's counsel about amending the pleadings. It filed this motion a month later (during the
6 holiday season), after its repeated requests to avoid motion practice were denied. Google's
7 motion is timely.

8    Finally, Digital Envoy cannot show that Google's proposed new claims for breach of
9 contract and trade secret misappropriation are futile. The proposed amendments are not time-
10 barred, and Google's amended pleading certainly states claims for relief.[4] *DCD Programs* at
11 188. That Digital Envoy apparently desires to avoid answering for its conduct hardly renders the
12 claims futile. And if Digital Envoy believes it can defend against the charges, it will have time
13 to do so as the case progresses.

14 //
15 //
16 //
17 //
18 //
19 //

---

(...continued from previous page)
amendments had already passed. Google thus submits that good cause exists for such a modification.

[4] Digital Envoy's disclosures breach both the License Agreement and the NDA. In addition, as noted, Google believes that confidential information concerning its outside technology sources and its use of such technology provides Google with a competitive advantage. Digital Envoy's use of such information in its marketing plainly demonstrates the value of the information. Google took reasonable measures to protect the information in confidence, such as entering into the NDA and instructing Digital Envoy not to disclose such information. Digital Envoy's unauthorized disclosures of its confidential information thus constitutes trade secret misappropriation.

### IV.   CONCLUSION

For the foregoing reasons, Google Inc. respectfully requests that the Court grant its motion for leave to amend its counterclaims to permit it to add claims based upon newly discovered evidence.

Dated:  December 28, 2004

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  ___/s/  Stephen C. Holmes___

Stephen C. Holmes
Attorneys for Defendant/Counterclaimant
Google Inc.

GOOGLE'S MTN TO AMEND COUNTERCLAIMS AND
FOR RELIEF FROM CASE MANAGEMENT SCHEDULE
CASE NO. 04-0197 RS

-7-