1  DAVID H. KRAMER, State Bar No. 168452
   WILSON SONSINI GOODRICH & ROSATI
2  Professional Corporation
   650 Page Mill Road
3  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
4  Facsimile:  (650) 565-5100

5  Attorneys for Defendant/Counterclaimant
   Google Inc.
6

7               UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9                      SAN JOSE DIVISION

10

11 DIGITAL ENVOY, INC.,            )   CASE NO.:  C 04 01497 RS
                                   )
12         Plaintiff/Counterdefendant, )  **GOOGLE INC.'S NOTICE OF**
                                   )   **MOTION AND MOTION FOR A**
13     v.                          )   **PROTECTIVE ORDER**
                                   )
14 GOOGLE INC.,                    )   Judge:     Hon. Richard Seeborg
                                   )   Courtroom: 4, 5th Floor
15         Defendant/Counterclaimant. )  Date:      January 26, 2005
                                   )              (pending motion)
16                                 )   Time:      9:30 a.m.
                                   )
17

GOOGLE'S MOTION FOR ENTRY OF                C:\NrPortbl\PALIB1\DAG\2591149_1.DOC
PROTECTIVE ORDER
C 04 01497 RS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on January 26, 2005 at 9:30 a.m. or as soon thereafter as it may be heard, defendant/counterclaimant Google Inc. ("Google") will move and hereby does move, pursuant to Fed. R. Civ. P. 26(b)(2), (c) and (d) for entry of a protective order compelling Digital Envoy to withdraw twenty-two nonparty subpoenas it has served on Google's strategic partners and customers on the grounds that the subpoenas are facially overbroad, that they only seek irrelevant, but confidential information, and that any relevant information should be sought from Google, rather than nonparties.

Google's motion is supported by the following memorandum, the accompanying Declarations of David H. Kramer and Hilary Ware, the argument of counsel and any other matters properly before the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Last week, Digital Envoy served 22 nonparty subpoenas to some of Google's biggest strategic partners and advertising customers. The subpoenas are absurdly overbroad seeking, *inter alia*, *all* communications from Google on *any* subject, *all* documents relating to *any* agreement between the parties and *all* technical schematics on *any* Google product. Such information is not relevant to this dispute. More importantly, Digital Envoy has attempted to circumvent the normal discovery process, demanding that nonparties produce volumes of information on Google that Digital Envoy has not sought from Google in the first instance.

By this motion, Google seeks a protective order compelling Digital Envoy to withdraw its subpoenas and to require Digital Envoy to seek such documents directly from Google before further troubling nonparties.

**BACKGROUND**

**The Parties' Agreement**

Digital Envoy is one of several companies that generate data allowing users to make an educated guess about the approximate geographic location of a visitor to a website. Specifically,

Digital Envoy's data attempts to match the unique IP addresses assigned to the computers of individual Internet users to particular countries, regions or metropolitan areas. Google contacted Digital Envoy when it was seeking a provider of such information in mid-2000.

During the parties' discussions, Google made clear that it was principally interested in using the data for its advertising programs. It explained that it wanted an "all you can eat" license to the data so that it would not have to predict how it would use it in the future. Declaration of David H. Kramer ("Kramer Decl."), Ex. A. (email chain between Steve Schimmel and Rob Friedman). Digital Envoy's CEO responded, "you can use it for everything and there is no volume cap." *Id.* (emphasis supplied). Google then reiterated that it would choose Digital Envoy as its vendor if Digital Envoy met a list of terms, including "[u]nlimited volume and use for country targeting (ie. advertising, customized country pages and internal research purposes) for ~$3,000/mth total." Kramer Decl., Ex. B. (emphasis supplied). Digital Envoy accepted, and the terms of the parties November 2000 Agreement reflect the sweeping authorization Digital Envoy granted to Google. Kramer Decl., Ex. C.

The Agreement authorizes Google to use Digital Envoy's data in Google's "Business" -- broadly defined as "the business of producing and maintaining information search technology." Google was expressly authorized to use the data at any of its "offices and data centers" and to "develop indices, services, or applications that are provided to third parties." Kramer Decl., Ex. C at § 3. The parties extended their arrangement several times, with Google increasing its monthly license fee from $3000 to $8000.

**Google's Advertising Programs**

As the parties discussed, Google began using Digital Envoy's data in its advertising programs. Google's programs are based upon a database of advertisements from thousands of distinct advertisers. Google searches this database to find the most relevant commercial information to display to Internet users using on a highly complex weighted algorithm that takes dozens of factors into consideration.

One of the most important factors Google uses to locate advertisements to display to an Internet user is that user's demonstrated interest in a particular subject. Thus, for example, when

a visitor to www.Google.com queries Google's Internet search engine for "basketball," Google will generally search its inventory for a basketball-related advertisement to match the user's interest. But the user's demonstrated interest is only one factor used in the search. Others include, for example, the clickthrough rate on particular ads and the amount of money that an advertiser is willing to pay for a user's click. Still another factor is the perceived geographic location of the Internet user. And for a time, as one step in assessing a user's geographic location, Google often used information from Digital Envoy's IP Address/Location database.[1]

In late 2001, Google debuted what is now known as its AdSense program. In AdSense, Google sends advertisements to those visiting third-party Internet sites who, while at those sites, request that Google conduct an Internet search for them. Again, Google uses a highly complex algorithm in searching its inventory for relevant advertisements to display, giving considerable weight to the search "query" supplied by the visitor on the site. As before, the visitor's geographic location may be one of the variables in the analysis, and Google often, for a time, used Digital Envoy's data to help assess that geographic location.

In early 2003, Google launched its AdSense for Content program. Once again, it used its complex, multi-variable analysis to target advertisements to those visiting third-party Internet sites. In this program, however, instead of searching for advertisements matching the visitor's interest based on the visitor's query, Google examines the content on the page displayed to the visitor. Thus, for example, if an individual is reading an article on baking at www.nytimes.com, Google will likely search for and display advertisements matching that interest, though again, the specific advertisement(s) selected will depend on a host of factors.

**This Litigation**

Earlier this year, amid a flurry of news articles about Google's impending public offering, Digital Envoy demanded higher license fees from Google. It claimed, for the first time, that Google was exceeding the scope of the license granted to it. Specifically, Digital Envoy claimed that by using Digital Envoy's data in its AdSense for Content program, Google was

---

[1] Google ceased use of Digital Envoy's data shortly after this lawsuit was filed.

breaching the parties' license agreement because AdSense for Content was allegedly not part of Google's "Business" of "producing and maintaining information search technology." *See* Digital Envoy's Amended Complaint at ¶¶ 39-42.

When Google refused what it perceived as extortionate demands, Digital Envoy filed suit claiming that Google's use of Digital Envoy's data in AdSense for Content constituted willful trade secret misappropriation. *Id.* Remarkably, although Digital Envoy received only a few thousand dollars a month in licensing fees from Google, it now claims entitlement to hundreds of millions of dollars, supposedly the amount by which Google was "unjustly enriched."

**Digital Envoy's Discovery to Google**

At various points in this action, Digital Envoy has demanded Google produce a massive amount of sensitive information bearing no relationship to the parties' dispute. It has, for example, demanded that Google identify each of the thousands of advertisers in its advertising programs, and state for each one, the dates and amounts of their payments to Google. Kramer Decl. at ¶ 5. It has also demanded that Google produce all agreements with any of the countless third party web sites with whom Google has agreements to display advertising, and all documents merely referring to any communication regarding those contracts. Kramer Decl. at ¶ 6.

The breadth of these requests suggests their purpose was simply to harass Google. This case has nothing to do with who Google's advertisers are, let alone how much each one of them has individually paid or when. Such information sheds no light on the meaning of the license agreement at issue or the manner in which Google used Digital Envoy's data. In short, Digital Envoy demanded irrelevant information. Accordingly, Google timely objected to these requests. *See* Kramer Decl. at ¶ 7. Digital Envoy has not challenged those objections, or even sought to meet and confer concerning them. *Id.*

**Digital Envoy's Third Party Subpoenas**

Late last week, Digital Envoy went well beyond the irrelevant discovery it had sought from Google concerning its partners. It served twenty-two nonparty subpoenas on some of

GOOGLE'S MOTION FOR PROTECTIVE ORDER    4    C:\NrPortbl\PALIB1\DAG\2591149_1.DOC
C 04 01497 RS

Google's largest business and advertising partners including Internet giants Ask Jeeves, Lycos and Expedia.[2] The subpoenas are staggeringly broad, seeking, *inter alia,*

*All* communications from Google on *any* subject;

*All* technical schematics of *any* Google product;

*All* contracts with Google on *any* matter;

*All* documents relating to *any* negotiations with Google on *any* matter.

Digital Envoy demands the nonparties produce the documents within two weeks.

The subpoenas are simply abusive. None of the information sought by these requests has any relevance to this case. Indeed, when Google demanded Digital Envoy explain the relevance of the information demanded by the subpoenas, Digital Envoy obtusely responded that it was "whether or not Google violated the licensing agreement." Digital Envoy did not say how. *See* Kramer Decl. at ¶ 8. When Google again demanded an explanation, Digital Envoy could state only that "it would respond to [the] relevance inquiry at an appropriate time." *Id.*

Regardless of the theory of relevance it may ultimately concoct, it is plain that Digital Envoy has made no attempt whatsoever to narrowly-tailor its third-party discovery as required by Fed R. Civ. P. 45(c)(1). For example, Google and its employees communicate with Ask Jeeves almost every day on subjects having nothing remotely to do geo-targeting, much less this case. Infospace, Lycos, Amazon and others are similarly situated. Declaration of Hilary Ware at ¶¶ 2-3. Moreover, virtually all of the irrelevant information Digital Envoy demands (e.g., technical schematics on any product, negotiations, contract terms, revenue sharing arrangements etc.), is highly sensitive strategic information that Digital Envoy has no right to see. *Id.*

More fundamentally, Digital Envoy made no effort to request that Google itself produce any of this information in the first place. It choose instead to burden third parties, who know nothing of the case, and force them to move to quash the subpoenas in courtrooms far removed from this one in both geography and familiarity with the issues. In sum, Digital Envoy seeks to

---

[2] A copy of one such subpoena is attached hereto as Exhibit A.

circumvent the discovery process, harass Google's partners, and disrupt Google's relationships, all to obtain irrelevant but highly confidential information.

## ARGUMENT

**THE COURT SHOULD ISSUE A PROTECTIVE ORDER REQUIRING DIGITAL ENVOY TO WITHDRAW THE SUBPOENAS AND TO SEEK GOOGLE'S INFORMATION FROM GOOGLE IN THE FIRST INSTANCE.**

Under Federal Rule 26, this Court is empowered to control discovery in this action and to make "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(b)(2)(i), 26(c). Such orders are appropriate where a party oversteps the legitimate bounds of discoverability and seeking information that is irrelevant, "or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Id.* That is the case with the subpoenas Digital Envoy has served.

The information that Digital Envoy seeks from nonparties is all information Google itself would be expected to have. Thus, even if Digital Envoy could show that its requests seek some modicum of relevant information (which it cannot), it should be made to seek that information from Google before burdening Google's nonparty partners.

*Joy Technologies* addresses this issue directly. *Joy Technologies, Inc. v. Flakt, Inc.*, 772 F. Supp. 842, 849 (D. Del. 1991). There, the court granted the defendant's motion for a protective order preventing the patentee from subpoenaing the defendant's customers. As the court explained:

> Joy has not convinced the Court that the same information it seeks from third parties is not available from [defendant]. Therefore, unless Joy can demonstrate that it has a specific need for evidence available only from third party customers of [defendant], the Court concludes that [defendant] and its customers are entitled to protection.

*Id.* at 849.[3]

---

[3] *See also Audiotext Comm. Network, Inc. v. U.S. Telecom Inc.*, No. M8-85, 1994 WL 9666 (S.D.N.Y. Jan. 12, 1994), at *1 (granting defendant's motion to quash subpoena served on defendant's law firm; "The documents in question quite plainly are within the possession, custody and control of defendant....That is to say, plaintiff could have sought such documents by

The Federal Circuit has likewise barred a party from seeking discovery from a nonparty before seeking it from its litigation adversary. *Haworth, Inc. v. Herman Miller, Inc.* 998 F.2d 975, 978 (Fed. Cir. 1993). As the court recognized, such an order is proper under Rule 26 of the Federal Rules:

> Fed. R. Civ. P. 26(b), relating to the general scope and limits of discovery, expressly acknowledges that a court may limit discovery if it determines that the discovery sought 'is obtainable from some other source that is more convenient, less burdensome, or less expensive.' Thus, this court has noted that the need for discovery in an ancillary proceeding 'is diminished when the information is available elsewhere.' (citation). Consistent with this authority, the district court could properly require [plaintiff] to seek discovery from its party opponent before burdening the nonparty Allsteel with this ancillary proceeding.

*Id.*; *see also Harris v. Wells,* No. B-89-391 (WWE), 1990 WL 150445, at *4 (D. Conn. Sept. 5, 1990); (granting party's motion for protective order concerning non-party subpoenas; "[D]iscovery should be stayed against these nonparties until it can be determined whether or not all the documents sought by the [defendant] can be obtained from the parties."); *Braxton v. Farmer's Ins. Group*, 209 F.R.D. 651, 653 (N.D. Ala. 2002) (granting defendant's motion to quash non-party subpoenas; such discovery cannot proceed "[w]ithout a showing by the plaintiff that the defendant's production of *all* such email messages and other correspondence it can locate is inadequate....") (emphasis in original).[4]

---

notice to defendant in the district where this litigation is pending and which is familiar with the underlying issues. . . . [T]he goal of 'just, speedy and inexpensive determination' of disputes can more easily be achieved if issues are presented when possible in the first instance to a court familiar with them, rather than to a court that has no knowledge of the underlying litigation and must undergo time-consuming acculturation simply to decide a discovery dispute in a case with which that court then will have nothing further to do.")

[4] As the *Joy Technologies, Harris* and numerous other cases make clear, Google has standing under Rule 26 to object to the subpoenas served on its business associates. *See* William Schwarzer, *Federal Civil Procedure Before Trial*, §11:2286 (2004)("[p]rior to the [third-party] deposition, the nonparty witness *or any party* may move...for a protective order under Rule 26(c)." (emphasis in original); *Fleet Bus. Credit Corp. v. Hill City Oil Co.*, No. 01-2417-GV, 2002 WL 1483879, at *2 (W.D. Tenn. June 26, 2002) ("Many district courts have acknowledged this aspect of [Rule 26] which allows a party to file a motion for protective order on behalf of a non-party."; granting plaintiff's motion for protective order with respect to a subpoena served on plaintiff's non-party business partners); *United States v. Operation Rescue*, 112 F. Supp. 2d 696, 705 (S.D. Ohio 1999) (holding that United States had standing to seek a protective order with respect to subpoenas served on non-party reproductive health clinics); *Hannah v. General Motors Corp.,* 969 F. Supp. 554, 558 (D. Az. 1996) (granting defendant's motion for a protective order quashing subpoena to non-party seeking settlement agreement between defendant and non-

This case is no different.[5] The Court should enter a protective order pursuant to Rule 26(b) and (c), requiring Digital Envoy to withdraw its subpoenas and to seek the information from Google before demanding it from nonparties. *See Food Lion,* 1996 WL 575946, at *3 ("In view of the court's grant of the protective order requested by [defendant], [plaintiff] shall immediately withdraw the subpoenas in issue in whatever jurisdiction they have been served."); *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (although Rule 45(c) authorizes the district court which issues a subpoena to rule on motions to quash it, "that rule does not alter the broader concept that the district court in which an action is pending has the right and responsibility to control the broad outline of discovery;" granting defendant's motion for protective order under Rule 26 requiring withdrawal of subpoena duces tecum).

## CONCLUSION

For the foregoing reasons, Defendant Google Inc. respectfully requests that the Court enter a protective order in the case, compelling Digital Envoy to withdraw the nonparty subpoenas it has

---

party); *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, No. 6:92CV00592, 1996 WL 575946, at *2 (M.D.N.C. Sept. 6, 1996) (granting defendant's motion for a protective order with respect to third-party subpoenas served by plaintiffs because the discovery threatened defendant's rights and imposed undue burden on nonparties).

[5] The need for a protective order is particularly pronounced here, as the documents Digital Envoy demands contain highly confidential information such as Google's technical schematics, contract terms, plans for future joint ventures, details on revenue sharing and more. Google has protected virtually all of the information that Digital Envoy seeks under confidentiality agreements with the nonparties. Google, rather than nonparties, should determine whether to produce such information or what conditions to require for its production. *See* Fed. R. Civ. P. 26(c)(7) (party may move for a protective order to prevent trade secrets from being revealed or to restrict circumstances of disclosure); *Food Lion*, 1996 WL 575946, at *2 (granting defendant's motion for a protective order with respect to third-party subpoenas served by plaintiffs because the discovery threatened defendant's right to protect secrecy of sources); *Vogue Instrument Corp. v. Lem Instruments Corp.*, 41 F.R.D. 346, 349 (S.D.N.Y. 1967) (party may move for protective order where its confidential information is subpoenaed from third party). It is no answer for Digital Envoy to claim that there is a protective order in this case. A protective order can be an important tool to safeguard proprietary information produced in litigation. It is not a license for an adversary to obtain and comb through a mountain of irrelevant information to satisfy its own curiosity. Digital Envoy should be made to show that the discovery it seeks is relevant before any of its representatives are given the right to access it.

1  served, and requiring it to seek documents it believes are relevant from Google in the first
2  instance, rather from nonparties.
3
4  Respectfully Submitted:
5  Dated: January 19, 2005                             WILSON SONSINI GOODRICH & ROSATI
                                                         Professional Corporation
6
7                                                    By:      /s/ David H. Kramer
                                                              David H. Kramer
8
                                                     Attorneys for Defendant/Counterclaimant
9                                                    Google Inc.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

GOOGLE'S MOTION FOR PROTECTIVE ORDER            9                C:\NrPortbl\PALIB1\DAG\2591149_1.DOC
C 04 01497 RS