Digital Envoy Inc., v. Google Inc.,
Doc. 59 Att. 3


# KRAMER DECLARATION EXHIBIT C

Dockets.Justia.com

Copy-
Note: Amendment sec. 2 modifies payment to $4500/mth
SS

digital™ envoy

THIS PRODUCT AND ELECTRONIC DATABASE EVALUATION AND LICENSE AGREEMENT (this "Agreement") is made and entered into as of the 27th day of November, 2000, by and between **Google, Inc.** ("Licensee") and **Digital Envoy Inc.** ("Licensor"):

**WITNESSETH:**

WHEREAS, Licensee is in the business of producing and maintaining information search technology (the "Business"); and

WHEREAS, Licensee desires to secure from Licensor the right to use Licensor's Personum product (the "Product") and certain geographic/IP address databases (the "Database Libraries") for purposes of utilizing the Product and the Database Libraries in the Business (the "Service");

NOW, THEREFORE, the parties hereto, intending to be legally bound, hereby agree as follows:

## Section 1
## DATABASE LIBRARIES

Licensor agrees to establish and maintain the Database Libraries in a form suitable for Licensee's use pursuant to this Agreement. It is agreed that the form suitable for Licensee's use shall be electronic with data stored in a server database licensed in conjunction with the Product.

## Section 2
## LICENSOR SUPPORT AND LICENSEE RESPONSIBILITIES

Licensor agrees to provide electronic updates of the Database Libraries to Licensee, no less frequent than monthly. The updates shall have the most recent geographic/IP address data compiled by Licensor. It is understood that Licensor shall have no responsibility to maintain or support Licensee's content serving network. The Database Libraries shall be treated as confidential and proprietary information of Licensor, and except as otherwise noted herein the receiving party shall not disclose such information, directly or indirectly, to any third party, without the consent of the disclosing party. Licensor shall provide Licensee with on-going 24/7 technical support.

Licensee shall be responsible for supplying a server that meets the following specifications:

a. Pentium III Xeon 550 MHz Linux server; dual processors preferred with a minimum of 512 Mb of RAM;
b. High speed Ethernet card or other network interface card that interfaces with Licensee's network;
c. Minimum of 10 gigabyte hard drive on a SCSI bus, RAIDing optional;
d. Providing an Internet routable IP address for the server.

Licensor shall be responsible for providing Licensee with information to configure its server to interface with Licensor's central servers and shall provide Licensee with a C, Java or Perl API that encompasses functions that allow Licensee to interface to Licensor's database. The parties agree to establish commercially reasonable security measures with respect to such interface. Licensor shall not be responsible for supporting Licensee's server(s) or other hardware.

**Section 3**

**GRANT OF RIGHTS**

Licensor hereby grants Licensee the limited, worldwide right to use in its Business (and not distribute to any third party in whole or in part) the Product and the Database Libraries. Such right shall be nonexclusive. Such rights shall be strictly limited to the right to:

1. Input, download, and store some or all of the Database Libraries in files and memory; and compile some or all of the Database Libraries at the Site. Licensee may also use the Database Libraries to develop indices, services, or applications that are provided to third parties (e.g., developing a country-specific index of web pages). In no event, however, are the Database Libraries to be sold, licensed, distributed, shared or otherwise given (in any form) to any other party or used outside of the site set forth herein.

2. **Access and use the Database Libraries in the Business only at the Site.** The "Site" shall be defined as Google's offices and data centers.

**Section 4**

**RESERVED RIGHTS**

Licensor reserves the right to use the Database Libraries for its own business purposes and reserves the right to distribute the Database Libraries to others in the course of its business as it sees fit. Nothing in this license shall in any way restrict Licensor's or its customers' use of its Database Libraries.

**Section 5**

**PAYMENT AND EVALUATION PERIOD**

5.1 Licensee shall pay Licensor a monthly fee of three thousand dollars ($3,000) per month during the term of this Agreement for access to Licensor's geographic tailoring Product and the Database Libraries. Notwithstanding the foregoing, Licensor and Licensee acknowledge that it may take a brief period of time for Licensee to evaluate whether the Product and the Database Libraries will be useful in Licensee's business. Hence, subject to the terms and conditions of this License, Licensee shall be permitted to use the Database Libraries and the Product for a period of fourteen (14) days, without

charge and may terminate this agreement during such fourteen (14) day period in the event that Licensee, in its reasonable discretion, determines that the Database Libraries and Product are not useful for Licensee's business needs.

5.2 Licensee shall pay to Licensor all amounts accruing with respect to charges billed in each calendar month within 30 days after the said payment is due. There shall be applied to any amounts not paid by Licensee when due a delinquency charge of Eighteen Percent (18%) per annum prorated for partial periods of the unpaid principal balance thereof, commencing to accrue the calendar day after such due date.

**Section 6**

**NO OTHER PAYMENT, ETC.**

Except as expressly provided in this Agreement, neither party shall be entitled to any payment, cost reimbursement, or other compensation from the other party in respect of its performance, and each party shall bear all its own expenses incurred in rendering performance.

**Section 7**

**PROPRIETARY PROTECTION**

7.1 As between the parties hereto, Licensor shall be the sole owner of the Database Libraries, including any patents, copyrights or trade secrets associated with the Database Libraries or the underlying applications.

7.1a As between the parties hereto, Licensee shall be the sole owner of any services or products developed using the Database Libraries (but excluding the Database Libraries), including any patents, copyrights or trade secrets associated with such services or products.

7.2 Licensee shall have no right to copy or reverse engineer the Database

Libraries and/or the Product. Except as set forth in this Agreement, in no event shall Licensee distribute, disclose or otherwise make available the Database Libraries, or any information contained therein to any other party whatsoever or at any other site other than the Site, without the express written consent of Licensor. Licensee shall hold all of Licensor's product information, including the results of any evaluation or testing thereof by Licensee in strict confidence and shall in no event share such information with any third parties.

7.3 Licensee shall cooperate with Licensor (at Licensor's expense) with regard to any copyright registration of the Database Libraries, including updated versions thereof, that Licensor may choose to obtain. Both parties agree to cooperate with each other with respect to any other action that may be necessary or appropriate for the protection of the Database Libraries under applicable intellectual property laws.

7.4 In the event that either party discovers an instance of possible infringement of Licensor's rights in the Database Libraries, such party shall promptly notify the other. The parties shall consult with one another with respect to the action that may be appropriate to stop or remedy such infringement.

7.5 If a third party claims that the exercise by Licensee of the rights granted herein, including the provision and use of the Product based on the Database Libraries in accordance with this Agreement, infringes any patent, copyright, trade secret, or other proprietary right of any third party, Licensor will defend Licensee against that claim at Licensor's expense and Licensor will indemnify and hold harmless Licensee from and against any associated loss, liability, damage, or expense (including costs of investigation, court costs, and reasonable attorney's fees). Licensee agrees to cooperate with Licensor to determine the most cost-effective and practical means for responding to and disposing of any such matter.

**Section 8**

**WARRANTIES; LIMITATIONS; DISCLAIMER**

Licensor warrants that the Product will materially conform with its written specifications during the term of this Agreement. It is mutually acknowledged that data entry, communication and storage are subject to a possibility of human and machine errors, omissions, delays, and losses, including inadvertent loss of data or damage to media, which may give rise to loss or damage. Neither party hereto undertakes any liability to the other for any such errors, omissions, delays, or losses. EXCEPT AS STATED ABOVE, LICENSOR MAKES AND LICENSEE RECEIVES NO WARRANTIES, EXPRESS, IMPLIED, STATUTORY, OR IN ANY OTHER PROVISION OF THIS AGREEMENT OR ANY OTHER COMMUNICATION, REGARDING THE PRODUCT, THE DATABASE LIBRARIES AND THE SERVICES, AND LICENSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NEITHER PARTY UNDERTAKES OR ACCEPTS ANY LIABILITY WHATSOEVER TO THE OTHER FOR ERRORS, OMISSIONS, DELAYS, INTERRUPTIONS, OR LOSSES UNLESS CAUSED BY THEIR WILLFUL MISCONDUCT. EXCEPT FOR INDEMNIFICATION UNDER SECTION 7.5, IN NO EVENT SHALL EITHER PARTY'S DAMAGES IN ANY LAWSUIT OR OTHER ACTION BROUGHT UNDER THIS AGREEMENT EXCEED THE AMOUNTS PAID BY LICENSEE HEREUNDER.

**Section 9**

**TERM**

This Agreement shall commence to be effective on the date first shown above and shall remain in effect for an initial term of six (6) months from the initial payment hereunder. The Agreement shall be renewable for an additional six (6) month term at the discretion of Licensee. In addition, either party may terminate the Agreement in the event that the other party commits a material breach of this Agreement, provided that the aggrieved party shall first notify the other party of the breach and give such other party at least ten (10) days to cure the breach.

**Section 10**

**FORCE MAJEURE**

Neither party shall be liable or be deemed to be in default for any delay or failure in performance or interruption resulting directly or indirectly from any cause or circumstance beyond its reasonable control, equipment or telecommunications failure, labor dispute, or failure of any third party to perform any agreement that adversely affects such party's ability to perform its obligations hereunder.

**Section 11**

**NOTICES**

All notices or other communications required to be given hereunder shall be in writing and delivered either personally or by mail, courier, or similar reliable means of dispatch and addressed as provided in this Agreement or as otherwise requested by the receiving party. Notices delivered personally shall be effective upon delivery and notices delivered by any other means shall be effective upon their receipt by the party to whom they are addressed.

**Section 12**

**GOVERNING LAW**

This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California as it applies to a contract made and performed in such state, excluding conflicts of laws principles. Any lawsuit regarding this Agreement shall be filed in the state or federal courts in Santa Clara County, California.

**Section 13**

**MODIFICATION AND WAIVERS**

This Agreement represents the entire understanding of the parties concerning its subject matter and may not be modified except by a writing signed by authorized representatives of both parties. A waiver by either party of its rights hereunder shall not be

binding unless contained in a writing signed by an authorized representative of the party waiving its rights. The nonenforcement or waiver of any provision of this Agreement on one occasion shall not constitute a waiver of such provision on any other occasion unless expressly so agreed in writing. It is agreed that no use of trade or other regular practice or method of dealing between the parties hereto shall be used to modify, interpret, supplement, or alter in any manner the terms of this Agreement.

**Section 14**
**ASSIGNMENT**

Neither party shall be entitled to assign its rights and obligations under this Agreement to any successor to the ownership, management, or operation of the facilities and services of such party relating to the subject of this Agreement, without the written approval of the other party.

**Section 15**
**NO IMPLIED RIGHTS OR OBLIGATIONS**

Nothing in this Agreement is intended to create any implied right to require, or any implied duty to provide, a level of effort or results (in general or in particular) not expressly stated herein, or to refrain from engaging in any other activity, including any activity involving the same or similar products or services with the same or similar customers or providers. During the term of this Agreement, Licensor may include Licensee's name in a listing of Licensor's customers. Before making any such listing available to the public, however, Licensor will submit the listing to Licensee to obtain written approval of its content and intended use, which approval shall not be unreasonably withheld or delayed. Except for the foregoing, Licensor must first obtain Licensee's written consent before making any public use of Licensee's trade name, trademarks, service marks, logos, or other distinctive brand features, such public use including but not being limited to press releases and other marketing efforts.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

**DIGITAL ENVOY INC.**

By: ____________________
Authorized Signature

Name: Rob Friedman
Title: Co-President

**GOOGLE**

By: ____________________
Authorized Signature

Name: URS HÖLZLE
Title: VP Engineering

digital™ envoy

**THIS FIRST AMENDMENT TO THE PRODUCT AND ELECTRONIC DATABASE EVALUATION AND LICENSE AGREEMENT** (this "Agreement") is made and entered into as of the 21 day of December, 2000, by and between **Google, Inc.** ("Licensee") and **Digital Envoy Inc.** ("Licensor"):

1. The second paragraph under "WITNESSETH:" shall be amended to read as follows:

"WHEREAS, Licensee desires to secure from Licensor the right to use Licensor's Personum product (the "Product") and certain geographic/IP address databases that provide information at a metropolitan area level (the "Database Libraries") for purposes of utilizing the Product and the Database Libraries in the Business (the "Service");"

2. The first sentence of Section 5.1 of the Agreement shall be amended to read as follows:

"Licensee shall pay Licensor a monthly fee of Four thousand Five Hundred dollars ($4,500) per month during the term of this Agreement for access to Licensor's geographic tailoring Product and Database Libraries"

3. The remainder of the Agreement shall continue in full force and effect.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

| DIGITAL ENVOY, INC. | GOOGLE, INC. |
|---|---|
| By: [signature] | By: [signature] |
| Authorized Signature | Authorized Signature |
| Name: Rob. Friedman | Name: Steve Schimmel |
| Title: Co-President | Title: Business Development Mgr |

digital envoy™

**THIS SECOND AMENDMENT TO THE PRODUCT AND ELECTRONIC DATABASE EVALUATION AND LICENSE AGREEMENT** (this "Agreement") is made and entered into as of the 17th day of July, 2001, by and between **Google, Inc.** ("Licensee") and **Digital Envoy Inc.** ("Licensor"):

1. Section 9 of the Agreement shall be amended to read as follows:

This Agreement shall commence to be effective on the date first shown above and shall remain in effect for an initial term of eighteen (18) months from the initial payment hereunder. ~~The Agreement shall be renewable for an additional six (6) month term at the discretion of Licensee.~~ In addition, either party may terminate the Agreement in the event that the other party commits a material breach of this Agreement, provided that the aggrieved party shall first notify the other party of the breach and give such other party at least ten (10) days to cure the breach.

2. The remainder of the Agreement shall continue in full force and effect as amended by the First Amendment to the Agreement previously executed by the parties and this Second Amendment.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

DIGITAL ENVOY, INC.

By: [signature]
Authorized Signature

Name: Rob Friedman
Title: EVP Corporate Development

GOOGLE, INC.

By: [signature]
Authorized Signature

Name: WAYNE ROSING
Title: VP, ENGINEERING

digital envoy™

**THIS RATIFICATION AGREEMENT** (this "Agreement") is made and entered into as of the 1st day of January, 2003 (the "Effective Date"), by and between **Google Technology Inc.** ("Licensee") and **Digital Envoy Inc.** ("Licensor"):

**Background**

1. Licensor and Licensee entered into a Product and Electronic Database Evaluation and License Agreement (the "Original Agreement") dated November 30, 2000, pursuant to which Licensee secured from Licensor the rights to use certain Products and Database Libraries (each as defined in that Original Agreement). Licensor and Licensee amended the Original Agreement with a First Amendment to the Product and Electronic Database Evaluation and License Agreement dated December 21, 2000 and a Second Amendment to the Product and Electronic Database Evaluation and License Agreement dated July 17, 2001 (collectively with the Original Agreement, the "Agreement").

2. The Agreement expired as of November 30, 2002. The parties now desire to reinstate the Agreement and the Agreement shall now continue in force as if the same had not expired; provided, however, that the parties desire to amend the Agreement with respect to certain terms, as set forth below.

3. The parties acknowledge that Licensee has continued to use the Product and the Database Libraries after the effective expiration of the Agreement and agree that Licensee paid to Licensor as full consideration for such continued usage a sum in the amount of US$4,500 in December 2002. The parties further acknowledge and agree that such usage by Licensee of the Product and the Database Libraries after the effective expiration of the Agreement shall be governed by and subject to the terms and conditions of the Agreement and Licensor hereby waives all claims that may now or hereafter be brought against Licensee in connection with such continued usage of the Product and the Database Libraries after the effective expiration of the Agreement.

**Terms**

1. The first sentence of Section 5.1 of the Agreement shall hereby be amended to read as follows: "From January 2003 through the remainder of the term of this Agreement (including any extensions thereof), Licensee shall pay Licensor a monthly fee of eight thousand dollars ($8,000) per month during the term of this Agreement for access to Licensor's geographic targeting product (with information provided down to the metro-area) and connection-type, ISP and domain data bases."

2. The first two sentences of Section 9 of the Agreement shall be replaced with the following:

"This Agreement shall commence to be effective on the date first shown above and shall remain in effect for an initial term of twenty-four (24) months thereafter (i.e. from November 30, 2000 through November 29, 2002) (the "Initial Term"). Thereafter, this Agreement shall automatically renew for an additional term commencing on November 30, 2002 and ending on January 31, 2005 (the "First



GOOGLE CONFIDENTIAL

Renewal Term" and collectively with the Initial Term, the "Term"). Licensee, in its discretion, shall have the option to extend the Agreement for an additional two (2) year term thereafter (the "Extended Term") by providing written notice to Licensor no later than thirty (30) days prior to the expiration of the Term. Additionally, prior to the expiration of the Extended Term, Licensee, in its discretion, shall have the option to extend the Agreement for an additional one (1) year term by providing written notice to Licensor no later than thirty (30) days prior to the expiration of the Extended Term."

3. The remainder of the Agreement shall continue in full force and effect.

This Agreement may be executed in counterparts, including facsimile counterparts.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

| DIGITAL ENVOY, INC. | GOOGLE TECHNOLOGY INC. |
| --- | --- |
| By: [signature] [Seal] | By: [signature] |
| Authorized Signature | Authorized Signature |
| Name: Rob Friedman | Name: David Drummond |
| Title: EVP Corp. Dev. | Title: VP Corporate Development |