1   DAVID H. KRAMER, State Bar No. 168452
    STEPHEN C. HOLMES, State Bar No. 200727
2   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
3   650 Page Mill Road
    Palo Alto, CA 94304-1050
4   Telephone:  (650) 493-9300
    Facsimile:   (650) 565-5100
5
6   Attorneys for Defendant/Counterclaimant
    Google Inc.

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9                        SAN JOSE DIVISION

10

11  DIGITAL ENVOY, INC.,                 )    CASE NO.:  C 04 01497 RS
                                         )
12          Plaintiff/Counterdefendant,  )    **ANSWER TO AMENDED**
                                         )    **COMPLAINT OF DIGITAL ENVOY**
13                                       )    **AND AMENDED COUNTERCLAIMS**
         v.                              )    **FOR BREACH OF CONTRACT,**
14                                       )    **DECLARATORY JUDGMENT, AND**
    GOOGLE INC.,                         )    **TRADE SECRET**
15                                       )    **MISAPPROPRIATION**
            Defendant/Counterclaimant.   )
16                                       )
                                         )
17                                       )    Jury Trial Requested
    _____)

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO AMENDED COMPLAINT AND
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

## ANSWER

Google Inc. ("Google") hereby responds to the Amended Complaint of Digital Envoy, Inc. ("Digital Envoy") below.  To the extent not specifically admitted, each and every allegation in the Amended Complaint is denied.

1.      Google denies the allegations contained in Paragraph 1 as they relate to Google or its conduct.  Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 and on that basis denies them.

2.      Google admits that it entered into a license agreement in November of 2000 with Digital Envoy, but denies Digital Envoy's characterization and interpretation of the license agreement.  Google admits that at all times it has properly complied with the terms of the Agreement between itself and Digital Envoy.  Google denies the remaining allegations of Paragraph 2.

3.      Google denies the allegations contained in Paragraph 3.

### Jurisdiction

4.      Google admits that Digital Envoy does business in Norcross, Georgia.  Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 4, and on that basis denies the allegations therein.

5.      Google admits the allegations contained in Paragraph 5.

6.      Google admits that jurisdiction over Digital Envoy's counterclaims in this Court is proper under 28 U.S.C. § 1332 based on diversity of citizenship. To the extent not expressly admitted, Google denies the allegations of Paragraph 6.

7.      Google admits that the district and division identified in Paragraph 7 is the proper venue for the present action and all related claims.  To the extent not expressly admitted, Google denies the allegations of Paragraph 7.

### Factual Allegations

8.      Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8, and on that basis denies the allegations therein.

9.     Google admits that there are over 4 billion possible addresses in the address space for IP ("Internet Protocol") version 4, sometimes referred to as IPv4. Google admits that numerical IP addresses do not, in and of themselves, convey geographical information. Google is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 9, and on that basis denies the allegations contained therein.

10.    Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10, and on that basis denies the allegations contained therein.

11.    Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11, and on that basis denies the allegations contained therein.

12.    Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12, and on that basis denies the allegations contained therein.

13.    Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13, and on that basis denies the allegations contained therein.

14.    Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14, and on that basis denies the allegations contained therein.

15.    Google is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15, and on that basis denies the allegations contained therein.

16.    Google is informed and believes, and on that basis admits, that some advertisers find attractive the ability to target advertising in one or more ways. Google is informed and believes, and on that basis admits, that the availability of advertising targeting options may affect ad performance and/or profitability. Google is without knowledge or information sufficient to

1    form a belief as to the truth of the remaining allegations contained in Paragraph 16, and on that

2    basis denies the allegations contained therein.

3        17.    Google is without knowledge or information sufficient to form a belief as to the

4    truth of the allegations contained in Paragraph 17, and on that basis denies the allegations

5    contained therein.

6        18.    Google admits that it was formed in approximately September 1998, that it

7    operates an Internet search engine, that it offers various search technologies, that it has made

8    excellent technological innovations, and that it has strong financial backing.    Google further

9    admits that one of its search technologies is an Internet search engine, and that it has, for years,

10   been one of the most popular Internet search engines.  Google is informed and believes, and on

11   that basis admits, that by mid-2000 it was, in at least some respect, operating the largest search

12   engine on the Internet.  To the extent not expressly admitted, Google denies the allegations of

13   Paragraph 18.

14       19.    Google admits the name "Google" is a play on the word "googol" which is 10 to

15   the 100th power.  Google admits that the company's mission is to make the world's information

16   universally accessible and useful.  To the extent not specifically admitted, Google denies the

17   allegations of Paragraph 19.

18       20.    Google admits that it was started by two Stanford University students with

19   innovative ideas, that the company's first office was attached to a garage of a friend, and that it

20   has so portrayed itself.  Google further admits that its Googleplex headquarters includes many

21   lava lamps, that there often are dogs of various sizes at the Googleplex, that it employs a chef

22   who formerly cooked for the Grateful Dead, and that there is room in its parking lot for roller

23   hockey games.  Google admits that the user interface for its Internet search engine is available in

24   many languages, including the Klingon language.  To the extent not specifically admitted,

25   Google denies the allegations of Paragraph 20.

26       21.    Google admits it is backed by funding from leading venture capital firms, and has

27   an outstanding management team, board of directors, and technical advisory council.  Google

28   further admits its revenues for 2003 were nearly $1 billion, the majority of which was obtained

ANSWER TO AMENDED COMPLAINT AND                    -4-
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

1    through sales of advertising.  Google lacks information sufficient to form a belief as to the

2    remaining allegations of Paragraph 21, and on that basis denies those allegations.

3        22.    Google admits that the company overall has been profitable since fiscal year

4    2001.  Google admits that one source of its revenues has been and continues to be marketing

5    search technology to other companies.  Google further admits that it has, for several years,

6    displayed advertisements on certain pages displaying results to users' search queries, and that is

7    has earned revenue through that practice. To the extent not specifically admitted, Google denies

8    the allegations of Paragraph 22.

9        23.    Google admits that part of Google's advertising program known as AdWords

10   permits advertisers to the display advertisements on pages containing the results to users' search

11   queries.  To the extent not specifically admitted, Google denies the allegations of Paragraph 23.

12       24.    Google admits it believes that technology that estimates the physical location of

13   users can play a role in providing relevant advertisements to users of its services depending

14   upon, among other things, the accuracy of the technology and the nature of the advertisement.

15   Google further admits that it was, for a number of reasons, interested in technology that could

16   provide Google with an educated guess regarding the physical location of users of its services.

17   To the extent not specifically admitted, Google denies the allegations of Paragraph 24.

18       25.    Google admits that it negotiated with Digital Envoy in November 2000 over an

19   agreement allowing Google to make use of certain Digital Envoy technology.  To the extent not

20   specifically admitted, Google denies the allegations of Paragraph 25.

21       26.    Google admits the allegation contained in Paragraph 26.

22       27.    Google admits under the parties' agreement dated November 30, 2000 (the

23   "Agreement"), Google was licensed to use Digital Envoy's technology as it saw fit in its

24   "Business", and that the license was non-exclusive.  Google denies the interpretation or

25   characterization based on Digital Envoy's selective paraphrasing and highlighting of the

26   language of the Agreement.   To the extent not specifically admitted, Google denies the

27   allegations of Paragraph 27.

28

ANSWER TO AMENDED COMPLAINT AND                    -5-
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

28.    Google admits that Section 7.1 of the Agreement states:  "As between the parties hereto, Licensor shall be the sole owner of the Database Libraries, including any patents copyrights, or trade secrets associated with the Database Libraries or the underlying applications."  Google further admits that Section 7.2 of the Agreement states: "Licensee shall hold all of Licensor's product information, including the results of any evaluation or testing thereof by Licensee in strict confidence and shall in no event share such information with any third parties."   To the extent not specifically admitted, Google denies the allegations of Paragraph 28.

29.    Google admits that paragraph 7.4 of the Agreement states: "In the event either party discovers an instance of possible infringement of Licensor's rights in the Database Libraries, such party shall promptly notify the other.  The parties shall consult with one another with respect to the action that may be appropriate to stop or remedy such infringement."  To the extent not specifically admitted, Google denies the allegations of Paragraph 29.

30.    Google admits that it originally paid Digital Envoy $3,000 per month under the Agreement, with payments escalating to $8,000 per month as a result of amendments.  To the extent not specifically admitted, Google denies the allegations of Paragraph 30.

31.    Google admits that it has used Digital Envoy's technology to attempt to ascertain the physical geographic location of users for purposes of improving the targeting of advertisements to users.  Google further admits it has promoted the potential for targeting generally as a feature of its AdWords program.  To the extent not specifically admitted, Google denies the allegations of Paragraph 31.

32.    Google admits that its advertising program for advertisers is known as "AdWords."  Google further admits it has offered a "Premium Sponsorship" program for certain advertisers, and that it continues to offer certain services designated as "premium" services for certain advertisers.  Google further admits that participants in the AdWords program pay for advertising on a "cost-per-click basis," meaning that an advertiser generally pays Google based upon the number of times users click on its advertisements displayed in the AdWords program. To the extent not specifically admitted, Google denies the allegations of Paragraph 32.

33.     Google admits that at least some advertisers participating in the AdWords program are offered the option of potentially targeting their advertisements to particular geographic areas.   To the extent not specifically admitted, Google denies the allegations of Paragraph 33.

34.     Google avers that the allegations of Paragraph 34 are vague, ambiguous and unintelligible.   Google thus lacks information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 and on that basis denies those allegations.

35.     Google admits that it was not placing third party advertisements on the Internet web sites of other companies in November 2000.   Google further admits that it was then and is now in the business of producing and maintaining information search technology.   Google denies the remaining allegations of Paragraph 35.

36.     Google admits that by mid-2001, it had signed up more than 350 Premium Sponsorship advertisers, and thousands of AdWords advertisers.   Google is informed and believes, and on that basis admits, that at that time, the clickthrough rates on Google advertisements were four to five times higher than clickthrough rates for then-traditional Internet banner ads.   Google is without information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36, and on that basis denies those allegations.

37.     Google admits that by August 2002, Google was placing AdWords advertisements on third party web sites.   To the extent not specifically admitted, Google denies the allegations of Paragraph 37.

38.     Google admits that in approximately February 2003, it announced an advertising program under which it would search the content of third party web pages and advertisements and match the two based on its assessment of an advertisement's relevance to a web page's content.   To the extent not specifically admitted, Google denies the allegations of Paragraph 38.

39.     Google admits that in June 2003 it stated that the Google AdSense contextual advertising program was designed to allow website publishers to "maximize the revenue potential of their websites" by providing "ads that are highly relevant to their content."   Google admits that it shares revenues generated from ads placed on a publisher's website with that

1    publisher, typically based on some measure of the success of the advertisements on that

2    publisher's website.  Google admits that as of June 2003, the website publishers using Google

3    AdSense contextual ads included ABC.com, HowStuffWorks, Internet Broadcasting Systems,

4    Inc., Lycos Europe, New York Post Online Edition, Reed Business Information, and U.S.News

5    & World Report.  Google admits that it sometimes collectively refers to the sites who publish

6    targeted AdWords ads on their web pages as the "Google ad network."  To the extent not

7    specifically admitted, Google denies the allegations of Paragraph 39.

8        40.    Google denies the allegations contained in Paragraph 40.

9        41.    Google admits that its revenues for the 2003 fiscal year were more than double its

10   revenues for the 2002 fiscal year, and that the AdSense program was an important part of that

11   success.  To the extent not specifically admitted, Google denies the allegations of Paragraph 41.

12       42.    Google denies it has made any unauthorized use of Digital Envoy's technology,

13   and otherwise denies the allegations of Paragraph 42.

14       43.    Google admits that Digital Envoy notified Google in February of 2004 that

15   Digital Envoy believed Google was exceeding the scope of its license with Digital Envoy.

16   Google denies that it has exceeded the scope of its license, and to the extent not specifically

17   admitted, Google denies the allegations of Paragraph 43.

18                               **Count I**

19       44.    Google incorporates its responses contained in paragraphs 1 through 43 as if fully

20   stated herein.

21       45.    Google is without knowledge or information sufficient to form a belief as to the

22   truth of the allegations contained in Paragraph 45, and on that basis denies the allegations

23   contained therein.

24       46.    Google denies the allegations contained in Paragraph 46.

25       47.    Google denies the allegations contained in Paragraph 47.

26       48.    Google denies the allegations contained in Paragraph 48.

27       49.    Google denies the allegations contained in Paragraph 49.

28       50.    Google denies the allegations contained in Paragraph 50.

ANSWER TO AMENDED COMPLAINT AND                    -8-
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

1

**Count II**

2         51.    Google incorporates its responses contained in paragraphs 1 through 50 as if fully

3  stated herein.

4         52.    Google denies the allegations contained in Paragraph 52.

5         53.    Google denies the allegations contained in Paragraph 53.

6         54.    Google denies the allegations contained in Paragraph 54.

7         55.    Google denies the allegations contained in Paragraph 55.

8

**Count III**

9         56.    Google incorporates its responses contained in Paragraphs 1 through 55 as if fully

10  stated herein.

11        57.    Google denies the allegations contained in Paragraph 57.

12        58.    Google denies the allegations contained in Paragraph 58.

13        59.    Google denies the allegations contained in Paragraph 59.

14        60.    Google denies the allegations contained in Paragraph 60.

15

**Count IV**

16        61.    Google incorporates its responses contained in Paragraphs 1 through 60 as if fully

17  stated herein.

18        62.    Google denies the allegations contained in Paragraph 62.

19        63.    Google denies the allegations contained in Paragraph 63.

20        64.    Google denies the allegations contained in Paragraph 64.

21        65.    Google denies the allegations contained in Paragraph 65.

22

**Count V**

23        66.    Google incorporates its responses contained in Paragraphs 1 through 65 as if fully

24  stated herein.

25        67.    Google denies the allegations contained in Paragraph 67.

26        68.    Google denies the allegations contained in Paragraph 68.

27        69.    Google denies the allegations contained in Paragraph 69.

28        70.    Google denies the allegations contained in Paragraph 70.

1

**Count VI**

2      71.      Google incorporates its responses contained in Paragraphs 1 through 70 as if fully

3   stated herein.

4      72.      Google admits that on November 30, 2000, Google and Digital Envoy entered

5   into the Agreement under which, among other things, Google pays a monthly fee to Digital

6   Envoy.  To the extent not specifically admitted, Google denies the allegations of Paragraph 72.

7      73.      Google denies the allegations contained in Paragraph 73.

8      74.      Google denies the allegations contained in Paragraph 74.

9      75.      Google denies the allegations contained in Paragraph 75.

10

11                            **AFFIRMATIVE DEFENSES**

12      Google alleges the following separate affirmative defenses to Digital Envoy's claims, and

13   in doing so, does not assume the burden to establish any fact or proposition necessary to that

14   affirmative defense where that burden is properly imposed on Digital Envoy.

15

16                            **First Affirmative Defense**

17                              (Failure to State a Claim)

18      The Amended Complaint fails to state a claim upon which relief may be granted.

19                            **Second Affirmative Defense**

20                              (Privilege of Competition)

21      Digital Envoy is barred from recovery against Google because, all, or part, of the alleged

22   actions or inactions taken by Google were taken under the privilege of competition and cannot

23   serve as a basis for imposing liability against Google.

24                            **Third Affirmative Defense**

25                                    (Consent)

26      Digital Envoy is barred from recovery against Google because, all, or part, of the alleged

27   actions or inactions taken by Google were taken with Digital Envoy's consent.

28

ANSWER TO AMENDED COMPLAINT AND                    -10-
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

**Fourth Affirmative Defense**

(Laches)

Digital Envoy is barred from recovery against Google by reason of the doctrine of laches.

**Fifth Affirmative Defense**

(Unclean Hands)

As a result of the acts and omissions in the matters relevant to the Amended Complaint, Digital Envoy has unclean hands and is therefore barred from asserting any claims against Google.

**Sixth Affirmative Defense**

(Waiver)

Digital Envoy has voluntarily waived, relinquished and/or abandoned all claims for relief against Google.

**Seventh Affirmative Defense**

(Estoppel)

Digital Envoy is barred from recovery against Google by reason of the doctrine of estoppel.

**Eighth Affirmative Defense**

(License)

Digital Envoy is barred from recovery against Google because, all, or part, of the alleged actions or inactions taken by Google were licensed and authorized by Digital Envoy.

**Ninth Affirmative Defense**

(Good Faith)

Digital Envoy's claims are barred, in whole or in part, because Google's actions were based on good, sufficient, and legal cause, upon reasonable grounds for belief in their justification, and were taken in good faith and without malice or ill will for Digital Envoy.

ANSWER TO AMENDED COMPLAINT AND
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

**Tenth Affirmative Defense**

(Preemption)

Digital Envoy's claims are preempted, in whole or in part, by the USTA and California's enactment thereof.

**Eleventh Affirmative Defense**

(Contractual Provisions)

Digital Envoy's claims are barred, in whole or in part, by the provisions of the agreement between the parties.

**Twelfth Affirmative Defense**

(Statute of Limitations)

Digital Envoy's claims are barred, in whole or in part, by the applicable statutes of limitations.

**Thirteenth Affirmative Defense**

(Contractual Provisions)

To the extent Digital Envoy sustained any damages, which Google denies, Digital Envoy's recovery of damages is barred, in whole or in part, by the provisions of the agreement between the parties.

**Fourteenth Affirmative Defense**

(Failure to Mitigate)

To the extent Digital Envoy sustained any damages, which Google denies, Digital Envoy is barred from recovering any damages because it has and failed, and continues to fail, to make reasonable efforts to mitigate such damages, which would have prevented such alleged damages, if any.

**Fifteenth Affirmative Defense**

(Contributory Fault)

To the extent Digital Envoy sustained any damages, which Google denies, such damages were caused, in whole or in part, by Digital Envoy's contributory fault which bars or limits Digital Envoy's recovery.

ANSWER TO AMENDED COMPLAINT AND
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

-12-

1

**Additional Affirmative Defenses**

2          Google may have additional, as yet unidentified defenses available.  Google reserves the

3  right to assert additional defenses that are revealed through further investigation or through

4  discovery in a timely fashion after the facts to support such defenses become known to it.

5

6                                    **<u>PRAYER</u>**

7          WHEREFORE, Google prays that

8          1.      Digital Envoy take nothing by the Amended Complaint;

9          2.      That Google be awarded judgment on Digital Envoy's Amended Complaint;

10         3.      That Google be awarded its costs of suit including reasonable attorneys' fees; and

11         4.      That the Court award Google any such other and further relief as the Court deems

12                 just and proper.

13

14  //

15

16

17

18

19  //

20

21

22

23

24  //

25

26

27

28  //

Answer to Amended Complaint And                    -13-
Amended Counterclaims for Breach of
Contract, Declaratory Judgment and
Trade Secret Misappropriation

1

## **AMENDED COUNTERCLAIMS**

2

3

### **Introduction**

4      1.      By this Counterclaim, Google Inc. ("Google") seeks declaratory relief in a dispute

5  with Digital Envoy, Inc. ("Digital Envoy") regarding a contract between the parties.  Google

6  further seeks redress for Digital Envoy's breach of the forum selection clause in its contract with

7  Google.   Despite a provision that expressly requires the parties to file any lawsuit regarding the

8  contract in Santa Clara County, California, Digital Envoy has sued Google in Georgia on claims

9  regarding the contract.  Google further seeks redress for Digital Envoy's breaches of its contract

10  with Google and breaches of a non-disclosure agreement between the parties that occurred when

11  Digital Envoy disclosed confidential information of Google and other information about Google

12  and its business to third parties.

13

### **The Parties**

14      2.      Defendant/Counterclaimant Google Inc. is a Delaware corporation with its

15  principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.

16  Google is the surviving corporation of a merger between Google Technology, Inc., a California

17  corporation (formerly known as Google, Inc., a California corporation) and Google, Inc., a

18  Delaware corporation.

19      3.      Plaintiff/Counterdefendant Digital Envoy, Inc. is a Georgia corporation with its

20  principal place of business at 250 Scientific Drive, Suite 800, Norcross, Georgia 30092.

21

### **Jurisdiction**

22      4.      This action is between citizens of different states and the amount in controversy

23  exceeds $75,000, thus there is diversity jurisdiction under 28 U.S.C. section 1332.

24

### **Venue**

25      5.      Venue is proper in the Northern District of California, San Jose Division, under

26  28 U.S.C. section 1391 because a substantial part of the events or omissions that give rise to the

27  claims and controversy occurred in the Northern District of California, San Jose Division, and in

28  addition, a substantial part of the material that is a subject of the claims and controversy is

1   situated in the Northern District of California, San Jose Division.  Moreover, venue is proper in

2   the Northern District of California, San Jose Division, because the forum selection clause in the

3   parties' November 30, 2000 Product and Electronic Database Evaluation and License Agreement

4   – the contract at the heart of this case – states in Section 12 that "[a]ny lawsuit regarding this

5   Agreement shall be filed in the state or federal courts in Santa Clara County, California."  Venue

6   is also proper in this district because the forum selection clause in the parties' November 29,

7   2000 Mutual Non-Disclosure Agreement states in Section 14 that "[t]he exclusive venue for any

8   dispute relating to this Agreement shall be in the state or federal courts within Santa Clara

9   County, California."

10

11                                           **Factual Allegations**

12          6.      Google is the world's leading Internet search company.  It provides search-related

13   services in a variety of different Internet-based applications.

14          7.      Digital Envoy, Inc. is one of several companies offering technology that allows

15   one to ascertain certain geographic information from a computer's Internet Protocol (IP) address.

16   This "geo-targeting" capability can be used to tailor the content of websites based upon a

17   visitor's assumed location.

18          8.      On or about November 30, 2000, Google and Digital Envoy entered into a license

19   agreement that gave Google contractual rights to use Digital Envoy's "Personum product" and

20   "certain geographic/IP address databases" (the "licensed technology").  A copy of this contract

21   (with its two amendments and subsequent ratification) is attached as Exhibit A (the

22   "Agreement").

23          9.      Under the Agreement, Google was granted the right to use the licensed

24   technology in its "Business" at its "offices and data centers."  In particular, the Agreement

25   expressly permits Google to "use the Database Libraries to develop indices, services, or

26   applications that are provided to third parties."  In exchange for these rights, Google initially

27   agreed to make monthly payments to Digital Envoy of $3000, and as a result of amendments

28   raised the payment to $8000 per month.

ANSWER TO AMENDED COMPLAINT AND                      -15-
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

10.    The Agreement is governed by California law and requires that any lawsuit regarding the Agreement be filed in the state or federal courts of Santa Clara County, California.

11.    The Agreement further provides in Section 15 that "[d]uring the term of this Agreement, Licensor may include Licensee's name in a listing of customers.  Before making any such listing available to the public, however, Licensor will submit the listing to Licensee to obtain written approval of its content and intended use, which approval shall not be unreasonably withheld or delayed.  Except for the foregoing, Licensor must first obtain Licensee's written consent before making any public use of Licensee's trade name, trademarks, service marks, logos, or other distinctive brand features, such public use including but not being limited to press releases and other marketing efforts."

12.    Under Section 15 Digital Envoy is prohibited from using, among other things, Google's name, logo and distinctive brand features in its marketing efforts without Google's written consent.

13.    Just before signing the Agreement, on or about November 29, 2000, Google and Digital Envoy entered into a "Mutual Non-Disclosure Agreement" (the "NDA") that protected Google's confidential information disclosed to Digital Envoy.  A copy of the NDA is attached as Exhibit B.  The NDA is still currently in force.

14.    Under the NDA, Digital Envoy is under a duty to protect confidential information disclosed to it by Google and to prevent any communication of such confidential information to any third party.

**The Present Dispute**

15.    Google has fully performed under the parties' Agreement.  Further, Google has used Digital Envoy's technology only within the scope of the license granted by Digital Envoy under the Agreement.

16.    In February 2004 Digital Envoy contacted Google and demanded that Google increase its payments to Digital Envoy.  Digital Envoy eventually explained that after signing its contract with Google for payments of $8,000 a month, it had separately licensed its technology to a major partner for $35,000 a month and had promised its partner that the partner would

ANSWER TO AMENDED COMPLAINT AND               -16-
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

receive the best price Digital Envoy offered to any customer for a similar deal. Digital Envoy in fact demanded that Google pay as least as much as the $35,000 per month paid by this partner, and indicated that in no event would it accept any counteroffer that did not at least match the $35,000 per month paid by the partner.

17.    As a pretext for its demand of increased payment, Digital Envoy claimed that Google was using the licensed technology beyond the activities permitted by the Agreement. Specifically, it claimed that Google's use of the technology in connection with Google's AdSense program, was not permitted by the Agreement. It made this claim for the first time in February 2004, even though the program had been in existence for many months, and Digital Envoy had long been aware of it.

18.    Digital Envoy's claim was false. To the extent Google used Digital Envoy's technology in its AdSense program, such use was authorized by the Agreement. Google thus rejected Digital Envoy's demands for increased payment.

19.    On March 29, 2004, Digital Envoy filed a lawsuit against Google in which its principal contention is that Google's use of Digital Envoy's technology in the AdSense program was not authorized by the parties' Agreement. Despite the express forum selection clause in the Agreement calling for any lawsuit "regarding" the Agreement to be filed in Santa Clara County, California, Digital Envoy improperly filed the suit in Georgia. Digital Envoy thus breached the parties' Agreement and has and will put Google to needless expense of responding to the suit in Georgia.

20.    In the course of discovery in this lawsuit, Google has discovered that Digital Envoy has breached the NDA. In particular, Digital Envoy disclosed confidential information about Google's uses of Digital Envoy's data to third parties without Google's consent in the course of Digital Envoy's discussions with those third parties. In about 2003, Digital Envoy disclosed to various Google competitors information concerning the manner in which Google used Digital Envoy's data. Google had expressly told Digital Envoy on several occasions that such information was confidential, that it provided Google with a competitive advantage, and that Digital Envoy did not have Google's permission to disclose it to third parties.

21.     Google's business of producing and maintaining information search technology is highly competitive.  The uses that Google made of Digital Envoy's data in Google's business of producing and maintaining information search technology constituted information that derived independent economic value from not being generally known to the public or to other persons who could obtain economic value from its disclosure or use.  Google's competitors, who include Microsoft, Looksmart and Yahoo, among others, would find it useful to know how Google used Digital Envoy's data and the terms of the Google/Digital Envoy relationship in order to offer better competing services or improve their own businesses.

22.     Google took efforts that were reasonable under the circumstances to maintain the secrecy of the information.  Google entered the NDA with Digital Envoy to prevent disclosure of information relating to Google's uses of Digital Envoy's data and expressly told Digital Envoy that Digital Envoy did not have permission to disclose such information to third parties.

23.     Digital Envoy acquired confidential information about Google's uses of Digital Envoy's technology in the course of its relationship with Google.  Digital Envoy was aware that it acquired this information under circumstances requiring it to keep the information confidential. Digital Envoy specifically asked Google for permission to disclose this information to third parties, but Google refused to give such permission.

24.     Digital Envoy benefited substantially from its disclosure of Google's uses of Digital Envoy's data.  Digital Envoy was better able to market its services and technology as a result of its disclosures of Google's confidential information.  Indeed, Digital Envoy included the information in its marketing presentations for precisely this reason.

25.     Digital Envoy's use and disclosure in its marketing efforts and on marketing materials of information about Google's uses of Digital Envoy's data also constitute breaches of Section 15 of the Agreement which required Digital Envoy to obtain Google's written consent before making any such public uses of such information.

### **First Cause of Action – Breach of Contract**

26.     Google incorporates all of the allegations contains in Paragraphs 1-25 of this Counterclaim.

27.    Google and Digital Envoy entered the Agreement on or about November 30, 2000.

28.    Google has performed all obligations required of Google under the Agreement, except for those obligations that have been excused or waived.

29.    Digital Envoy breached Section 12 of the Agreement, the forum selection clause, by filing a lawsuit regarding the parties' Agreement against Google in Georgia.

30.    Digital Envoy breached Section 15 of the Agreement by making public use of information about Google's use of Digital Envoy's data, among other things, in Digital Envoy's marketing efforts without Google's prior written consent.

31.    As a proximate cause of Digital Envoy's breach of contract, Google has been damaged in an amount to be determined at trial.

### Second Cause of Action – Declaratory Judgment

32.    Google incorporates each of the allegations contained in Paragraphs 1-31 of this Counterclaim.

33.    There is an actual and justiciable controversy between the parties concerning the scope of Google's license under the Agreement to use Digital Envoy's technology.   Digital Envoy has demanded money from Google for actions allegedly outside the scope of the license. Google denies any unlicensed activity, and denies that any further money is owned to Digital Envoy.  Further, on March 29, 2004, Digital Envoy filed a lawsuit against Google in the United States District Court for the Northern District of Georgia, Atlanta Division, alleging that Google had exceeded the scope of the license granted by the Agreement.

34.    Google therefore seeks a declaration that it has not exceeded the scope of its license with Digital Envoy, that it has not otherwise breached the Agreement with Digital Envoy and that it has not misused any supposed intellectual property licensed to Google by Digital Envoy under the Agreement.

### Third Cause of Action – Breach of Non-Disclosure Agreement

35.    Google incorporates each of the allegations contained in Paragraphs 1-34 of this Counterclaim.

1    36.    Google and Digital Envoy entered the NDA on or about November 29, 2000.

2    37.    Google has performed all obligations required of Google under the NDA, except

3    for those obligations that have been excused or waived.

4    38.    Digital Envoy has breached Sections 4 and 5 of the NDA by disclosing details of

5    Google's use of Digital Envoy's data to third parties without Google's consent.

6    39.    As a proximate cause of Digital Envoy's breach of the NDA, Google has been

7    damaged in an amount to be determined at trial.

8    **Fourth Cause of Action – Trade Secret Misappropriation**

9    40.    Google incorporates each of the allegations contained in Paragraphs 1-39 of this

10   Counterclaim.

11   41.    Information relating to Google's uses of Digital Envoy's data ("Google's

12   Confidential Information") is the confidential and proprietary information of Google and

13   constitutes Google's trade secrets as that term is defined in the Uniform Trade Secrets Act,

14   California Civil Code §3426.1(d).

15   42.    Google's Confidential Information is not generally known to the public or to other

16   persons who could obtain economic value from its disclosure or use.  For this reason, Google's

17   Confidential Information has independent economic value to Google and to Google's

18   competitors.

19   43.    Google has taken reasonable measures to protect and to prevent the unauthorized

20   disclosure or use of its Confidential Information, including but not limited to:

21          (a)    entering an NDA with Digital Envoy and similar confidentiality
22                 agreements with employees;

23          (b)    expressly prohibiting Digital Envoy from disclosing such information to
24                 third parties that compete with Google

25          (c)    maintaining physical security on its campus.

26   44.    Digital Envoy has misappropriated Google's trade secrets by disclosing them or

27   parts of them to Google's competitors, when it knew or should have known that it acquired such

28   information under circumstances giving rise to a duty to maintain its secrecy and limit its use.

ANSWER TO AMENDED COMPLAINT AND                    -20-
AMENDED COUNTERCLAIMS FOR BREACH OF
CONTRACT, DECLARATORY JUDGMENT AND
TRADE SECRET MISAPPROPRIATION

45. Digital Envoy's conduct in wrongfully using and disclosing Google's Confidential Information, with knowledge that Google had not consented to such use or disclosure, violates the Uniform Trade Secrets Act, California Civil Code §3426, *et seq.*

46. As a direct and proximate result of Digital Envoy's misappropriation, disclosure and misuse of Google's Confidential Information, Google has been damaged, and Digital Envoy has been and continues to be unjustly enriched in amounts that have not yet been ascertained. When the precise amount of damages is ascertained, Google reserves its right to seek leave of court to amend this counterclaim and insert that amount as damages.

47. As a result of Digital Envoy's unlawful, unfair and/or fraudulent acts, Google has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law.

48. In misappropriating Google's trade secrets, Digital Envoy has acted willfully and/or with malice, entitling Google to an award of exemplary damages and/or attorney's fees pursuant to California Civil Code §§ 3426.3 and 3426.4.

## **PRAYER**

WHEREFORE, Google prays for a judgment:

A. Declaring that Google has not exceeded the scope of its license with Digital Envoy under the Agreement, that Google has not otherwise breached the Agreement and that Google has not misused any intellectual property licensed by Digital Envoy to Google under the Agreement;

B. Finding Digital Envoy in breach of Sections 12 and 15 of the Agreement and awarding Google damages as proven for that breach along with applicable interest;

C. Finding Digital Envoy in breach of Sections 4 and 5 of the NDA and awarding Google damages as proven for those breaches along with applicable interest;

D. Awarding Google restitution of any monies enjoyed, received or saved as a result of Digital Envoy's unjust enrichment;

E. Awarding Google exemplary damages according to proof;

F. Awarding Google its costs of suit, including reasonable attorneys' fees; and

1    G.    Awarding Google any other relief the Court may deem proper.

2

3                          **DEMAND FOR JURY TRIAL**

4    Google demands a jury trial on all claims so triable.

5

6

7    Dated:  January 25, 2005                    WILSON SONSINI GOODRICH & ROSATI
                                                  Professional Corporation
8

9

10                                               By: _____/s/ David H. Kramer_____
                                                      David H. Kramer
11
                                                 Attorneys for Defendant and Counterclaimant
12                                               Google Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
        ANSWER TO AMENDED COMPLAINT AND          -22-
        AMENDED COUNTERCLAIMS FOR BREACH OF
        CONTRACT, DECLARATORY JUDGMENT AND
        TRADE SECRET MISAPPROPRIATION