1  P. CRAIG CARDON, Cal. Bar No. 168646
   BRIAN R. BLACKMAN, Cal. Bar No. 196996
2  KENDALL M. BURTON, Cal. Bar No. 228720
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3  Four Embarcadero Center, 17th Floor
   San Francisco, California  94111-4106
4  Telephone:    415-434-9100
   Facsimile:    415-434-3947
5

6  TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
   LUKE ANDERSON (Admitted *Pro Hac Vice*)
7  MCGUIRE WOODS, L.L.P
   1170 Peachtree Street, N.E., Suite 2100
8  Atlanta, Georgia 30309
   Telephone: 404.443.5500
9  Facsimile: 404.443.5751

10 Attorneys for DIGITAL ENVOY, INC.

11             UNITED STATES DISTRICT COURT

12           NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14 DIGITAL ENVOY, INC.,                    Case No. C 04 01497 RS

15        Plaintiff/Counter defendant,

16    v.                                   [REDACTED] **DIGITAL ENVOY, INC.'S
                                           MEMORANDUM IN OPPOSITION TO
                                           GOOGLE, INC.'S MOTION FOR
17 GOOGLE, INC.,                           PARTIAL SUMMARY JUDGMENT ON
                                           COUNTS II, III, IV AND V OF THE
18        Defendant/Counterclaimant.       AMENDED COMPLAINT**

19                                         **Date:       March 16, 2005**
                                           **Time:       9:30 a.m.**
20                                         **Courtroom:   4, 5th Floor**

21                                         **The Honorable Richard Seeborg**

22                                         **(REDACTED VERSION)**

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
                                                          MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................ 1

II. STATEMENT OF FACTS (i.e. Response to Google's "Background" Section) ........................ 2

    A.    The license agreement was limited. ............................................................... 2

    B.    The parole evidence further establishes conclusively the limitations on Google's grant of rights. ........................................................................... 3

    C.    The use at issue was neither discussed nor even contemplated at the time of the Agreement. ............................................................................................ 6

    D.    For years, Google used Digital Envoy's data in its syndicated advertising program (AdSense) without Digital Envoy's knowledge. ......................................... 7

    E.    Each of Digital Envoy's claims is distinct, although all are predicated on Google's conduct in the course of its use of Digital Envoy's technology or data in excess of the limited grant of use. ........................................................... 8

    F.    Google competed with Digital Envoy. ....................................................... 9

III. ARGUMENT ................................................................................................................. 10

    A.    Counts III-V of Digital Envoy's Amended Complaint are not preempted by Cal. Civ. Code § 3426, et seq. ....................................................................... 10

    B.    Digital Envoy has stated a valid claim for violation of 15 U.S.C. § *1125(a)* ......... 12

IV. CONCLUSION .............................................................................................................. 17

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Federal Cases</u>

3

<u>Accumiage Diagnostics Corp v. Terarecon, Inc.,</u>
   260 F. Supp. 2d 941 (N.D. Cal. 2003) ............................................................... 11, 12

4

<u>Anderson v. Liberty Lobby, Inc.,</u>
5      477 U.S. 242 (1986) .................................................................................................. 10

6

<u>Celotex Corp. v. Catrett,</u>
       477 U.S. 317 (1986) ............................................................................................ 10, 15

7

<u>City Solutions, Inc. v. Clear Channel Communications, Inc.,</u>
8      365 F.3d 835 (9th Cir. 2003) .................................................................................... 12

9

<u>International Order of Job's Daughters v. Lindeburg and Co.,</u>
       633 F.2d 912 (9th Cir. 1980) .................................................................................... 16

10

<u>Lamothe v. Atlantic Recording Corporation,</u>
11     847 F.2d 1403 (9th Cir. 1988) .................................................................................. 14

12

<u>Roho, Inc. v. Marquis,</u>
       902 F.2d 356 (5th Cir. 1990) .................................................................................... 14

13

<u>Smith v. Montoro,</u>
14     648 F.2d 602 (9th Cir. 1981) .................................................................................... 14

15

<u>Summit Machine Tool Manufacturing Corp. v. Victor CNC Systems, Inc.,</u>
       7 F.3d 1434 (9th Cir. 1993) ...................................................................................... 14

16

<u>T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,</u>
17     809 F.2d 626 (9th Cir.1987) ..................................................................................... 10

18

<u>Wolf v. Louis Marx & Co.,</u>
       203 U.S.P.Q. 856 (1978) ........................................................................................... 16

19

<u>State Cases</u>

20

<u>Cadence Design Systems, Inc. v. Avant! Corp.,</u>
21     29 Cal. 4th 215, 127 Cal. Rptr. 2d 169, 57 P.2d 647 (2002) .................................... 12

22

<u>Postx Corporation v. Secure Data in Motion, Inc.,</u>
       2004 WL. 2663518 (N.D. Cal. 2004) ........................................................................ 12

23

24

25

26

27

28

W02-SF:5BB\61445267.1

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT

1  Statutes

2  15 U.S.C. 1125 ................................................................................................ 13

3  15 U.S.C. § 1125(a).............................................................................. 1, 12, 14

4  Cal. Civ. Code § 3426.7 ................................................................................ 10

5  Cal. Civ. Code § 3426, *et seq* ......................................................................... 1

6  Cal. Civ. Code § 3426, *et seq* ....................................................................... 10

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-SF:5BB\61445267.1

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT

# I.    INTRODUCTION

Digital Envoy has properly pled and will prove several viable theories of liability stemming from Google's wrongful conduct in connection with its use of Digital Envoy's technology and data.  In this unnecessary distraction, Google moves for partial summary adjudication facially based on its theory that only one of the pled causes of action sufficiently states a claim for relief, but more fundamentally based on its belief that it gets to define the world in which this litigation proceeds.

Google attempts to exclude three of the claims (Statutory Unfair Competition, Common Law Unfair Competition and Common Law Unjust Enrichment) on a misguided theory that the California Uniform Trade Secrets Act "expressly" preempts those claims.  It does not.  But in Google's estimation, a single District Court case, not followed by subsequent authority, which addresses preemption of a claim which was not pled, expands to not only preempt the distinct causes of action not addressed in the case, but does so "expressly".

Google's attempt to exclude the fourth of the claims (violation of the Lanham Act) is even more distorted.  First, it re-characterizes Digital Envoy's claim from one type of a claim recognized by the Lanham Act -- a "reverse palming off" claim -- to another type -- a "palming off" claim, and then falsely abuses Digital Envoy for not pleading the elements of a palming off claim, naturally.  Then, without any evidence of its own or even an iota of analysis, Google decrees that Digital Envoy has no evidence in support of this cause of action.  And finally, Google incorrectly establishes a threshold element for Digital Envoy to prove (that Digital Envoy and Google are in competition) and then declares that Digital Envoy has secured judicial relief on its statement to the contrary, evidently quite certain that it can make certain of Digital Envoy's actual words disappear.

But in reality, Digital Envoy's various actions are not preempted by the statutory trade secrets claim.  In reality, Digital Envoy has properly pled the particular type of Lanham Act claim on which it seeks to recover.  Digital Envoy will prove all elements of this claim at the appropriate time.  And, Digital Envoy actually stated to the court that Google was acting in competition with Digital Envoy when it was using Digital Envoy data in AdSense.  In reality, none of Google's

-1-

1  argument correctly applies authoritative law to the facts and allegations of this case.  Accordingly,

2  this motion should be DENIED.

3  **II.    STATEMENT OF FACTS (i.e. Response to Google's "Background" Section)**

4  In its Introduction, Google threatened to file "shortly" a motion for summary judgment

5  based on the license agreement itself, a repeat of its threat made more than six months ago at the

6  Case Management Conference of August 18, 2004, when it then contended that the License

7  Agreement is so broad that inquiry into Google's use of Digital Envoy's technology and data was

8  completely irrelevant.  And for some reason, Google expends some effort in repeating certain lame

9  evidence which has no bearing on the present motion, and moreover, would not come close to

10  supporting the threatened motion, should Google ever carry out its threat.

11  However, Federal Rule of Civil Procedure 56(d) provides:

12
13  > (d) Case Not Fully Adjudicated on Motion. If on motion under this
   > rule judgment is not rendered upon the whole case or for all the
   > relief asked and a trial is necessary, the court at the hearing of the
14  > motion, by examining the pleadings and the evidence before it and
   > by interrogating counsel, shall if practicable ascertain what
15  > material facts exist without substantial controversy and what
   > material facts are actually and in good faith controverted. It shall
16  > thereupon make an order specifying the facts that appear without
   > substantial controversy, including the extent to which the amount
17  > of damages or other relief is not in controversy, and directing such
   > further proceedings in the action as are just. Upon the trial of the
18  > action the facts so specified shall be deemed established, and the
   > trial shall be conducted accordingly.
19

20  In anticipation of the Court finding that it is "practicable" to ascertain certain material facts

21  without controversy, Digital Envoy herein responds to each of Google's factual statements set

22  forth in Google's brief.

23  **A.    The license agreement was limited.**

24
             **REDACTED**
25

26  Thus, this fact is conclusively established without

27  controversy.  Google asserts that the Agreement itself grants Google broad rights to use Digital

28  Envoy's geo-location technology and data in Google's business.  This assertion is false, and

-2-

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT

1 | Digital Envoy suggests the Court may specify the opposite as a fact that appears without

2 | substantial controversy: <u>The Agreement grants Google *limited* rights to use Digital Envoy's geo-</u>

3 | <u>location technology and data.</u>[1] Source: that is what the Agreement says. Twice. *See* Agreement,

4 | Section 3, Grant of Rights.

5 | **B.    The parole evidence further establishes conclusively the limitations on Google's grant**

6 | **of rights.**

7 |     Google makes some effort to establish that the parties intended to enter into an unlimited

8 | use license through certain parole evidence, being discussions between the parties on November

9 | 21, 2000[2].

10

11

12

13 | **REDACTED**

14

15

16

17

18 |     Yet consistent with Google's zeal to spin the facts in its favor, it does not recite the

19 | subsequent portion of the pre-contractual negotiation which contradicts its current theory.

20 | Following the exchange referenced by Google, the parties began to draft the license agreement.

21 | The parties defined Google's "Business" in a narrow manner reflective of Google's business at the

22

---

[1] For ease of reference, the factual statements that Digital Envoy suggests the Court should order
       as established are underlined.

[2] Ironically, the fact that Google claims it once wanted an unlimited use license, but then
       undoubtedly negotiated and drafted, represented by counsel, a strictly limited grant of
       license, is itself parole evidence supporting the proposition advanced by Digital Envoy:
       that the parties intended specific, strict limitations on Google's use of Digital Envoy's
       technology and data.  If Google expected an unlimited use license (which the evidence
       does not support), Google quite clearly *gave up* the evidently expendable negotiation point
       of getting an unlimited license during the negotiation of the actual terms of the Agreement.

-3-

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
                                    MOTION FOR SUMMARY JUDGMENT

1  time of the Agreement – information search technology which encompassed Google's search

2  engine, its paid search program and providing search technology to other search engines -- and

3  agreed to limit the scope of the "strictly limited" license for use in Google's Business such that

4  when Google launched AdSense, its business expanded beyond the limited Business which

5  prevented Google from expanding its use of Digital Envoy's data and technology without further

6  licensing.  The parties further agreed that Digital Envoy's information could not be "sold,

7  licensed, distributed, shared or otherwise given (in any form) to any other party or used outside of

8  the site set forth herein."

9                                         **REDACTED**

10

11                          This use would not involve geo-locating

12  visitors to third party websites but log additional data in Google's current business of indexing the

13  Internet.  Google approached Digital Envoy and obtained an agreement that such use would be

14  permissible.

15

16                                         **REDACTED**

17

18

19

20

21         Upon reviewing the language, Digital Envoy confirmed that Google would not be

22  permitted to give a third party direct access to Digital Envoy's database and that Google would not

23  be                              **REDACTED**

24

25  _____

26  [3]  A strong inference can be made that the other language in the Agreement was not considered by
         Google to be broad enough to permit even this country indexing activity, contrary to
27       Google's claim now regarding the unlimited breadth of the Agreement.

28

1

REDACTED

2

3        Next, in November 2000, the parties executed the License Agreement containing

4    restrictive and limiting language throughout.  Kratz Decl., Ex. F. *Plaintiff's Exhibit 2.*

5

6

7

8

9

REDACTED

10

11

12

13        Accordingly, despite Google's claim through parole evidence that the parties intended "an

14    exceptionally broad license grant", Digital Envoy suggests the Court may specify the opposite as a

15    fact that appears without substantial controversy: <u>The parole evidence establishes that the parties</u>

16    <u>did **not** intend an unlimited use license grant or even an exceptionally broad license grant, but</u>

17    <u>rather a strictly limited license in accordance with the terms therein.  Specifically, in addition to</u>

18    <u>the explicit prohibitions set forth in the Agreement, the parties intended that Google be prohibited</u>

19    <u>from repackaging Digital Envoy's database in conjunction with product offerings and from</u>

20    <u>allowing other third parties to target advertisements or even search results using Digital Envoy's</u>

21    <u>technology.</u>

22    ————————————

23

24

25

REDACTED

26

27

28

W02-SF:5BB\61445267.1          PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT

1  **C.    The use at issue was neither discussed nor even contemplated at the time of the**

2  **Agreement.**

3       Google next states that Digital Envoy was fully aware that Google intended to use the data

4  in Google's advertising programs.  This is correct, but misleading in an important way.  The

5  appropriate and clearer statement, and one which Digital Envoy suggests the Court may specify as

6  a fact that appears without substantial controversy, is the following: In entering into the

7  Agreement, Digital Envoy was aware that Google intended to use the data in Google's advertising

8  program as it then existed, which did not include any advertising program wherein visitors to sites

9  other than Google properties would be geo-located.    This is a difference with a significant

10 distinction – the activity complained about was not even contemplated at the time the Agreement

11 was entered into.  In November 2000, Google had just launched Google AdWords, "an online self-

12 service program that enables advertisers to place targeted text-based ads on [Google's] web sites."

13 Kratz Decl., Ex. I. *Google Final Prospectus, filed with the Securities and Exchange Commission*

14 *on August 18, 2004, ("Prospectus"), p. 50.*  At or near the time of that launch, Google recognized

15 that geo-targeting the advertisements would "translate" into "ad dollars fairly quickly."  Kratz

16 Decl., Ex. J. *Plaintiff's Exhibit 11.*  And, in fact, Google "became profitable in 2001 following the

17 launch of [its] Google AdWords program."  Kratz Decl. Ex. I.

18       At least 14 months after the Agreement, Google launched Google AdSense, in Google's

19 words: "the program through which we distribute our advertisers' AdWords ads for display on the

20 web sites of our Google Network members."  Kratz Decl. Ex. I.  p. 51.

21                              **REDACTED**

22                                                    It is, of course, this geo-targeting

23 employing the use of Digital Envoy's technology or data which forms the basis for the claims

24 brought herein.

25

26                              **REDACTED**

27

28

-6-

1            REDACTED

2

3   Accordingly, the evidence conclusively establishes the factual statement underlined above,

4 and the Court may specify this fact.

5 **D.  For years, Google used Digital Envoy's data in its syndicated advertising program**

6    **(AdSense) without Digital Envoy's knowledge.**

7   Google next states, without citation of any authority (the omission of which can be

8 explained but not excused by its untruth), that Google "openly" used Digital Envoy's data in its

9 advertising programs for years without any objection from Digital Envoy.

10

11

12            REDACTED

13

14

15   Most telling, Google's own employees who were most involved in the relationship

16 between Digital Envoy and Google did not know that Google was using Digital Envoy's data for

17 the benefit of third party Web sites until February 2004.

18

19

20

21            REDACTED

22

23

24

25

26

27   Accordingly, Digital Envoy suggests that the Court may specify the following as an

28 established fact: For years, Google used Digital Envoy's data in its syndicated advertising

        PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT

1 | program (AdSense) without Digital Envoy's knowledge, and even without the knowledge of the

2 | Google persons involved in the relationship with Digital Envoy.

3 | **E.     Each of Digital Envoy's claims is distinct, although all are predicated on Google's**

4 | **conduct in the course of its use of Digital Envoy's technology or data in excess of the**

5 | **limited grant of use.**

6 | Google next launches into a quasi-factual characterization of Digital Envoy's causes of

7 | actions, claiming that all of them are "predicated upon Google's supposedly unlicensed use of

8 | Digital Envoy's alleged trade secrets." Google misunderstands the nature of Digital Envoy's

9 | claims. They are all predicated on Google's conduct in the course of its use of Digital Envoy's

10 | technology or data in excess of the limited grant of use, but they are not (with the exception of

11 | Count I, the trade secrets claim) predicated on the technology or data actually being a trade secret.

12 | And, in fact, Google does not admit that Digital Envoy's technology or data are trade secrets.

13 | Answer to Amended Complaint of Digital Envoy, ¶ 45.

14 | Google's assertion that Counts III – V are "mere restatements of Digital Envoy's trade

15 | secret misappropriation claim" is nonsensical. This assertion has no more meaning than to claim

16 | that all of Digital Envoy's claims are iterations of the Statutory Unfair Competition claim, since

17 | they are all predicated on the same facts. In fact, each of Digital Envoy's claims is distinct,

18 | although all are predicated on Google's conduct in the course of its use of Digital Envoy's

19 | technology or data in excess of the limited grant of use. They are all just causes of action, with

20 | their own elements of proof such that each may turn on specific factual nuances pertinent to the

21 | claim. For example, in Count I the mere use of Digital Envoy's data beyond the contractual Grant

22 | of Rights will result in liability, whereas Count III is at least established, but probably enhanced

23 | by Google's active discouragement of third parties licensing geo-location technology separate

24 | from Google's provision of such solutions for free. Count IV includes an element of Google

25 | obtaining the benefit of Digital Envoy's goodwill but without Digital Envoy having control over

26 | Google's use of Digital Envoy's data and technology. Count V centers on Google receiving

27 | distinct and direct benefits from Digital Envoy without compensation.

28 |

**F.      Google competed with Digital Envoy.**

Google's final factual assertion is that Digital Envoy has admitted that it is not in competition with Google.  Google cites not to Digital Envoy's submission, but the Order dated January 20, 2005 summarizing the claims of the parties as they relate to an issue concerning the relative competitive position of the parties *in the present*.  Digital Envoy's claims relate to Google's conduct *in the past* such that the Order is not dispositive of the issue.

REDACTED

REDACTED

Accordingly, rather than the assertion to the contrary supported only by a distorted view of judicial estoppel, Digital Envoy suggests the following statement may be specified by the Court to be established fact: Google's use of Digital Envoy's data in its AdSense program competed directly with Digital Envoy by providing advertisements using geo-location information to third parties, bundled with other of Google's technology, thereby discouraging the third party from separately licensing geo-location solutions from Digital Envoy.  Google did so knowingly and with the express intention to discourage the third party from geo-locating its visitor on its own.

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT

1          **III.    ARGUMENT**

2          Summary judgment is appropriate only where no genuine issue of material fact exists and a

3    party is entitled to prevail in the case as a matter of law. *Andereson v. Liberty Lobby, Inc.*, 477

4    U.S. 242, 250, (1986). The moving party has the "initial responsibility of informing the district

5    court of the basis for its motion, and identifying those portions of [the record] which it believes

6    demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S.

7    317, 323 (1986).

8          The court's function on a motion for summary judgment is not to make credibility

9    determinations. *Anderson*, 477 U.S. at 249. The inferences to be drawn from the facts must be

10   viewed in a light most favorable to the party opposing the motion. *T.W. Elec. Serv. v. Pacific Elec.*

11   *Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

12   **A.    Counts III-V of Digital Envoy's Amended Complaint <u>are not</u> preempted  by Cal. Civ.**

13   **Code § 3426, et seq.**

14         Google's brief in support of its motion for summary judgment contends that Digital

15   Envoy's claims for statutory unfair competition, common law unfair competition and unjust

16   enrichment "are <u>expressly preempted</u> by the California Uniform Trade Secrets Act."[5] (Google

17   brief, p. 1)(emphasis added.). The CUTSA, however, does not expressly preempt *any* claim. Cal.

18   Civ. Code § 3426.7, that portion of CUTSA entitled "*Construction with other statutes; other*

19   *remedies; disclosure of public records*" provides in pertinent part:

20                    (a) Except as otherwise expressly provided, this title **does not**
                     supersede any statute relating to misappropriation of a trade secret,
21                   or any statute otherwise regulating trade secrets.

22                    (b) This title **does not** affect (1) contractual remedies, whether or
                     not based upon misappropriation of a trade secret, (2) other civil
23                   remedies that are not based upon misappropriation of a trade
                     secret, or (3) criminal remedies, whether or not based upon
24                   misappropriation of a trade secret. (emphasis added.)

---

25   [5] Google devotes its lengthy Footnote 3 to an analysis of the choice of law issues at issue in this
         litigation.  Since the issue is irrelevant to the instant motion, Digital Envoy will not address
26      the choice of law issue except to state that it is Digital Envoy's position that both
         California and Georgia misappropriation statutes and unfair competition statutes apply in
27      this litigation.

28

1    Clearly, CUTSA does not *expressly* preempt any cause of action.  By its own language,

2  CUTSA makes reference only to those statutes and claims that are *not* preempted.

3    The total lack of statutory support for its position explains why Google cites only one case

4  from a California court holding that CUTSA preempts any common law claim. That case is

5  *Accumiage Diagnostics Corp v. Terarecon, Inc.*  260 F.Supp.2d 941 (N.D. Cal. 2003)(Patel, J.).

6  However, *Accumiage* does not hold, as Google would have the Court believe, that CUTSA

7  preempts all other claims and is the exclusive remedy in cases where a plaintiff alleges

8  misappropriation of trade secrets.  At most, *Accumiage* stands for the narrow proposition that

9  CUTSA preempts only one cause of action – common law misappropriation of trade secrets --

10  which is not even alleged in this case.  Amazingly, the complaint analyzed in the *Accumiage* case

11  contained counts for common law and statutory unfair competition, Lanham Act violations and

12  unjust enrichment, yet only the common law trade secret count was held to be preempted by the

13  CUTSA.  *Id.*

14    The scope of the *Accumiage* holding is both quite clear and quite limited -- the opinion

15  expressly states that "[t]he court will address [Defendants'] argument that this common law

16  [misappropriation of trade secrets] cause of action is preempted by California's enactment of the

17  UTSA in 1985." *Accumiage*, 260 F.Supp.2d at 952.  The *Accumiage* opinion did not address

18  whether CUTSA preempts other causes of action.   Moreover, many of its past decisions raise

19  serious question as to how it would resolve the issue.[6]  The ambiguity that exists regarding this

20  point of California law was recognized by the *Accumiage* court -- "whether the UTSA preempts

21  common law misappropriation of trade secrets claims is an open question in California." *Id.*, 260

22  F.Supp.2d at 953.  This uncertainty is further evidence that, contrary to Google's contention, there

23

24

25

26  [6]  Accumiage, 260 F.Supp.2d at 953-54 (surveying California court decisions that have allowed

27    CUTSA claims and common law misappropriation claims to be plead together.)

28

-11-

1   is no clear-cut "California view" on the issue of CUTSA preemption of common law

2   misappropriation of trade secrets.[7]  (Google brief, n.4).

3        Of great significance, and conspicuously absent from Google's brief, is the fact that

4   Google's overly-broad interpretation of the *Accumiage* holding was addressed and expressly

5   rejected by this Court less than three months ago in *Postx Corporation v. Secure Data in Motion,*

6   *Inc.* 2004 WL 2663518 (N.D. Cal. 2004)(Illston, J.).  In *Postx*, plaintiff brought suit alleging,

7   *inter alia*, violation of CUTSA and common law unfair competition.  Defendant, citing *Accumiage*

8   as well as a host of non-California case law, sought to have the common law unfair competition

9   claim dismissed on the grounds that "all common law claims based on misappropriation of trade

10   secrets are preempted by the UTSA." Id., 2004 WL 2663518, *2.  The *Postx* Court held it "is not

11   prepared to extend *Accumiage* to a common law unfair competition claim." *Id.*, 2004 WL

12   2663518, *3.

13        Central to the *Postx* court's holding was the holding in *City Solutions, Inc. v. Clear*

14   *Channel Communications, Inc.* 365 F.3d 835 (9th Cir. 2003).  In *City Solutions*, although not

15   specifically addressing the preemption issue, the Ninth Circuit held that the a plaintiff could

16   maintain causes of action for violation of the UTSA and common law unfair competition arising

17   from the same factual allegations since it was possible for the jury to determine that plaintiff's

18   property had been misappropriated but that the property in question was not a trade secret. Id., 365

19   F.3d. at 842.  Adopting this reasoning, the *Postx* court noted that "*City Solutions* strongly suggests

20   that a plaintiff may still allege trade secrets misappropriation and unfair competition as alternative

21   theories of liability." *Postx*, 2004 WL 2663518, *3.

22   **B.    Digital Envoy has stated a valid claim for violation of 15 U.S.C. § *1125(a)***

23        In its brief, Google argues that Digital Envoy's Lanham Act claim fails as a matter of law.

24   Google makes several arguments in support, each of them unfounded.

25

26

27

28

---

[7] The *Accumiage* court based its holding on *Cadence Design Systems, Inc. v. Avant! Corp.* 29 Cal.4[th] 215, 127 Cal.Rptr.2d 169, 57 P.2d 647 (2002).  As both *Accumiage* and Google's brief point out, *Cadence Design* merely *suggested* that common law misappropriation of trade secrets claims did not survive the enactment of the CUTSA in 1985.  This was not part of the *Cadence Design* holding and the court did not engage in preemption analysis.

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT

1      First, Google claims that Digital Envoy has failed to allege a likelihood of consumer

2  confusion as well as elements necessary to state a false advertising claim under Section 43 of the

3  Lanham Act.  In fact, Digital Envoy *has* adequately pled that Google's unauthorized use of Digital

4  Envoy's technology leads to consumer confusion.  Paragraph 52 of the Amended Complaint,

5  which Google cites in its brief, reads as follows:

6           Google's actions, as set forth above, made in connection with
         services and used in commerce, falsely designate the origin of its
7           services, are misleading in their description or representation of
         fact.  **Google's actions deceive others (including its AdSense**
8           **and AdWords customers) as to the origin and approval of its**
         **services and its commercial activities** and Digital Envoy is
9           damaged by this conduct. (emphasis added.)

10

11     Digital Envoy's pleading tracts the Lanham Act completely.  Section 43 of the Lanham act

12  provides:

13           Any person who, on or in connection with any goods or services,
         or any contained for goods, uses in commerce any word, term,
14           name, symbol or device, or any combination thereof, or any false
         designation of origin, false or misleading description of fact, or
15           false or misleading representation of fact, which – (A) is likely to
         cause confusion, or to cause mistake, or to deceive as to the
16           affiliation, connection or association of such person, or as to the
         origin, sponsorship, or approval of his or her goods, services, or
17           commercial activities by another person, or (B) in commercial
         advertising or promotion, misrepresents the nature, characteristics,
18           qualities, or geographic origin of his or her or another person's
         goods, services or commercial activities, shall be liable in a civil
19           action by any person who believes that he or she is likely to be
         damaged by such act.

20  15 U.S.C. 1125 (a)(1).

21     The above paragraph amply sets forth allegations that there is a likelihood of confusion, or

22  mistake or deception, created among Google's customers as to the origin or approval of Google's

23  services.

24     Google next tries to characterize Digital Envoy's Lanham Act claim as a particular type of

25  Lanham Act claim, and then finds fault with Digital Envoy for not pleading the proper elements.

26  However, Google unfairly attempts to restrict Digital Envoy's allegations.

27     "The Lanham Act applies to two different types of unfair competition in interstate

28  commerce.  The first is 'palming off' or 'passing off', which involves selling a good or service of

-13-

1   one person's creation under the name or mark of another.  Section 43(a) also reaches false

2   advertising about the goods or services or the advertiser." *Lamothe v. Atlantic Recording*

3   *Corporation*, 847 F.2d 1403, 1406 (9th Cir. 1988)(internal cit. omitted). The Lanham Act also

4   "proscribes conduct that is the 'economic equivalent' of passing off, including 'reverse palming

5   off.'" *Summit Machine Tool Manufacturing Corp. v. Victor CNC Systems, Inc.*, 7 F.3d 1434, 1437

6   (9th Cir. 1993).  "Reverse palming off occurs with the direct misappropriation of the services or

7   goods of another." Id.  This "direct misappropriation" can be accomplished one of two ways.

8   >Reverse passing off is accomplished 'expressly' when the
    >wrongdoer removes the name or trademark on another party's

9   >product and sells that product under a name chosen by the
    >wrongdoer.  'Implied' reverse passing off occurs when the

10  >wrongdoer simply removes or otherwise obliterates the name of
    >the manufacturer or source and sells the product in an unbranded

11  >state.

12  *Smith v. Montoro*, 648 F.2d 602, 605 (9th Cir. 1981).

13      "A defendant may also be guilty of reverse palming off by selling or offering for sale

14  another's product that has been modified slightly and then labeled with a different name." *Summit*

15  *Machine*, 7 F.3d at 1437 (citing *Roho, Inc. v. Marquis*, 902 F.2d 356, 359 (5th Cir. 1990)).  As for

16  how Digital Envoy is damaged by reverse palming off – the answer is quite clear:

17  >As a matter of policy, [reverse palming off], like traditional

18  >palming off, is wrongful because it involves an attempt to
    >misappropriate or profit from another's talents and workmanship.

19  >Moreover, in reverse palming off cases, the originator of the
    >misidentified product is involuntarily deprived of the advertising

20  >value of [his] name and the goodwill that otherwise would stem
    >from public knowledge of the true source of the satisfactory

21  >product.  The ultimate purchaser (or viewer) is also deprived of
    >knowing the true source of the product and may even be deceived

22  >into believing it comes from a different source.

23  *Lamothe*, 847 F.2d at 1406-1407.

24      In sum, throughout the Amended Complaint, Digital Envoy alleges that Google, without

25  any legal or contractual right to do so, is selling Digital Envoy's technology as its own.  Such

26  behavior amounts to express and/or implied reverse palming off of Digital Envoy's technology.

27  Accordingly, Digital Envoy has stated a valid claim for violation of 15 U.S.C. § 1125(a).  Google

28

-14-

1  complains that Digital Envoy does not plead certain detail regarding its claims, but that complaint

2  (which is unfounded to begin with) is not a proper subject for summary judgment, but rather

3  should be addressed in discovery or in a non-dispositive motion.  In any event, there is no basis for

4  the claim that Digital Envoy's pleading, which tracks the Lanham Act statute, is not sufficient –

5  either by missing a necessary element or by not specifying additional underlying facts..

6         Google, practically as an aside, suggests without support that Digital Envoy

7  "certainly has no evidence of any such conduct" referring to Google actions made in violation of

8  the Lanham Act.  In making this claim, Google first fails to meet its burden as movant, which is to

9  identify "those portions of [the record] which it believes demonstrate the absence of a genuine

10 issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Google points to no

11 evidence in the record at all.

12        Although discovery on this issue has just begun (with Google resisting Digital Envoy's

13 efforts to obtain the identity of the persons with whom Google communicated regarding the

14 services connected to the wrongful use of Digital Envoy's data), the available information amply

15 provides a basis for Digital Envoy to proceed with its claims.  Although the breadth of Google's

16 communications remains undisclosed, justifying denial of the motion to the extent it purports to be

17 based on the absence of proof by Digital Envoy, the plans for communication which was

18 produced, firmly establishes a basis for the claims made under the Lanham Act.

19

20                 **REDACTED**                                      . Plaintiff's

21 Exhibit 49.  Google thus deceives Digital Envoy's potential customers by falsely representing that

22 it has the sponsorship or approval for this service provided such that those customers become

23 confused or mistaken as to whether it would need a license from Digital Envoy to obtain the

24 benefit of the data or whether it is authorized to obtain such benefit from Google's actions.

25 Google also generally marketed its AdSense services intertwined with the use of Digital Envoy's

26 technology or data, as if it were authorized and entered into contracts which make such

27 representations.  Each of these events provides a factual predicate to the Lanham Act claim.

28

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
MOTION FOR SUMMARY JUDGMENT

1

**REDACTED**

2

3

4   Google will concede the answer is the customer will not want to, which demonstrates the damage

5   to Digital Envoy.  The Lanham Act violation occurs because the predicate communicated by

6   Google is false and misleading.  Google represents that it can provide the geo-targeting and it

7   cannot.  Google represents that the customer does not have to do their own geo-targeting because

8   Google is doing it for them which is misleading as to authorization.  This activity squarely

9   establishes a Lanham Act claim.

10          Upon considering the reasonable inferences from the facts discovered so far, and

11  comparing with the complete lack of evidence presented to show there will be an absence of

12  evidentiary support for Digital Envoy's claims, the conclusion that summary judgment is

13  inappropriate on this claim is inescapable.

14          Next, Google argues that by incorporating general factual allegations, Digital Envoy has

15  somehow based its Lanham Act claim solely on the same allegations as its trade secret claims.

16  This is false for the same reason the preemption argument above is false – the facts related to

17  Google's conduct may support multiple distinct causes of action which can be evaluated

18  separately and do not depend on each other.  For easy example, Digital Envoy would not need to

19  prove that the data was a trade secret to prevail on the claim that Google deceived others with

20  respect to Google's authority to offer Digital Envoy's services as its own.  Google bases the

21  import of its incorrect assertion (that the Lanham Act claim is identical to the trade secret claim)

22  on a Southern District of New York case which rejected a Lanham Act claim because it was not

23  properly supported by the facts.  *Wolf v. Louis Marx & Co.*, 203 U.S.P.Q. 856, 859 (1978).  The

24  Ninth Circuit has long ago resolved the notion that the federal and state statutory and common law

25  protections in this area can coexist and pled together.  In *Internation Order of Job's Daughters v.*

26  *Lindeburg and Co.*, 633 F.2d 912, 915-6 (9th Cir. 1980), the court held: "Federal courts have

27  jurisdiction to hear suits invoking [Lanham Act] protections.  In addition, many states by statute or

28  judge-made law protect against trademark infringement and other types of unfair competition,

-16-

PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
                                            MOTION FOR SUMMARY JUDGMENT

1  such as misappropriation of the fruits of another's labor, theft of trade secrets, and trade

2  disparagement. These protections need not track those provided by the Lanham Act. If diversity

3  factors exist, federal courts of course have jurisdiction to hear suits asserting these state law

4  protections. Thus, a plaintiff complaining of trademark infringement in federal court may invoke

5  either federal or state protections, or both." (Citations omitted).

6     Finally, Google contends that it is necessary for Digital Envoy and Google to be in

7  competition in order to support a Lanham Act claim, and that Digital Envoy has disclaimed such

8  competition and is thereby judicially estopped to contend otherwise. As discussed above, Google

9  misrepresents Digital Envoy's stated position such that Google incredibly claims the opposite

10 meaning of the actual statement. At bottom, Digital Envoy suggests that this distortion is a telling

11 microcosm of the analysis contained throughout Google's motion.

12  **IV.     CONCLUSION**

13     For the foregoing reasons, Digital Envoy respectfully requests that Google's motion for

14 partial summary judgment be DENIED and that the Court specify that the facts suggested above

15 are established as judicially determined facts for purposes of this litigation.

16

17 DATED: February 23, 2005

18     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

19

20     By

21        P. CRAIG CARDON
           BRIAN R. BLACKMAN

22     TIMOTHY H. KRATZ (*Pro Hac Vice* To Be Applied For)
23     LUKE ANDERSON (*Pro Hac Vice* To Be Applied For)
       MCGUIRE WOODS, L.L.P
24     1170 Peachtree Street, N.E., Suite 2100
       Atlanta, Georgia 30309
25     Telephone: 404.443.5706
       Facsimile: 404.443.5751
26
           Attorneys for DIGITAL ENVOY, INC.
27

28

W02-SF:5BB\61445267.1                            PLAINTIFF'S OPPOSITION TO GOOGLE'S PARTIAL
                                                 MOTION FOR SUMMARY JUDGMENT