**KRAMER DECLARATION EXHIBIT H**

```
 1                UNITED STATES DISTRICT COURT
 2                NORTHERN DISTRICT OF CALIFORNIA
 3                     SAN JOSE DIVISION
 4
                                              CERTIFIED
 5                                              COPY
 6   DIGITAL ENVOY, INC.,
 7          Plaintiff/Counterdefendant,
 8   VS.                        CASE NO. C 04 01497 RS
 9   GOOGLE, INC.,
10          Defendant/Counterclaimant.
11   _____/
12
13            DEPOSITION OF KULPREET RANA
14      Confidential Pursuant to the Protective Order
15              Tuesday, November 16, 2004
16                 Pages 1-28 of 1-95
17        BY Timothy H. Kratz, Attorney at Law
18
19                    CONFIDENTIAL
20
21
22
                                   U.S. LEGAL
23   Reported by:
                                   Certified Shorthand Reporters
24   R. Chayo Alexandre, CSR         180 Montgomery Street, Suite 2180
                                     San Francisco, CA 94104
25   CSR # 12372                     888-575-3376 • Fax 888-963-3376
                                     www.uslegalsupport.com
```

1  negotiation and drafting of the agreement from the side
2  of Google. And it's my question to ask him what his
3  understanding of the agreement is.
4  　　　　MR. KRAMER: "Is" is different than "was."
5  "Was" is fine, but "is" reflects his communications and
6  his mental impressions today.
7  　　　　So if you ask him what he believed, at the
8  time, the contract allowed or didn't allow, which is
9  what you started with, I was perfectly okay to let him
10  answer that question.
11  　　　　But if you ask him what he thinks about it
12  today, I think that's an improper question and invades
13  the privilege, and I'll instruct him not to answer.
14  BY MR. KRATZ:
15  Q.　　Was your understanding of the license that
16  Google was receiving broad enough to include Digital
17  Envoy's -- use of Digital Envoy's technology or
18  information in AdSense?
19  A.　　I believe at the time my understanding of the
20  scope of our rights was broad enough to allow us to
21  provide a service such as AdSense.
22  Q.　　And what in the license do you believe gave
23  Google -- gave you that understanding of what the
24  breadth of what Google's license would be?
25  　　　　MR. KRAMER: Again, it has to be temporally

8

1  framed. At the time, he held this belief.
2          MR. KRATZ: I'm asking him to explain his
3  previous answer.
4  BY MR. KRATZ:
5  Q.     What in this agreement is support for that
6  answer?
7  A.     The license grant grants licensee the limited
8  worldwide right to use in its business and not
9  distribute to any third party in whole or in part the
10 product in the database libraries.
11         That in my view is a broad grant of rights.
12 The only limitation -- well, it's not even a
13 limitation -- is it's a right to use in its business,
14 and business is defined earlier in the contract very
15 broadly.
16 Q.     Okay. Is there anything else in this
17 agreement that you believe grants, or believed grants
18 Google the license broad enough to include its use in
19 AdSense?
20 A.     So as I stated, first, I think the definition
21 of business is broad enough to encompass that type of
22 usage. In addition, in Subsection 1 of Section 3,
23 there is a more specific reference to licensee's
24 ability. It states: "Licensee may also use the
25 database libraries to develop indices services and

1  applications that are provided to third parties; e.g.,
2  developing a country-specific index of Web pages."
3  Q.        Okay.  And do you believe that that includes
4  use of Digital Envoy's technology in AdSense?
5           MR. KRAMER:  Vague as to time, and restricted
6  to the time he was involved --
7  BY MR. KRATZ:
8  Q.        Your understanding at the time, do you
9  believe that included the ability to use it in AdSense?
10 A.        I believe that was intended to be, again, a
11 rather broad recitation about our ability to use the
12 libraries in a variety of services that we provide to
13 third parties.
14           We did not have AdSense at the time, but
15 AdSense is a type of service that we provide to third
16 parties.
17 Q.        Do you believe that the word "develop" means
18 the same thing as "use"?
19           MR. KRAMER:  The question is vague.
20 BY MR. KRATZ:
21 Q.        I'm asking about the word "develop" as put in
22 a sentence.  And my question is, Do you think "develop"
23 is broad enough to encompass actual use?
24           MR. KRAMER:  Vague, calls for legal
25 conclusion.

                                                        10

```
 1   A.        Yes.
 2   Q.        And do you -- was your understanding of the
 3   term, the defined term "business," at the time of your
 4   work on this contract, broad enough to include what
 5   ultimately became AdSense for Content?
 6             MR. KRAMER:  I think that's asked and
 7   answered.
 8             THE WITNESS:  I believe what I have stated
 9   before and which is my answer is that the product
10   AdSense did not exist at the time.  However, my
11   understanding of the way the term "business" is defined
12   in this agreement at the time was broad enough to
13   encompass a variety of services including something
14   such as AdSense.
15   BY MR. KRATZ:
16   Q.        AdSense for Content?
17   A.        Yes, including AdSense for Content.
18   Q.        How is the AdSense for Content program in
19   your view information search technology?
20             MR. KRAMER:  Objection; vague,
21   mischaracterizes the document and the testimony.
22   BY MR. KRATZ:
23   Q.        How is it producing or maintaining
24   information search technology?
25             MR. KRAMER:  Again, you have to ask to put
```

1  himself back in -- Tim, hang on one second. Let me
2  talk to him for a second off the record on a privilege
3  question.
4         MR. KRATZ:  Okay.
5         (Recess taken.)
6         MR. KRAMER:  In addition to the objections I
7  previously stated to the question, I believe this
8  question as asked calls for the disclosure of
9  privileged communications and calls for the disclosure
10 of attorney-client, and I'll instruct him not to
11 answer.
12        If you want to put it back again to the time
13 in which he was negotiating this agreement and ask him
14 to explain why he believed or what he believed, that's
15 fine. But asking him as he sits here today is not
16 okay.
17        MR. KRATZ:  Okay.
18 BY MR. KRATZ:
19 Q.     Well, you previously testified that your then
20 understanding of the "business" as defined term, was
21 broad enough to include what became known as AdSense
22 for Content. And what I would like you to do is
23 explain why you believe that to be so.
24 A.     Okay. Again, putting myself back at that
25 time, why I might have believed that to be so, since I

21

1  wasn't thinking specifically about AdSense at the time?

2  Q.         (Nods head.)

3  A.         I believe I would have interpreted this
4  recitation as being very broad for a few reasons. One
5  is that it describes the business as producing and
6  maintaining information search technology, and another
7  is that in our view, in Google's view, information
8  search technology itself is a very broad function.
9              Our business has been to organize the world's
10 information and to make it universally useful and
11 accessible, and we believe that to be a very broad
12 information search function.

13 Q.         Under your understanding of the terms of the
14 contract at the time you were working on it, what
15 search is involved in the program that came to be known
16 as AdSense for Consent?

17             MR. KRAMER:  I think that lacks foundation.

18             THE WITNESS:  So at the time, as I stated, I
19 was not contemplating AdSense.

20 BY MR. KRATZ:

21 Q.         I understand that.  I believe -- well, it
22 don't matter what I believe.

23             I'm asking what your then understanding of
24 the word "search," and I'm asking you what about your
25 then understanding of the word "search" leads you to

22

1  believe it's broad enough that it would include what
2  was going on in AdSense for Content.
3         What search is involved in AdSense for
4  Content, using "search" in the way that you understood
5  at the time of the contract?
6  A.     First, let me clarify one thing that you were
7  alluding to in your question. When I stated that we
8  were not contemplating AdSense at the time, what I
9  meant was that we were not contemplating the specific
10 service that has since developed as AdSense. We have
11 always contemplated having advertising services, and
12 we've always contemplated having those being relevant
13 and targeted services.
14        Now, on your question about "search," as I
15 stated, we have always contemplated supporting our
16 business, our search business with relevant and
17 targeted advertisements. We view advertisements as
18 another source of information for users. When users
19 are searching for information, we try to provide them a
20 variety of information that they will find relevant.
21 Some of which is in the form of advertisements, and
22 some of which is not.
23 BY MR. KRATZ:
24 Q.     And in the AdSense for Content program, how
25 is it that the user is searching for information?

23

```
 1   A.         When a user visits a Web page, it is because
 2   they are interested in the content of that page. And
 3   our AdSense for Content service attempts to provide the
 4   user, again, with information that is of interest or
 5   relevant to what they are viewing or what they are
 6   looking for.
 7              It does so by using the content of the Web
 8   page as a way to, as a proxy or a way to determine what
 9   the user -- what type of information the user is
10   searching for.
11   Q.         If Google's patent application, filed with
12   the U.S. Patent Trademark Office, said that AdSense is
13   useful because it's not in response to an information
14   search, would you agree with that or not agree with
15   that?
16              MR. KRAMER:  Objection on the grounds of
17   privilege and attorney-client work-product.
18              THE WITNESS:  May I get some water for a
19   second.
20   BY MR. KRATZ:
21   Q.         Still looking at Section 3 of this contract,
22   Exhibit 2 that you are looking at, in that paragraph 1,
23   would you agree -- well, did you understand at the time
24   you were working on this document that the third
25   sentence of the document prohibits certain conduct
```