1   DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgr.com)
    STEPHEN C. HOLMES, State Bar No. 200727 (sholmes@wsgr.com)
2   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
3   650 Page Mill Road
    Palo Alto, CA 94304-1050
4   Telephone:  (650) 493-9300
    Facsimile:  (650) 565-5100
5
    Attorneys for Defendant/Counterclaimant
6   Google Inc.

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9
                         SAN JOSE DIVISION
10

11
    DIGITAL ENVOY, INC.,                )   CASE NO.:  C 04 01497 RS
12                                      )
            Plaintiff/Counterdefendant, )   **GOOGLE INC.'S REPLY BRIEF IN
13                                      )   SUPPORT OF ITS MOTION FOR
        v.                              )   PARTIAL SUMMARY JUDGMENT
14                                      )   ON COUNTS II, III, IV AND V OF
    GOOGLE INC.,                        )   THE AMENDED COMPLAINT**
15                                      )
            Defendant/Counterclaimant.  )   Date:      March 16, 2005
16                                      )   Time:      9:30 a.m.
                                        )   Courtroom: 4, 5th Floor
17                                      )   Judge:     Hon. Richard Seeborg
                                        )
18  _____)

19

20

21

22

23

24

25

26

27

28

GOOGLE'S REPLY BRIEF ISO ITS MOTION FOR            C:\NrPortbl\PALIB1\DAG\2610069_2.DOC
PARTIAL SUMMARY JUDGMENT
CASE NO. 04-0197 RS

Dockets.Justia.com

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Google Inc.'s ("Google") eight-page motion for partial summary judgment asked the Court to resolve straightforward legal issues and find that: (1) The Uniform Trade Secret Act ("UTSA") in California preempts Digital Envoy, Inc.'s ("Digital Envoy") state law claims for unfair competition and unjust enrichment which mirror its trade secret claim; and (2) Digital Envoy has failed to state or substantiate a claim against Google for violation of the Lanham Act.  As these were questions of law, Google offered only two sentences and a footnote of immaterial factual background.[1]

Digital Envoy's opposition may best be described as a misguided diatribe.  It offers ten pages of wildly incomplete and unsupported "background facts" that have no bearing at all on the legal issues presented.  It then asks the Court to make binding factual determinations on numerous issues not joined by or relevant to Google's motion.  In short, the majority of Digital Envoy's opposition is a non-sequitur.

On the issues at hand, Digital Envoy has little to say.  Again, California's enactment of the UTSA preempts Digital Envoy's state law claims for unfair competition and unjust enrichment because those claims rest on the same set of operative facts as its claim for trade secret misappropriation.  The statute itself mandates this conclusion both because it clearly reflects an intent to occupy the field, and because the statute would be rendered a nullity, in part, if it were not preemptive.  The cases Google cited in its opening brief, *Accuimage, Callaway Golf,* and *Cadance v. Avant*!, are just some of the multitude of cases to have recognized the preemptive effect of the UTSA.  The same conclusion has been reached by courts across the nation, and California's UTSA expressly recognizes those decisions as authoritative. Judge Illston's unpublished decision in *PostX* – Digital Envoy's sole argument for the survival of its claims – is

---

[1] This background served to apprise the Court that Google's broader motion for summary judgment was imminent.  That motion was filed two-weeks later, and is set for hearing on March 30, 2005.

facially distinguishable and not persuasive. Because Digital Envoy's state law claims for unfair competition and unjust enrichment are preempted by the UTSA, Google is entitled to partial summary judgment on those claims.

Digital Envoy's Lanham Act claim fares no better. The claim that it has pled, resting entirely on its trade secret allegations, fails as a matter of law. The alternative claim that it has concocted for the first time to oppose Google's motion fails because such tactics are impermissible, and because Digital Envoy has offered no supporting evidence whatsoever. Accordingly, Google is also entitled to summary judgment on Digital Envoy's Lanham Act claim.

## II.   ARGUMENT

### A.   Digital Envoy's State Law Claims for Unfair Competition and Unjust Enrichment are Preempted by the California Enactment of the Uniform Trade Secrets Act.

Digital Envoy bases its causes of action for unfair competition and unjust enrichment on the same operative facts as its claim under the UTSA. That is manifest from the Amended Complaint where Digital Envoy expressly incorporates its trade secret allegations into its follow-on claims without adding any independent factual allegations. Amended Complaint, ¶¶ 1, 40, 56-70. It is similarly manifest from Digital Envoy's submissions and statements describing its claims in the past year. *See, e.g.,* Joint Case Management Statement, Docket No. 23, at 2 ("Digital Envoy contends that Google's allegedly unauthorized use of the Digital Envoy technology constitutes a misappropriation of trade secrets, unfair competition under federal, state and common law and unjust enrichment."); Holmes Decl., Ex. D (Friedman Dep. at 223:8-14) (Digital Envoy's claims are all based on Google's allegedly unlicensed use of Digital Envoy's technology).

As a matter of law, the UTSA preempts state law claims based upon the same nucleus of facts as a UTSA claim. Cal. Civ. Code § 3426.7; *Accuimage Diagnostics Corp. v. Terarecon, Inc.,* 260 F. Supp. 2d 941, 951-54 (N.D. Cal. 2003); *Callaway Golf Co. v. Dunlop Slazenger Group Am., Inc.,* 318 F. Supp. 2d 216, 219-20 (D. Del. 2004). An alternative conclusion is simply not tenable. It makes little sense to suggest, for example, that the California legislature

would have enacted the UTSA's comprehensive statutory scheme if a party could circumvent it by dressing up the same claim in alternative pleading language. As the California Supreme Court has recognized, "general and comprehensive legislation" which carefully describes the course of conduct affected and spells out limitations and exceptions, "indicates a legislative intent that the statute should totally supersede and replace the common law dealing with the subject matter." *Pacific Scene, Inc. v. Penasquitos, Inc.*, 46 Cal. 3d 407, 411 (1988) (citation omitted).

In addition, California's UTSA statue explicitly states that it <u>does not</u> preempt claims based upon breach of contract, criminal remedies, or other claims that are <u>not</u> based upon trade secret misappropriation. Cal. Civ. Code § 3426.7(b). There would no reason for this provision in California's statutory scheme (indeed, it would be rendered meaningless) unless the UTSA functioned to preempt other claims based on supposed misappropriation. *Id. See also Leavitt v. County of Madera*, 123 Cal. App. 4th 1502, 1514 (2004) ("It is a cardinal rule of statutory construction that in attempting to ascertain the legislative intention, effect should be given as often as possible to the statute as a whole and to every word and clause, thereby leaving no part of the provision useless or deprived of meaning.")(citation omitted); Cal. Civ. Proc. Code § 1858 (stating rule of statutory construction "not to omit what has been inserted" and to "give effect to all"). By the same token, California's UTSA cannot be read to contain exceptions to preemption that the legislature did not include. Cal. Civ. Proc. Code §1858 (stating rule of statutory construction "not to insert what has been omitted"); *Thomas v. Quintero*, No. A103597, 2005 WL 272986, at *4 (Cal. App. Feb. 4, 2005) ("Under the maxim of statutory construction, *expressio unius est exclusio alterius,* if exemptions are specified in a statute, we may not imply additional exemptions unless there is a clear legislative intent to the contrary.") (citations omitted). A reading of the UTSA that allows unfair competition and unjust enrichment claims to survive would violate both these canons of construction.

These are the principles that guided Judge Patel in *Accuimage* where the court held that the UTSA "occupies the field in California" and concluded that it preempted common law misappropriation claims. *Accuimage*, 260 F. Supp. 2d at 953-54 ("common law remedies based

upon misappropriation of trade secrets are superseded"). *Callaway Golf* which likewise applies California law also recognizes that claims "based entirely on the same factual allegations that form the basis of [a] trade secrets claim … are preempted by CUTSA." *Id.* at 219-220; *see also Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 224 (2002) (indicating that claims for common law misappropriation did not survive enactment of UTSA).

Digital Envoy offers no substantive analysis of these decisions. Indeed, it says nothing at all about *Callaway Golf*. Digital Envoy also chooses to ignore the wealth of out-of-state UTSA cases which hold that claims such as Digital Envoy's are preempted. *See Burbank Grease Services, LLC v. Sokolowski,* No. 04-0468, 2005 WL 106935 (Wis. App. Jan. 20, 2005) (the UTSA functions to "preserve a single tort action under state law for misappropriation of a trade secret as defined in the statute and thus to eliminate other tort causes of action founded on allegations of misappropriation of information that may not meet the statutory standard for a trade secret."); *Compuware Corp. v. International Business Machines Corp.*, No. 02-CV-70906, 2003 WL 23212863, at *8 (E.D. Mich. Dec. 19, 2003) (purpose of the UTSA was to "codify all the various common law remedies for theft of ideas" and that "plaintiffs who believe their ideas were pilfered may resort only to the UTSA."; Michigan UTSA preempts tortious interference claim based on alleged misappropriation); *Acrymed, Inc. v. Convatec*, 317 F. Supp. 2d 1204, 1217-18 (D. Or. 2004) (Oregon's UTSA bars claims for bad faith, quantum meruit and fraud based on same set of operative facts as trade secret allegations).[2] Even Georgia law, upon which Digital Envoy improperly purports to base an alternative UTSA claim, holds that the UTSA

---

[2] These authorities are in addition to those Google cited in its opening brief. *See Smithfield Ham and Prods. Co. v. Portion Pac, Inc*., 905 F. Supp. 346, 348-49 (E.D. Va. 1995) (state law claims for unjust enrichment and unfair competition preempted under Virginia Uniform Trade Secrets Act) ("In order to survive summary judgment, [] a plaintiff must be able to show that the distinct theories of relief sought are supported by facts unrelated to the misappropriation of the trade secret.'"); *Frantz v. Johnson*, 999 P.2d 351 (Nev. 2000) (Nevada UTSA preempts unfair competition and unjust enrichment claims that repackage trade secret allegations)*; Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971 (N.D. Ill. 2000) (same, under Illinois UTSA); *On-Line Techs. v. Perkin Elmer Corp.*, 141 F. Supp. 2d 246, 260-61 (D. Conn. 2001) (same, under Connecticut Uniform UTSA); *Glasstech, Inc. v. TGL Tempering Sys., Inc.*, 50 F.Supp.2d 722, 730 (N.D. Ohio 1999) (same, under Ohio UTSA).

preempts state law claims that are based on the same operative facts as a trade secret claim. *See Penalty Kick Mgmt. Ltd. v Coca Cola Co.*, 318 F.3d 1284, 1297-98 (11th Cir. 2003) (applying Georgia UTSA, holding that unjust enrichment conversion and other claims were preempted as "based on the same facts that comprise the trade secret misappropriation claim.").[3]

California's trade secret statute makes these out-of-state UTSA cases authoritative in interpreting California's UTSA enactment. Cal. Civ. Code § 3426.8 (California UTSA "shall be applied and construed to effectuate its general purpose to *make uniform* the law with respect to the subject of this title *among states enacting it*.") (emphasis added); *see also Sargent Fletcher v. Able Corp.*, 110 Cal. App. 4th 1658, 1665-66 (2003) (citing Nevada and Delaware interpretations of the UTSA as sole authority for elements of tort). Moreover, permitting each state to inject the peculiarities of its own common law into the trade secret realm would plainly frustrate the UTSA's and California's stated goal of uniformity in this area of the law. In sum, both a wave of authority and California public policy compel the conclusion that the UTSA preempts Digital Envoy's claims for unfair competition and unjust enrichment in this action.

Against this tide, Digital Envoy proffers only a single unpublished case, Judge Illston's decision in *PostX Corp. v. Secure Data in Motion, Inc.*, No. C02-04483 SI, 2004 WL 2663518 (N.D. Cal. Nov. 20, 2004), which is easily distinguished. In *PostX*, the court dismissed the

---

[3] Digital Envoy questions the reason for the choice of law discussion in footnote 3 of Google's opening brief. Apparently, it does not appreciate the mandate of *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal. 4th 459, 469 (1992). *Nedlloyd* holds that where, as here, the parties' agreement contains a California choice of law clause, California law governs all claims arising out of or relating to the parties' relationship. *Id.* ("When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to *all* disputes arising out of the transaction or relationship."). That is even more appropriate here, since all of Digital Envoy claims stand or fall based upon an interpretation of the contract containing the choice of law clause. *See Digital Envoy Inc. v. Google, Inc.*, 319 F. Supp. 2d 1377, 1380 (N.D. Ga. 2004) (emphasis in original) (Court ordering transfer of improperly venued action to California and finding that: "[O]ne of the central issues in this case – if not *the* central issue in this case – is whether that agreement extends to Google's current use of Digital Envoy's technology."). Accordingly, there is no basis for plaintiffs "alternative" claims based upon Georgia law. *See Nedlloyd*, 3 Cal. 4th at 469 (where parties' contract specified Hong Kong law, fiduciary duty claim under California law was improper). Those claims should be dismissed for this reason alone.

plaintiff's UTSA claim because the plaintiff failed to identify its trade secrets. The plaintiff later obtained new evidence of the defendant's misconduct. Since the trade secret claim had been dismissed and could not be resurrected, the plaintiff offered the new evidence in support of a separate claim for unfair competition. The court concluded that the unfair competition was not preempted. *PostX*, at *3.

As the *PostX* court states repeatedly, its conclusion that the unfair competition claim was not preempted rested in part on the fact that it was based upon *new facts* that were never part of the trade secret claim. *PostX*, at *3 ("the two claims are not based on precisely the same nucleus of facts;" "The claim survives because it is based on an alternative theory of liability *as well as on new facts*.") (emphasis added). Here, by contrast, Digital Envoy's unfair competition and unjust enrichment claims do not contain independent factual allegations. Indeed, they expressly incorporate the same operative facts as Digital Envoy's UTSA claim, including the allegations in Paragraphs 14 and 45 of the Amended Complaint that the Digital Envoy technology supposedly misused by Google is a trade secret.[4]

In any event, *PostX* did not question the reasoning or the holdings of *Accuimage*, *Callaway*, or any of the other UTSA cases cited above. Moreover, the *PostX* court cited no contrary authority, and did not even examine Sections 3426.7 or 3426.8 of California's UTSA.[5]

---

[4] Given Digital Envoy's allegation in each claim that its information constitutes a trade secret, its claims are preempted based on its allegations alone. But UTSA preemption is applicable regardless of whether Digital Envoy ultimately proves it possesses protectible trade secrets. "If a common law claim for unauthorized use of information that did not meet the statutory definition of a trade secret were permitted, the result 'would undermine the uniformity and clarity that motivated the creation and passage of the Uniform Act.'" *Burbank Grease*, 2005 WL 106935, *quoting Auto Channel, Inc. v. Speedvision Network, LLC*, 144 F. Supp. 2d 784, 789 (W.D. Ky. 2001); *see also Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 949 (W.D. Mich. 2003) (allowing otherwise displaced tort claims to proceed on the basis that the information may not rise to the level of a trade secret would defeat the purpose of the UTSA); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F.Supp.2d 968, 972-73 (N.D. Ill. 2000) (if there were no preemption when the confidential information might not rise to the level of a trade secret, UTSA preemption would be meaningless).

[5] The only case upon which *PostX* relied is *City Solutions Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835 (9th Cir. 2004). But in *City Solutions*, the issue of preemption was not even mentioned by the parties, let alone considered the by the court. *Id.* at 842. Accordingly, *PostX*'s reliance on the case is misplaced. *See, e.g.*, *In re Larry's Apartment*,
(continued...)

GOOGLE'S REPLY BRIEF ISO ITS MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 04-0197 RS
-6-

1  Ultimately, the *PostX* court concluded only that it was not prepared to *extend* the *Accuimage*
2  decision. *PostX*, at *3. The decision appears to have been motivated by fairness concerns – a
3  desire to allow the plaintiff to use newly-discovered evidence even though its principal claim had
4  been dismissed on procedural grounds. For this reason, the *PostX* holding is of little precedential
5  value. To the extent, however, that *PostX* can be read to hold that the UTSA is not preemptive of
6  claims based on the same set of operative facts as a trade secret claim, Google respectfully
7  submits that the unpublished decision is against the great weight of authority and is wrongly
8  decided.
9       Digital Envoy's unfair competition and unjust enrichment claims mirror its trade secret
10 claim. They are merely different theories of recovery based on the same set of operative facts.
11 Under California's statute, California case law, and the authoritative decisions from states
12 adopting the UTSA, Digital Envoy's claims are preempted as a matter of law. Cal. Civ. Code §
13 3426.7; *Accuimage*, 260 F. Supp. 2d at 951-54; *Callaway Golf*, 318 F. Supp. 2d at 219-20;
14 *Cadence,* 29 Cal. 4th at 224.

15     **B.**    **Digital Envoy's Lanham Act Claim Fails as a Matter of Law**

16      Digital Envoy's Lanham Act claim rests exclusively on "Google's actions, as set forth
17 above." Amended Complaint at ¶¶ 52-55. In the Amended Complaint, the "actions set forth
18 above," are the allegations of unlicensed data use supporting Digital Envoy's trade secret claim.
19 Thus, Digital Envoy's Lanham Act claim does no more than restate its trade secret claim. It is
20 undisputed that allegations of trade secret misappropriation do not give rise to a Lanham Act
21 claim. *See Wolf v. Louis Marx & Co.*, 203 U.S.P.Q. 856, 859 (S.D.N.Y. 1978). Accordingly,
22 Digital Envoy's Lanham Act claim fails as a matter of law.[6]

23 ---
24 (...continued from previous page)
   *L.L.C.*, 249 F.3d 832, 839 (9th Cir. 2001); *Tosco Corp. v. General Ins. Co.*, 85 Cal. App. 4th
25 1016, 1021 (2000) ("No case is authority for a proposition not considered by the court.").

26    6 Digital Envoy contends that Google has failed to meet its burden as movant under *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). That is incorrect. Google identified the deficient
27 allegations in Digital Envoy's Amended Complaint, explained that it had failed to state a Lanham Act claim, cited supporting authorities, and repeatedly noted the absence of any
28                                                                                       (continued...)

Digital Envoy glibly states that its Lanham Act pleading "tracts [sic] the Lanham Act completely." It does not, but merely "tracking" – or more accurately attempting to "track" – the Lanham Act's language is inadequate in any event. *See Accuimage*, 260 F. Supp. 2d at 948-949. Digital Envoy was required to supply "detailed allegations to satisfy the elements of the cause of action, such as: the circumstances under which [Google] made false statements, how the statements entered interstate commerce, and how [Digital Envoy] has been or is likely to be damaged as a result of defendants' false statements." *Id*. Digital Envoy's one conclusory paragraph does not even come close to stating a claim. *See* Amended Complaint at ¶ 52.

Recognizing that its Amended Complaint is deficient, Digital Envoy goes on at length about a supposed "reverse palming-off" claim, charging that Google was somehow selling Digital Envoy's technology as its own. But there are no such allegations (or anything even hinting at them) in the Amended Complaint. Rather, Digital Envoy proffers this theory for the first time in opposition to Google's motion for summary judgment. It does so without having ever sought leave to further amend its pleading. By itself, that is sufficient grounds for disregarding the theory. "A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the [summary judgment] motion." *Southwick Clothing LLC v. GFT Corp.,* No. 99CV10452 (GBD), 2004 U.S. Dist. LEXIS 25336, at *20 (S.D.N.Y. Dec. 15, 2004); *Mortkowitz v. Texaco Inc.,* 842 F. Supp. 232, 1236 (N.D. Cal. 1994) ("Plaintiffs' new theory is not properly before the Court. It is not a part of the complaint nor can it be inferred from the allegations in the complaint. Moreover, at no time prior to the filing of the opposition papers to the motion for summary judgment did Plaintiffs indicate that this new theory was to be

---

(...continued from previous page)
supporting evidence. See Opening Brf. at 7. That is more than *Celotex* requires. *Celotex*, 477 U.S. at 323 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial; moving party need not negate elements of claim or even supply supporting affidavits).

GOOGLE'S REPLY BRIEF ISO ITS MOTION FOR    -8-
PARTIAL SUMMARY JUDGMENT
CASE NO. 04-0197 RS

1 pursued."); *Tucson Elec. Power Co. v. Westinghouse Elec. Corp.*, 597 F. Supp. 1102, 1104 (D. Ariz. 1984) ("The district court is not required . . . to refuse to enter summary judgment for the defendant simply because the plaintiffs may, theoretically, be entitled to recover under a cause of action based on facts never alleged in the complaint."); *Klein v. Boeing Co.*, 847 F. Supp. 838, 844 (W.D. Wash. 1994) (where plaintiff did not assert theory prior to opposition to motion for summary judgment, and did not move to amend complaint; theory not properly before court on ruling on motion).

Even if this new theory were properly part of the action, however, to withstand a motion for summary judgment, Digital Envoy would be required to offer evidence to establish a prima facie case. Thus, Digital Envoy would be obligated to offer *evidence,* not merely argument, showing that: (1) Google made a false statement of fact in a commercial advertisement or promotion about its own or another's product; (2) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it as likely to influence the purchasing decision; (4) Google caused its false statement to enter interstate commerce; and (5) Digital Envoy has been injured as a result of the false statement. 15 U.S.C. § 1125(a)); *see also Accuimage*, 260 F. Supp. 2d at 948. Digital Envoy has offered no evidence at all on any of these elements.[7]

There is, for example, no evidence of any misrepresentation by Google (e.g. evidence that Google ever claimed that the data at issue was Google's own, or that it was not Digital Envoy's).[8] Nor is there evidence that consumers were deceived, that the deception influenced

---

[7] Digital Envoy's suggestion that "discovery on this issue has just begun" is nonsense. Discovery in the case has been open for eight months. Digital Envoy has had ample opportunity to seek it. In any event, Digital Envoy has not opposed Google's motion with a declaration under Fed.R.Civ.P. 56(f). Even if one had been supplied, it would be meritless. *See, e.g., Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1005 (9th Cir. 2002) ("failure to conduct discovery diligently is grounds for the denial of a Rule 56(f) motion").

[8] Digital Envoy's hypothetical new claim would suffer from an additional legal infirmity to the extent it suggests that Google was obligated to expressly identify Digital Envoy as the source of its geo-targeting data. The Ninth Circuit has made clear that "the Lanham Act does not create a duty of express attribution, but does protect against misattribution." *Cleary v. News Corp.*, 30 F.3d 1255, 1260 (9th Cir. 1994). Just as Ford has no obligation to identify the suppliers of each
(continued...)

1  their purchasing decisions, or that Digital Envoy suffered harm.[9] In short, this new theory is

2  entirely a creature of imagination. Accordingly, even if Digital Envoy was permitted to advance

3  a new reverse palming off theory, it would not rescue the Lanham Act claim.

## III.  CONCLUSION

For the foregoing reasons, Google Inc. respectfully requests that the Court grant it partial summary judgment on Counts II through V of Digital Envoy's Amended Complaint.

Dated: March 2, 2005                    WILSON SONSINI GOODRICH & ROSATI

By:   /s/ David H. Kramer
          David H. Kramer

Attorneys for Defendant/Counterclaimant
Google Inc.

---

(...continued from previous page)
of the parts in its automobiles, Google had no obligation to identify Digital Envoy as a supplier of data used in certain of Google's processes.

[9] Digital Envoy does not dispute that it must also offer evidence of competition between itself and Google to sustain a claim under the Lanham Act. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,* 173 F.3d 725, 735 (9th Cir. 1999). At Digital Envoy's urging, the Court has already held that the parties are not competitors when ruling that Digital Envoy's chief business negotiator could access Google's most sensitive business information. Order, January 20, 2005, Docket No. 63, at 1, 3 ("Digital [Envoy] does not compete with Google and, presumably, has no interest in Google's proprietary information."). To evade that finding now, Digital Envoy argues that the parties were once competitors because Google deprived Digital Envoy of potential licensees by offering advertising services with geo-location capabilities. Conveniently, according to Digital Envoy, that competition has now stopped, and therefore its representative should be able to pore over Google's business strategies. But Google still offers precisely the same advertising service it did before. It simply uses an alternative data supplier. *See* Declaration of Mark Rose in Support of Google's Motion for Summary Judgment (filed 2/23/05) at ¶¶ 2-4. Either the parties are not competitors, as the Court has previously found, in which case Digital Envoy's Lanham Act claim fails for an additional reason; or they are competitors, in which case Digital Envoy's lead deal-maker has no right to review Google's highly confidential materials. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992). Digital Envoy cannot have it both ways.

GOOGLE'S REPLY BRIEF ISO ITS MOTION FOR           -10-
PARTIAL SUMMARY JUDGMENT
CASE NO. 04-0197 RS