1  DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgr.com)
   DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5
   Attorneys for Defendant/Counterclaimant
6  Google Inc.

7                   UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9
                         SAN JOSE DIVISION
10

11
   DIGITAL ENVOY, INC.,                )   CASE NO.:  C 04 01497 RS
12                                     )
          Plaintiff/Counterdefendant,  )   **GOOGLE INC.'S OPPOSITION TO**
13                                     )   **DIGITAL ENVOY'S MOTION TO**
      v.                               )   **COMPEL FURTHER RESPONSES**
14                                     )   **TO REQUESTS FOR PRODUCTION**
   GOOGLE INC.,                        )   **OF DOCUMENTS NOS. 3, 14, 18, 19**
15                                     )   **AND 26**
          Defendant/Counterclaimant.   )
16                                     )   Judge:     Hon. Richard Seeborg
                                       )   Courtroom: 4, 5th Floor
17                                     )   Date:      June 22, 2005
                                       )   Time:      9:30 a.m.
18                                     )
                                       )   **(PUBLIC VERSION)**
19                                     )
                                       )
20

GOOGLE'S OPPOSITION TO DIGITAL ENVOY'S MOTION         C:\NrPortbl\PALIB1\DAG\2666948_1.DOC
TO COMPEL    C 04 01497 RS

Dockets.Justia.com

# INTRODUCTION

Digital Envoy, Inc.'s ("Digital Envoy") motion to compel consists almost entirely of Digital Envoy's requests and Google Inc.'s ("Google") response(s) followed by a sentence or two of argument, often incorporating prior arguments by reference. As such, it is extremely difficult to figure out what is actually at issue. Moreover, Digital Envoy fails to provide a declaration to support any of its factual assertions.

The little substance there is in the motion falls far short of justifying any further response to the requests. Digital Envoy's theories of relevance are meritless. Indeed, the Court's ruling on Google's motion for summary judgment disposed of most if not all of Digital Envoy's relevance arguments by dismissing its Lanham Act claim. Moreover, Digital Envoy has hardly even addressed – much less overcome – the facial overbreadth and undue burden issues presented by its requests. There is no basis at all, much less good cause for an order compelling further production of documents.

Apparently as an afterthought – and without any effort to meet and confer – Digital Envoy makes the extraordinary request that the Court compel an *in camera* review of a host of Google's privileged documents. Again, the request is unsupported by any evidence. Digital Envoy has failed to even provide the Court a copy of Google's privilege log in which Google sets out in detail the basis for each of its privilege claims. It has made no showing at all that there is any basis for challenging Google's assertions of privilege. All it has done is express baseless skepticism. If that were enough to justify *in camera* review, such reviews would become a standard part of every litigation.

Moreover, the "legal" arguments Digital Envoy advances to challenge Google's privilege assertions could not have been made in good faith. Where one employee communicates with counsel and includes another employee on the communication, the fact that a second employee received the communication in no way vitiates the privilege as Digital Envoy claims. Likewise, where two non-attorney employees discuss an attorney's legal advice in confidence, they do not forfeit the privilege over the advice. Finally, a party does not admit knowledge of wrongdoing by invoking the work product privilege, as Digital Envoy incredibly asserts.

1  Google properly asserted and logged its claims of attorney client privilege and its claims
2  of work product over documents prepared in anticipation of litigation.  Digital Envoy's request
3  for in camera review of Google's documents is objectively frivolous.

## ARGUMENT

### I. GOOGLE PROPERLY RESPONDED AND OBJECTED TO DIGITAL ENVOY'S REQUESTS FOR PRODUCTION

Under Fed. R. Civ. P. 34(b) document requests must state "the items to be inspected and describe each with reasonable particularity."  Digital Envoy made no such effort in the requests at issue here.  Rather, it took a scorched earth approach to discovery, asking for the moon in the hopes of finding something to support its case.  As a result, Digital Envoy's requests are not reasonably calculated to lead to the discovery of admissible evidence.  They are likewise overbroad and unduly burdensome.   Simply put, Digital Envoy has not met its burden of showing good cause for an order compelling additional production.  *See* Fed. R. Civ. P. 26(b)(1) (requiring showing of "good cause" for order compelling additional discovery).

**Document Request No. 3:**

Digital Envoy's Document Request No. 3 asks for all documents regarding any use by Google of Digital Envoy's data.  Digital Envoy's Motion to Compel ("Mot.") at 4.  On its face, it is patently overbroad.  Google had a license to use, and did use, Digital Envoy's data for years throughout its operation.   There is only one use of the data by Google that Digital Envoy asserts in its Complaint was unlicensed – use by Google in its AdSense for Content program.  Digital Envoy provides no explanation as to why Google should search for all documents regarding uses of the data that are not, and have never been, at issue in the case.

For example, Digital Envoy's request could easily be read to cover Google's use of the Digital Envoy data to determine whether to show a visitor to Google's site the Google.com page (United States), the Google.fr home page (France), or some other page.  In turn, the demand for all "technical documents and design drawings" relating to that use, could call upon Google to produce computer code, architectural specifications, and years' worth of internal email discussions relating to a use of the data that Digital Envoy has not and could never challenge.

This is but one of many irrelevant uses for which Digital Envoy seeks all related documents. Read literally, the request would call for Google to search throughout a company of thousands of employees concerning a host of technical processes to find documents on multiple subjects none of which have ever been mentioned, much less disputed in the case.

Digital Envoy seems to believe that it is entitled to this expansive universe documents because they might allow it to discover some other use of its data that it can claim violates the terms of the license agreement in some unspecified way. That is not how discovery works. *See Caliper Technologies Corp. v. Molecular Devices Corp.,* 213 F.R.D. 555, 559-60 (N.D. Cal. 2003) (party may not seek discovery in order to determine whether it has other claims; denying discovery aimed at determining whether defendant's other products might infringe plaintiff's patent).

Other than its dubious assertions about AdSense for Content, Digital Envoy has no basis for believing that Google made any improper use of Digital Envoy's data. Its permissible discovery goes no further than that. *Id.; Williams v. Ehlenz*, No. Civ. 02-978 JRTJSM, 2004 WL 742076, at *3 (D. Minn. Mar. 30, 2004) (discovery "limited to the scope of the claims and defenses asserted in the pleadings, and parties are not entitled to use the discovery process to develop new claims or defenses not reasonably identified in the pleadings."); *see also* Declaration of David H. Kramer ("Kramer Decl."), Ex. E (transcription of January 26, 2005 hearing) ("Tr.") at 15-16. ("if you're going to ask for ... mountains of material, you'd better have a reason to say that there is ... something more than a hope and a prayer that that is what you're going to find.").

**Document Request No. 14:**

Through Document Request No. 14, Digital Envoy seeks the identity of Google's advertisers who paid Google for advertisements to be placed on third party websites, how much Google was paid for placing the advertisements and the date on which each payment was paid. Mot. at 7.

Digital Envoy offers no explanation as to why it needs to know who Google's advertisers are, let alone how much each of the advertisers paid to Google or when they made those

1   payments.  Indeed, the only theory of relevance advanced by Digital Envoy was in a footnote

2   where it obtusely claimed that the information relating to the advertisers is related to the

3   damages calculation for the Lanham Act claim.  Mot. at 9, n.4.  No other explanation was

4   provided.  As Digital Envoy's Lanham Act claim has been dismissed, its lone conclusory

5   assertion of relevance carries no weight, and it has not carried its burden on this motion.  *See*

6   Fed. R. Civ. P. 26(b)(1).

7         Irrelevance aside, Google's vagueness objection alone is sufficient to reject the request,

8   because the request does not reflect the way in which Google's advertising program actually

9   works.  Google's advertisers do not pay Google to have their ads placed on third party sites.  By

10  participating in Google's advertising program, during the relevant time period, advertisers were

11  assured that their advertisements would appear on Google.com.  Advertisers had the ability to

12  opt out of having their advertisements appear on other sites.  Declaration of David DiNucci

13  ("DiNucci Decl."), ¶ 2.  But they did not have the ability to make Google place their ads solely

14  on third party sites.  *Id.*  Moreover, Google did not and does not charge advertisers for the

15  placement of advertisements on third party sites.  At all relevant times, Google has charged

16  advertisers only for clicks by users on advertising messages, not for the placement of those

17  advertisements.  In sum, Digital Envoy's request does not make sense.

18        Finally, Digital Envoy also offers no response to Google's burden and overbreadth

19  objection.  [REDACTED]  DiNucci Decl., ¶¶ 1, 3.  It would be a daunting

20  task to review and gather documents relating to each of them for any purpose, much less one for

21  which Digital Envoy lacks even a theory of relevance.  *Id.*

22  **Document Request No. 18:**

23        Digital Envoy's Document Request No. 18 is a facially absurd request for all

24  communications with [REDACTED] in Google's advertising programs.  Mot. at

25  9.  The sheer volume of advertisers makes this request obviously overbroad and enormously

26  burdensome.  As Mr. DiNucci explains in his declaration:

27  [REDACTED]

28  [REDACTED]

1
2
3
4

[redacted]

5  DiNucci Decl., ¶3.  The cost of these efforts would run into the hundreds of thousands or
6  millions of dollars.

7       Digital Envoy could not possibly justify imposing such a burden on Google, and certainly
8  has not done so here, as it simply incorporates prior arguments in its motion by reference.  This
9  approach to the motion to compel makes it impossible to understand why Digital Envoy thinks
10 such a sweeping request is defensible.  To the extent Digital Envoy is incorporating its argument
11 that the documents sought by this request relate to its Lanham Act claim, its argument again falls
12 with the dismissal of the Lanham Act claim.

**Document Request No. 19:**

Document Request No. 19 seeks "[a]ll documents containing any projection or expectation relating to revenue or profit or other economic factor relating to AdWords, AdSense, or any other program or offering relating to the placement of advertisements on any web site." Mot. at 10.  On its face, the request is again overbroad and unduly burdensome and calls for a host of irrelevant information.  Again, Digital Envoy seems to believe it can ask for everything in the hopes of finding something of interest.  It cannot.  *Caliper,* 213 F.R.D. at 559; *see also Novartis Pharmaceuticals Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 394  (D. Del. 2002) (defendant not required to provide information regarding marketing of business alternatives to the practice allegedly involved in the infringement).

Google has already produced responsive documents relating to its AdSense for Content program, the only one challenged by Digital Envoy's Complaint.  There is no justification for requiring the production of documents relating to projected revenues from other programs. Indeed, the only argument offered by Digital Envoy concerning the relevance of the additional documents is that they relate to its Lanham Act claims.  Once again, as the claim has been dismissed, Digital Envoy has offered no theory upon which it is entitled to more.  Accordingly, it

has failed to carry its burden of showing good cause for an order compelling additional documents.  *See* Fed. R. Civ. P. 26(b)(1).

**Document Request No. 26:**

Digital Envoy has narrowed this request to seeking a copy of the confidential contract between Google and Quova Inc, the company from whom Google now obtains geo-location data. Digital Envoy offers no explanation as to how that contract -- entered into with a third party years after the License Agreement at issue here was signed – is relevant to interpreting the parties' License Agreement.  Moreover, Google is prohibited from turning over the Quova contract because of its confidentiality obligations to Quova.  According to Quova, the contract contains highly confidential business information that Quova does not want its main competitor to obtain.  *See* Kramer Decl., ¶ 13.  Nevertheless, Google attempted to broker a deal between Quova and Digital Envoy which resulted in Quova producing a copy of the contract in redacted form (a fact Digital Envoy fails to mention).  *Id.*  At this point, any dispute over the contract should be between Digital Envoy and Quova over what aspects may be disclosed and to whom.

**II.    DIGITAL ENVOY'S REQUEST FOR *IN CAMERA* REVIEW IS FRIVOLOUS**

*In camera* review of a party's privileged documents is inappropriate without a showing of good cause "because the legal right at stake is the oldest and most established evidentiary privilege." *Ekeh v. Hartford Fire Ins. Co.*, 39 F. Supp. 2d 1216, 1220 (N.D. Cal. 1999); *see also AT&T Corp. v. Microsoft Corp.*, No. 02-0164 MHP (JL), 2003 WL 21212614, at *8 (N.D. Cal. Apr. 18, 2003) (denying *in camera* review because party's privilege log demonstrated basis for assertion of privilege).  A party seeking such review must offer more than mere speculation and legal conclusions. *Ekeh,* 39 F. Supp. 2d at 1220.  Yet that is all Digital Envoy has offered.

Digital Envoy provides no support for the assertion that documents on Google's privilege log are not protected by the attorney-client and work product privileges.   Indeed, Digital Envoy has not offered any evidence to call Google's privilege claims into question, and has not even

provided the Court with a copy of Google's privilege log which it purports to challenge.[1]  If a party were able to obtain *in camera* review based upon mere conjecture, as Digital Envoy seeks to do here, such reviews would be common standard practice in every case, inflicting an undue burden on the Court.

To make matters worse, the arguments Digital Envoy has concocted in an effort to pierce the privilege are nonsensical, and Google would have told Digital Envoy so had Digital Envoy bothered to meet and confer on the issues.  Kramer Decl., ¶ 17; s*ee also* Mot. at 1 (failing to certify meet and confer over privilege log).[2]

According to Digital Envoy, certain attorney-client communications shown on Google's privilege log included additional Google employees and that the inclusion of these other employees somehow works a waiver of applicable privileges.  That is baseless. *See United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996) ("The attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to secure legal advice.").  There is no basis for believing that the inclusion of more than one Google employee in a communication with counsel vitiates the protections of the privilege.  In cases where more than one Google employee is an addressee of a privileged email exchange, it is because they were deemed reasonably necessary to further the purpose for which counsel was being consulted.  Digital Envoy's assertion that these other employees were disinterested bystanders to whom disclosure works a waiver is unsupported and ridiculous. *See, e.g. QST Energy, Inc. v. Mervyn's*, No. C-00-1699MJJEDL, 2001 WL 777489, at *3 (N.D. Cal. May 14, 2001) ("Since these disclosures of the confidential communications to third persons were reasonably necessary to accomplish the purpose for which Defendants' counsel was consulted, they did not waive the privilege."); *Great American Surplus Lines Ins. Co. v. Ace Oil*

---

[1] A copy of Google's detailed privilege log is attached to the Kramer Declaration as Exhibit G.  So that the Court may compare Google's log to Digital Envoy's (which is facially deficient), a copy of Digital Envoy's log is attached to the Kramer Declaration as Exhibit H.

[2] By itself, Digital Envoy's failure to meet and confer on this issue requires denial of its request for *in camera* review.  *See* Fed. R. Civ. P. 37(a)(2)(B); Local Rule 37-1(a) (Court will not entertain motion to resolve discovery dispute unless counsel have conferred to resolve *all* disputed issues).

*Co.,* 120 F.R.D. 533, 537 (E.D. Cal. 1988) (privilege not waived where disclosure was reasonably necessary to purpose for which counsel was consulted).

Digital Envoy is likewise dramatically off base with respect to its claim that there can never be a privilege over communications between two non-attorney employees. Where two employees discuss an attorney's legal advice in confidence, the privilege over the original advice is preserved. *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). That is precisely the scenario at issue, as shown by the explanatory comments set forth on Google's privilege log.

Finally, Google's invocation of the work product privilege in no way constitutes an acknowledgement of wrongdoing as Digital Envoy claims. To assert the work product privilege, Google needs to show that the documents for which the privilege is claimed were prepared in anticipation of litigation. They were, as set forth on Google's privilege log and in the accompanying declaration of Google's in-house counsel, Michael Kwun. *See* Declaration of Michael Kwun, ¶ 2. That Google's attorneys acted in anticipation of litigation, however, in no way suggests that they believed that the litigation they anticipated by Digital Envoy had any merit. *Id.*

Courts routinely deny *in camera* inspection of documents where, as here, adequate privilege logs are provided. *See e.g., In re Grand Jury Investigation*, 974 F.2d 1068, 1075 (9th Cir. 1992); *AT&T*, 2003 WL 21212614, at *8. In this case, for each document withheld, Google's privilege log contains the name of the attorney and client involved, the nature of the document, all persons shown to have sent and received the document, the date the document was prepared, and the subject matter of the documents. *AT&T*, at *2. Thus, it provides more than enough information to make a prima facie showing that the attorney-client privilege protects the documents in question. In short, there is no basis whatsoever for Digital Envoy's demand for an *in camera* review of Google's privileged documents.

//
//
//

## III. DIGITAL ENVOY IS NOT ENTITLED TO RFC 822 HEADERS FOR GOOGLE'S PRIVILEGED EMAILS.

Digital Envoy's last demand is as puzzling and meritless as its others. It insists that Google produce the RFC 822 headers for all of its privileged emails. Digital Envoy makes little effort to explain what these headers are, and no effort at all to explain why they are relevant.[3] Further, Digital Envoy has offered no justification for requiring Google to bear the burden of retrieving such irrelevant information for privileged documents to which Digital Envoy is not entitled in the first place.

Without evidence or even citation, Digital Envoy speculates that this header information appears as part of Google's emails as they are kept in the "usual course of business." They are not. At Google, RFC 822 headers are not displayed to email users unless they are specially requested. Declaration of Edmond Choi, ¶ 2. Likewise, absent special request, the headers are not printed with an email message. *Id.* This is understandable, as the information the headers contain simply does not hold any interest for the typical email user. Tellingly, Google has not received any RFC 822 header information for any of the email messages Digital Envoy has produced in the case. Kramer Decl., ¶ 17. Plainly, Digital Envoy does not think such information must be produced to satisfy the "usual course of business" standard imposed by Fed. R. Civ. P. 34. *See also State of Florida,* 863 So. 2d at 155 (headers "not maintained in course" of agency's operations).

---

[3] RFC 822 headers consist of information automatically recorded by an email recipient's mail program and include information such as the date, subject, sender and intended recipient of the message, along with information concerning the message's encoding, character set and unique machine-generated identifier. *See State of Florida v. City of Clearwater*, 863 So. 2d 149, 155 (Fla. 2003) (explaining why email headers do not convert personal email of government employees into "public records:" headers "are by-products of the employee's use of the agency's e-mail system, and are neither purposely compiled nor maintained in the course of an agency's operations."). Such headers are typically relevant only in cases involving the alleged fraudulent transmission of email, where they are used to confirm the identity of a message's sender. *See, e.g., Optinrealbig.com, LLC v. Ironport Sys., Inc.*, 323 F. Supp. 2d 1037, 1041 (N.D. Cal. 2004) (describing use of header information to track illicit spamming). To the extent any information contained in RFC 822 headers bears on the question on whether a document is privileged, Google has already provided such information to Digital Envoy in the privilege log it prepared in accordance with Fed. R. Civ. P. 26(b)(5). Information concerning, *inter alia*, the unique message identifier, character set and other automatically generated information concerning an email message simply is not relevant.

1  If there were a reason why the headers on Google's privileged email messages were
2  relevant, Digital Envoy's motion might present a closer question. Digital Envoy has not shown
3  good cause as to why this information should be produced. Accordingly, its demand that Google
4  retrieve such headers serves no purpose other than to burden and harass and should be rejected.
5  *See* Fed. R. Civ. P. 26(b)(1); *McNally Tunneling Corp. v. City of Evanston,* No. 00 C6979, 2001
6  WL 1568879, at *4 (N.D. Ill. Dec. 10, 2001) (party moving to compel must make showing of
7  need for electronic files in light of production of those files in hard copy form).

## CONCLUSION

9  For the foregoing reasons, Google respectfully requests that the Court deny Digital
10 Envoy's motion to compel in its entirety.

12 Dated: June 1, 2005                WILSON SONSINI GOODRICH & ROSATI
                                      Professional Corporation

14                                    By: /s/ David H. Kramer
                                             David H. Kramer

                                      Attorneys for Defendant/Counterclaimant
16                                    Google Inc.