| | |
|---|---|
| 1 | DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgre.com) |
| 2 | DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)<br>WILSON SONSINI GOODRICH & ROSATI |
| 3 | Professional Corporation<br>650 Page Mill Road |
| 4 | Palo Alto, CA 94304-1050<br>Telephone: (650) 493-9300 |
| 5 | Facsimile: (650) 565-5100 |
| 6 | Attorneys for Defendant/Counterclaimant<br>Google Inc. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| DIGITAL ENVOY, INC., | ) | CASE NO.: C 04 01497 RS |
| Plaintiff/Counterdefendant, | ) ) ) | **GOOGLE INC.'S OPPOSITION TO DIGITAL ENVOY'S MOTION TO** |
| v. | ) ) | **COMPEL FURTHER RESPONSES TO ITS FIRST AND SECOND SETS** |
| GOOGLE INC., | ) ) | **OF INTERROGATORIES AND ITS FIRST AND SECOND SETS OF** |
| Defendant/Counterclaimant. | ) ) ) | **REQUESTS FOR PRODUCTION OF DOCUMENTS TO GOOGLE, INC.** |
| | ) ) ) ) ) ) ) | Judge: Hon. Richard Seeborg<br>Courtroom: 4, 5th Floor<br>Date: June 22, 2005<br>Time: 9:30 a.m.<br>**(PUBLIC VERSION)** |

GOOGLE'S OPPOSITION TO MOTION TO COMPEL
FURTHER RESPONSES TO ROGS. AND RFPS
C 04 01497 RSP

2666946_1.DOC

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

ARGUMENT ............................................................................................................................. 3

I. GOOGLE SHOULD NOT BE COMPELLED TO PROVIDE FURTHER RESPONSES BECAUSE THE REQUESTED INFORMATION IS IRRELEVANT AND WOULD BE IMMENSELY BURDENSOME TO COLLECT AND PRODUCE ..................................................................................................................... 3

    A. Digital Envoy Has Made No Showing of Relevance ............................................ 4

        1. The Interrogatories ..................................................................................... 4

        2. The Document Requests ............................................................................. 8

    B. The Burden and Expense of Responding to the Discovery Requests Is Enormous ............................................................................................................... 9

II. DIGITAL ENVOY'S REQUESTS RELATING TO ADSENSE FOR SEARCH ARE OVERBROAD AND IMPROPER BECAUSE ADSENSE FOR SEARCH IS NOT PART OF THIS LITIGATION ............................................................................ 11

CONCLUSION ........................................................................................................................ 14

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Barcenas v. Ford Motor Co.,* No. C 03- 04644RMWE, 2004 WL 2827249 (N.D. Cal. Dec. 9, 2004) ................................................................................................ 3, 4, 13

*Caliper Technologies Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555 (N.D. Cal. 2003) .................................................................................................................. 11

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) ................................................ 12

*Computer Sciences Corp. v. Computer Assocs. Int'l, Inc.,* Nos. CV 98-1374-WMB SHX, CV 98-1440-WMB SHX, 1999 WL 675446 (C.D. Cal. Aug. 12, 1999) ........................................................................................................................... 5

*Hofer v. Mack Trucks, Inc.*, 981 F.2d 377 (8th Cir. 1992) ...................................................... 4

*Jones v. Goord*, No. 95 CIV. 8026(GEL), 2002 WL 1007614 (S.D.N.Y. May 16, 2002) ........................................................................................................................... 7

*Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.*, 981 F.2d 429 (9th Cir. 1992) .................................................................................................................... 4, 8, 9

*Ricotta v. Allstate Ins. Co.*, 211 F.R.D. 622 (S.D. Cal. 2002) ................................................. 3

*Sorosky v. Burroughs Corp.*, 826 F.2d 794 (9th Cir. 1987) ................................................... 4

*Surles v. Air France*, No. 00CIV5004RMBFM, 2001 WL 815522 (S.D.N.Y. July 19, 2001), *aff'd*, 2001 WL 1142231 (S.D.N.Y. Sep. 27, 2001) ................................... 8

*U.S. v. Rezaq*, 156 F.R.D. 514 (D. D.C. 1994), *vacated in part on other grounds*, 899 F. Supp. 697 (D.D.C. 1995) ............................................................................... 9

*Williams v. Ehlenz*, No. Civ. 02-978 JRTJSM, 2004 WL 742076 (D. Minn. Mar. 30, 2004) ........................................................................................................ 11

*Winston Research Corp. v. Minnesota Mining & Mfg. Co.*, 350 F.2d 134 (9th Cir. 1965) ........................................................................................................................... 7

**STATUTES**

Cal. Civ. Code § 3426.3 ........................................................................................................ 5

**RULES**

Fed. R. Civ. P. 26(b)(2)(iii) ................................................................................................... 3

Fed. R. Civ. P. 33(a) ........................................................................................................... 10

Fed. R. Civ. P. 37(a)(4) ....................................................................................................... 13

**MISCELLANEOUS**

2000 Advisory Comments to Fed. R. Civ. P. 26(b) ........................................................................12

# **INTRODUCTION**

According to Digital Envoy, Inc. ("Digital Envoy"), because Google Inc. ("Google") allegedly went beyond the scope of its license in using Digital Envoy's data, websites that would have otherwise taken a license from Digital Envoy for that data did not. In discovery, Google asked Digital Envoy to provide the factual basis for this actual damages theory. Specifically, Google asked Digital Envoy to identify any third party that it contended would have taken a license to Digital Envoy's data but for Google's alleged misuse of the data. Digital Envoy would certainly be in the best position to know whether it lost any customers. But Digital Envoy came up with nothing. It was unable to identify *a single* lost licensee, much less explain how such a customer was lost because of Google's alleged conduct.

Notwithstanding its total failure of proof, Digital Envoy now seeks to put Google to the extraordinary burden of not only identifying the ▬▬▬▬▬▬▬ of Google Network members and the ▬▬▬ of websites comprising Google's advertising network, but also of providing a wealth of information about each individual member and website. By itself, the burden associated with these requests mandates denial of Digital Envoy's motion. But Digital Envoy's failures to advance a plausible theory of damages and to make any sort of relevance showing reveals its requests as specious. Indeed, Digital Envoy's whole premise -- that a Google network participant would have licensed Digital Envoy's data directly to obtain geotargeting capability for advertisements -- makes no sense. Because it has failed to make any relevance showing, Digital Envoy's motion to compel should be denied in its entirety.

In addition, as if its requests were not burdensome enough, Digital Envoy actually seeks to broaden its case through the vehicle of a discovery motion. Instead of limiting its requests to Google's AdSense for Content advertising program – the only program placed at issue by its Amended Complaint – Digital Envoy claims it is entitled to information concerning another program, AdSense for Search, that was not challenged by Digital Envoy's allegations. Months ago, Google told Digital Envoy that if it wished to pursue claims concerning AdSense for Search, it would need to amend its Complaint. Digital Envoy then started down that path, but abandoned its efforts in February. Now, with discovery closed, it pretends as if AdSense for

1   Search has been in the case all along.  Google has litigated this action based on the allegations of
2   the Complaint, and would have taken a substantially different approach had Digital Envoy ever
3   placed AdSense for Search at issue.  To allow Digital Envoy to expand the litigation after the
4   close of fact discovery would be unduly prejudicial.  For this reason as well, Digital Envoy's
5   motion to compel must be denied.

## **BACKGROUND**

Digital Envoy contends that Google wrongfully gained revenue and caused Digital Envoy to suffer losses because "potential customers of Digital Envoy ... instead entered into a sharing relationship with Google."  Motion at 11.  According to Digital Envoy, Google "[ate] Digital Envoy's market[.]"  *Id*. at 9.

Google served an interrogatory on Digital Envoy to discover the factual basis underlying this actual damages theory.  It asked Digital Envoy to identify each entity that would have licensed Digital Envoy's data and technology but for Google's alleged misuse of the data in Google's AdSense for Content Program.  Declaration of David H. Kramer ("Kramer Decl."), Ex. A (Interrogatory No. 17).[1]  Digital Envoy was unable to identify a single customer it claims to have lost, much less provide any factual support for its contentions.  *Id*.  This is not surprising.  Digital Envoy cannot possibly know what a third party would have done under different circumstances.  But its claim is particularly speculative here, as there is no reason to believe that any of the participants in Google's advertising network:  (a) signed up to receive advertisements through Google's network *because* of the geotargeting capability that Google offered to its *advertisers*; (b) would have licensed such geotargeting capability directly if Google could not supply it, as opposed to relying on countless other advertising networks (including a host of

---

[1] Google also requested Digital Envoy describe the basis for its claim that Google was unjustly enriched through its use of Digital Envoy's data in Google's AFC program. Specifically, Google asked Digital Envoy to identify any *advertiser* that would not have participated in Google's program (or would have paid Google less) *but for* Google's use of Digital Envoy's data in Google's AFC program.  In response, Digital Envoy offered nothing but objections and excuses.  Kramer Decl., Ex. A (Interrogatory Nos. 11-14).   That answer is to be expected – any suggestion that an advertiser would have acted differently but for Google's alleged misuse of the data is pure speculation.

Digital Envoy licensees) who offer the capability; or (c) would have licensed such capability from Digital Envoy as opposed to one of its competitors.

Unable to identify any lost customers, Digital Envoy has turned to Google in the hopes of finding the missing causal nexus required for its damages claim. The interrogatories at issue seek detailed information about "all websites on which Google has placed advertisements" and the revenue relating to the placement of those ads. Motion at 4-7. The document requests seek Google's contracts with every participant in the Google Network, and all documents relating to the negotiation of those agreements. *Id.* at 9-10.

The burden of complying with Digital Envoy's requests would be overwhelming. Google's advertising network is immense, consisting of roughly ▇▇▇▇ active publishers at any given time, often with multiple websites each. Declaration of Kim Malone ("Malone Decl."), ¶¶ 2, 3. The network thus consists of ▇▇▇▇▇▇ active websites, at least as of today. *Id.*, ¶ 3. Moreover, Google has, received applications from ▇▇▇▇▇▇ of publishers (accounting for ▇▇▇▇▇ more websites) during the life of the program, and, as the composition of Google's Network is constantly changing, it is virtually impossible to determine which publishers (or websites) were active at a particular point. *Id.,* ¶¶ 2-4. As Ms. Malone explains in her declaration, responding to these requests would entail an enormous burden, one that could never be justified, and one that is certainly not justified here given the total lack of probative value of the information sought.

## ARGUMENT

**I.    Google Should Not Be Compelled To Provide Further Responses Because The Requested Information Is Irrelevant And Would Be Immensely Burdensome To Collect and Produce**

Despite the typically broad scope of discovery, "[a] court may limit discovery if it determines that the burden or expense of the proposed discovery outweighs its likely benefit." *Ricotta v. Allstate Ins. Co.,* 211 F.R.D. 622, 624 (S.D. Cal. 2002); Fed. R. Civ. P. 26(b)(2)(iii). "Additionally, '[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and produce a variety of information which does not reasonably bear on the issues in the case.'" *Barcenas v. Ford Motor Co.,* No. C 03-

04644RMWE, 2004 WL 2827249, at *2 (N.D. Cal. Dec. 9, 2004) (quoting *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992).

Here, Digital Envoy has failed to show that the information requested is in any way relevant to the remaining issues in this litigation while demanding an immense quantity of data that will be extraordinarily difficult to collect and produce.

### A. Digital Envoy Has Made No Showing of Relevance

Digital Envoy is not entitled to impose on Google the heavy burdens inherent in responding to the broad discovery requests at issue here absent "[s]ome threshold showing of relevance[.]" *Barcenas,* 2004 WL 2827249, at *2 (denying motion to compel absent adequate showing). As the moving party, the burden is on Digital Envoy to establish good cause for further discovery and that the discovery sought is relevant or reasonably calculated to lead to the discovery of admissible evidence. *Id.*, at *3. Fed. R. Civ. R. 26(b)(1). Here, Digital Envoy has failed to make a "specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence." *Sorosky v. Burroughs Corp.,* 826 F.2d 794, 805 (9th Cir. 1987) (finding no abuse of discretion in denial of motion to compel where movant failed to make requisite showing); *Nugget Hydroelectric, L.P. v. Pacific Gas and Elec. Co.,* 981 F.2d 429, 439 (9th Cir. 1992) (same). Indeed this is a burden Digital Envoy cannot carry.

### 1. The Interrogatories

Remarkably, Digital Envoy's motion devotes only a single paragraph to its attempted justification of why the information sought by the interrogatories at issue is purportedly relevant. Motion at 8-9. Digital Envoy contends that it is entitled to damages resulting from Google's misuse of its data and that it intends to "present evidence regarding the revenue wrongfully gained by Google and the losses suffered by Digital Envoy[.]" *Id*. at 8. It argues that "[t]he specific detail requested in these discovery requests provides the foundation for this evidence." *Id*. at 8-9. Yet Digital Envoy offers no explanation as to how the volumes of information demanded would support its wholly speculative damage theory. There is a reason for Digital Envoy's brevity. There is no basis for believing the information sought is relevant.

To recover actual damages on its trade secret claim, Digital Envoy must show that Google's supposed misappropriation is a "but for" cause of Digital Envoy's supposed loss. *See* Cal. Civ. Code § 3426.3; *Computer Sciences Corp. v. Computer Assocs. Int'l, Inc.*, Nos. CV 98-1374-WMB SHX, CV 98-1440-WMB SHX, 1999 WL 675446, at *13 (C.D. Cal. Aug. 12, 1999). In other words, given its theory, Digital Envoy must prove that, but for Google's use of Digital Envoy's data in Google's advertising network, Digital Envoy would have earned more money by licensing its data directly to participants in Google's advertising network.

In response to Google's argument that there is no nexus between the alleged misuse and Digital Envoy's purported damages, Digital Envoy makes the unsupported assertion that "[t]he specific identity of the AdSense customers, and accordingly the revenue derived from each, is relevant for Digital Envoy to establish that nexus." Motion at 9. Digital Envoy does not explain how. In truth, there is no basis for Digital Envoy to believe that even one of the ▮▮▮▮▮ ▮▮▮▮▮ of publishers in Google's advertising network would have taken a license from Digital Envoy but for Google's use of Digital Envoy's data to serve ads to these sites.

The sites that participate in Google's advertising network are not interested in geo-targeting per se (or even in geotargeted advertisements) - they are interested in having advertisements displayed on their sites from which they can earn revenue. Geotargeting is simply one of many ways that can theoretically increase the targeting of ads, and hence the revenue that may be derived from them as more users click on those ads. But there is no reason for the websites *themselves* to need a license to Digital Envoy's geotargeting data for advertisements. To take advantage of such a license, these sites (including countless personal web pages, online journals (or blogs), family photo sites and others) would need their own advertising infrastructure including, most importantly, their own inventory of advertisers. Only then would they be in a position to use Digital Envoy's data to target advertisements. The reason these websites participate in Google's advertising network (and are willing to share the revenue for advertisements on their sites with Google) is because they have no advertising infrastructure themselves. *See* Kramer Decl., Ex. C (excerpts from the transcript of the deposition of Steven

Schimmel) at 110:22-111:10, 217:4-14; 222:6-11; 226:12-19.  These sites rely on advertising networks like Google to supply that infrastructure.  *Id*.

Even if Google were not permitted to send geotargeted ads to these sites using Digital Envoy's data; even if Google could not have obtained geotargeting data elsewhere (as it immediately did), and even if these third parties were uniquely motivated by the availability of geotargeting (as opposed, for example, to being motivated by earning money through favorable revenue sharing terms or the most relevant ads generally), the sites would have undoubtedly obtained their geotargeted advertisements from any number of other advertising networks who could serve them.  These other available networks include a host of Digital Envoy licensees who readily use Digital Envoy's data in the process of selecting advertisements to send to third party sites.[2]  There would be no need for any of them to license the data themselves simply to obtain geotargeted advertisements.  *See* Kramer Decl. Ex. B (Digital Envoy's response to Request for Admission No. 27 (admitting that Digital Envoy licenses its data for use by advertising networks)); Kramer Decl., Ex. D (Deposition of Robert Friedman) at 133-137, 177-78, 154-56 (discussing Digital Envoy licensing its geotargeting capability for use by online advertising networks including, *inter alia*, 24/7 Media, DoubleClick, Advertising.com, Avenue A).[3]

At bottom, Digital Envoy claims that the third parties in Google's advertising network would have built their own advertising infrastructure and licensed Digital Envoy's data directly (rather than using another advertising network or other data supplier) if Google did not offer geotargeted ads using Digital Envoy's data.  That theory is beyond speculative.  It is

---

[2] Not surprisingly, Digital Envoy has never informed any of these other advertising networks that they are improperly "sharing" or "disclosing" Digital Envoy's data to third parties in violation of the non-disclosure provisions in Digital Envoy's standard license agreement.

[3] It is important to note that Google's provision of advertisements to users visiting third party sites does not provide the sites themselves with information on the geographic location of the site's visitors.  Google simply provides advertisements and provides them directly to users computers.  Accordingly, to the extent a site wished to obtain information on the geographic location of visitors to the site for its own reasons (for example, to determine what type of content to feature on the site), that desire would not be filled by Google's provision of advertisements.

1  preposterous. That is why Digital Envoy has failed to identify even a single site to whom it
2  claims it would have licensed its data under alternate circumstances.[4]

3  Digital Envoy's fantasy of finding some causal nexus between lost licensing revenue and
4  Google's use of the data in its AdSense for Content program does not justify the heavy burden it
5  seeks to impose on Google. As the Court told Digital Envoy at the hearing on Google's last
6  motion for a protective order: "if you're going to ask for ... mountains of material, you'd better
7  have a reason to say that there is ... something more than a hope and a prayer that that is what
8  you're going to find." Kramer Decl., Ex. E (transcription of January 26, 2005 hearing) ("Tr.") at
9  15-16. That is all Digital Envoy has offered, and it is nowhere near enough. *See e.g. Winston*
10 *Research Corp. v. Minnesota Mining & Mfg. Co.,* 350 F.2d 134, 144 (9th Cir. 1965) (District
11 Court within discretion in refusing to award money damages for trade secret misappropriation
12 where evidence as to possible future profits was speculative); *Jones v. Goord*, No. 95 CIV.
13 8026(GEL), 2002 WL 1007614, at *16 (S.D.N.Y. May 16, 2002) (denying motion to compel
14 production of databases; "The Court will not impose additional burden, expense and risk of harm
15 on the parties, and especially on the defendants, at this belated hour, after the expenditure of so
16 much effort and expense, and on the undocumented hope of obtaining such speculative
17 benefits.").[5]

---

[4] To the extent Digital Envoy is arguing that it needs information on the websites participating in Google's advertising network for purposes of supporting its unjust enrichment theory, its position makes even less sense. Google is not enriched by the sites on which it displays advertising – in fact, Google pays them. Google makes its money from *advertisers* whose messages are displayed to users visiting one of the sites in its network. Google's relationship with the sites themselves has nothing to do with any supposed unjust enrichment.

[5] Causation issues aside, the highly detailed information Digital Envoy seeks is clearly unnecessary to establish its purported damages. If Digital Envoy truly lost licensing revenue, it should be able to calculate it without regard to how much advertising revenue Google made, which sites Google made it from, and over what period of time it was made.

GOOGLE'S OPPOSITION TO MOTION TO COMPEL            7
FURTHER RESPONSES TO ROGS. AND RFPS
C 04 01497 RSP

**2.   The Document Requests**

The analysis of Digital Envoy's document requests is little different than that of its interrogatories. As before Digital Envoy seeks a mountain of information without having made any showing of relevance.

The Court is already familiar with Digital Envoy's demand for contracts and documents relating to Google's negotiations with third party websites participating in its advertising network. In January 2005, this Court rejected Digital Envoy's attempts to demand that data from 22 third parties, principally because Digital Envoy failed to satisfy its burden of showing the relevance of the requested documents. *See* Kramer Decl., Ex. E, Tr. at 17. Now, instead of 22 of Google's partners, Digital Envoy seeks documents relating to ▓▓▓▓▓▓▓▓▓▓▓▓▓.

Again, Digital Envoy claims the participants of Google's Network were "potential customers of Digital Envoy" and that the agreements and negotiations between Google and these non-parties are necessary to learn the about their relationship. Motion at 11. *Remarkably, that is all Digital Envoy says.* It provides no further information as to the relevance of the data it seeks, nor does it provide any *facts* to suggest that Google's relationship and negotiations with these sites is in any way relevant here. This Court has previously made clear that much more is needed. *See, e.g.* Kramer Decl., Ex. E, Tr. at 15-16 ("The standard under Rule 26 is it has to be relevant to a claim or a defense or for good cause shown." And it is Digital Envoy's burden to make the requisite showing of relevance. Digital Envoy "can't say ... there's a whole universe of material out there, and we think if we look at it, it's going to help us, or it's going to show this. [It has to] do more than just say, ah, if we look through all this, maybe there's something in there that's going to be helpful; because we think it must have been involved in these, in these discussions.")

When Digital Envoy was asking for this information from a few dozen of Google's partners without an evidentiary showing of relevance, the Court correctly rejected its effort. Now, with nothing more than the same evidence-starved speculation, it seeks far more burdensome and intrusive discovery. The Ninth Circuit was faced with a similar issue in *Nugget Hydroelectric,* 981 F.2d at 438. There, plaintiff "demanded millions of pages of documents

concerning every aspect of PG&E's relationships with private power suppliers, only a fraction of which could be deemed relevant to the subject matter of Nugget's fraud claim." *Id.* The Magistrate Judge denied Nugget's motion to compel, concluding "that Nugget's request was unnecessarily burdensome and overly broad ... based upon Nugget's failure to make a specific showing that the burdens of production would be minimal and that the requested documents would lead to relevant evidence." *Id.* at 438-39 (internal quotations and citation omitted); *see also Surles v. Air France*, No. 00CIV5004RMBFM, 2001 WL 815522, at *4 (S.D.N.Y. July 19, 2001) (denying motion to compel where request "is based upon nothing more than the speculative hope that useful impeachment material will be unearthed."), *aff'd*, 2001 WL 1142231 (S.D.N.Y. Sep. 27, 2001); *U.S. v. Rezaq*, 156 F.R.D. 514, 521 (D. D.C. 1994) (denying motion to compel where requesting party "offers the court nothing more than speculative hopes that the evidence requested here will help defendant track down something that will help his case. Without some indication that this discovery will lead to evidence that would significantly benefit defendant's case, the discovery cannot be allowed."), *vacated in part on other grounds*, 899 F. Supp. 697 (D.D.C. 1995).

Here, as in *Nugget*, Digital Envoy's requests for documents concerning every aspect of Google's relationship with its AdSense customers are obviously burdensome and overbroad and are not supported by any factual showing of relevance. As such, Digital Envoy's motion must be denied.

### B. The Burden and Expense of Responding to the Discovery Requests Is Enormous

Even if Digital Envoy had made the required showing of relevance, its motion would fail on burden grounds alone. It would be a burden for Google to simply identify all of the ▮▮▮▮▮▮ of websites participating in Google's advertising network. But Digital Envoy hardly stops there. Instead, it demands to know, *for each of these* ▮▮▮▮▮▮ *of websites*: (1) the first date Google placed an advertisement on each site; (2) the last date Google placed an advertisement on each site; (3) whether Google was capable of using Digital Envoy's technology in the placement of

GOOGLE'S OPPOSITION TO MOTION TO COMPEL
FURTHER RESPONSES TO ROGS. AND RFPS
C 04 01497 RSP

9

ads on the site; and (4) whether Google was permitted to do so by the site's owner/operator. Interrogatory No. 5; Motion at 4. And that is just *one* interrogatory.[6] Digital Envoy also asks Google to specify (5) the revenue associated with *each site*; (6) whether the revenue was for AdSense for Search or AdSense for Content; and (7) the cost of revenue for *each revenue listing* for *each site*. Interrogatory No. 10; Motion at 6-7. Additionally, for each revenue listing for each site, Digital Envoy asks (8) that the revenue listing be segregated by advertisers who selected "all countries" when the ad was enabled vs. advertisers who selected something else. Interrogatory No. 11; Motion at 7. It goes without saying that the burden of collecting and producing these eight data points for each of the ▮▮▮▮▮ of websites participating in Google's AdSense program is enormous. The burden is increased still further by Digital Envoy's demand that certain data be provided on a monthly basis, and for "each revenue listing for each site." *See generally* Malone Decl.

The document requests are even more burdensome. Digital Envoy actually demands that Google produce all documents relating to the negotiation of ▮▮▮▮▮▮▮▮▮▮ of contracts, including the contracts themselves. Digital Envoy has refused Google's offer of a representative contract, and has refused to identify any particular third party in whom it is interested. To locate, review and produce the requested documents would require weeks, hundreds of thousands of dollars, and a small forest of paper. *Id.* Under no circumstances would such a burden be justified. But here, where Digital Envoy has made no showing of relevance, its demands are absurd.

---

[6] Google appropriately objected to this interrogatory (and the others at issue) as improperly compound and consisting of several independent interrogatories. As Digital Envoy has served 23 interrogatories in this litigation, the many subparts would exceed the scope permitted under Rule 33 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 33(a) (interrogatories may not exceed "25 in number including all discrete subparts").

## II. Digital Envoy's Requests Relating To AdSense For Search Are Overbroad and Improper Because AdSense For Search is Not Part of This Litigation

Digital Envoy's motion can and should be denied based on lack of relevance of the information sought and the burden to be imposed by its requests. But the requests (as described in Digital Envoy's motion) suffer from an additional infirmity. According to Digital Envoy, it seeks information concerning AdSense for Search, a Google advertising program that is not, and has never been, a target of Digital Envoy's allegations. To the extent the interrogatories and requests at issue here purport to seek information on AdSense for Search, they are overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

Today, Google's AdSense program takes two forms. AdSense for Search, launched in the first quarter of 2002, is Google's service for distributing relevant ads from its advertisers for display with search results on Google Network members' sites. Declaration of Susan Wojcicki In Support of Google Inc.'s Motion for Summary Judgment, ¶¶ 6, 7. In AdSense for Search, Google uses the query as part of the process of selecting the relevant advertisements to display.[7] In its Complaint, even Digital Envoy recognized that use of Digital Envoy's data in connection with this service was "search" related, in contrast to the supposedly "non-search related" use in AdSense for Content with which it took issue. Amended Complaint, ¶¶ 3, 37.

According to Digital Envoy's Amended Complaint it was only when Google went beyond AdSense for Search, into AdSense for Content, that Google's use of Digital Envoy's data exceeded the scope of Google's license. Digital Envoy describes the AdSense for Search program in Paragraph 37 of its Amended Complaint as a service Google started in 2002. Nowhere does it suggest that it views the program as problematic. Digital Envoy then goes to

---

[7] In AdSense for *Content*, launched in mid-2003, Google's advertising messages are displayed to end-users alongside particular content on the third party publisher's site. *Id.*, ¶ 8. Google analyzes the content the user is viewing and uses that analysis, rather than a specific query by the end-user, to guide its search for relevant advertisements. *Id.* Thus, if an individual is reading an article on baking at the Washington Post's site, Google may display advertising messages matching that interest, though again, the specific advertisement(s) selected will depend on a host of factors including, perhaps, the user's geographic location. *Id.*

1  discuss AdSense for Content – announced in "May – June 2003" timeframe, which it describes
2  as "non-information search related" and cites it as the sole basis for the claim that Google
3  exceeded the scope of the parties' license:

> Google uses Digital Envoy's IP Intelligence technology and Database Libraries to provide geographically targeted, *non-information search related*, advertisements on those third party websites in the "Google Ad Network". *Such use* is beyond the scope of the Agreement between Google and Digital Envoy.

Amended Complaint at ¶¶ 39 – 41 (emphasis added).

In response to Digital Envoy's initial efforts to obtain discovery relating to AdSense for Search, Google pointed out that AdSense for Search was not implicated in the Amended Complaint and suggested that, if Digital Envoy wished to expand the scope of this litigation to include AdSense for Search, it should amend its pleading accordingly. Kramer Decl., ¶ 4. *See Caliper Technologies Corp. v. Molecular Devices Corp.,* 213 F.R.D. 555, 559-60 (N.D. Cal. 2003) (party may not seek discovery in order to determine whether it has other claims; denying discovery aimed at determining whether defendant's other products might infringe plaintiff's patent); *Williams v. Ehlenz*, No. Civ. 02-978 JRTJSM, 2004 WL 742076, at *2 (D. Minn. Mar. 30, 2004) (discovery "limited to the scope of the claims and defenses asserted in the pleadings, and parties are not entitled to use the discovery process to develop new claims or defenses not reasonably identified in the pleadings."); *see also* 2000 Advisory Comments to Rule 26(b) (amendment to Rule 26(b) limiting party-controlled discovery to the "claim or defense of any party" "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.")

The parties discussed the possibility of Digital Envoy again amending its complaint back in January. Digital Envoy proposed some language, and on February 6, 2005, Google asked Digital Envoy for a complete proposal. Digital Envoy never responded, and never amended its Complaint to include allegations that AdSense for Search was somehow an improper use of its data. Kramer Decl., ¶ 5.

Google has litigated this case based on the allegations of the operative Amended Complaint. Had it contained allegations regarding AdSense for Search, Google would have proceeded much differently. It would have certainly served discovery relating to AdSense for Search, and it would have focused its motions for summary judgment on the issue of whether Google "disclosed" or "shared" Digital Envoy's technology, as opposed to whether Google's advertising-related programs were part of its "business" of "producing and maintaining information search technology" Now, with fact discovery closed, Google would be significantly prejudiced should Digital Envoy be permitted to materially alter and expand the focus of its allegations to include this new topic. *Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1292 (9th Cir. 2000) (refusing to allow plaintiff to expand claims after close of discovery; a "complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations.").[8]

Accordingly, because AdSense for Search is distinct from AdSense for Content and has never been made part of this case, information relating to AdSense for Search is not reasonably calculated to lead to the discovery of admissible evidence. Digital Envoy's motion should therefore be denied to the extent it requests discovery relating to AdSense for Search.[9]

---

[8] If the Court is considering allowing Digital Envoy to amend its Complaint at this late date (without a motion), Google respectfully requests that the Court set a status conference to vacate and reschedule all dates on the current schedule to allow for Google adequately investigate and address Digital Envoy's new claims.

[9] Digital Envoy's Motion for Sanctions should likewise be denied. *See Barcenas*, 2004 WL 2827249, at *9 ("A motion for sanctions will not be granted if the court finds that 'the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust."); Fed. R. Civ. P. 37(a)(4).

GOOGLE'S OPPOSITION TO MOTION TO COMPEL
FURTHER RESPONSES TO ROGS. AND RFPS                13
C 04 01497 RSP

## CONCLUSION

For the foregoing reasons, Digital Envoy's motion to compel further discovery responses should be denied in its entirety.

Dated: June 1, 2005

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ David H. Kramer
David H. Kramer

Attorneys for Defendant/Counterclaimant
Google Inc.