1  DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgr.com)
   DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5
   Attorneys for Defendant/Counterclaimant
6  Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| DIGITAL ENVOY, INC., | ) | CASE NO. C 04 01497 RS |
|---|---|---|
| Plaintiff/Counterdefendant, | ) ) | **DECLARATION OF DAVID H. KRAMER IN SUPPORT OF GOOGLE INC.'S OPPOSITIONS TO DIGITAL ENVOY'S MOTIONS TO COMPEL** |
| v. | ) ) | |
| GOOGLE INC., | ) ) | |
| Defendant/Counterclaimant. | ) ) ) ) ) ) | Judge: Hon. Richard Seeborg<br>Courtroom: 4, 5th Floor<br>Date: June 22, 2005<br>Time: 9:30 a.m. |

KRAMER DECL. ISO GOOGLE'S OPPS TO DIGITAL    C:\NrPortbl\PALIB1\DAG\2663972_2.DOC
ENVOY'S MOTIONS TO COMPEL – C 04 01497 RS

I, David H. Kramer, declare as follows:

1. I am an attorney at law duly licensed to practice in the State of California and before this Court. I am a member at Wilson Sonsini Goodrich & Rosati ("WSGR"), counsel for defendant and counterclaimant Google Inc. ("Google"). I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

### Digital Envoy's Overbroad Discovery Requests Regarding AdSense for Search

2. Google has objected to Digital Envoy's discovery requests purporting to seek documents and information relating to Google's AdSense for Search program as being overbroad, because AdSense for Search is not addressed in Plaintiff's Amended Complaint.

3. I followed up on Google's objections with multiple communications to counsel for Digital Envoy. In these communications, I reiterated Google's position that AdSense for Search was not part of this litigation and asked that counsel point out where in the Complaint Digital Envoy took issue with AdSense for Search.

4. Counsel for Digital Envoy has never explained to me why or how the Complaint challenges Google's use of Digital Envoy's data in AdSense for Search. Back in January 2005, however, I suggested that Google would be willing to permit Digital Envoy to add allegations to its Amended Complaint to bring AdSense for Search into the case.

5. Some time later, counsel for Digital Envoy sent me at least a part of what Digital Envoy proposed to add to its Complaint. I promptly requested a complete copy of the proposed Second Amended Complaint. That was on February 6, 2005. I never heard back from Digital Envoy on the issue and was never provided with such a proposal. Further, Digital Envoy never sought to amend its Complaint to include allegations concerning AdSense for Search.

6. Had the Complaint contained allegations regarding AdSense for Search, Google would have litigated this case much differently. For example, it certainly would have served discovery relating to Digital Envoy's contentions about AdSense for Search. It also would have focused its motion for summary judgment on the issue of whether Google "disclosed" or "shared" Digital Envoy's technology, as opposed to whether Google's advertising-related

1 programs were part of Google's "business," since that apparently is the only basis on which Digital Envoy now contends it takes issue with AdSense for Search.

7. With fact discovery closed, the parties moving towards expert discovery and a trial date approaching, I believe Google would be significantly prejudiced should Digital Envoy be permitted to materially shift the focus of its allegations to include this new topic.

**Documents Relating To Google's Opposition to Digital Envoy's**

**Motion to Compel Further Responses to Interrogatories and Document Requests**

8. Attached hereto as Exhibit A is a true and correct copy of Digital Envoy's Response to Google's Fourth Set of Interrogatories. Pages one through four contain Digital Envoy's responses to interrogatory Nos. 11-14, in which Digital Envoy fails to identify a single advertiser that it contends would not have participated in Google's program (or would have paid Google less) but for Google's alleged misuse of Digital Envoy's trade secrets. Page six of this document contains Digital Envoy's response to Interrogatory No. 17, in which Digital Envoy fails to identify a single entity that would have purportedly licensed Digital Envoy's technology and data from Digital Envoy but for Google's alleged misuse of Digital Envoy's trade secrets.

9. Attached hereto as Exhibit B is a true and correct copy of Digital Envoy's response to Google's Request for Admission No. 27 in which Digital Envoy admits that it has authorized various parties to utilize its data to geotarget advertisements across a network of third party sites.

10. Attached hereto as Exhibit C is a true and correct copy of excerpts from the transcript of the September 23, 2004 deposition of Steven Schimmel.

11. Attached hereto as Exhibit D is a true and correct copy of excerpts from the transcript of the November 17, 2004 deposition of Robert Friedman.

12. Attached hereto as Exhibit E is a true and correct copy of a transcription of the January 26, 2005 hearing on Google's motion for a protective order. Counsel for Google was provided with an audio recording of the hearing, which was transcribed by support staff at WSGR.

**Request for Quova Contract**

13.   Attached hereto as Exhibit F is a redacted copy of the contract between Google and Quova Inc. concerning Quova's provision of geo-targeting data to Google. The contract was produced to both parties in this redacted form by counsel for Quova, who has asserted in both written and oral communications to both counsel that Quova views the provisions of the contract to be highly proprietary, and objects to providing the contract in unredacted form to Digital Envoy, its chief competitor. Google has confidentiality obligations to Quova under the contract.

**Request for *In Camera* Inspections**

14.   Attached hereto as Exhibit G is a true and correct copy of Google's Privilege Log in this action, which Google served on Digital Envoy on March 25, 2005. Google was served with Digital Envoy's privilege log that same day. Digital Envoy's privilege log is attached hereto as Exhibit H.

15.   By letters dated March 25, April 13 and May 9, 2005, Google challenged Digital Envoy's privilege log as deficient. In addition to explaining the reasons why Google believed Digital Envoy's privilege log was deficient, Google, in its May 9, 2005 letter, indicated that it would seek *in camera* review of certain documents in the event Digital Envoy did not correct the identified deficiencies in its privilege log.

16.   On May 11, 2005, I received a letter from counsel for Digital Envoy (Timothy Kratz) indicating that that Digital Envoy was willing to submit the materials identified in its privilege log for *in camera* inspection so long as Google would submit the materials identified in *Google's* privilege log for *in camera* inspection. The letter made no attempt to explain the grounds on which Digital Envoy sought review of Google's documents and Google is not aware of any basis for such a review.

17.   Other than Mr. Kratz's May 11, 2005 letter, Digital Envoy made no effort to meet and confer regarding *in camera* review, and never provided Google with any grounds upon which it believed it could challenge Google's privilege log.

18.   Google has not received any RFC 822 header information for any of the email messages Digital Envoy has produced in the case.

1  I declare under penalty of perjury under the laws of the United States of America that the
2  foregoing is true and correct. Executed on June 1, 2005, at Palo Alto, California.

   　　　　　　　　　　　　　　　　　　　　　　　　　/s/ David H. Kramer
   　　　　　　　　　　　　　　　　　　　　　　　　　David H. Kramer