1  DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgr.com)
   DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
5
   Attorneys for Defendant/Counterclaimant
6  Google Inc.

7
                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9
                          SAN JOSE DIVISION
10

11
12  DIGITAL ENVOY, INC.,                )   CASE NO.:  C 04 01497 RS
                                        )
13          Plaintiff/Counterdefendant, )   **GOOGLE INC.'S**
                                        )   **SUPPLEMENTAL BRIEF IN**
14     v.                               )   **SUPPORT OF ITS MOTION FOR**
                                        )   **SUMMARY JUDGMENT**
15  GOOGLE INC.,                        )
                                        )
16          Defendant/Counterclaimant.  )
                                        )   Judge:  Honorable Richard Seeborg
17                                      )
                                        )
18  _____)

19
20
21
22
23
24
25
26
27
28

GOOGLE'S SUPPLEMENTAL BRIEF ISO ITS              C:\NrPortbl\PALIB1\DAG\2667767_1.DOC
MOTION FOR SUMMARY JUDGMENT
CASE NO. 04-01497 RS

By Order dated May 23, 2005, the Court directed the parties to supply supplemental briefs on the "sole issue of the *mens rea* required to sustain a claim for trade secret misappropriation." Order, May 23, 2005.

Trade secret misappropriation is an intentional tort. *PMC, Inc. v. Kadisha,* 78 Cal. App. 4th 1368, 1382 (2000); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.* 148 F. Supp.2d 1326, 1338 (S.D. Fla. 2001) (applying California law); *Hagen v. Burmeister and Associates, Inc.,* 633 N. W. 2nd 497, 503 (Minn. 2001) (interpreting Uniform Trade Secrets Act). As relevant in this case, misappropriation requires a showing that "[a]t the time of disclosure or use" of a trade secret the defendant "knew or had reason to know that [its] knowledge of the trade secret was . . . [a]cquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." Cal. Civ. Code § 3426.1(b)(2)(B)(ii).

In order to satisfy this *mens rea* requirement, the plaintiff must show that the defendant knew or should have known that its particular use of a supposed secret violated a known duty owed by the defendant to limit the secret's use. As the California Court of Appeal held in *PMC,* "[u]se of a trade secret without knowledge it was acquired by improper means does not subject a person to liability unless the person receives notice that its *use of the information is wrongful.*" 78 Cal. App. 4th at 1383 (emphasis added). In so holding, the court relied, in part, on comment (d) to section 40 of the Restatement (Third) of Unfair Competition, which explains that trade secret law protects only against "use or disclosure of the trade secret that the actor knows or has reason to know is wrongful." Restatements 3d of Unfair Comp. § 40, cmt. d. The contrary reading of the statute proposed by Digital Envoy – that liability attaches if the defendant knew or should have known that use of the information was somehow restricted, even if the defendant had no reason to know that its particular use was restricted – would recast trade secret misappropriation as a strict liability offense for any trade secret licensee. According to Digital Envoy, any unauthorized use, including even accidental use, would constitute misappropriation because the licensee knew that it was under *some* limitation. That result cannot be reconciled with the law that trade secret misappropriation is an intentional tort or with *PMC*'s holding that the plaintiff must prove that the

defendant knew or had reason to know that "its use of the information [was] wrongful." *Id.* at 1383.[1]

In the similar context of insurance bad faith, where disputes over contract language can give rise to tort claims, California courts have barred tort liability as a matter of law where an insurer has acted based upon a reasonable, if mistaken, interpretation of a contract. *American Cas. Co. v. Krieger*, 181 F.3d 1113, 1123 (9th Cir. 1999) (no bad faith as a matter of law where court found contract ambiguous and insurer's interpretation reasonable though erroneous); *Franceschi v. American Motorists Ins. Co.*, 852 F.2d 1217, 1220 (9th Cir. 1988) (same); *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992) (same as applied to surety on bond); *Opsal v. United Servs. Auto. Ass'n*, 2 Cal. App. 4th 1197, 1205-07 (1991) (overturning jury verdict on "bad faith" claim where court found, as a matter of law, that insurer's erroneous interpretation of policy was reasonable). California has thus already recognized the impropriety of imposing tort liability on a party that acted based upon a reasonable but erroneous contractual interpretation. As the "reasonableness" standard controlling tort liability in the insurance context is akin to the "reason to know" standard imposed by California's Trade Secret Act, that same principle should apply here.[2]

---

[1] Digital Envoy also claims that the UTSA's authorization of attorneys' fees for "willful and malicious" misappropriation (Cal. Civ. Code § 3426.4) shows there must be a claim for the "lesser offense" of good faith misappropriation. That is incorrect. First, trade secret misappropriation encompasses not only acts known to be wrongful, but those the defendant merely had reason to know were wrongful. Second, the "willful and malicious" standard obviously requires more than willful conduct – it requires willful *and* malicious conduct. *See, e.g., Vacco Indus. v. Van Den Berg*, 5 Cal. App. 4th 34, 54 (1992). The attorneys' fees provision in no way implies that good faith behavior can give rise to liability for trade secret misappropriation.

[2] California courts are particularly solicitous of the insurer-insured relationship, describing it as a "special" one, akin to a "fiduciary" relationship. *See, e.g., State Farm Fire & Cas. Co. v. Superior Court,* 216 Cal. App. 3d 1222, 1226-27 (1986)("The relationship between an insurer and an insured is akin to a fiduciary relationship.") If California is willing to relieve quasi-fiduciaries of tort liability where they act based upon a reasonable, but erroneous contract interpretation, it should be at least as willing to do the same in the context of an ordinary commercial relationship.

GOOGLE'S SUPPLEMENTAL BRIEF ISO ITS
MOTION FOR SUMMARY JUDGMENT          -2-
CASE NO. 04-01497 RS

Google has found no court to ever have imposed trade secret liability on a party for using alleged secrets under a reasonable, good faith, but ultimately erroneous belief that such use was authorized by a license agreement.[3]  That is because a party cannot have "reason to know" that its use of a supposed secret is wrongful where it reasonably interpreted its license to authorize that use.  Moreover, in such circumstances, the licensor of the information can adequately protect itself through the terms of the parties' agreement and a claim for breach of contract.  There is no authority or policy justification for transmuting what should be a contract claim into an intentional tort where, as here, there is no evidence of a culpable state of mind.[4]  Even if Google's reasonable understanding of the contract is not ultimately validated, its innocent state of mind bars the imposition of liability for the intentional tort of trade secret misappropriation.[5]

---

[3] In fact, in the only cases Google could find on point, the D.C. Circuit went far further than the position Google advances here.  *See International Eng. Co, v. Richardson*, 512 F.2d 573, 578-79 (D.C. Cir. 1975); *Aktiebolaget Bofors v. United States*, 194 F.2d 145, 147 (D.C. Cir. 1951).  According to the D.C. Circuit, a trade secret licensee can *never* be held liable for tort in connection with alleged unauthorized use of licensed trade secrets. Rather, any claim against the licensee must sound in breach of contract. ("[O]ne who has lawfully acquired a trade secret may use it in any manner without liability unless he acquired it subject to a contractual limitation or restriction as to its use.  In the event a licensee uses the secret for purposes beyond the scope of the license granted by the owner he is liable for breach of contract, but he commits no tort, because the only right of the owner which he thereby invades is one created by the agreement of disclosure."); *see also Stanley Aviation Corp. v. United States*, 196 U.S.P.Q. 612, 618 (D. Colo. 1977) ("Whether the Government misused the confidential information it lawfully obtained under the contracts with Stanley is an issue of contract rather than tort law.")   Google does not contend that a trade secret licensee can never be held liable for misappropriation; merely that such liability cannot be imposed where the licensee acts based upon a reasonable, if mistaken, interpretation of the license.

[4] California's Supreme Court has repeatedly warned against what might be called the "tortification" of ordinary contractual relationships.  *See, e.g., Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co*. 47 Cal.App.4th 464, 478 (1996) ("[F]undamentally, [the plaintiff] complains that [the defendant] terminated the parties' bonding relationship without good cause.  Such a complaint sounds in contract, not tort.  A contracting party's unjustified failure or refusal to perform is a breach of contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally affected the promisee's business."); *Foley v. Interactive Data Corp*.,  47 Cal.3d 654, 683-84 (1988) ("The distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas.   Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate 'social policy;'" tort remedies not available for breach of implied covenant in employment contract).

[5] Google understands the Court, by its Order directing the parties to submit briefs on the "sole issue of the *mens rea* required to sustain a claim for trade secret misappropriation," to have
(continued...)

## CONCLUSION

From the start, this action has been a contract dispute masquerading as a trade secret claim. Having chosen to plead an intentional tort claim, Digital Envoy must live with the consequences. To survive Google's motion for summary judgment, Digital Envoy was required to offer evidence sufficient to raise a triable issue of fact on whether Google knew or had reason to know that its use of Digital Envoy's data in the AFC program was wrongful. There is no evidence to suggest Google knew its use was wrongful (even assuming it was), and Google's reasonable interpretation of the parties' License Agreement establishes as a matter of law that Google did not have constructive knowledge that its conduct was wrongful. Because Digital Envoy did not and cannot raise a triable issue of fact with respect to this central element of its trade secret misappropriation claim, Google is entitled to summary judgment on the claim.

Dated: June 3, 2005                              WILSON SONSINI GOODRICH & ROSATI

By:  /s/ David H. Kramer
         David H. Kramer

Attorneys for Defendant/Counterclaimant
Google Inc.

---

(...continued from previous page)
requested briefs addressing *only* the governing legal standard, and thus has refrained from addressing the evidence previously offered by the parties in connection with the motion.

GOOGLE'S SUPPLEMENTAL BRIEF ISO ITS              -4-
MOTION FOR SUMMARY JUDGMENT
CASE NO. 04-01497 RS