Digital Envoy Inc., v. Google Inc.,                                Doc. 185

P. CRAIG CARDON, Cal. Bar No. 168646
BRIAN R. BLACKMAN, Cal. Bar No. 196996
KENDALL M. BURTON, Cal. Bar No. 228720
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California  94111-4106
Telephone:     415-434-9100
Facsimile:     415-434-3947

TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
LUKE ANDERSON (Admitted *Pro Hac Vice*)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5500
Facsimile:  404.443.5751

Attorneys for DIGITAL ENVOY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC.,<br><br>        Plaintiff/Counterdefendant,<br><br>  v.<br><br>GOOGLE, INC.,<br><br>        Defendant/Counterclaimant. | Case No. C 04 01497 RS<br><br>**DIGITAL ENVOY'S SUPPLEMENTAL BRIEF IN OPPOSITION TO GOOGLE'S MOTION FOR SUMMARY JUDGMENT**<br><br>The Honorable Richard Seeborg |

## I. The Civil Code Only Requires Knowledge That A Duty Or Limitation Exists.

Digital Envoy contends that Google has misappropriated its trade secrets as precisely described in Cal. Civ. Code § 3426.1(b)(2)(B)(ii).

> (b)"Misappropriation" means … (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: … (B) At the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: … (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use…;

The *only* knowledge required by this unambiguous CUTSA provision is that at the time of the disclosure or use, the party "knew or had reason to know" the trade secret was acquired along with a duty to maintain its secrecy or limit its use. The statute does not require the party know the precise parameters of that duty – ***only that such a duty exists.*** After the duty is found, which is conclusively established here[1], the sole remaining question under the statute to determine liability is: "Did the acquirer have permission from the owner to use the trade secret in the manner he or she did?" The Court has already ruled this issue to be for the jury to decide.

It is well-established that if Google's use of Digital Envoy's database in AdSense is found to be beyond the scope of the License Agreement, Google is also liable for misappropriation under

---

[1] Google smartly dodges discussion of the fact inquiry required once the standard is established by the Court. Under either standard, Google is not entitled to summary judgment on the issue, where: (1) the Agreement itself contained over **10** express limitations on use of the trade secret, (2) the negotiations between the parties make it evident that they discussed, and Google *knew or should have known*, that the parties intended to limit Google's rights to use the trade secrets in several applicable ways, (3) Google knew if it used the trade secret in applications that were provided to third parties such as it did it would have to get another license from Digital Envoy or refer the third party to Digital Envoy, (4) Google during its course of performance before any controversy arose (which is given great weight and will, when reasonable, be adopted and enforced by the court -- *Warner Constr. Corp. v. City of Los Angeles* (1970) 2 Cal.3d 285, 296-97) expressly declared its understanding of use limits which were violated by Google in its use of the trade secret in AdSense, and (5) Google has not a shred of evidence and has advanced no argument pertaining to its state of knowledge at the time the disclosure was made, in part because the persons testifying to their good faith belief (and whose credibility on that issue would be for the jury to determine anyway) were not involved in the development of AdSense -- a vastly different product that came into existence two years after that license was executed.

- 1 -

W02-SF:5BB\61456494.1

DIGITAL ENVOY'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MTN. FOR SUMMARY JUDGMENT.

(b)(2)(B)(ii). (*see*, *e.g.* John Gladstone Mills, Donald C. Reilly & Robert C. Highley, Patent Law Fundamentals, § 4:10 (2nd Ed. 2005)(liability for misappropriation can be predicated either upon a breach of contract or commission of a tort).[2]

## II. Google Advocates The Higher Penal Code Standard.

Though not found in any case applying California law, Google makes the argument (analogizing to "bad faith" law) that ill will or "recklessness" as to the ultimate legality of the conduct is required to establish a trade secret violation.[3] Google argues that as long as its "for-litigation" interpretation of the license was "reasonable", it is insulated from tort liability, even if that "reasonableness" is determined by the Court after the fact. This is not the law. The license

---

[2] *See also* Restatement of Torts, § 757, Comment on Clause (b) ("A breach of confidence under the rule stated in this Clause may also be a breach of contract which subjects the actor to liability under the rules stated in the Restatement of Contracts. But whether or not there is a breach of contract, the rule stated in this Section subjects the actor to liability if his disclosure or use of another's trade secret is a breach of the confidence reposed in him by the other in disclosing the secret to him."); 1 Melvin F. Jager, Trade Secrets Law, § 4.1 (2004)(breach of license agreement involving trade secrets give rise to a tort action for misappropriation as well as breach of contract); W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, Prosser and Keeton on Torts, p. 1022 (5th Ed. 1984)(misappropriation can result from "breach of confidence or contract, or even by industrial espionage, or other improper means."); Note, *"Developments in the Law – Competitive Tort"* 77 Harv.L.Rev. 947, 949 (1964) (disclosure or use of trade secret "in violation of a contract is presumptively wrongful".); Hilton, William E., *"What Sort of Improper Conduct Constitutes Misappropriation of Trade Secrets"*, 30 IDEA 287, 293 (1990)(" if the alleged misappropriator breaches a contract in using or obtaining the trade secret, then the alleged misappropriator's conduct will be deemed improper resulting in a finding of misappropriation."); Restatement (Third) of Unfair Competition § 40, Comment a ("The existence of an express or implied-in-fact contract protecting trade secrets does not preclude a separate cause of action in tort under the rules in this Section.")

[3] Google also relies on the general platitude that trade secret misappropriation is an intentional tort. But the intent required here is simply that Google intended that it use the Digital Envoy technology in its AdSense program. That is the factual consequence of Google's action. The legal consequence of that use being outside of the limited license is not the intent required by the trade secret statute. *See e.g.* Restatement of Torts 2nd, § 8A (2005)(and comments thereto). A party needs only intentionally "use" or "disclose" the trade secret in order to be liable under CUTSA. It need not do so with the knowledge that it is breaching its duty to maintain its secrecy or limit its use. In this regard, subsection (b)(2)(B)(ii) is similar to the intentional tort of trespass. To be liable for trespass, a party need not know it is crossing onto another's property – he need only cross onto another's property of his own volition. *See Miller v. National Broadcasting Company* (1987) 187 Cal.App.3d 1463, 1480, (trespass actions are "characterized as intentional torts, regardless of the actor's motivation.").

provides a safe harbor.[4]  Google knows that the license is limited, so if it operates outside of that license, it is unprotected and subject to tort liability.  This is the language of the statute.

Google's characterization of this issue as "*mens rea*" underscores its attempt to impose greater standards than required for civil liability under the CUTSA.  The criminal trade secret statute, Cal. Penal Code § 499c (2005) defines a trade secret identically to the civil code.  The difference between the two is the *mens rea* required.  Cal. Penal Code § 499c(b) expressly identifies the intent required:  "Every person is guilty of theft who, with intent to deprive or withhold the control of a trade secret from its owner, or with an intent to appropriate a trade secret to his or her own use or to the use of another, does any of the following…".  This is the same standard of intent proposed by Google to acquire civil liability.  But the very precise language of required specific intent present in the criminal statute is conspicuously absent from the civil trade secret statute.[5]  If the California legislature had intended to make "bad faith" an element of §(b)(2)B)(ii) of CUTSA, it would have included language similar to that found in the criminal statute.  That it did not is clear evidence that Google's position is incorrect.

Google relies on *PMC, Inc. v. Neil Kadisha* (2000) 78 Cal.App.4th 1368, which involved different CUTSA provision and provides no support for Google's position.  In *PMC,* the defendants were alleged to have acquired the co-defendant corporation while having knowledge that the corporation had misappropriated trade secrets. *PMC,* 78 Cal.App.4th at 1372.  Liability

---

[4]  "Bad faith" law is as simply distinguished as its nomenclature.  It relies on the creation of rights and obligations from a contract.  But with a license to intellectual property rights, the situation is reversed.  The right to prevent others from using one's trade secrets and the obligation not to use another's trade secrets exist before the license.  The license merely creates a permissible use or safe harbor.  A license, unless it expressly states so, is not a waiver of rights and obligations that existed prior to the license and that continue to exist outside of the scope of the license.

[5]  As expected, this specific intent standard is found in the case law interpreting the criminal statute, but even Google has not found it in any case law interpreting the civil one. *See People v. Davis* (Cal. 1998) 19 Cal.4th 301, 305 (stating that to convict someone of larceny he or she must have had an "intent to steal . . . without a good faith claim of right, to permanently deprive the owner of possession of the property"); *Kincaid v. Sears, Roebuck & Co.* (1968) 259 Cal.App.2d 733, 743  (stating "[i]n larceny there must exist a specific intent to deprive the owner of his property").

under CUTSA was premised under Cal. Civ. Code § 3426.1(b)(1) or (b)(2)(B)(i) and is therefore irrelevant to the analysis in this case. These CUTSA provisions deal with situations where a third party acquires a trade secret from the original misappropriator. In these type situations, the third party is liable only if he knows or has reason to know the trade secret was acquired by improper means. In *PMC,* the CUTSA claims against the third parties were dismissed because the plaintiffs could produce no evidence that the defendants knew or had reason or had reason to know the trade secrets were acquired through improper means.[6]

### III.     The Ninth Circuit Has Rejected *Aktiebolaget Bofors.*

Google also cites to the D.C. Circuit in support of its position -- *Aktiebolaget Bofors v. United States* (D.C. Cir. 1951) 194 F.2d 145, 148. This D.C. Circuit case holds that a trade secret licensee can never be liable for trade secret misappropriation, but only for breach of contract. But that reasoning was expressly rejected in this Circuit in *S.O.S., Inc. v. Payday, Inc.* (9th Cir. 1989) 886 F.2d 1081, 1088-89, 1090 (rejecting application of *Aktiebolaget Bofors*); *see also Microsoft Corp. v. Very Competitive Computer Prods. Corp.* (N.D. Cal. 1987) 671 F. Supp. 1250, 1256-57 (expanding rejection of *Aktiebolaget Bofors* to copyright context).

---

[6]   *PMC* certainly does not support Google's position that it had a reasonable belief in its interpretation at the time it began using Digital Envoy's technology in AdSense. *See PMC,* 78 Cal.App.4th at 1372 (once aware of question of legitimacy because of purchase price, could only avoid liability by reasonably relying on information, reports or expert opinions – unreasonable reliance conferred liability). Here, even under Google's interpretation of the statute, it was on notice because its use arose from a limited license. Accordingly, to use the technology as it did it had to reasonably come to that conclusion. There is no evidence – no reports, no legal opinions, no expert analysis – that it took any steps to justify its (after the fact) conclusion that this use was included in the license. *See also e.g. In re Aimster Copyright Litig.* (7th Cir. 2003) 334 F.3d 643, 650-651 ("Willful blindness is knowledge, in copyright law (where indeed it may be enough that the defendant should have known of the direct infringement, as it is in the law generally.") (citations omitted).

W02-SF:5BB\61456494.1

-4-

DIGITAL ENVOY'S SUPP. BRIEF IN OPPOSITION TO GOOGLE'S MTN. FOR SUMMARY JUDGMENT.

### IV. Whether Google Was Aware Of Any Limitations Is For The Jury.

Lastly, Google's suggestion that it can establish that it did not know or have reason to know that it was prohibited from using the trade secrets in AdSense on self serving affidavits (which directly contradicted statements by these same witnesses made before this controversy arose) and the Court's conclusion that the License Agreement is ambiguous makes no sense. Specifically, the Court has simply left the determination of the intention of the parties for purpose of contract construction to the jury. The jury can conclude, as the Court has determined to be reasonable, that the parties intended for uses such as AdSense to be prohibited. If so, then even under Google's *mens rea* standard, the jury can (and in fact necessarily should) conclude that Google knew and certainly had reason to know that its use of the trade secret in AdSense was prohibited by the License Agreement. Google's assertion that it thought it had unlimited use rights is not only facially incredible but establishes nothing since those witnesses had nothing to do with the event of misuse. Accordingly, Google's latest attempt to leverage inapplicable principles of law to deprive Digital Envoy of appropriate remedies for Google's improper actions should be rejected.

DATED: June 6, 2005

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By     /s/
P. CRAIG CARDON
BRIAN R. BLACKMAN

TIMOTHY H. KRATZ (*Pro Hac Vice* To Be Applied For)
LUKE ANDERSON (*Pro Hac Vice* To Be Applied For)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5706
Facsimile: 404.443.5751

Attorneys for DIGITAL ENVOY, INC.