# HOLMES DECLARATION EXHIBIT A

Dockets.Justia.com

1  P. CRAIG CARDON, Cal. Bar No. 168646
   BRIAN R. BLACKMAN, Cal. Bar No. 196996
2  KENDALL M. BURTON, Cal. Bar No. 228720
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3  Four Embarcadero Center, 17th Floor
   San Francisco, California  94111-4106
4  Telephone:     415-434-9100
   Facsimile:     415-434-3947
5

6  TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
   LUKE ANDERSON (Admitted *Pro Hac Vice*)
7  MCGUIRE WOODS, L.L.P
   1170 Peachtree Street, N.E., Suite 2100
8  Atlanta, Georgia 30309
   Telephone: 404.443.5500
9  Facsimile: 404.443.5751

10 Attorneys for DIGITAL ENVOY, INC.

11                 UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                    SAN JOSE DIVISION

14 DIGITAL ENVOY, INC.,                    Case No. C 04 01497 RS

15          Plaintiff/Counterdefendant,    **DIGITAL ENVOY'S REPLY BRIEF IN**
                                           **SUPPORT OF MOTION TO COMPEL**
16     v.                                  **FURTHER RESPONSES TO ITS FIRST**
                                           **AND SECOND SETS OF**
17 GOOGLE, INC.,                           **INTERROGATORIES AND ITS FIRST**
                                           **AND SECOND SETS OF REQUESTS FOR**
18          Defendant/Counterclaimant.     **PRODUCTION OF DOCUMENTS TO**
                                           **GOOGLE, INC.**
19
                                           Date:          June 15, 2005
20                                         Time:          9:30 a.m.
                                           Courtroom:     4, 5th Floor
21
                                           The Honorable Richard Seeborg
22

23

24

25

26

27

28

## I.    INTRODUCTION

At this stage of the case, there is no question that Digital Envoy has stated valid claims against Google for misappropriation of trade secrets and breach of contract.  These claims have survived summary judgment and are proceeding to trial.[1]  The essence of these claims is that Google exceeded the scope of the License Agreement by sharing Digital Envoy's trade secrets with third parties. These third parties include both advertisers in Google's Ad Network and web sites with which Google contracted to place advertisements.  Google has achieved significant revenues from its Ad Network due, in part, to its unauthorized use of Digital Envoy's geo-targeting technology.  Therefore, there should be no question that information related to Google's relationships with these third parties is relevant to Digital Envoy's claims.  This information would provide Digital Envoy the identities of these third parties and the source and nature of Google's advertising revenue – information to which Digital Envoy is entitled under the Federal Rules and which is necessary for Digital Envoy's damages calculation.  This information is not only relevant, but critical, to Digital Envoy's claims and should be produced.

Google, through its self-serving characterization and analysis of the information sought by the discovery requests, essentially argues that Digital Envoy does not really need the information it seeks, while denying Digital Envoy its right to assess the information for itself.  Google is the sole possessor of the information sought by the discovery requests, and Digital Envoy should not be required to take "Google's word for it" about what the information would reveal.  Google's position seems to be that Digital Envoy is entitled to no discovery at all.  As set forth below, Digital Envoy has carried its burden in establishing that the discovery requests call for information that is relevant to its "claims and defenses," and there is no reason for Google to continue to obstruct the discovery process.

---

[1]  Because the essence of Google's opposition to Digital Envoy's Motions to Compel are the same, this Reply Memorandum addresses the arguments contained in both Google Inc.'s Opposition to Digital Envoy's Motion to Compel Further Responses to Its First and Second Sets of Interrogatories and Its First and Second Sets of Requests for Production of Documents to Google, Inc. and Google Inc.'s Opposition to Digital Envoy's Motion to Compel Further Responses to Requests for Production of Documents Nos. 3, 14, 18, 19 and 26.

- 1 -

Case 5:04-cv-01497-RS    Document 189    Filed 06/08/2005    Page 3 of 16

1  Google's claims of burdensomeness likewise should be rejected. (Google is, after all, the

2  self-billed organizer of the world's information.)  Just because this case necessitates the review

3  and production of large quantities of documents, there is no reason to deny Digital Envoy the

4  discovery to which it is rightfully entitled.  Balancing the needs of the case, the amount in

5  controversy, and the potential for finding relevant material, mitigate in favor of requiring Google

6  to produce the information requested.  Google's broad and non-specific objections on the grounds

7  of burdensomeness are insufficient to justify its withholding of relevant documents, properly

8  sought in discovery.  Digital Envoy's motions to compel should be granted.

## II.    ARGUMENT AND AUTHORITY

**A.    The Federal Rules Contemplate Broad Discovery of Relevant Information.**

11  Federal Rule of Civil Procedure 26(b) provides that: "Parties may obtain discovery

12  regarding *any matter, not privileged, that is relevant to the claim or defense of any party. . . ." See*

13  Fed. R. Civ. P. 26(b).  In interpreting the federal rules, "[t]he Supreme Court has consistently held

14  that the discovery rules should be accorded a 'broad and liberal scope.'" *Contratto v. Ethicon,*

15  *Inc.*, 225 F.R.D. 593, 595 (N.D. Cal. 2004) (citing *Schlegenhauf v. Holder*, 279 U.S. 104, 114-115

16  (1964)).  Thus, "[u]nless information is specifically privileged or otherwise protected by statute, it

17  is discoverable under Rule 26(b)(1)." *Contratto*, 225 F.R.D. at 595.

18  Under this liberal standard, Google is in no position to deny Digital Envoy the discovery it

19  seeks.  Digital Envoy's discovery requests directly relate to Digital's Envoy's claims in this case –

20  including both to the *fact* of Google's unauthorized use of Digital Envoy's trade secrets and the

21  *extent* of Digital Envoy's damages due to Google's unauthorized use.  Therefore, the Court should

22  compel production of the requested information and documents.

W02-SF:5BB\61456956.1

REPLY I/S/O MTN. TO
COMPEL FURTHER RESPONSES

**B.    The Discovery Digital Envoy Seeks Is Relevant to and Necessary Its Claims in This Case.**

    **1.    Digital Envoy has expressly alleged that Google's unauthorized use of Digital Envoy's trade secrets in the AdSense for Search program is a breach of the License Agreement.**

Digital Envoy has properly alleged that Google's use of Digital Envoy's database technology in its AdSense programs violates the License Agreement.  In its Amended Complaint, Digital Envoy alleges:

> At the time of the Agreement, Google had just begun to sign agreement with other Internet companies to power search services on those companies' sites.  However, Google did not supply <u>advertising</u> services to third party sites at that time, had not contemplated providing such services and did not disclose to Digital Envoy its intention to enter this business.

*See* Amended Complaint, ¶ 35 (emphasis in original).  In addition, Digital Envoy expressly *describes* how (i) Google's providing advertisements on third party websites to which it was providing web search services (the so-called AdSense for Search Program or "AFS") and (ii) Google's syndication of advertisements on third party sites (the so called "AdSense for Content Program" or "AFC") both violate License Agreement.  *See id.*, ¶¶ 37 – 39 (under the bolded heading "Google Misuse of Digital Envoy's Technology").

Repeatedly throughout the Amended Complaint, Digital Envoy refers generally to Google's "AdSense Program."  Nowhere in the Amended Complaint does Digital Envoy limit its allegations to AdSense for Content.  In fact, nowhere in the Amended Complaint does Digital Envoy even distinguish between the two programs.  Digital Envoy plainly and explicitly alleges that Google's incorporation of Digital Envoy's technology into "AdSense" – *all of AdSense* – constitutes a violation of the License Agreement.

In its Opposition, Google takes the remarkable position that the Amended Complaint only addresses Google's AdSense for Content program, and that Digital Envoy has made no allegations

-3-

REPLY I/S/O MTN. TO
COMPEL FURTHER RESPONSES

1    concerning AdSense for Search[2].  Google also contends that it has been proceeding in this

2    litigation assuming that Digital Envoy's claims relate only to AdSense for Content, and it would

3    have proceeded "differently" had it known otherwise.  *See* Declaration of David H. Kramer in

4    Support of Google Inc.'s Opposition to Digital Envoy's Motions to Compel ("Kramer Dec."), ¶ 6.

5    Google's position is both untenable and disingenuous.  From the outset of this litigation, Digital

6    Envoy even made clear that it considers *any sharing of its database information with third-parties*

7    (other than those third party advertisers in AdWords) to be a violation of the License Agreement.

8    *See, e.g.*, Amended Complaint, Prayer for Relief ("and for an injunction prohibiting Google, Inc.

9    from suing Digital Envoy's proprietary technology and information beyond the scope of the

10   agreement specifically including supplying geographically targeted advertisements to third party

11   websites").  Clearly, AdSense for Search has been a part of this litigation from the outset.

12          Google seems to completely misunderstand the interplay between notice pleading and the

13   scope of discovery.  "A claimant need not 'set out in detail the facts upon which he bases his

14   claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Rather, the complaint need only provide the

15   defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*

16   One of the "basic philosophies of the federal rules" is "simplicity of procedure."  5 Wright &

17   Miller, Federal Practice and Procedure § 1182, at 12 (2d ed.1990).  "[T]echnical forms of pleading

18   are not required." *Id.* § 1202, at 68; *see also* Fed. R. Civ. P. 8(e)(1).  Instead, Rule 8 is "designed

19   to discourage battles over mere form of statement and to sweep away the needless controversies

20   which the [predecessor] codes permitted" so that parties can proceed directly and more efficiently

21   to resolving cases on their merits.  5 Wright & Miller, § 1201, at 67 n.11 (quoting Fed. R. Civ. P. 8

22   advisory committee's note (1955 Report)).  The modern rules thus dramatically ease the pressure a

23   plaintiff may feel to include particularized factual allegations in its complaint.

24          Federal notice pleading has strong implications on the proper scope of discovery.  For

25   instance, certain issues in a case may be relevant, and therefore discoverable, even if they are not

26   _____

[2] This is even more remarkable given Google's previous position that AdSense and AdWords

27   were indistinguishable in the way they operate.  Clearly, Google has adopted a tactic of making
     distinctions without differences and implying similarities where only dissimilarities exist.

28

-4-

1   expressly alleged in a complaint. "Simplified notice pleading standard relies on liberal discovery

2   rules and summary judgment to motions to define disputed facts and issues and to dispose of

3   unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002); *see also Edwards*

4   *v. County of San Diego*, No. 03-55832, 2005 WL 487185, at 8 (9th Cir. May 23, 2005) (citing

5   *Swierkiewicz* for the proposition that notice pleading relies on liberal discovery rules, and not fact

6   intensive pleading, to frame issues for trial).[3]

7        Google is attempting to impose a code pleading standard into federal practice where it does

8   not belong. Digital Envoy's claims for misappropriation of trade secrets and breach of contract

9   are proceeding to trial. It is indisputable that allegations related to AdSense for Search form part

10  of the basis for Digital Envoy's claims. Much of the information requested relates to liability

11  predicated upon or damages arising from Google's activities related to AdSense for Search.

12  Accordingly, the discovery related to AdSense for Search is entirely relevant and should be

13  compelled.

14        **2.        Information Related To Communications Between Google And Its Advertisers**

15             **Are Relevant For Numerous Reasons.[4]**

16        Google contends that Digital Envoy's theory that third parties would build their own

17  advertising infrastructure is "preposterous." *See* Opposition, at 7. Indeed, Digital Envoy currently

18  has many web site customers who *have* built their own infrastructures, and these customers pay

19  thousands or even tens of thousands of dollars per month just ***to use geo-targeting for ad***

20  ***targeting***. *See* Declaration of Robert Friedman in Support of Digital Envoy, Inc.'s Motions to

21  Compel ("Friedman Dec."), ¶2. ~~Indeed, what is preposterous is that Google can claim that web~~

22  [3] *See Castillo v. Norton*, 219 F.R.D. 155, 160 (D. Ariz. 2003) (citing *Swierkiewicz* and holding
    that notice pleading standard relies on liberal discovery rules and summary judgment to define
23  disputed facts); *see also Thompson v. Department of Housing and Urban Development*, 199
    F.R.D. 168, 172 (D. Md. 2001) (holding that "while pleadings may be important" in determining
24  what discovery is relevant, "it would be a mistake to argue that no fact may be discovered unless it
    directly correlates with a factual allegation in the complaint or answer. Such a restrictive approach
25  . . . would undoubtedly do a disservice to the requirement of notice pleading in Rule 8.").

26  [4] Google, in objecting to Digital Envoy's third party subpoenas, represented to the Court that the
    Digital Envoy should follow "proper procedure" and request the information first from Google.
27  Now that Digital Envoy has done so, Google refuses to produce the information. Google cannot
    have it both ways.

28

-5-

1  ~~sites would not build their own ad networks, when~~ *~~Google itself built its own ad infrastructure~~*

2  ~~solely for use on www.google.com without any thought of introducing third-party advertising~~ *~~and~~*

3  *~~licensed Digital Envoy's technology~~* ~~to geo-target advertisements on Google.com!~~ *~~See id.,~~* ~~¶3.  In~~

4  ~~addition, companies such as DoubleClick and Accipiter have thousands of customers who deploy~~

5  ~~enterprise ad servers (with geo-targeting options) to web sites in order for these sites to do their~~

6  ~~own ad serving.~~ *~~See id.,~~* ~~¶5.~~  In many of these relationships Digital Envoy gets paid each time a

7  customer activates geo-targeting in these ad servers, receiving as much as 72% of the fees paid for

8  geo-targeting (earning revenue in the tens of thousands of dollars per year per web site, for

9  relatively mid-ranged web sites). *See id.,* ¶6.  Additionally, Digital Envoy gets paid on a "CPM",

10  or per look up basis, by many ad networks, and these fees range from $0.10 per CPM, $500 per

11  million look ups, $750 per 250,000 look ups of IP addresses, or $4,000 per billion look ups of IP

12  addresses. *See id.,* ¶7.  ~~To the extent that AdSense was deployed on millions of web sites, these~~

13  ~~sites were unlikely to deploy ads from ad networks with which Digital Envoy has revenue share~~

14  ~~deals (in fact, the AdSense agreements may have prohibited using other ad networks or deploying~~

15  ~~other ads), and this would cause great damage to Digital Envoy's partners and Digital Envoy~~

16  ~~itself.  Additionally, to the extent that AdSense would allow web sites to deploy highly-targeted~~

17  ~~ads, these web sites would have no need to develop their own ad network, or would spend less to~~

18  ~~do so, thereby limiting Digital Envoy's market for geo-targeting.~~[5]

19  ~~Furthermore, because Google admits that it "licenses" AdSense to third parties, Digital~~

20  ~~Envoy requires copies of these licenses to ascertain for itself whether its technology is included~~

21  ~~within them (and thus, "licensed" to third parties in violation of the clear prohibition in the~~

22  ~~Licensing Agreement).~~ *~~See~~* ~~Friedman Dec., ¶11 and Ex. C.  Digital Envoy needs the~~

23  ~~communications related to these licenses to understand how Google represented the geo-targeting~~

24

25

_____

26  ~~[5]  AdSense is deployed on 60% of the Top 100 properties on the Internet, properties that typically
license Digital Envoy's technology for thousands or tens of thousands of dollars per month each.~~

27  *~~See~~* ~~Friedman Dec., ¶4.~~

28

1    ~~features to these customers and the extent to which geo-targeting affected those customers'~~

2    ~~decision to deploy AdSense.~~

3          Google contends that if Google's third-party sites could not get geo-targeting from Google,

4    they would get geo-targeting from another ad network.  Opposition at 6.  But if these web sites got

5    it from another ad network, Digital Envoy would then benefit: *First*, many of Digital Envoy's

6    agreements with ad networks include revenue share or pay-per-look up provisions in many cases.

7    *See* Friedman Dec., ¶7.  ~~*Second*, if Google's wrongful acts allowed it to prosper and take "millions~~

8    ~~of web sites" (Google's own characterization) off the market, these other ad networks would have~~

9    ~~less financial ability to pay for Digital Envoy's technology (and less of a need for it).  In many~~

10   ~~cases, Digital Envoy supplies geo-targeting directly to individual web sites (its customers include~~

11   ~~many of the largest properties on the Internet – such as AOL, CNN.com, InfoSpace, CNet,~~

12   ~~Disney.com, ESPN.com, ABCNews.com, Guardian UK), many of whom have developed their~~

13   ~~own internal ad networks and would without acquiring geo-targeting capabilities from third party~~

14   ~~ad networks).  *See id.*, ¶9.  Because many of the largest web sites received geo-targeted ads from~~

15   ~~Google, in violation of the License Agreement, they are unwilling to buy it directly from Digital~~

16   ~~Envoy, or, instead, they would purchase it from Digital Envoy at a reduced price because a large~~

17   ~~portion of their need was already being met by Google.[6]~~

18   ~~Google operates a pay-per-click business model with its advertisers.  Each agreement it has~~

19   ~~with different advertisers has varying terms.  Digital Envoy therefore needs to discover how much~~

20   ~~each of Google's advertisers paid Google in order to calculate the amount of damages and whether~~

21

22

23   ~~[6]  For example, Ask Jeeves, a Digital Envoy customer, has stated "Just by virtue of our
relationship with Google, we benefit from their improvements with AdWords in the local space,"
said Lanzone.  "They've done a lot of work in geotargeting, and we are recipients of that."  Under~~

24   ~~Ask Jeeves' license agreement, it is only entitled to use Digital Envoy's technology for limited
purposes (and specifically not for ad targeting, the most lucrative use).  Obviously, companies~~

25   ~~such as Ask Jeeves would have very little need to purchase geo-targeting from Digital Envoy for
Ad targeting purposes if it was already getting it from Google, due to Google's misappropriation~~

26   ~~of Digital Envoy's trade secret.  The Ask Jeeves deal alone was valued at $100 million by Google
according to its public statements and Digital Envoy received $0 as a result of this relationship~~

27   ~~and, in fact, was damaged through its lost business opportunity.  *See* Friedman Dec., ¶8.~~

28

-7-

1  ~~the individual advertisers elected geo-targeting at all. Without this information, Digital Envoy has~~

2  ~~no way of knowing which (and how many) of Google's advertisers geo-targeted through Google.~~

3  ~~Further, documents related to the identity of Google's advertisers are relevant on a host of~~

4  ~~other issues. For example, Digital Envoy wants to discover, from each of these advertisers, how~~

5  ~~important the availability of geo-targeting was in their decision to advertise with Google. Digital~~

6  ~~Envoy needs to discover how Google marketed Digital Envoy's geo-targeting technology — i.e.,~~

7  ~~did Google describe this as "sharing" the technology with the advertisers? Digital Envoy needs to~~

8  ~~know what other targeting attributes Google offered its potential advertisers in order to balance the~~

9  ~~importance of geo-targeting relative to other targeting technologies. Digital Envoy also needs~~

10  ~~these documents to determine which, if any, of Google's advertisers were actual or potential~~

11  ~~clients of Digital Envoy.~~ Accordingly, this Court to compel Google to respond to the following

12  discovery requests: Requests for Production Nos. 3, 14, 22, 23, 24 and 25 and Interrogatory No. 5.

13  **C.      Digital Envoy's Discovery Requests are Relevant to Its Damages Claims.**

14  Google conveniently caricatures and misrepresents the bases for Digital Envoy's damages

15  in its effort to obstruct the discovery process. California's enactment of the Uniform Trade

16  Secrets Act ("USTA") recognizes the inherent difficulty for a plaintiff to ascertain and prove

17  damages resulting from the misappropriation of its trade secrets and, thus, provides multiple

18  avenues for recovery to serve the goal of making the plaintiff whole. *See Telex Corp. v. Int'l Bus.*

19  *Machines Corp.*, 510 F.2d 894, 931 (10th Cir. 1975) (recognizing that underlying purpose of

20  USTA's damage provisions is to make the plaintiff whole and awarding damages for unjust

21  enrichment as well as compensatory damages); *cf. Computer Assocs. Int'l, Inc. v. American*

22  *Fundware, Inc.*, 831 F. Supp. 1516, 1518 (D. Colo. 1993) (recognizing that measure of damages

23  for misappropriation of trade secrets can be elusive). Specifically, the California Trade Secrets

24  Act ("Section 3426.3") permits the following recovery:

25        (a)    A complainant may recover damages for the actual loss caused by
     misappropriation. A complainant may also recover for the unjust enrichment

26               caused by misappropriation that is not taken into account in computing damages for
     actual loss.

27

28

-8-

REPLY I/S/O MTN. TO
COMPEL FURTHER RESPONSES

1      (b)    If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period

2               of time use could have been prohibited.

3      (c)    If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a)

4               or (b).

5   *See* Cal. Civ. Code § 3426.3; *see also Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449,

6   452 (2d Cir. 1998) (recognizing that California law permits recovery of damages measured either

7   by the plaintiff's losses or by the profits unjustly received by the defendant). Digital Envoy's

8   discovery requests seek information from Google that is directly relevant to these statutorily

9   permitted bases of recovery.

10        Google attempts to thwart Digital Envoy's efforts to prove its case by contending that

11   Google's information will be of limited value to Digital Envoy's in establishing its losses.[7]

12   Opposition at 5. For example, Google contends that its customers would not have developed their

13   own "advertising infrastructure" and, thus would not need Digital Envoy's geo-targeting

14   capabilities. Yet, Google provides no evidence to support this bald contention. ~~Indeed, as~~

15   ~~described above, Google itself, before it achieved massive profitability, licensed Digital Envoy's~~

16   ~~geo-targeting technology to do precisely that which it contends no other web site would. *See*~~

17   ~~Friedman Dec., ¶3.~~ Google's incredulity aside, every web site with which Google shared Digital

18   Envoy's geo-targeting technology was a potential licensee of Digital Envoy. Google also ignores

19   (or attempts to hide) the probability that Google's unauthorized provision of Digital Envoy's

20   technology to "hundred of thousands" of web sites significantly and detrimentally impacted the

21   market for Digital Envoy's technology to other advertising networks – all potential licensees of

22   Digital Envoy's technology. Therefore, information related to Google's marketing efforts and

23   business relationships with third-party web sites is plainly relevant to the question of how

24   Google's misappropriation affected Digital Envoy's marketing opportunities to the individual web

25

26   [7] Early on in the litigation, the Court denied Google's motion to bifurcate contract interpretation discovery from damages discovery. Nevertheless, Google's refusal to provide discovery on the

27   damages issues amounts to little more than an attempt at "self-help," by continuing to withhold what the Court deemed a proper subject matter for discovery.

28

-9-

REPLY I/S/O MTN. TO
COMPEL FURTHER RESPONSES

1    sites or to intermediary advertising networks.  The Court should not accept Google's self-serving

2    characterization and analysis of evidence, which Digital Envoy has never seen, because Google

3    refuses to produce it in discovery.

4            By devoting virtually its entire critique of Digital Envoy's damage theory to the actual loss

5    prong of recovery, Google ignores the fact that Section 3426.3 permits Digital Envoy to recover

6    Google's unjust enrichment due to its unauthorized use of Digital Envoy's technology.  *See* Cal.

7    Civ. Code § 3426.3(a).  Therefore, the nature and extent of Google's profits attributable to the

8    misappropriation of Digital Envoy's technology is directly relevant to Digital Envoy's claim that

9    Google was unjustly enriched.  *See University Computing Co. v. Lykes-Youngstown Corp.*, 504

10   F.2d 518, 536 (5th Cir. 1974) (an appropriate measure of damages for misappropriation of a trade

11   secret are "the benefits, profits, or advantages gained by the defendant in the use of the trade

12   secret").

13   ~~Moreover, throughout the litigation, Google has attempted to downplay the importance of~~

14   ~~the geo-targeting feature of its AdSense programs.  Digital Envoy therefore reasonably anticipates~~

15   ~~that Google will claim that the profits from its AdSense program are minimally attributable to its~~

16   ~~inclusion of Digital Envoy's technology in its effort to mitigate the effects of its misappropriation.~~

17   ~~Digital Envoy is therefore entitled to demonstrate that Google is understating the value of geo-~~

18   ~~targeting technology by pointing to Google's marketing, negotiation, and agreements with third~~

19   ~~parties that point to those parties' expectations of and benefits from geo-targeting capabilities~~

20   ~~through Google's provision of advertisements that will induce the web site's visitor to click on the~~

21   ~~advertisement provided.  Google's ability to provide the most enticing advertisements (including~~

22   ~~geographically relevant advertisements) forms the entire basis for Google's AdSense program and~~

23   ~~its customers' expectations of sharing in revenue.~~

24   ~~Finally, Digital Envoy has alleged that Google's misappropriation was willful and~~

25   ~~malicious so as to permit an award of punitive damages.  *See* Cal. Civ. Code § 3426.3(c).~~

26   ~~Therefore, the fact and extent of Google's explicit and implicit discouragement of third parties~~

27   ~~from acquiring a license from Digital Envoy to provide geo-targeting capabilities is relevant to~~

28   ~~Digital Envoy's claim for and entitlement to punitive damages.~~

-10-

1    In this case, it is undisputed that Google's AdSense products incorporated and utilized

2    Digital Envoy's geo-location capabilities.   It is also undisputed that Google's AdSense products

3    achieved significant revenues from the sale of these products. [8]

4    Therefore, once Digital Envoy establishes that Google's use of Digital Envoy's technology

5    was unauthorized, Google's use would constitute misappropriation for which Digital Envoy is

6    entitled to recover. *See* Cal. Civ. Code § 3426.3.  Digital Envoy should therefore be able to

7    ascertain for itself, through the discovery process, the nature and extent of Google's success in

8    marketing products containing Digital Envoy's trade secrets.   (Indeed, it is disingenuous in the

9    extreme for Google to claim that it is burdened by the number of its customers – assuming that its

10    quantity of customers was augmented due to the enhancement of its products with the

11    unauthorized inclusion of Digital Envoy's technology.)

12    The discovery Digital Envoy seeks is thus directly relevant to its damages claims as it

13    would permit Digital Envoy to prove:

- the amount and nature of all of Google's advertising revenues attributable to the misappropriation of Digital Envoy's technology;
- the identity of the purchasers Digital Envoy's technology (contained in Google's products);
- the nature of Google's representations about its advertising products;
- the motivation for those purchases; and
- the financial terms of the purchases.

---

[8]  In a breathtaking misrepresentation of Google's own business model, Google argues in its Brief that "it is not enriched by the sites" on which it displays advertising (in fact they pay them). Opposition at 7 n.4.  This is in complete contradiction to scores of representations that Google makes in its own filing with the SEC about the importance of third-party web sites to its business model, for example:

> "Our operating results may fluctuate, which makes our results difficult to predict and could cause our results to fall short of expectations: … **Our ability to attract web sites to our AdSense program**." p/

> "In other words, **net revenues earned through our Google Network members** under our relatively newer **Google AdSense program** are **growing more rapidly** than those earned through our Google web sites."

*See* Friedman Dec., ¶10.

W02-SF:5BB\61456956.1

REPLY I/S/O MTN. TO
COMPEL FURTHER RESPONSES

1  Whether Digital Envoy's damages are measured from the perspective of Digital Envoy's detriment

2  or Google's benefit, the requested information is important to the proper calculation.  Whether a

3  theory of lost profits or unjust enrichment or reasonable royalties is ultimately applicable, this

4  information – effectively only available from Google – is critical to Digital Envoy's claim for

5  damages.  Therefore, this Court should compel Google to respond to the following discovery

6  requests: Requests for Production Nos. 14, 18 and 19 and Interrogatories Nos. 6, 10 and 11.

7  **D.**      **Digital Envoy Is Entitled To The Quova Contract To Impeach The Testimony Of**

8         **Google's Witnesses.**

9         Digital Envoy agrees with Google's description of the standards regarding agreements and

10  conversations with third parties and their lack of relevance for interpretative purposes in the

11  present action (including Google's contract with Quova).  Nonetheless, Google continues to

12  depose Digital Envoy's customers, subpoena their records, and, in addition, it has asked for

13  mountains of discovery from Digital Envoy regarding its customers, none of which is relevant to

14  this action.  Digital Envoy has complied with all such requests.  Additionally, for whatever reason,

15  Google has repeatedly cited to Digital Envoy's agreements with third parties in its submissions to

16  the court, as if they do bear relevance to this action (most recently in Note 2 of its Opposition

17  Motion to Compel and see also Note 9 in Google's Reply Brief in Support for Its Motion for

18  Summary Judgment).  Digital Envoy believes that the Quova agreement goes to the veracity of

19  several deponents' testimony regarding the breadth of the Digital Envoy contract, and the need

20  and ability to make it clearer.  As such, this Court should compel Google to respond to Request for

21  Production No. 26.

22  **E.**      **Google's Claim Of Burdensomeness Is Insufficient To Deny Digital Envoy The**

23         **Relevant Discovery It Seeks.**

24         ~~When faced with an objection that a discovery request is "unduly burdensome", courts~~

25  ~~must apply a balancing test to weight the purported burden against the benefit that would result~~

26  ~~from compelling production:~~

27                    ~~In determining whether a request for discovery will be unduly~~
                    ~~burdensome to the responding party, the court weighs the benefit~~
28                    ~~and burden of the discovery. This balance requires a court to~~

-12-

1    ~~consider the needs of the case, the amount in controversy, the~~
~~importance of the issues at stake, the potential for finding relevant~~
2    ~~material and the importance of the proposed discovery in resolving~~
~~the issues.~~

3

4    ~~*Playboy Enterprises, Inc. v. Wells*, 60 F. Supp. 2d 1050, 1053-54 (C.D. Cal. 1999) (citing Fed. R.~~

5    ~~Civ. P. 26(b)(2)).~~

6    ~~Each of these factors weighs in favor of the Court compelling production of the discovery~~

7    ~~sought by Digital Envoy. First, the amount in controversy in this case justifies Google being~~

8    ~~compelled to produce the requested documents and information. Second, the discovery Digital~~

9    ~~Envoy seeks is critical not only to calculate damages, but also to Google's liability for~~

10   ~~misappropriation. Google cannot seriously contend otherwise. As set forth above, Digital Envoy~~

11   ~~can recover damages under a lost profits, unjust enrichment, or reasonable royalty scenario. In~~

12   ~~order to prove these amounts to a reasonable certainty, Digital Envoy must be allowed to discover~~

13   ~~the requested information and documents.~~

14   ~~As this Court has previously held,~~

15   ~~Only *undue* burden or expense provides a potential basis for relief~~
~~from legitimate discovery demands. Undue burden requires parties~~
16   ~~to show more than expense or difficulty. Rule 26(c) authorizes a~~
~~protective order when discovery would be unduly burdensome.~~
17   ~~This requires more than some expense or difficulty, especially in~~
~~the case of a party to the action.~~

18

19   ~~*U.S. v. American Optical Co.*, 39 F.R.D. 580, 587 (N.D. Cal. 1966) (emphasis in original, internal~~

20   ~~citations omitted).~~ Google attempts to shift the burden to Digital Envoy by claiming it will have

21   to engage in a significant document production in order to respond, "[b]ut the fact that the

22   production of documents may involve inconvenience and expense is not alone a sufficient reason

23   for refusing discovery which is otherwise appropriate." *See U.S. v. $160,066.98 from Bank of*

24   *America*, 202 F.R.D. 624, 628 (S.D. Cal. 2001) (internal citations omitted). Considering the clear

25   relevance of the information Digital Envoy seeks, Google's claims of burdensomeness ring

26   hollow.

27

28

-13-

1    ~~F.    Digital Envoy's Request For Google's AdSense Code Is Proper.~~

2    ~~Google also objects to Digital Envoy's request for its AdSense code. In fact, Google asked~~

3    ~~Digital Envoy to turn over 6 years' worth of its code, along with related conversations, and Digital~~

4    ~~Envoy completely complied, despite the questionable relevance of this request to any issue in the~~

5    ~~case. Digital Envoy's request is clearly relevant to determining how its database was accessed by~~

6    ~~Google's ad products, and determining differences in the AdSense for Content, AdSense for~~

7    ~~Search, and AdWords programs (instead of having to rely on Google's affidavits from their own~~

8    ~~employees that there are no substantial differences between the programs). in addition, the~~

9    ~~structure and coding of AdSense and how Digital Envoy's database is accessed by third-party web~~

10   ~~sites goes to the very heart of Digital Envoy's argument that Google distributed, shared, made~~

11   ~~available, its database with third parties. If Digital Envoy cannot examine the code, it will be~~

12   ~~forced to rely on self-serving affidavits of Google employees.~~

13                          **III.    CONCLUSION**

14   Google appears to live in an Alice in Wonderland world where it:

15   - can "organize the world's information and make it universally accessible and useful,"
16     yet finds its own information "too burdensome" to make available.

17   - can claim that it isn't "enriched" by third party web sites, but also claims in official
     government filings that its revenues and business success are . . . highly dependent on
18     these same third party web sites. In fact, it claims that this is Google's fastest growing
     business revenue-wise.
19

20   - requested (and received) mountains of Digital Envoy's contracts and conversations,
     subpoenaed Digital Envoy's customers' records, and deposed Digital Envoy's
21     customers, but information related to Google's own customers are completely off
     limits despite its clear relevance to the case (in fact, the use of the trade secret by these
22     customers *is* the case).

23   - claims it doesn't "license" AdSense to customers, but in Google's own public
     announcements says it "licensed" AdSense to customers.
24

25   - ~~can boldly state that third parties wouldn't license Digital Envoy's technology solely~~
     ~~for ad targeting on their own web sites, when many web sites, including Google for~~
26     ~~several years with respect to Google.com (and other web sites for whom Google acted~~
     ~~as a customer reference for Digital Envoy), did precisely that.~~
27

28

-14-

- can request relief from the court from requiring it to produce a third party contract (the Quova contract) because that contract is "irrelevant," while repeatedly citing in its briefs to deals (taken out of context) that Digital Envoy has with third parties that are entirely unrelated to the present action.

- ~~requested (and received) six years worth of Digital Envoy's proprietary source code and engineering conversations and plans, but Google's AdSense code and its engineering plans and conversations (which are at the very HEART of this case) are off limits.~~

- can have its request to bifurcate discovery denied by the Court, but still refuse to produce the very information it sought to delay providing through its motion to bifurcate (forcing Digital Envoy to file these motions to compel) – achieving effectively what it was denied explicitly.

- can seek relief from third-party customer subpoenas by representing to the Court that Digital Envoy can and should get the information from Google directly, and then refuse to provide Digital Envoy with the requested information – while at the very same time, serving third-party subpoenas on Digital Envoy's customers (seeking information which is completely irrelevant to this case).

- attempts to narrow unilaterally the scope of Digital Envoy's expansive claims to suit its own purposes, but is surprised that Digital Envoy insists otherwise, pointing to the breadth of the Complaint, and initial disclosures and discovery responses providing explicit and early notice of the encompassing nature of Digital Envoy's allegations.

Digital Envoy respectfully asks the Court to compel Google to litigate this case in this world and GRANT Digital Envoy's motions to compel.

DATED: June 8, 2005

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____/s/ Brian Blackman_____
P. CRAIG CARDON
BRIAN R. BLACKMAN

TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5706
Facsimile: 404.443.5751

Attorneys for DIGITAL ENVOY, INC.

-15-

W02-SF:5BB\61456956.1

REPLY I/S/O MTN. TO
COMPEL FURTHER RESPONSES