1   P. CRAIG CARDON, Cal. Bar No. 168646
    BRIAN R. BLACKMAN, Cal. Bar No. 196996
2   KENDALL M. BURTON, Cal. Bar No. 228720
    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3   Four Embarcadero Center, 17th Floor
    San Francisco, California  94111-4106
4   Telephone:     415-434-9100
    Facsimile:     415-434-3947
5

6   TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
    LUKE ANDERSON (Admitted *Pro Hac Vice*)
7   MCGUIRE WOODS, L.L.P
    1170 Peachtree Street, N.E., Suite 2100
8   Atlanta, Georgia 30309
    Telephone: 404.443.5500
9   Facsimile:  404.443.5751

10  Attorneys for DIGITAL ENVOY, INC.

11              UNITED STATES DISTRICT COURT

12            NORTHERN DISTRICT OF CALIFORNIA

13                  SAN JOSE DIVISION

14  DIGITAL ENVOY, INC.,                    Case No. C 04 01497 RS

15          Plaintiff/Counterdefendant,     **DIGITAL ENVOY'S SUPPLEMENTAL
                                            BRIEF IN SUPPORT OF DIGITAL
16      v.                                  ENVOY'S MOTIONS TO COMPEL.**

17  GOOGLE, INC.,                           **[Filed Pursuant to Court at Hearing on
                                            June 22, 2005]**
18          Defendant/Counterclaimant.

19                                          The Honorable Richard Seeborg

20

21

22

23

24

25

26

27

28

1
2

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT & AUTHORITIES ...................................................................... 1

        A.      Digital Envoy Is Entitled to Conduct Discovery of Information and
                Documents Relevant to Its Claims and Defenses In This Case. ............................ 1

                1.      Digital Envoy's discovery requests regarding AdSense are inclusive
                        – covering both AdSense for Search and AdSense for Content. .................. 2

                2.      Digital Envoy is entitled to discover the identity of Google's
                        Network Members which utilized Digital Envoy's technology. .................. 3

                3.      Digital Envoy is entitled to discovery the quantity and nature of the
                        revenue Google derived from its products utilizing Digital Envoy's
                        technology. .......................................................................................... 6

                4.      Google has failed to meet its burden that the discovery Digital
                        Envoy seeks is "burdensome." ........................................................ 7

        B.      In Its Effort to Avoid Any Significant Discovery In This Case, Google,
                Through Its Counsel, Has Consistently Misrepresented the Facts of the Case
                to the Court. ........................................................................................................ 7

                1.      Contrary to the facts, counsel for Google erroneously asserts that
                        third party web sites "do not care" about geo-targeting. ........................ 8

                2.      Contrary to the Law, Google Misstates the Basis For Digital
                        Envoy's Recovery of Damages. ................................................................ 9

III.    CONCLUSION ................................................................................................ 11

SUPP. BRIEF ISO DIGITAL ENVOY'S
                                                                        MOTION TO COMPEL

1

<u>TABLE OF AUTHORITIES</u>

2

<u>Federal Cases</u>

3

<u>Contratto v. Ethicon, Inc.,</u>
    225 F.R.D. 593 (N.D. Cal. 2004) .............................................................. 1

4

<u>Schlegenhauf v. Holder,</u>
    279 U.S. 104 (1964) .................................................................................. 1

5

6

<u>U.S. v. $160,066.98 from Bank of America,</u>
    202 F.R.D. 624 (S.D. Cal. 2001)............................................................... 7

7

<u>U.S. v. American Optical Co.,</u>
    39 F.R.D. 580 (N.D. Cal. 1966) ............................................................... 7

8

9

<u>University Computing Co. v. Lykes-Youngstown Corp.,</u>
    504 F.2d 518 (5th Cir. 1974)................................................................... 10

10

<u>Vermont Microsystems, Inc. v. Autodesk, Inc.,</u>
    138 F.3d 449 (2d Cir. 1998) ..................................................................... 6

11

12

<u>Federal Statutes</u>

13

Fed. R. Civ. P. 26 ........................................................................................ 5, 6

14

Fed. R. Civ. P. 26(b)......................................................................................... 1

15

Fed. R. Civ. P. 26(b)(1)..................................................................................... 1

16

<u>State Statutes</u>

17

Cal. Civ. Code § 3426.3 ............................................................................. 7, 10

18

Cal. Civ. Code § 3426.3(a).............................................................................. 10

19

Cal. Civ. Code § 3426.3(c).............................................................................. 10

20

21

22

23

24

25

26

27

28

-ii-

SUPP. BRIEF ISO DIGITAL ENVOY'S
MOTION TO COMPEL

# I.    INTRODUCTION

Google continues to mount an all-out effort to avoid meaningful discovery in this case. First, it attempts to impose on Digital Envoy significant preliminary burdens of essentially proving its case, not contemplated by the discovery rules, before Google will engage in discovery. Second, Google has complained loudly that responding to Digital Envoy's discovery requests would be "burdensome." Digital Envoy in an effort to use the meet and confer process to address Google's complaints, offered to modify its discovery requests to minimize Google's alleged "burden." In response, Google has refused to budge, despite Digital Envoy's significant reduction in the scope of its relevant discovery requests, still insisting that Digital Envoy must offer "evidence" of its entitlement to the requested information. Finally (and perhaps most distressing), Google continues to misrepresent the factual context in which Digital Envoy is seeking discovery by minimizing the value and importance of Digital Envoy's technology in Google's AdSense products and misconstruing the damages available to Digital Envoy due to Google's misappropriation. This case should be decided on the merits, not on the basis of Google's ability to maneuver through the discovery process. For these reasons, the Court should grant Digital Envoy's motions to compel.

# II.    ARGUMENT & AUTHORITIES

## A.    Digital Envoy Is Entitled to Conduct Discovery of Information and Documents Relevant to Its Claims and Defenses In This Case.

Federal Rule of Civil Procedure 26(b) provides that: "Parties may obtain discovery regarding *any matter, not privileged, that is relevant to the claim or defense of any party. . . ." See* Fed. R. Civ. P. 26(b). In interpreting the federal rules, "[t]he Supreme Court has consistently held that the discovery rules should be accorded a 'broad and liberal scope.'" *Contratto v. Ethicon, Inc.*, 225 F.R.D. 593, 595 (N.D. Cal. 2004) (citing *Schlegenhauf v. Holder*, 279 U.S. 104, 114-115 (1964)). Thus, "[u]nless information is specifically privileged or otherwise protected by statute, it is discoverable under Rule 26(b)(1)." *Contratto*, 225 F.R.D. at 595.

Digital Envoy has propounded discovery requests seeking information relevant to its claim that Google misappropriated Digital Envoy's trade secrets by licensing Digital Envoy's

technology to third parties as part of Google's AdSense programs in violation of the parties' Licensing Agreement.  Specifically, Digital Envoy is seeking limited information and documents related to Google's negotiation and licensing of its AdSense programs to third parties, as well as the magnitude and detail of the revenue Google earned as a result of its utilization of Digital Envoy's technology.  Digital Envoy's legitimate and legally-sanctioned discovery requests are no wild goose chase or fishing expedition.  Here, Google cannot dispute that:

> i)     Google's AdSense programs made use of and were enhanced by Digital Envoy's technology for geo-targeting purposes; and
>
> ii)    Google earned substantial revenues from its AdSense programs.

Based on these undisputed facts, Digital Envoy is entitled to discover the nature and magnitude of Google's licensing scheme for purposes of establishing Google's liability and Digital Envoy's damages.  Digital Envoy has even attempted, through the meet and confer process, to modify and more finely target its discovery requests in response to Google's complaints regarding the alleged burdensomeness of Digital Envoy's discovery requests.  *See* June 28, 2005 Letter from Robert J. Waddell, Jr. to David H. Kramer, attached hereto as Exh. A. Google has refused any meaningful compromise and remains steadfast in its refusal to produce relevant and proper discovery information.  *See* July 2, 2005 E-mail from David H. Kramer to Robert J. Waddell, Jr., attached hereto as Exh. B.  Google continues to insist, as a condition of responding to discovery requests, that Digital Envoy meet a higher burden than that imposed by the Federal Rules.  For these reasons, the Court should grant Digital Envoy's motions to compel.

> **1.     Digital Envoy's discovery requests regarding AdSense are inclusive – covering both AdSense for Search and AdSense for Content.**

As an initial matter, Digital Envoy is properly seeking documents and information related to Google's AdSense programs including both AdSense for Content and AdSense for Search. Google's assertion that the Amended Complaint addresses only AdSense for Content is betrayed by the actual allegations in the Amended Complaint.  By way of example, in its Amended Complaint, Digital Envoy alleges:

-2-

> At the time of the Agreement, Google had just begun to sign agreement with other Internet companies to power search services on those companies' sites. However, Google did not supply <u>advertising</u> services to third party sites at that time, had not contemplated providing such services and did not disclose to Digital Envoy its intention to enter this business.

*See* Amended Complaint, ¶ 35 (emphasis in original). Digital Envoy also expressly *describes* how (i) Google's providing advertisements on third party websites to which it was providing web search services (the so-called AdSense for Search Program or "AFS") and (ii) Google's syndication of advertisements on third party sites (the so called "AdSense for Content Program" or "AFC") both violate License Agreement. *See id.*, ¶¶ 37 – 39 (under the bolded heading "Google Misuse of Digital Envoy's Technology").

Indeed, repeatedly throughout the Amended Complaint, Digital Envoy refers generally to Google's "AdSense Program." Nowhere in the Amended Complaint does Digital Envoy limit its allegations to AdSense for Content. In fact, nowhere in the Amended Complaint does Digital Envoy even distinguish between the two programs. Digital Envoy plainly and explicitly alleges that Google's incorporation of Digital Envoy's technology into "AdSense" – *all of AdSense* – constitutes a violation of the License Agreement. Digital Envoy's ability to conduct discovery of relevant issues should not be hindered by Google's late-breaking effort to impose its own extremely narrow reading of Digital Envoy's allegations on the discovery process.

> **2.      Digital Envoy is entitled to discover the identity of Google's Network Members which utilized Digital Envoy's technology.**

There is no dispute that Google employed Digital Envoy's technology in products that Google licensed to third parties. *See, e.g.*, Transcript of June 22, 2005, Motions Hearing ("Transcript"), copy attached hereto as Exh. C, at 46 (Google's counsel conceding that Digital Envoy's technology "is used in everything"). Therefore, the essence of Digital Envoy's discovery requests is to learn precisely, *i.e.*, by name and contract, which third parties acquired access to Digital Envoy's technology through the AdSense programs. *See* Exh. A. In addition, Digital Envoy is seeking to learn about Google's marketing to and communications with those third

SUPP. BRIEF ISO DIGITAL ENVOY'S
MOTION TO COMPEL

parties to ascertain the precise nature of Google's use of Digital Envoy's geo-targeting technology. *See id.*

The information Digital Envoy seeks is plainly relevant for many reasons:

- To ascertain which third party web sites had access to Digital Envoy's technology, when they had it and under what circumstances in was provided (e.g., through a request from the third party, an offering by Google, or by the terms of the AdSense licensing agreement between Google and the third party);

- Because Google admits that it "licenses" AdSense to third parties, Digital Envoy requires copies of these licenses to ascertain for itself whether its technology is included within them (and thus, "licensed" to third parties in violation of the clear prohibition in the Licensing Agreement). Digital Envoy further needs the communications related to these licenses to understand how Google represented the geo-targeting features to these customers and the extent to which geo-targeting affected those customers' decision to deploy AdSense;

- Because many of the largest web sites received geo-targeted ads from Google, in violation of the License Agreement, they are unwilling to buy it directly from Digital Envoy, or, instead, they would purchase it from Digital Envoy at a reduced price because a large portion of their need was already being met by Google, thereby resulting in harm to Digital Envoy's potential market;

- Google operates a pay-per-click business model with its advertisers. Each agreement it has with different advertisers has varying terms. Digital Envoy therefore needs to discover how much each of Google's advertisers paid Google in order to calculate the amount of damages and whether the individual advertisers elected geo-targeting at all. Without this information, Digital Envoy has no way of knowing which (and how many) of Google's advertisers geo-targeted through Google; and

- Digital Envoy seeks to discover, from each of these advertisers, how important the availability of geo-targeting was in their decision to advertise with Google. Digital Envoy needs to discover how Google marketed Digital Envoy's geo-targeting technology (*i.e.*, did Google describe this as "sharing" the technology with the advertisers?);

- Digital Envoy seeks to discover what other targeting attributes Google offered its potential advertisers in order to balance the importance of geo-targeting relative to other targeting technologies; and

- Digital Envoy also needs these documents to determine which, if any, of Google's advertisers were actual or potential clients of Digital Envoy.

In an effort at compromise, and in order to address Google complaints regarding the alleged burdensomeness of responding to the discovery requests, Digital Envoy has proposed a preliminary modification of its requests that limits Google's "burden" significantly:

- Digital Envoy has offered to limit its requests of the broadest scope essentially to Google's top-100 customers for which Google would provide copies of the relevant agreements, and documents and communications related to the agreements and their negotiation.[1]  *See* Exh. A;

- For Google's premium customers, Google would be required to produce the agreements between Google and those customers (because those agreements are described as "heavily negotiated" in Google's filings with the SEC) and all communications with those customers referring or relating to the provision by such Google Network Member of the Internet Protocol Addresses ("IP Addresses") of its users/visitors to Google (as well as referring or relating to a Google Network Member's failure to provide, or agreement or request not to provide, IP Addresses of its users/visitors to Google) and those communications that refer or relate to geo-targeting by those customers.  *See id.*; and

- For Google's remaining ad network members, Google would only be required to identify those Members who utilized Digital Envoy's technology and produce a sufficient set of exemplar standard contracts in order to inform Digital Envoy of the nature of the licensing arrangement between Google and these third parties.

Digital Envoy's proposed modification significantly limits Google's "burden" by reducing the number of customers and negotiations to somewhere in the neighborhood of 100 negotiations – not "hundreds of thousands" as Google suggests.  (Indeed, to the extent that Google's representations are correct, Digital Envoy is scaling the request down by a factor of more than a 1000.)  Google's counter-offer to produce information related only to those customers for which "Digital Envoy can offer some evidence that it lost a licensee because Google offered geotargeting in [AdSense for Content]" simply will not do.  *See* Exh. B.  *First*, Google's proposal misrepresents Digital Envoy's obligations in the discovery process.  Federal Rule of Civil Procedure 26 does not require that Digital Envoy "prove" its case on Google's terms prior to receiving relevant discovery.

---

[1]    Digital Envoy has previously offered evidence that these customers represent the most likely direct Digital Envoy customers and prospects.  *See* Declaration of Robert Friedman In Support of Digital Envoy's Motions to Compel, ¶ 9.

*Second*, Google's counter-offer appears to be based on Google's miscomprehension of the law related to Digital Envoy's misappropriation claim and the damages available under California law.  Google's licensing of Digital Envoy's technology to third parties, as prohibited by the Licensing Agreement, constitutes misappropriation for which Digital Envoy is entitled to damages in the form of Digital Envoy's actual losses, Google's unjust enrichment, or, if the other bases for damages are unavailable, a reasonable royalty. *See* Cal. Civ. Code § 3426.3; *see also Vermont Microsystems, Inc. v. Autodesk, Inc.*, 138 F.3d 449, 452 (2d Cir. 1998) (recognizing that California law permits recovery of damages measured either by the plaintiff's losses or by the profits unjustly received by the defendant).  Directly relevant to Digital Envoy's claim, and the statutory damages to which it is entitled, is information related to the magnitude and nature of Google's misappropriation.  This is the discovery to which Digital Envoy is entitled and all that Digital Envoy seeks.

> **3.      Digital Envoy is entitled to discovery the quantity and nature of the revenue Google derived from its products utilizing Digital Envoy's technology.**

Through its interrogatories numbered 6, 10 and 11, Digital Envoy is seeking a detailed analysis of the revenue Google achieved through its products utilizing Digital Envoy's revenue. Based on the multiple methods for establishing damages for misappropriation under California law, *see* Cal. Civ. Code § 3426.3, this information is plainly relevant to Digital Envoy's claims and, thus, discoverable.  *See* Fed. R. Civ. P. 26.  Google has responded to Digital Envoy's request by making generalized claims of "burdensomeness."  *See* Exh. B.  However, Google has yet to state with specificity *what* is so difficult about providing the revenue numbers Digital Envoy seeks.  Digital Envoy has stated to Google its willingness to modify this request in an effort to alleviate Google's alleged "burden" or to accept documents from which this information is derived, provided the conditions of Federal Rule of Civil Procedure 33(d) are met.  Google has refused to respond meaningfully to Digital Envoy's offer and continues to make generalized complaints that the information Digital Envoy seeks would be "difficult" to provide.  Google's objection is improper and provides neither Digital Envoy nor the Court the ability to address

1  Google's complaints.  Under these circumstances, Google should be compelled to respond to

2  Digital Envoy's legitimate requests for relevant information.

3        **4.    Google has failed to meet its burden that the discovery Digital Envoy seeks is**

4              **"burdensome."**

5        As a court in this district has previously held,

6        Only *undue* burden or expense provides a potential basis for relief from legitimate
         discovery demands.  Undue burden requires parties to show more than expense or
7        difficulty.  Rule 26(c) authorizes a protective order when discovery would be
         unduly burdensome.  This requires more than some expense or difficulty, especially
8        in the case of a party to the action.

9

10 *U.S. v. American Optical Co.*, 39 F.R.D. 580, 587 (N.D. Cal. 1966) (emphasis in original)

11 (citations omitted).  Google attempts to shift the burden to Digital Envoy by claiming it will have

12 to engage in a significant document production in order to respond, "[b]ut the fact that the

13 production of documents may involve inconvenience and expense is not alone a sufficient reason

14 for refusing discovery which is otherwise appropriate."  *See U.S. v. $160,066.98 from Bank of*

15 *America*, 202 F.R.D. 624, 628 (S.D. Cal. 2001) (internal citations omitted).  Google has yet to do

16 anything but claim general "inconvenience and expense" of responding to Digital Envoy's

17 discovery requests.  To be sure, Digital Envoy's requests may call for a significant amount of

18 information; however, the amount of information at issue is directly related to the magnitude of

19 Digital Envoy's claim.  Google should not be allowed to avoid its obligations in the discovery

20 process by pointing to the magnitude of the problem of its own creation (*e.g.*, through Google

21 licensing of Digital Envoy's technology to a huge number of third parties).

22 **B.    In Its Effort to Avoid Any Significant Discovery In This Case, Google, Through Its**

23       **Counsel, Has Consistently Misrepresented the Facts of the Case to the Court.**

24        Digital Envoy takes significant issue with Google's counsel's repeated

25 mischaracterizations to the Court of the facts of the case and the nature of Digital Envoy's claims.

26 Ostensibly, Google's counsel is attempting to minimize the merits of Digital Envoy's case and to

27 shape the Court's impression of the relevance of the information sought by Digital Envoy's

28

1   discovery requests.  Because these mischaracterizations arguably relate directly to Digital Envoy's

2   motions to compel, Digital Envoy cannot let Google's counsel's statements go unaddressed.

3       1.      Contrary to the facts, counsel for Google erroneously asserts that third party

4               web sites "do not care" about geo-targeting.

5   During the course of the June 22 hearing, Google's counsel repeatedly minimized the

6   importance of Digital Envoy's geo-targeting technology.  *See, e.g.*, Exh. C at 48 ("Geotargeting

7   isn't mentioned in Google's materials to publishers" and third parties "have no idea whether the

8   ads their getting are geotargeted or not")), 54 (third party web sites "don't know" whether they are

9   getting geo-targeted advertisements) and 55 (Other advertising networks, such as DoubleClick and

10  Adverstising.com "don't care" about geo-targeting).  Counsel's statements are simply not true, and

11  are directly and repeatedly contradicted by statements of his client and others.  By way of

12  example,

13  •   Google has clearly stated the importance of geo-targeting and the fact that in its
        own words "publishers are very excited to use it."  *See, e.g.*,
14      http://searchenginewtach.com/searchday/article/php/3099591, copy attached as
        Exh. D (quoting Google "We want **all** the syndication partners [*i.e.*, AdSense
15      Publishers] to work with [regional targeting], and generally they are **very excited**
        to do it" emphasis added);
16

17  •   Google itself emphasizes the importance of geo-targeting to **publishers** on its own
        website.  *See, e.g.*, http://www.google.com/adsense/greenwich2000?hl=en_GB,
18      copy attached as Exh. E, (quoting a publisher/customer "We were attracted to
        Google for several reasons, the main one being that Google is the only company
19      which has the ability to link content to local audience advertising");
        http://www.google.co.uk/services/adsense_tour/page4.html, copy attached as Exh.
20      F, (noting that ads are targeted by geography, so global businesses can display local
        advertising with no additional effort and use AdSense in multiple languages);
21      http://www.google.com/adsense/ourhometown, copy attached as Exh. G, (quoting
        customer "'Relevant ads appear on relevant pages.'  And, he adds, 'The advertising
22      information is so unique.  *We're seeing ads that are geographically appropriate* . .
        ..'"); http://www.google.com/adsense/wifinder, copy attached as Exh. H (quoting
23      customer "Google's AdSense lets us show geographically targeted ads" and that
        "AdSense advertising revenue is consistent enough to hire an employee dedicated
24      to improving geographical listings, increasing the effectiveness of WiFinder.com
        searches").
25
26
27  •   Geo-targeting is clearly important to Google's advertisers:
        http://siliconvalley.internet.com/news/article.php/3098431, copy attached as Exh. I
28      ("[Geo-targeting is] an incredibly powerful tool for local and regional advertisers . .

-8-

. "[i]t could be used by national advertisers looking to message locally, speaking differently to different audiences"); http://volokh.blogspot.com/2004/10/bellsouths-alliance-with-google.html>, copy attached as Exh. J, ("Google is excited to add a new way to reach prospective advertisers, while continuing to provide users with relevant local information and advertisements").

- Advertising.com and DoubleClick have not stated that geo-targeting is unimportant. In fact, Scott Spencer of DoubleClick actually testified:

    Q. Has any web site publisher ever told DCLK that geo-targeting in general was important to participate in DART for Publishers?

    A. Having geodata is important, yes.

    Q. So publishers have said geo-targeting is important?

    A. Yes.

    Q. And who told you that?

    A. Geotargeting is a common feature provided by every provider of ad serving solutions. ... It's in almost every RFP as a check box, do you have geo-targeting, yes.

    Deposition of Scott Spencer at 49-50, relevant portions attached hereto as Exh. K. Likewise, Advertising.com's Michael Polk did not testify that geo-targeting was unimportant or that publishers would not license geo-targeting directly from Digital Envoy, but rather that he does not work directly with publishers and that "it depends", not that it would never happen. *See* Deposition of Michael Polk at 73-74, relevant portions attached hereto as Exh. L.

Therefore, contrary to the assertion of Google's counsel, evidence that geo-targeting is important to Google's AdSense customers is legion. Digital Envoy's discovery requests seeking information related to Google's licensing of its AdSense programs (and, necessarily, Digital Envoy's technology included therein) is thus very relevant to the misappropriation claim.

### 2.    Contrary to the law, Google misstates the basis for Digital Envoy's recovery of damages.

Calling Digital Envoy's damages theory "a pipe dream" and seeking to limit Digital Envoy's potential damages to Google's narrow interpretation of Digital Envoy's "actual loss", Google's counsel misstates the available damages under California law. *See, e.g.*, Transcript at 55-56. As shown above, damages for misappropriation are available under three theories: actual

-9-

loss, unjust enrichment, or (if neither of the other two are available) a reasonable royalty.  *See See* Cal. Civ. Code § 3426.3(a).[2]

Google devotes its entire critique of Digital Envoy's damage theory to the actual loss prong of recovery, and ignores the fact that Section 3426.3 permits Digital Envoy to recover Google's unjust enrichment due to its unauthorized use of Digital Envoy's technology.  *See* Cal. Civ. Code § 3426.3(a).  Therefore, Google's "pipe dream" analysis notwithstanding, the nature and extent of Google's profits attributable to the misappropriation of Digital Envoy's technology is directly relevant to Digital Envoy's claim that Google was unjustly enriched.  *See University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 536 (5th Cir. 1974) (an appropriate measure of damages for misappropriation of a trade secret are "the benefits, profits, or advantages gained by the defendant in the use of the trade secret").

In addition, throughout the litigation and at the June 22 hearing, Google continues to downplay the importance of the geo-targeting feature of its AdSense programs (despite the fact that, based on one of the few documents that Google has thus far produced in discovery, Google's internal business models show well over a *100%* increase in click-thrus for a substantial portion of its customer base due to use of Digital Envoy's geo-targeting).[3]  Digital Envoy therefore is anticipating that Google will claim that the profits from its AdSense program are only minimally attributable to its inclusion of Digital Envoy's technology in its effort to mitigate the effects of its misappropriation.  Digital Envoy is therefore entitled to demonstrate, through discovery, that Google is understating the value of geo-targeting technology by pointing to Google's marketing, negotiation, and agreements with third parties that point to those parties' expectations of and benefits from geo-targeting capabilities through Google's provision of advertisements that will induce the web site's visitor to click on the advertisement provided.  Google's ability to provide

---

[2]    Digital Envoy is also seeking punitive damages on the grounds that Google's misappropriation was willful and malicious.  *See* Cal. Civ. Code § 3426.3(c).

[3]    *See* Deposition of Susan Wojcicki at Exh. 61, attached hereto as Exh. M.

the most enticing advertisements (including geographically relevant advertisements) forms the entire basis for Google's AdSense program and its customers' expectations of sharing in revenue.

### III.    CONCLUSION

For these reasons and those presented in Digital Envoy's opening briefs and arguments at the June 22, 2005 hearing, Digital Envoy  respectfully requests that the Court grant its motions to compel.


DATED:  July 5, 2005

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


By _____
                    /s/ Brian Blackman
                P. CRAIG CARDON
                BRIAN R. BLACKMAN

TIMOTHY H. KRATZ (*Pro Hac Vice* To Be Applied For)
LUKE ANDERSON (*Pro Hac Vice* To Be Applied For)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5706
Facsimile:  404.443.5751

Attorneys for DIGITAL ENVOY, INC.

W02-SF:5BB\61460194.1