# EXHIBIT B

## Waddell, Robert J. Jr.

| | |
|---|---|
| **From:** | Kramer, David [DKramer@wsgr.com] |
| **Sent:** | Saturday, July 02, 2005 12:46 PM |
| **To:** | Waddell, Robert J. Jr. |
| **Cc:** | Lansky, David |
| **Subject:** | RE: Digital Envoy v. Google |

Robert:

I think Tim is out of the office, but I wanted to get back to you on your proposed modifications of the discovery at issue in Digital Envoy's motions. I'm afraid these modifications do virtually nothing to address the problems that Google has identified. (as an aside, I think there are a couple of places where Digital Envoy is actually asking for more information than what the requests even call for). Among other things, Digital Envoy is still demanding information on hundreds of thousands of advertisers, including all communications on any subject. It is also demanding that Google search through all communications it has had with hundreds of thousands of publishers to find those on particular subject, It is still demanding Google perform calculations for millions of web sites (calculations that would take many weeks assuming they could even be performed), based on the mistaken assumption that Google could simply press a few buttons have the information spit out in electronic form. And Digital Envoy has placed particular emphasis and made more extensive documentary demands on the largest publishers in Google's network, those with whom Google has communicated most often. That's hardly it. I have to think you appreciate how massively burdensome your requests still are. We are talking millions of dollars in discovery costs alone here for information we don't see the relevance of. Meanwhile, we're still asking for evidence that a single publisher or advertiser would have acted differently "but for" Google's supposed misuse of Digital Envoy's data in its AFC program.

I think the approach I proposed in Court is more reasonable. If Digital Envoy can offer some evidence that it lost a licensee because Google offered geotargeting in AFC, we can search for communications with that publisher concerning geotargeting. We'll also produce representative samples of the contracts we had with publishers and advertisers during the relevant period (although we still don't understand why the contracts matter). We're also willing to search for communications Google had with publishers or advertisers as a group, during the relevant time period, concerning geotargeting, if any. Let me know if you're willing to adopt something along these lines.

DHK