# EXHIBIT C

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DIGITAL ENVOY, INC.,        ) C-04-01497-RS
                            )
        PLAINTIFF,          ) JUNE 22, 2005
                            )
        V.                  ) MOTION
                            )
GOOGLE, INC.,               ) PAGES 1-78
                            )
        DEFENDANT.          )
                            )

THE PROCEEDINGS WERE HELD BEFORE

THE HONORABLE UNITED STATES DISTRICT

MAGISTRATE JUDGE RICHARD SEEBORG

A P P E A R A N C E S:


FOR THE PLAINTIFF:   MCGUIRE WOODS
                     BY: TIMOTHY H. KRATZ
                     1170 PEACHTREET STREET NE
                     SUITE 2100
                     ATLANTA, GEORGIA 30309


FOR THE DEFENDANT:   WILSON, SONSINI, GOODRICH
                     & ROSATI
                     BY: DAVID H. KRAMER
                     650 PAGE MILL ROAD
                     PALO ALTO, CALIFORNIA 94304

OFFICIAL COURT REPORTER: IRENE RODRIGUEZ, CSR, CRR
                         CERTIFICATE NUMBER 8074

U.S. COURT REPORTERS

d5455ece-baf4-4ca6-89f1-26d20ce3db9a

Page 2

1  SAN JOSE, CALIFORNIA            JUNE 22, 2205
2
3         PROCEEDINGS
4      (WHEREUPON, COURT CONVENED AND THE
5  FOLLOWING PROCEEDINGS WERE HELD:)
6      THE CLERK: CALLING NUMBER C-04-01497,
7  DIGITAL ENVOY VERSUS GOOGLE.
8      COUNSEL, COME FORWARD, PLEASE.
9      MR. KRAMER: HELLO. DAVE KRAMER FOR
10 WILSON, SONSINI FOR GOOGLE.
11     MR. KRATZ: TIM KRATZ FOR THE PLAINTIFF.
12     THE COURT: LET ME DO WHAT I DID IN THE
13 PAST CASES AND GIVE YOU MY READ ON THE MOTIONS AND
14 THEN WE'LL GO FROM THERE.
15     I'M GOING TO FIRST ADDRESS THE GOOGLE
16 MOTION TO PRECLUDE. WITH RESPECT TO THE MOTION TO
17 COMPEL, IT DOES APPEAR TO ME THAT THE CONTENTION
18 INTERROGATORIES THAT ARE AT ISSUE, THE FOUR OF
19 THEM, IF I COUNTED CORRECTLY, DO NEED TO HAVE A
20 FURTHER RESPONSE.
21     I DON'T THINK THAT THE NOTION THAT, WELL,
22 WE NEED TO GET MORE INFORMATION OR THE LIKE IS
23 REALLY AN ANSWER. I THINK WE'RE AT A STAGE IN THE
24 LITIGATION WHERE CONTENTION INTERROGATORIES SHOULD
25 BE RESPONDED TO AND IF THEY NEED TO BE

Page 3

1  SUPPLEMENTED, THAT'S FINE, BUT WE NEED TO HAVE SOME
2  ANSWERS AND THEY NEED TO BE PAGE REFERENCES TO
3  DEPOSITIONS AND BATES NUMBER DOCUMENTS AND THAT WE
4  DO NOT HAVE.
5      SO I DON'T THINK THERE'S A BASIS FOR A
6  MOTION TO PRECLUDE, BUT I THINK THAT A MOTION, THE
7  MOTION TO COMPEL I'M INCLINED TO GO AHEAD AND GRANT
8  BECAUSE I THINK FURTHER RESPONSES ARE APPROPRIATE.
9      AND I WILL TELL YOU, AND THIS JUST
10 DOESN'T APPLY TO THE RESPONSE THAT I RECEIVED FROM
11 DIGITAL ENVOY BECAUSE IT CROPS UP IN OTHER ASPECTS
12 OF THE LATER DIGITAL ENVOY'S MOTION, THE ARGUMENT
13 THAT THE REASON WE'RE NOT RESPONDING TO PARTICULAR
14 DISCOVERY IS BECAUSE THE OTHER SIDE HASN'T
15 RESPONDED TO OURS IS IN MY VIEW ONE OF THE MOST
16 FEEBLE RESPONSES THAT I READ ON A REGULAR BASIS.
17     IT IS A NONRESPONSE AS FAR AS I'M
18 CONCERNED. IF THERE IS A PROBLEM WITH THE OTHER
19 SIDE'S RESPONSE, YOU BRING A MOTION, I DEAL WITH
20 IT.
21     AND THERE ARE VERY FEW INSTANCES AND
22 THERE ARE SOME WHERE THERE IS A LINK, A CRITICAL
23 LINK BETWEEN GETTING INFORMATION FROM THE OTHER
24 SIDE DAMAGES IS A CLASSIC AREA WHERE YOU NEED THAT
25 INFORMATION IN ORDER TO FORMULATE YOUR OWN

Page 4

1  POSITION, I UNDERSTAND THAT, BUT AS A GENERAL MAJOR
2  REACTION, WHICH HAS BEEN, YOU KNOW, THEY'RE NOT
3  DOING WHAT THEY SHOULD DO SO WE'RE NOT GOING TO
4  ANSWER THESE IS CHILDISH AND DISTRESSING.
5      SO AND THIS IS NOT DIRECTED TO A
6  PARTICULAR PARTY, IT'S JUST THAT IS NOT AN ARGUMENT
7  THAT WORKS AT LEAST WITH ME.
8      SO WITH RESPECT TO YOUR ARGUMENTS TO ME
9  TODAY, THOSE AREN'T GOING TO FLY, TO GIVE YOU SOME
10 WARNING.
11     WHY DON'T WE START WITH THAT MOTION AND
12 THEN RATHER THAN GOING THROUGH MY READ ON DIGITAL'S
13 MOTION, SO THAT I CAN KEEP SOME PARAMETERS AROUND
14 THIS.
15     SO, MR. KRATZ, AT THE MOMENT YOU'RE THE
16 PARTY THAT IS NOT PREVAILING SO YOU GET TO GO
17 FIRST.
18     MR. KRATZ: THANK YOU, YOUR HONOR. I DO
19 NOT HAVE A PROBLEM WITH YOUR HONOR'S RULING HERE.
20     IT'S OUR DESIRE TO GIVE FULL DISCOVERY,
21 WE HAVE ATTEMPTED TO DO SO. WE HAVE BENT OVER
22 BACKWARDS IN OUR VIEW TO GIVE THEM INFORMATION AND
23 IT'S NEVER GOOD ENOUGH BUT IF YOUR HONOR SUGGESTS
24 THAT PAGE NUMBERS TO DEPOSITIONS AND BATES NUMBERS
25 TO DOCUMENTS SUCH AS WE HAVE SO FAR, WE WILL

Page 5

1  ENDEAVOR TO DO THAT BECAUSE I THINK THAT'S
2  APPROPRIATE IN THE NATURE OF ONGOING AND OPEN
3  DISCOVERY.
4      THE COURT: AND I CERTAINLY DON'T MEAN BY
5  MY COMMENTS A MOMENT AGO TO SUGGEST THAT IF FURTHER
6  MATERIAL IS OBTAINED THAT YOU THINK SUPPORTS YOUR
7  CONTENTIONS, THEN CERTAINLY YOU CAN -- YOU'RE
8  OBLIGED UNDER THE DUTY SUPPLEMENT, YOU PROVIDE A
9  SUPPLEMENT AND YOU ALSO SAY, WELL, THIS SUPPORTS
10 WHAT WE HAVE TO SAY, THIS FIVE PAGES OF DOCUMENTS
11 OR WHAT HAVE YOU. AND I'M NOT PRECLUDING THAT.
12     MR. KRATZ: IT IS OUR VIEW, THOUGH, THAT
13 IN LIGHT OF THE 30(B)(6) DEPOSITION, THAT WAS
14 EXTENSIVE, IN LIGHT OF THE SUMMARY JUDGMENT
15 BRIEFING THAT HAS ALREADY TAKEN PLACE, WE HAVE IN
16 THE NATURE OF PROVIDING IN OTHER WAYS, AND THE DUTY
17 OF SUPPLEMENTATION WITH RESPECT TO INTERROGATORIES,
18 UNLESS IT'S OTHERWISE BEEN MADE AVAILABLE, WE THINK
19 THAT WE HAD.
20     BUT I THINK IT'S FINE, WE WILL ABSOLUTELY
21 SUPPLEMENT WITH PAGE NUMBERS AND DEPOSITIONS, BATES
22 NUMBERS IN DOCUMENTS, AND THEN SUPPLEMENT AGAIN
23 WHEN WE GET IT BECAUSE I THINK IT'S APPROPRIATE TO
24 HAVE FULL DISCLOSURE AND FREE AND FAIR DISCOVERY IN
25 THE MATTER OF.

2 (Pages 2 to 5)

Page 6

1  THE COURT: ALL RIGHT. AND I WILL GIVE
2  YOU A WRITTEN ORDER SO THAT IT'S CLEAR EXACTLY WHAT
3  I, WHAT I EXPECT IN TERMS OF THE EXTENT OF WHAT I
4  THINK YOU NEED TO DO IN YOUR FURTHER RESPONSES.
5  MR. KRATZ: THANK YOU.
6  THE COURT: ALL RIGHT. I ASSUME YOU
7  DON'T HAVE ANYTHING TO SAY.
8  MR. KRAMER: NOTHING, YOUR HONOR.
9  THE COURT: ALL RIGHT. LET ME TALK ABOUT
10 THE DIGITAL ENVOY MOTION.
11 MOTION TO COMPEL INTERROGATORY RESPONSES
12 AND TO SORT OF ADDRESS THESE FIRST OFF IN ANY EVENT
13 AS SORT OF GENERAL CONCEPTS THAT SEEM TO ARISE
14 HERE, THERE ARE A COUPLE OF ISSUES THAT SEEM TO
15 OVERLAP SEVERAL OF THESE REQUESTS.
16 THE FIRST ONE IS THIS DISPUTE WITH
17 WHETHER OR NOT INFORMATION REGARDING ADSENSE
18 RESEARCH NEEDS TO BE PROVIDED AND THE ARGUMENT THAT
19 GOOGLE MAKES THAT THEY HAVE OPERATED UNDER THE
20 UNDERSTANDING OF THAT ADSENSE FOR CONTENT IS ALL
21 THEY NEED TO RESPOND TO.
22 THEN THERE SEEMS TO BE AN ISSUE ABOUT
23 PUTTING THAT ASIDE, WHETHER OR NOT INFORMATION
24 REGARDING THIRD PARTY SITES GENERALLY, AND THIS IS
25 WHERE I WAS NOT ENTIRELY CLEAR, BUT IF I UNDERSTAND

Page 7

1  IT CORRECTLY, THE THIRD PARTY INFORMATION REGARDING
2  GOOGLE'S ACTIVITIES WITH RESPECT TO THIRD PARTY
3  SITES WHERE DIGITAL ENVOY'S INTELLECTUAL PROPERTY
4  IS NOT BEING UTILIZED.
5  TO THE EXTENT THAT THAT IS BEING
6  REQUESTED, I'LL DEAL WITH THAT IN A MOMENT.
7  AND THEN THERE WAS A REQUEST FOR THE
8  SUCCESSOR PROVIDER, I GUESS IT'S QUOVA, THE
9  DOCUMENTS PERTAINING TO THE GOOGLE RELATIONSHIP
10 WITH THAT INTELLECTUAL PROPERTY PROVIDER.
11 AND THEN THERE ARE PROBABLY OTHER ISSUES.
12 WITH RESPECT TO THE QUOTE "CONTRACTOR
13 DOCUMENTS," I DON'T SEE WHERE THOSE ARE RELEVANT.
14 I READ THE ARGUMENT FROM DIGITAL ENVOY WHY THEY
15 THINK THAT THEY CAN USE IT I GUESS TO DEVELOP THE
16 HOPE OF SOME SORT OF ADMISSIONS, BUT I DON'T SEE
17 THAT'S APPROPRIATE FOR PRODUCTION OR FOR
18 INTERROGATORY RESPONSE.
19 THE ADSENSE FOR SEARCH MATERIALS,
20 HOWEVER, I DO THINK THAT THOSE SHOULD GO OVER. AND
21 I DON'T UNDERSTAND, AND I'LL HEAR FROM MR. KRAMER
22 ON THIS, I DON'T UNDERSTAND WHY THAT INFORMATION
23 SHOULD BE PRECLUDED EVEN ASSUMING THAT IN GOOD
24 FAITH IT WAS OPERATING ON SOME NOTION THAT THAT WAS
25 SOMEHOW NOT INCLUDED IN THE CASE. I DIDN'T HAVE

Page 8

1  THAT NOTION AND I DON'T KNOW -- I DON'T KNOW THE
2  BASIS FOR CARVING IT BETWEEN, BETWEEN CONTENT AND
3  SEARCH IN TERMS OF DISCOVERY RESPONSES, WHETHER OR
4  NOT THERE'S GOING TO BE AN ARGUMENT DOWN THE LINE
5  THAT THE CASE NEEDS TO BE NARROWED IN SOME FASHION.
6  WITH RESPECT TO REQUEST FOR INFORMATION
7  ON THAT MAY, GOOGLE'S INTERACTION WITH ADVERTISERS
8  FOR PURPOSES OF THIRD PARTY SITE ACTIVITY WHERE
9  DIGITAL ENVOY'S INTELLECTUAL PROPERTY IS NOT BEING
10 UTILIZED, I DON'T SEE WHY THAT INFORMATION SHOULD
11 BE THE SUBJECT OF DISCOVERY IN THIS CASE.
12 IT SEEMS TO ME THAT THAT WOULD BE,
13 THERE'S A REAL BURDEN, BURDEN ISSUE THERE, BUT I
14 JUST -- IT SEEMS TO ME TO BE AS FAR AFIELD AND IT'S
15 POTENTIALLY GETTING EVERY PIECE OF PAPER THAT
16 GOOGLE HAS AND\OR ELECTRONIC PERMISSION THAT IT HAS
17 AND I DON'T SEE, I THINK THAT'S FAR TOO BROAD A NET
18 TO CAST.
19 SO THAT'S IT ON SOME OF THOSE LARGER
20 ISSUES, THAT'S KIND OF MY REACTION.
21 SO BOTH OF YOU NO DOUBT MAY WANT TO SPEAK
22 ON THESE ISSUES. I'LL ALSO JUST TELL YOU AND JUMP
23 AHEAD ON SANCTIONS THERE'S NO BASIS TO AWARD
24 SANCTIONS HERE. THIS IS A VERY HOTLY CONTESTED
25 CASE. THE PARTIES ARE POSITIONING AND DOING THINGS

Page 9

1  AND PROBABLY LOSING PATIENCE WITH EACH OTHER AND I
2  UNDERSTAND THAT, BUT THROUGHOUT THIS I DON'T SEE
3  EITHER PARTY TAKING POSITIONS THAT ARE FRIVOLOUS OR
4  WORTHY OF SANCTION AND SO I'M NOT GOING TO SPEND A
5  WHOLE LOT OF TIME TALKING ABOUT THE SANCTIONS
6  REQUEST.
7  OKAY. MR. KRATZ, YOU'RE THE MOVING PARTY
8  SO WHY DON'T YOU GO FIRST ON SOME OF THESE ISSUES.
9  MR. KRATZ: THANK YOU, YOUR HONOR. I
10 THINK WHAT I'D LIKE TO DO IS TO ADDRESS THE
11 PRELIMINARY COMMENTS AND THEN GO THROUGH THE
12 DISCOVERY REQUEST AND BUT I'LL DO IT VERY BRIEFLY
13 JUST TO LAY IN IF THIS IS WHAT YOU HAVE BEEN
14 THINKING ABOUT SO FAR.
15 THE COURT: VERY WELL. GO AHEAD.
16 MR. KRATZ: WITH RESPECT TO THE QUOVA
17 AGREEMENT, THIS IS THE SUCCESSOR PROVIDER.
18 THE COURT: RIGHT.
19 MR. KRATZ: I AGREE THAT CERTAIN
20 CONTRACTS WITH RESPECT TO BETWEEN THE PARTIES AND
21 THIRD PARTIES ARE NOT RELEVANT. I MEAN, IT IS
22 ACTUALLY OUR CONTENTION THAT CERTAIN OF THESE
23 CONTRACTS ARE NOT RELEVANT.
24 HERE'S WHAT HAS HAPPENED SO FAR IN THIS
25 CASE IN TERMS OF DISCOVERY, AND WE TALK ABOUT WHAT

Page 10

1  WE HAVE ASKED FOR WITH RESPECT TO THEIR THIRD PARTY
2  CONTRACTS REGARDING THE ADSENSE PROGRAM. THAT'S
3  NOT WHO I'M TALKING ABOUT. I'M GOING TO TALK ABOUT
4  THAT IN A MINUTE.
5      WHAT I'M TALKING ABOUT IS DISCOVERY
6  PERTAINING TO US PROVIDING OUR TECHNOLOGY TO THIRD
7  PARTIES AND WHICH IS AN EXAMPLE, THEY'RE USING IT,
8  THEY'RE TAKING DISCOVERY, IT'S AN EXAMPLE OF US
9  PROVIDING THAT SERVICE TO OTHER PEOPLE.
10     HERE IN THE QUOVA AGREEMENT WE'RE TALKING
11 ABOUT THEM OBTAINING SERVICES FROM THE THIRD PARTY
12 THAT WERE SIMILAR TO OURS.
13     THE COURT: RIGHT. RIGHT.
14     MR. KRATZ: IF YOUR HONOR IS INCLINED NOT
15 TO CONCEDE THAT OR RULE THAT THE QUOVA AGREEMENT
16 WHICH IS AN EXAMPLE OF THEM OBTAINING THOSE
17 SERVICES FROM THE THIRD PARTY SUBJECT TO THEIR OWN
18 TERMS AND CONDITIONS AND FACTS AND CIRCUMSTANCES
19 REGARDING THE NEGOTIATION, IF YOUR HONOR IS
20 INCLINED TO BELIEVE THAT THOSE THINGS ARE NOT
21 RELEVANT, THEN SO, TOO, WOULD OUR PROVISION OF
22 SERVICES TO THIRD PARTIES COMPLETELY UNRELATED TO
23 THE GOOGLE TRANSACTION ARE ALSO IRRELEVANT, BUT
24 INSTEAD, GOOGLE IS TAKING AN OPPOSITE VIEW AND AS A
25 RESULT FROM THIS, FROM WHAT IS BEING SET UP AS A

Page 11

1  DOUBLE STANDARD, WE DO HAVE A PROBLEM WITH THIS.
2      GOOGLE HAS OBTAINED ALL OF OUR CONTRACTS
3  FROM OTHER CUSTOMERS WHICH IS EXTREMELY INVASIVE,
4  IT'S WHAT THEY CAME TO COURT PREVIOUSLY REGARDING
5  OUR SUBPOENAS ABOUT, SAYING YOU'RE MESSING WITH OUR
6  CUSTOMERS, THEY HAVE TAKEN DEPOSITIONS OF TWO OF
7  OUR CUSTOMERS, AND UNDER SOME THEORY, I UNDERSTAND
8  UNDER SOME THEORY THAT OUR RELATIONSHIPS WITH THESE
9  OTHER PURCHASERS OF OUR SERVICES HAVE SOME
10 RELEVANCE IN THIS CASE, INTERPRETING THE CONTRACT
11 MAYBE, I DON'T KNOW, IN TERMS OF THE DAMAGES, I
12 DON'T KNOW. BUT THERE AT LEAST HAS TO BE A BALANCE
13 WITH RESPECT TO THE QUOVA CONTRACT.
14     THE COURT: WHY DON'T YOU ARTICULATE FOR
15 ME WHAT, PUTTING ASIDE THE DISCOVERY THAT GOOGLE
16 HAS UNDERTAKEN, GO THROUGH FOR ME WHY THE QUOVA
17 CONTRACT IS RELEVANT.
18     MR. KRATZ: THE BEST ARGUMENT FOR THE
19 QUOVA CONTRACT BEING RELEVANT IS HERE WE HAVE A
20 SITUATION WHERE, AND IT'S SUBSEQUENT FOR ME TO
21 MEASURE WHICH IS NOT EXCLUDED IN THIS ISSUE, THAT'S
22 A TORT CONCEPT.
23     THE COURT: WELL, IT'S GOT TO BE FOR A
24 PURPOSE OTHER THAN, I MEAN, IF YOU'RE USING THE
25 CLASSIC TORT ANALYSIS IT IS EXCLUDED UNLESS.

Page 12

1      MR. KRATZ: UNDER TORT LAW BECAUSE THAT'S
2  A PUBLIC POLICY REASON TO DO THAT IN ORDER TO
3  PROTECT THE PUBLIC. THIS ISN'T THE CASE HERE. SO
4  THAT RULE OF EXCLUSION DOES NOT APPLY TO US.
5      THE COURT: BUT WHY IS IT RELEVANT?
6  LET'S SAY IN A SUBSEQUENT CONTRACT THERE IS A MUCH
7  MORE EXPLICIT PROVISION THAT, OR THERE'S SOME, OR A
8  SIMILAR PROVISION AND SOMEHOW YOU HAVE MATERIALS
9  THAT IT'S INTERPRETED IN A FASHION THAT IS
10 CONSISTENT WITH HOW YOU WANT TO INTERPRET YOUR
11 LICENSE AGREEMENT WITH GOOGLE.
12     I GUESS WHAT I'M MISSING IS THAT IF YOU
13 THINK THAT THAT IS SOMEHOW AN ADMISSION, I DON'T
14 SEE IT. I MEAN, I DON'T KNOW WHAT IT GOES TO OTHER
15 THAN TO SAY, WELL, THIS SUBSEQUENT CONTRACT CALLS
16 INTO QUESTION STATEMENTS THEY'RE MAKING NOW HOW
17 THEY INTERPRETED THE LICENSE AGREEMENT, IS THAT
18 WHAT YOU'RE SAYING.
19     MR. KRATZ: THERE'S A COUPLE OF THINGS.
20 WE'RE GOING TO ARGUE THAT IF THEY WANTED WHAT THEY
21 TOOK, THEN THEY PERFECTLY KNEW, THEY PERFECTLY
22 KNEW, WELL, HOW TO WRITE A CONTRACT THAT WOULD
23 ALLOW THEM TO DO THAT, THAT'S AN ARGUMENT THAT
24 WE'RE GOING TO BE MAKING IN THIS CASE.
25     SECONDLY, WE'RE ARGUING THEY ALREADY

Page 13

1  TESTIFIED THAT THAT'S NOT THE CASE. NO, THIS IS
2  ABSOLUTELY SUFFICIENT. I WOULDN'T HAVE CHANGED A
3  THING. AND SO WE HAVE A PROBLEM WITH THE VERACITY
4  OF THOSE WITNESSES WHO ARE SO TESTIFYING.
5      THEY CAME IN AND ARE ACTUALLY CLAIMING
6  THAT THIS WAS AN UNLIMITED CONTRACT. WE THINK THAT
7  THE QUOVA CONTRACT IS INSTRUCTIVE AS TO BOTH OF
8  THOSE POINTS AND THAT'S THE SAME THING AS THE
9  REMEDIAL MEASURE.
10     THE COURT: I DON'T SEE HOW THE QUOVA
11 CONTRACT, WHATEVER IT MAY SAY, IS GOING TO PROVIDE
12 YOU WITH AN ARGUMENT ON THE WAY YOU JUST
13 CHARACTERIZED IT. I MEAN, I JUST DON'T SEE, AS
14 SUBSEQUENT RELATIONSHIP WITH, YOU KNOW, WITH A
15 THIRD PARTY ALL OF THE MANY THINGS THAT MAY GO INTO
16 HOW THAT PARTICULAR RELATIONSHIP IS STRUCTURED, TO
17 THEN SAY THAT THE LANGUAGE OF THAT SUBSEQUENT
18 AGREEMENT IS SOMEHOW, IS THEN SOMEHOW CASTS SOME
19 QUESTION ON THE WITNESS'S CREDIBILITY ON HOW THEY
20 CHARACTERIZE THIS EARLIER CONTRACT, IT JUST REALLY
21 SEEMS TO ME TO BE PRETTY ATTENUATED AND SO MUCH SO
22 THAT I JUST DON'T SEE HOW THAT ARGUMENT IS GOING TO
23 WORK, BUT I'LL CONSIDER IT.
24     OKAY.
25     MR. KRATZ: WE'RE ALSO DEALING WITH A

Page 14

1  DIFFERENT STANDARD. WE'RE DEALING WITH DISCOVERY.
2       THE COURT: I UNDERSTAND.
3       MR. KRATZ: I KNOW YOU UNDERSTAND THAT
4  BUT THAT'S A PROBLEM THAT WE HAVE WITH MUCH OF THE
5  RESPONSES THAT WE HAVE GOING ON HERE. THEY'RE
6  HOLDING US TO A STANDARD THAT IS NOT THE STANDARD
7  BEFORE THE COURT, AND I THINK THEY'RE DOING IT IN
8  THIS ONE AND SOME OF THE OTHER THEY'RE DOING IT
9  CLEARLY ON THE OTHER ARGUMENTS AS WELL.
10      THE COURT: I ASSUME WHEN YOU'RE TALKING
11 ABOUT GENERAL COMMENTS, THE ADSENSE RESEARCH ISSUE
12      MR. KRATZ: YES, YES. YOUR HONOR, THAT
13 IS CLEARLY IN THE CASE AND IT'S CERTAINLY
14 DISCOVERABLE, AS YOUR HONOR POINTS OUT REGARDLESS,
15 BUT WE HAVE IN THE COMPLAINT A SECTION ENTITLED
16 "GOOGLE'S MISUSE OF OUR TECHNOLOGY" AND THAT'S WHEN
17 WE FIRST TALK ABOUT THEIR PROVIDING SEARCH SERVICES
18 AND GEOTARGETING ADS IN THAT CONTEXT AND WE ALSO
19 SAY THEY MOVE INTO PROVIDING CONTENT, IT'S
20 CHRONOLOGICAL RENDITION OF THE FACTS.
21      THE COURT: ONE OF THEIR POINTS IS TO SAY
22 THAT WHEN YOU LOOK AT YOUR AVERMENTS, IF YOU LOOK
23 AT THE CHRONOLOGY YOU SET UP IN YOUR AVERMENTS, YOU
24 CAN TALK ABOUT WHEN YOU HONE IN, YOU'RE TALKING
25 ABOUT THE PERIOD OF TIME YOU'RE FOCUSSING ON, THAT

Page 15

1  PERIOD OF TIME HAPPENS TO BE CONSISTENT WITH THE
2  ADSENSE FOR CONTENT PROGRAM. THE ADSENSE FOR
3  SEARCH PROGRAM THEY POINT OUT HAVE BEEN IN
4  EXISTENCE FOR SEVERAL YEARS.
5       MR. KRATZ: THE DATES WE'RE FOCUSSING ON
6  ARE DIRECTLY THE DATES THAT RUN FROM THE SPAN
7  ADSENSE RESEARCH PROGRAM, THE FIRST TIME THEY BEGAN
8  TO PLACE ADVERTISEMENTS ON ANY THIRD PARTY SITES,
9  THE TIMING OF THE COMPLAINT CLEARLY INCLUDES THAT.
10 THE AVERMENTS MAKE THAT ABSOLUTELY CLEAR.
11 WE DON'T, FOR ONE, I DON'T KNOW THAT WE HAVE A
12 TIMEFRAME IN THERE, BUT WE HAVE ALWAYS CLAIMED THAT
13 IT'S THE ENTIRETY OF THE PROGRAM THAT HAS BECOME
14 KNOWN AS ADSENSE, BACK THEN IT WASN'T, IT WASN'T
15 DELINEATED IN THE WAY THAT THEY DELINEATE IT NOW,
16 AND ALSO SO TOO IN THE COMPLAINT WE DON'T MAKE THAT
17 DISTINCTION. WE SAY THAT IT'S WRONGFUL TO PLACE
18 THIRD USE OUR TECHNOLOGY FOR THE PLACEMENT OF
19 ADVERTISEMENTS ON THE THIRD PARTY SITE.
20      THE COURT: ON EITHER PART OF THE ADSENSE
21 PROGRAM.
22      MR. KRATZ: ABSOLUTELY. THEY LATER
23 DIVIDE IT UP, AND WE HAVE THIS ADSENSE FOR SEARCH
24 AND CONTENT AND THEY HELP THEMSELVES TO A
25 CHARACTERIZATION OF WHAT OUR CLAIM WAS, MANDATORY

Page 16

1  DISCLOSURES MADE IT CLEAR, THE INTERROGATORIES MADE
2  IT CLEAR. BACK IN AUGUST IT MADE IT CLEAR THAT
3  WE'RE CLAIMING EVERYTHING. THE COMPLAINT MAKES IT
4  CLEAR, BUT CLEARLY AT THIS POINT I DON'T UNDERSTAND
5  WHAT THE PROBLEM IS. THEY'RE TRYING TO GET AWAY
6  WITH SOMETHING.
7       THE COURT: YEAH, BUT I ASSUME THAT THERE
8  MAY BE DIFFERENT ARGUMENTS THAT BETWEEN ADSENSE FOR
9  SEARCH AND CONTENT. I MEAN, THEY HAVE OTHER --
10 THEY CAN GO BACK TO THE ARGUMENTS I SAID SOME IN
11 SUMMARY JUDGMENT, AND THERE'S A DISTINCTION BETWEEN
12 THE TWO PROGRAMS. IT MIGHT BE EVEN WITH RESPECT TO
13 THE LICENSING.
14      MR. KRATZ: WITH RESPECT TO THE LICENSING
15 AGREEMENT, WHICH IS WHAT IS APPROPRIATE HERE,
16 THERE'S ONE DIFFERENCE, AND THAT IS, THAT IS THERE
17 IS A PROHIBITION GENERALLY ON USING THE TECHNOLOGY
18 FOR SOMETHING OTHER THAN THEIR BUSINESS WHICH IS
19 DEFINED AS INFORMATION SEARCH. AND WE MAKE THAT
20 ARGUMENT IN THERE WITH RESPECT TO THE ADSENSE FOR
21 CONTENT PROGRAM.
22      THE COURT: RIGHT.
23      MR. KRATZ: WE DO NOT MAKE THAT ARGUMENT
24 WITH RESPECT TO THE ADSENSE FOR RESEARCH. SO IT'S
25 A SUBSET IN TERMS OF WHAT OUR ARGUMENTS ARE AND THE

Page 17

1  REASON THAT IS WORTH POINTING THAT OUT IS THEY SAY
2  WE WOULD HAVE DONE DISCOVERY DIFFERENTLY WHICH BACK
3  IN AUGUST THEY ARE TOLD THAT IT'S EVERYTHING, AND
4  SECONDLY, THE ARGUMENTS WE'RE MAKING WITH RESPECT
5  TO THE EXTRA CONTRACTUAL ACTIVITY UNDER THE ADSENSE
6  RESEARCH PROGRAM ARE THE SUBSET AND SO TO THE
7  EXTENT THAT THEY ARE TAKING AND HAVE TAKEN
8  EXTENSIVE DISCOVERY WITH RESPECT TO THE PARAGRAPH
9  3.1, PARAGRAPH 7, IT'S THE SAME, IT'S THE SAME
10 DISCOVERY.
11      THE ONE THING THEY HAVE DONE DIFFERENTLY
12 IS THEY HAVEN'T PROVIDED ANYTHING WITH RESPECT TO
13 ADSENSE RESEARCH.
14      THE OTHER THING I WANT TO TALK ABOUT AS A
15 PRELIMINARY MATTER IS THE SECOND CONCEPT OF WHETHER
16 OR NOT WE ARE ASKING FOR INFORMATION REGARDING
17 THEIR INTERACTION WITH THIRD PARTIES WITH DIGITAL
18 ENVOY'S TECHNOLOGY IS NOT BEING USED.
19      THE COURT: RIGHT.
20      MR. KRATZ: I THINK WHAT WE HAVE HERE IS
21 A MISIMPRESSION OF WHAT WE'RE ASKING FOR AS WELL AS
22 A MISIMPRESSION OF WHAT THEY HAVE PRODUCED. AND I
23 THINK THAT THAT MAY BE CRITICAL TO WHAT IS BEING --
24 WHAT IS GOING ON HERE.
25      IT'S NOT LIKE THEY HAVE PRODUCED TO US

5 (Pages 14 to 17)

U.S. COURT REPORTERS

d5455ece-baf4-4ca6-89f1-26d20ce3db9a

Page 18

1  THE RECORD INFORMATION REGARDING THEIR PLACEMENT OF
2  ADVERTISING WHERE THEY HAVE DONE GEOTARGETING.
3  THEY HAVEN'T DONE THAT.
4      AND IT'S NOT LIKE THEY HAVE GIVEN US ALL
5  OF THIS INFORMATION THAT IS DIRECTLY RELEVANT TO
6  THE CASE AND WE WANT MORE. IT'S THEY HAVEN'T DONE
7  IT IN THE FIRST PLACE. THEY HAVEN'T GIVEN US
8  ANYTHING WITH RESPECT TO THE RECORD INFORMATION,
9  THE CONTRACTS, THE CONTACTS REGARDING WHEN THEY'RE
10 GOING TO PLACE ADS ON THIRD PARTY SITES AND IT
11 INCLUDES OUR TECHNOLOGY, THEY HAVEN'T GIVEN US ANY
12 OF THAT AND ANY FINANCIAL RECORD INFORMATION WITH
13 RESPECT TO THE MONEY THAT THEY MADE IN THAT
14 PROGRAM. OKAY. AND SO WHAT WE'RE CLAIMING IS NOT
15 WHAT WE SHOULD GET THEIR CONTACTS WITH YAHOO, AOL,
16 WHOEVER, WHERE WE'RE NOT TALKING ABOUT PLACEMENT OF
17 ADS, TARGETS ADS ON THIRD PARTY SITES, WE'RE NOT
18 ASKING FOR THAT.
19     THE COURT: WELL, LET ME PICK ONE.
20     YOUR INTERROGATORY NUMBER 5, ALL WEB
21 SIGNATURES ON WHICH GOOGLE HAS PLACED ADS.
22     MR. KRATZ: YES, SIR. THE TESTIMONY --
23     THE COURT: THERE'S NO LIMITATION IN
24 THERE, WELL, ALL WEB SITES WHICH GOOGLE HAS PLACED
25 ADS WHEREIN THEY'RE UTILIZING DIGITAL ENVOY DIGITAL

Page 19

1  TECHNOLOGY.
2      MR. KRATZ: THE DISCOVERY, AND PERHAPS I
3  DIDN'T UNDERSTAND THE PROBLEM WITH THEM GIVING US
4  INFORMATION WITH RESPECT TO WHERE THEY HAVE
5  PRODUCED, WHERE THEY HAVE BEEN USING OUR
6  TECHNOLOGY. THE ANSWER IS THAT THEY USE IT
7  EVERYWHERE. THE ANSWER IS IF AN IP ADDRESS IS
8  RETURNED WHICH IT IS CODED IN AND THEY PLACE ADS
9  AND IT'S CODED IN AND IT CAN BE DISABLED, IT CAN BE
10 ALLOWED WHERE THEY INSTEAD REPLACE THAT, THEY DO
11 THEIR OWN GEOTARGETING AND THEY SATISFY GEO EQUALS
12 AND THEY SAID IN DOCUMENTS THAT'S ONLY GOING TO
13 HAPPEN ONE IN A MILLION TIMES. I WISH THAT INSTEAD
14 THEY GET THE IP ADDRESS. WHEN THEY GET THE IP
15 ADDRESS THEY GEOTARGET. THEY USE IT IN EVERYTHING
16 THEY DO WITH RESPECT TO ADVERTISEMENTS.
17     THE COURT: THAT'S, THAT'S -- WELL --
18 WELL, I'LL SEE. THAT'S CERTAINLY NOT MY
19 UNDERSTANDING OF WHAT GOOGLE HAS PRESENTED TO ME
20 OVER TIME. I THINK THEY MADE THE ARGUMENT TO ME
21 MANY TIMES THAT THERE ARE CERTAIN, FOR EXAMPLE,
22 ADVERTISERS THAT HAVE NO CONCERN WHATSOEVER, WHERE
23 THEIR POTENTIAL CUSTOMERS ARE COMING FROM AND --
24     MR. KRATZ: THE ADVERTISING.
25     THE COURT: SO WHY GEOTARGETING?

Page 20

1      MR. KRATZ: WHEN AN ADVERTISER SETS UP
2  HERE'S WHAT THEY DO IS FILL OUT A SCREEN
3  INFORMATION. THE FIRST QUESTION THEY ASK, AND GIVE
4  YOU THE IMPORTANCE OF GEOTARGETING THE FIRST
5  QUESTION THEY ASK IS WHERE DO YOU WANT THESE ADS TO
6  BE PLACED, TO WHICH VISITORS, NOT WHETHER YOU WANT
7  TO DO THIRD PARTY PLACEMENT OR JUST GOOGLE
8  PLACEMENT BUT WHAT COUNTRIES, WHERE GEOGRAPHICALLY
9  DO YOU WANT TO DO IT? THEY CAN SELECT SEVERAL
10 BOXES. THE FIRST BOX IS ALL COUNTRIES OR THEY CAN
11 GO IN AND MENU DROP AND SELECT EVERYTHING ELSE.
12     THE COURT: RIGHT.
13     MR. KRATZ: AND THAT'S TRUE. THERE ARE
14 ADVERTISERS, ADVERTISERS, NOT WEB SITES BUT
15 ADVERTISERS WHO, WHO, WHO WILL SELECT ALL
16 COUNTRIES, OKAY. AND WE DON'T KNOW HOW MANY. WE
17 HAVE ASKED. THEY DON'T TELL US. THEY WON'T TELL
18 US. SO WE DON'T KNOW. THEY WON'T GIVE US THE
19 INFORMATION ABOUT THE ONES THAT WERE SELECTED SO WE
20 DON'T KNOW. THAT'S FIRST. BUT SECONDLY, WE'RE
21 TALKING ABOUT THE WEB SITES ON WHICH THESE ADS ARE
22 PLACED.
23     THE WAY IT WORKS IS THAT THE IP ADDRESS
24 IS RETURNED, THE GEOGRAPHY IS SOLVED, THEN WHEN THE
25 AD IS SELECTED, THEY THEN LOOK AND SEE IF THAT AD

Page 21

1  WAS RESTRICTED TO GEOGRAPHY OTHER THAN WHAT THE
2  GEOGRAPHIC SOLUTION WAS AND IF THAT HAPPENS, THEN
3  IT'S INCLUDED. WHEN THE IP ADDRESS IS BROUGHT IN
4  FROM THE THIRD PARTY WEB SITE, OUR TECHNOLOGY IS
5  USED. AND IT'S USED ALL OF THE TIME.
6      THE COURT: AND EVEN IF, UNDER YOUR
7  THEORY, EVEN UNDER THE EVENT THAT THEIR
8  ADVERTISING, FOR EXAMPLE, REALLY DOESN'T CARE ABOUT
9  THE GEOTARGETING, BY DEFINITION YOU'RE SAYING YOUR
10 TECHNOLOGY IS SOMEHOW EMPLOYED EVEN IN THOSE
11 INSTANCES IS WHAT YOU'RE TELLING ME.
12     MR. KRATZ: IT ABSOLUTELY IS. AND WE
13 WOULD LIKE TO KNOW THE FREQUENCY. WE WOULD LIKE TO
14 KNOW THE ENABLEMENT, WE WOULD LIKE TO KNOW THE
15 RELATIONSHIP WITH THE THIRD PARTIES OF THE WEB
16 SITES TO DETERMINE HOW THIS, HOW THIS IS WORKED
17 OUT. WE WOULD LIKE TO KNOW THE FREQUENCY. THEY
18 WON'T EVEN LOOK FOR IT.
19     THE COURT: LET ME FOCUS ON JUST ANOTHER
20 ONE BY WAY OF ASKING. THE QUESTION NUMBER 14,
21 DOCUMENTS REGARDING GOOGLE'S ADVERTISERS ON WEB
22 SITES. THERE'S NO LIMITATION ON THAT. EVERY ONE
23 YOU'VE GOT. TELL US EVERY SINGLE ADVERTISER THAT
24 YOU'VE GOT RELATIVE TO THE PROTECTION ON A THIRD
25 PARTY SITE.

| Page 22 | Page 24 |
|---|---|
| 1  MR. KRATZ: RELATIVE TO THE LOCATION?<br>2  THE COURT: WELL, THAT'S MY WORD BUT IT'S<br>3  REGARDING THE IDENTITY OF GOOGLE ADVERTISERS ON<br>4  THIRD PARTY SITES.<br>5  MR. KRATZ: THAT'S REQUEST 14.<br>6  THE COURT: THAT'S REQUEST FOR PRODUCTION<br>7  NUMBER 14.<br>8  ISN'T THAT, ISN'T THAT EXTRAORDINARILY<br>9  OVERBROAD?<br>10  MR. KRATZ: I'VE GOT MY NOTES AND I DON'T<br>11  SEE MYSELF MOVING TO COMPEL ON THAT ONE.<br>12  THE COURT: WELL, IF YOU'RE NOT MOVING TO<br>13  COMPEL THEN I WON'T GIVE YOU A RULING THAT IT IS<br>14  OVERBROAD.<br>15  MR. KRATZ: I COULD BE WRONG ON THAT IN<br>16  WHICH CASE I'LL SUBMIT IT ON THE BRIEFS BUT THE<br>17  PROBLEM IS THAT WE HAVE ATTEMPTED IN A VARIETY OF<br>18  WAYS TO GET THEM TO COVER UP SOME INFORMATION AND<br>19  THEY HAVE CONTINUALLY, THEY STARTED THIS CASE BY<br>20  ASKING FOR BIFURCATION AND DISCOVERY AND LET'S DO<br>21  CONTRACTUAL INFORMATION AND YOUR HONOR SAID, NO,<br>22  GIVE THEM THE DISCOVERY AND THEY DID.<br>23  THEY THEN CAME IN AND ASKED FOR OUTSIDE<br>24  ATTORNEYS ONLY SCRUTINIZING AND WE ENDED UP GETTING<br>25  SIX PAGES OF INFORMATION AND ALL AS A RESULT OF | 1  DESELECTED OR NOT SELECTED A SPECIFIC COUNTRY, BUT<br>2  YOU KNOW, I THINK WE'RE ENTITLED TO NUMERICALLY THE<br>3  FREQUENCY OF THAT, I THINK WE'RE ENTITLED TO<br>4  ANALYZE THE INCIDENTS OF THAT, AND IN ORDER TO<br>5  DEMONSTRATE THE IMPORTANCE OF IT, OR TO GIVE A<br>6  REASONABLE ESTIMATE OF THE, OF THE ENTIRETY OF OUR<br>7  DAMAGE CLAIM.<br>8  I MEAN, RIGHT NOW WE HAVE A GROSS NUMBER<br>9  OF MONEY THEY MADE OFF OF ADSENSE FOR THE CONTENT<br>10  PROGRAM. ACTUALLY IT'S A NET NUMBER BECAUSE THEY<br>11  HAVE GIVEN US THE INFORMATION THAT THEY HAVE SHARED<br>12  WITH THE THIRD PARTY WEB SITES AND THAT'S WHAT WE<br>13  GOT, THAT'S ALL WE GOT AND AT THIS POINT THAT'S OUR<br>14  DAMAGE CLAIM WITH RESPECT TO ADSENSE FOR CONTENT.<br>15  WE NEED TO BE ABLE TO ESTABLISH THE<br>16  RELATIVE IMPORTANCE OF GEOTARGETING IN THIS, THE<br>17  SPECIFIC MONEY THEY'RE MAKING, WE'RE ENTITLED TO<br>18  GET ALL OF THAT INFORMATION AND THEY'RE GIVING US<br>19  NOTHING.<br>20  THE PROBLEM IS, AND IF YOU DON'T MIND<br>21  I'LL GO THROUGH THIS. THE PROBLEM IS THAT THERE'S<br>22  FUNDAMENTALLY AN INCORRECT STANDARD FOR DISCOVERY<br>23  THAT IS BEING ADVANCED BY GOOGLE. THEY HAVE<br>24  HEIGHTENED OUR BURDEN CLEARLY WELL BEYOND THE RULE.<br>25  AND THEN THEY'RE SAYING, WELL, BUT NOT ONLY THAT, |
| Page 23 | Page 25 |
| 1  TRYING TO GET INFORMATION AND WE ASKED FOR ALL OF<br>2  THIS STUFF IN AUGUST OF LAST YEAR AND WE'RE STILL<br>3  NOT GETTING IT. THE CASE IS DERAILED BECAUSE ONCE<br>4  WE GET THE INFORMATION WE HAVE EXPERTS THAT NEED TO<br>5  BE REVIEWING THIS INFORMATION AND BOTH LIABILITY<br>6  AND EXPERTS AND WE'RE UNABLE TO DO THIS. FRIDAY IS<br>7  THE LAST DAY OF DEPOSITION DISCOVERY, FACT<br>8  DISCOVERY, AND WE AGREED BETWEEN COUNSEL THAT WE'RE<br>9  GOING TO HAVE TO SUBMIT A NEW CASE MANAGEMENT<br>10  ORDER.<br>11  WHAT THEY HAVE DONE IS EFFECTIVELY<br>12  DELAYED THE CASE AND THEY HAVE NOT GIVEN US<br>13  ANYTHING RELEVANT IN THIS CASE AND THEY HAVE GIVEN<br>14  US SOME DOCUMENT AND INTERPRETATION AND THEY GAVE<br>15  US DOCUMENTS REGARDING THE ROLE OF ADSENSE FOR<br>16  CONTENT AND THAT'S WHERE WE GOT THE DOCUMENT THAT<br>17  SAID WE'RE GOING TO TELL PEOPLE NOT TO GEOTARGET ON<br>18  THEIR OWN, BUT WE DID GET A LITTLE. BUT THEY<br>19  CONTINUED TO PRODUCE NOTHING WITH RESPECT TO THE<br>20  DOCUMENTS THAT WE'RE ABSOLUTELY ENTITLED TO, TO<br>21  MAKE OUR LIABILITY CASE, TO MAKE OUR DAMAGE CASE.<br>22  IT'S ABSURD.<br>23  SO, YOUR HONOR, IF WHAT YOU'RE SAYING IS<br>24  WITH RESPECT TO THE SECOND POINT IS IF IT'S<br>25  RELATING TO THE ADVERTISERS THAT HAVE, THAT HAVE | 1  YOU HAVE TO ESTABLISH A CERTAIN AMOUNT OF PROOF<br>2  WHERE BEFORE YOU GET TO SEE OUR, GET TO SEE OUR<br>3  EVIDENCE AND THAT'S NOT THE LAW. WE HAVE MADE GOOD<br>4  ALLEGATIONS. THEY EVEN SURVIVED SUMMARY JUDGMENT<br>5  IN ORDER TO NOW, JUST NOW OBTAIN THE INFORMATION<br>6  WE'RE ENTITLED TO DO IT.<br>7  RIGHT NOW GOOGLE CONTROLS THE FLOW OF<br>8  INFORMATION THAT IS COMING TO US ABOUT THIS CASE<br>9  AND THEY'RE USING IT TO THEIR STRATEGIC ADVANTAGE<br>10  TRYING TO SET US UP, AND, IN FACT, WE EVEN<br>11  SUBMITTED A DECLARATION BY MR. FREEDMAN THAT<br>12  POINTED OUT A COUPLE OF THINGS, INCLUDING SOME<br>13  THINGS ON THE WEB SITE AND THEY'RE TRYING TO<br>14  ELEVATE OUR STANDARD HERE ON A MOTION TO COMPEL TO<br>15  WELL, THAT'S NOT ADMISSIBLE EVIDENCE.<br>16  SO WE'RE THE STANDARD TO GET THE<br>17  DISCOVERY IN THE FIRST PLACE SO WE HAVE TO<br>18  ESTABLISH, WITH ADMISSIBLE EVIDENCE, OUR RIGHT TO<br>19  GET DISCOVERY THAT MIGHT LEAD TO ADMISSIBLE<br>20  EVIDENCE. I MEAN, IT'S BECOME PATENTLY ABSURD.<br>21  THEY ATTEMPTED TO DEFINE OUR CLAIMS AND<br>22  REMEDIES. THEY'RE SAYING, WELL, YEAH, WHY YOUR<br>23  UNJUST ENRICHMENT THEORY OF DAMAGES WHICH IS IN THE<br>24  STATUTE THAT THEY'RE PURSUING THEM UNDER, WE DON'T<br>25  NEED TO GIVE YOU ANY INFORMATION BECAUSE WE'RE |

```
                                                    Page 26
 1  REALLY NOT BEING ENRICHED BY A PROGRAM IN WHICH IT
 2  IS THE FASTEST GROWING PROGRAM THEY'VE GOT. THEY
 3  MADE TENS OF HUNDREDS OF MILLIONS OF DOLLARS OF
 4  ADSENSE AND THEY'RE SAYING THEY'RE NOT BEING
 5  ENRICHED AND THEY'RE DEFINING WHAT OUR CLAIMS AND
 6  REMEDIES ARE AND THEY'RE CLAIMING WHAT WE CONCEDE
 7  AND THEY CONTINUE TO DO.
 8       THE COURT: PART OF THE OVERLAY ON THIS
 9  AND IS THAT, AND I HAVE HAD SOME, AS YOU POINT OUT,
10  SOME DISCOVERY RELATED MOTIONS IN THIS MATTER, IN
11  ADDITION TO THE SUBSEQUENT MOTIONS, SOME OF YOUR
12  REQUESTS ARE IF YOU JUST READ THEM WITHOUT A LOT OF
13  DISCUSSION, THEY ARE VERY BROAD AND THEY
14  POTENTIALLY, POTENTIALLY ARE TALKING WITH JUST
15  SWEEPING IN EVERYTHING YOUR OPPONENTS HAVE AND WHAT
16  I'M CONCERNED ABOUT IS THAT I DON'T GET, GRANTED
17  IT'S DISCOVERY, GRANTED THE STANDARD WE ALL KNOW
18  WELL, WHICH IS EITHER RELEVANT TO THE CLAIMS OR
19  DEFENSES IN THE CASE OR LIKELY TO LEAD FOR GOOD
20  CAUSE SHOW LIKELY TO LEAD TO DISCOVERY OF RELEVANT
21  EVIDENCE.
22       AND, OKAY, WE ALL KNOW THAT AND IT'S OKAY
23  TO SAY BUT YOU HAVE TO HAVE SOME LIMITS ON IT AND
24  YOUR REQUESTS ARE VERY EXPANSIVE AS I READ THEM AND
25  IN A GENERAL WAY. AND WHAT I'M NOT HEARING IS A
```

```
                                                    Page 27
 1  REAL EFFORT TO PUT SOME SORT OF PARAMETERS ON IT
 2  AND IT'S MORE, WELL, THIS IS DISCOVERY AND WE GET
 3  EVERYTHING AND THAT IS NOT RIGHT.
 4       AND SO IN SOME OF THESE INSTANCES I DON'T
 5  SEE A LOT OF EFFORT BEING MADE TO BEYOND JUST,
 6  BEYOND JUST THE ANNOUNCEMENT THAT IT'S DISCOVERY
 7  AND SO WE SHOULD GET TO SEE A WHOLE LOT OF THINGS.
 8  THE IDEA THAT, WELL, WE NEED THIS, AND WE NEED THIS
 9  BECAUSE AND WE PERHAPS DON'T NEED THAT. IT'S WE
10  NEED EVERYTHING AND THAT'S WHAT CAUSES ME SOME
11  CONCERN.
12       MR. KRATZ: WE'LL TALK ABOUT THE SPECIFIC
13  REQUESTS WE MOVE UNDER, BUT I WILL SAY FROM A
14  GENERAL STANDPOINT THE BREADTH OF OUR DISCOVERY IS
15  A RESULT OF THE SCOPE OF THEIR VIOLATION OF OUR
16  CONTRACT.
17       THE COURT: BUT THIS GETS BACK TO A
18  FUNDAMENTAL ISSUE IN THE CASE. I WOULD ASSUME THAT
19  YOU WOULD AGREE WITH ME IN YOUR ZEALOUS ADVOCATE
20  FOR YOUR CLIENT, AND OBVIOUSLY HEAR ABOUT YOUR
21  CLIENT'S PRODUCT, YOUR CLIENT'S PRODUCT IS NOT, IS
22  NOT EVERYTHING THAT YOUR COUNTERPART HAS. ITS
23  ENTIRE WORLD IS NOT GEOTARGETING.
24       MR. KRATZ: IT'S INTEGRATING WITH THEIR
25  TARGETING TECHNOLOGY. IT'S IN THERE. AND SO WHEN
```

```
                                                    Page 28
 1  THEY USE IT OFF SITE, IT'S ALL RELEVANT. IT'S ALL
 2  ADMISSIBLE BUT IT'S ALL RELEVANT. IT'S CLEARLY
 3  DISCOVERABLE DOWN THE LINE IN TERMS OF THE STANDARD
 4  PROOF WE HAVE. IT'S ABSOLUTELY -- EVERYTHING THEY
 5  DO ON ADSENSE IS RELEVANT.
 6       THE COURT: YOU KNOW.
 7       MR. KRATZ: IT'S ADMISSIBLE.
 8       THE COURT: EVERY CAR HAS PAINT ON IT.
 9  THE PAINT MANUFACTURER CAN'T THEN SAY IF THEY HAVE
10  A DISPUTE WITH THE MANUFACTURER CAR COMPANY, WE GET
11  EVERY PIECE OF INFORMATION ABOUT EVERYTHING THAT
12  HAS GONE INTO BUILDING THAT CAR BECAUSE EVERY CAR
13  YOU HAVE HAS PAINT ON IT SO WE GET TO -- I MEAN,
14  IT'S A SIMPLISTIC EXAMPLE BUT NONETHELESS THERE IS
15  THIS NOTION THAT BECAUSE THERE MAY BE AN ELEMENT OF
16  WHAT THEY DO THAT IMPLICATES YOUR TECHNOLOGY WE
17  THEREFORE GET EVERYTHING THAT THEY DO, INFORMATION
18  ABOUT ABSOLUTELY EVERYTHING AND THAT CANNOT BE.
19       MR. KRATZ: WELL, YOUR HONOR, WE'RE
20  TALKING ABOUT THEIR TARGETED ADVERTISING PROGRAM.
21  WE'RE TALKING ABOUT WHAT THEY SELL IS THEIR ABILITY
22  TO TARGET. THE REASON THEY'RE ABLE TO SELL IT IS
23  BECAUSE THESE WEB SITES WANT PEOPLE TO CLICK ON
24  THOSE ADVERTISEMENTS. GOOGLE SELLS IT SAYING WE DO
25  TARGETING, GREAT, AND THEREFORE, YOU'RE GOING TO
```

```
                                                    Page 29
 1  GET A LOT OF MONEY FROM US.
 2       WHEN YOU SIGN UP FOR THE ADVERTISERS THAT
 3  WANT TO GET THEIR ADS TARGETED BY GOOGLE, THEY
 4  ANSWER FOUR QUESTIONS. THEY ANSWER FOUR QUESTIONS
 5  IS ALL. WHERE DO YOU WANT IT? GEOGRAPHICALLY
 6  TARGETED, WHICH ALSO IMPLICATES OUR TECHNOLOGY AND
 7  THEN THEY GIVE YOU THE CONNECTIONS OF THOSE ADS SO
 8  THEY CAN KEY WORD THEM IN IN ORDER TO TARGET TO
 9  SUBJECT MATTER OF. THERE ARE TWO WAYS OF
10  TARGETING.
11       THEY'RE GOING TO SAY IT'S A COMPLICATED
12  ALGORITHM AND THINGS LIKE THAT BUT WHAT THEY DO FOR
13  ADSENSE RESEARCH THEY TAKE THE SEARCH TERM AND THE
14  IP ADDRESS. TWO THINGS. ONE OF THEM IS OUR
15  TECHNOLOGY.
16       THE COURT: BUT AGAIN, I DON'T WANT TO
17  ARGUE THE MERITS OF THE CASE. I WANT TO GET INTO
18  SOME PARAMETERS ON WHAT YOU'RE ENTITLED TO GET IN
19  THE WAY OF DISCOVERY AND, YOU KNOW, THAT IS, THE
20  ANSWER TO THAT IS NOT JUST OUR PRODUCT IS VERY
21  IMPORTANT, OUR TECHNOLOGY OR INTELLECTUAL PROPERTY
22  IS VERY IMPORTANT IN WHAT THEY DO, THEREFORE,
23  EVERYTHING THEY DO.
24       MR. KRATZ: WE DON'T WANT EVERYTHING THEY
25  DO.
```

### Page 30

1  THE COURT: THAT'S WHAT I'M TRYING TO GET
2  AT BECAUSE I HAVE SOME TROUBLE WITH THE DEGREE TO
3  WHICH, NO PUN INTENDED, IN TERMS OF TARGETING WHAT
4  THE DISCOVERY REQUEST IS SEEKING AS OPPOSED TO, YOU
5  KNOW, A SWEEP EVERYTHING IN AND IT'S DISCOVERY SO
6  WE GET TO LOOK AT IT ALL AND I HAVE SOME CONCERN
7  ABOUT THAT.
8       BUT TO MOVE THIS ALONG, WHY DON'T I HEAR
9  ON THE GENERAL CONCEPTS FROM MR. KRAMER AND THEN
10 I'M NOT PROPOSING TO GO INTERROGATORY BY
11 INTERROGATORY OR REQUEST BY REQUEST BECAUSE I JUST
12 DON'T HAVE ENOUGH TIME, BUT I NEED TO HEAR. LET ME
13 HAVE HIM COME UP AND ADDRESS SOME OF THESE POINTS
14 AND I'LL GIVE YOU ANOTHER CHANCE.
15      MR. KRATZ: AND I DO WANT TO EXPLAIN THAT
16 WE'RE NOT TALKING ABOUT EVERYTHING THEY DO.
17      THE COURT: OKAY.
18      MR. KRATZ: IT'S NOT IN THE REQUEST.
19      THE COURT: OKAY.
20      MR. KRAMER: AN AWFUL LOT TO CHEW ON,
21 YOUR HONOR, GOOD MORNING.
22      THE COURT: GOOD MORNING.
23      MR. KRAMER: LET ME START WITH THE ISSUE
24 OF ADSENSE FOR SEARCH BECAUSE I THINK THAT'S A
25 DISCRETE ISSUE THAT WE CAN BREAK OFF AND TALK

### Page 31

1  ABOUT. THE PROBLEM IS THAT ADSENSE FOR SEARCH
2  ISN'T IN THEIR COMPLAINT. YOU CAN PICK UP THEIR
3  COMPLAINT. IT'S PARAGRAPH 38 THROUGH 41. THEY
4  IDENTIFY THE MISUSE BY GOOGLE OF THEIR TECHNOLOGY
5  AS USE NON, ON NONINFORMATION SEARCH RELATED
6  ADVERTISEMENTS. IT'S THE ADSENSE FOR CONTENT
7  PROGRAM. SUCH USE IS BEYOND THE SCOPE OF THE
8  AGREEMENT. THAT'S THE USE THAT THEY IDENTIFY IN
9  THIS COMPLAINT IN PARAGRAPH 41 AS BEING BEYOND THE
10 SCOPE OF THE LICENSE. AND IT'S THE ONLY USE THEY
11 IDENTIFY IN THE COMPLAINT AS BEING BEYOND THE SCOPE
12 OF THE LICENSE.
13      AND SO WE HAVE PROCEEDED FROM THE OUTSET
14 OF THIS CASE WITH THE UNDERSTANDING THAT THE CASE
15 WAS ABOUT ADSENSE FOR CONTENT AND NOT ADSENSE FOR
16 SEARCH.
17      AND WHEN THEY STARTED MAKING NOISES THAT
18 ADSENSE FOR SEARCH WAS SUPPOSED TO BE IN THIS CASE,
19 WE SAID TO THEM, WELL, AMEND YOUR COMPLAINT. AND
20 THEY SAID, OKAY, HERE'S SOME LANGUAGE THAT WE
21 PROPOSE AND THEY SENT ME A COUPLE OF E-MAILS AND I
22 SAID, WELL, SEND ME A COMPLAINT THAT YOU PROPOSE TO
23 FILE SO I CAN SEE WHAT IT IS GOING TO LOOK LIKE,
24 AND THAT WAS SEVEN MONTHS AGO. AND THEY DROPPED
25 IT.

### Page 32

1  THE COURT: WELL, I DON'T TAKE THAT THE
2  BACK AND FORTH BETWEEN COUNSEL IS AN ADMISSION BY
3  THEM THAT THEY AGREE WITH YOUR INTERPRETATION OF
4  THEIR COMPLAINT.
5       MR. KRAMER: UNDERSTOOD, YOUR HONOR, BUT
6  I BELIEVE THAT THE BACK AND FORTH REFLECTS OUR
7  UNDERSTANDING THAT IT'S NOT IN THE COMPLAINT AND
8  THE POINT HERE IS THAT IT ISN'T IN THE COMPLAINT.
9       THE COURT: WELL, BUT, YOU KNOW, THE
10 COMPLAINT LANGUAGE THROUGHOUT, YOU MAY, YOU MAY SAY
11 IMPLICITLY WHEN THEY SAY ADSENSE PROGRAM, THEY MUST
12 BE SAYING ADSENSE FOR CONTENT AND I KNOW YOU HAVE
13 AN ARGUMENT WHICH YOU HAVE ALLUDED TO ABOUT THE
14 CHRONOLOGY IN HERE ABOUT THE PARTICULAR, YOU KNOW,
15 ACTS AND WHEN THEY OCCUR, WHICH YOU SAY MUST BE
16 ADSENSE FOR CONTENT, BUT YOU'RE READING THAT INTO
17 THIS.
18      MR. KRAMER: I THINK PARAGRAPH 41, YOUR
19 HONOR, COULD NOT BE CLEARER. THAT IS WHERE THEY
20 IDENTIFIED THE USE THAT IS BEYOND THE SCOPE OF THE
21 LICENSE. GOOGLE USES DIGITAL ENVOY'S IP TECHNOLOGY
22 AND DATABASES TO PROVIDE GEOGRAPHICALLY TARGETED
23 NONINFORMATION SEARCH RELATED AND THAT'S THE KEY,
24 NONINFORMATION SEARCH RELATED ADVERTISEMENTS ON
25 THOSE THIRD PARTY WEB SITES IN GOOGLE AD NETWORKS.

### Page 33

1  SUCH USE, NOT THE USE IN AD BECAUSE THAT IS BY
2  THEIR OWN INFORMATION SEARCH RELATED, SUCH USE ON
3  NONINFORMATION SEARCH RELATED ADVERTISEMENTS IS
4  BEYOND THE SCOPE OF THE AGREEMENT AND THAT'S THE
5  ONLY PLACE THAT YOU WILL FIND ANYTHING IN THIS
6  COMPLAINT THAT IDENTIFIES WHAT USE, WHAT USE THEY
7  CONTEND IS BEYOND THE SCOPE OF THE AGREEMENT.
8  THAT'S THE ONLY SPOT.
9       AND WE HAVE OPERATED, WE HAVE OPERATED
10 FOR A YEAR AND A HALF ON THE BASIS OF THIS, OF THIS
11 UNDERSTANDING THAT THIS IS WHAT IS AT ISSUE AND
12 THEY CAN'T JUST BY SAYING TO US, HEY, WE REALLY
13 WANT TO SUE ABOUT ADSENSE FOR SEARCH, TOO, AMEND
14 THEIR COMPLAINT. IF THEY WANT TO MAKE A MOTION TO
15 AMEND, THEY SHOULD MAKE A MOTION TO AMEND OR THEY
16 SHOULD HAVE MADE A MOTION TO AMEND LONG BEFORE THE
17 WRITTEN DISCOVERY WHEN WE PROPOSED IT.
18      THE COURT: I DON'T SEE HOW YOU CAN APPLY
19 YOUR INTERPRETATION OF A PARTICULAR PARAGRAPH IN
20 THE COMPLAINT AND SAY THAT PROVIDES THESE LIMITS ON
21 THIS CASE WHEN NONE OF THE REQUESTS FOR DISCOVERY
22 ARE LIMITED IN THAT FASHION WHERE THERE'S NEVER
23 BEEN ANY, ANY DISCUSSION IN COURT THAT I'M AWARE OF
24 THAT SAYS THAT THIS CASE IS LIMITED TO INDEED
25 DURING THE SUMMARY JUDGMENT MOTION HEARING. WE HAD

### Page 34

1  A LOT OF DISCUSSION ABOUT ASPECTS FOR SEARCH. IT
2  WASN'T LIMITED TO ADSENSE FOR CONTENT. AND SO THIS
3  NOTION THAT ONE PARTY READS APPLIES ITS READING TO
4  THE COMPLAINT AND THEN SAYS ALL DISCOVERY IS
5  LIMITED, THEREFORE, AND SENDS NUMEROUS LETTERS TO
6  THE OTHER SIDE SAYING THIS IS OUR UNDERSTANDING, I
7  DON'T SEE WHY THAT, WHY THAT IS AN EFFECTIVE WAY TO
8  TAKE THE POSITION THAT YOU HAVE THEREFORE LIMITED
9  THE CASE IN A CERTAIN WAY. PLUS, YOU KNOW, IT'S,
10 YOU KNOW, IT'S SORT OF, SORT OF A SIMPLISTIC
11 COMMENT BUT IT IS DISCOVERY, NOT THE POINT AT WHICH
12 WE'RE ADJUDICATING THESE COMPLAINTS. SO TO SAY,
13 SORT OF SUA SPONTE, WELL, I'M GOING TO OPERATE
14 UNDER THIS THEORY AND I'M ONLY GOING TO GIVE
15 MATERIALS THAT PERTAIN TO ADSENSE FOR CONTENT, I
16 DON'T SEE WHERE YOU THINK YOU'RE ENTITLED TO DO
17 THAT.
18        MR. KRAMER: I'LL EXPLAIN WHY AND I THINK
19 IT COMES DOWN TO WHAT THE COMPLAINT SAYS. THE
20 COMPLAINT ACCORDING TO THE CALIPER TECHNOLOGIES
21 CASE THAT WE CITED IN OUR PAPERS LIMITS THE SCOPE.
22 IF THEY WANT ADSENSE SEARCH TO BE A TARGET OF THEIR
23 CLAIMS, THEN IT NEEDS TO BE IDENTIFIED AS A BASIS
24 FOR THEIR CLAIMS IN THEIR COMPLAINT.
25        THE COURT: THEY SAY IT ALL OF THE TIME.

### Page 35

1  THEY SAY IT ALL OF THE TIME. YOU HAVE FOCUSSED ON
2  ONE PARAGRAPH. YOU HAVE SELECTED THE PARAGRAPH AND
3  YOU SAID THAT THIS PARAGRAPH PROVIDES CERTAIN
4  LIMITS TO THEIR CASE AND INDEED THEY DON'T EVEN USE
5  THE TERM ADSENSE IS FOR CONTENT BUT YOU SAY THE
6  ONLY MEANING HERE CAN BE THE ADSENSE FOR CONTENT
7  PROGRAM AND WE'RE GOING TO READ IT THAT WAY AND
8  PROCEED THAT WAY IN DISCOVERY.
9         WHY, WHY, IF YOU THOUGHT THAT THIS WAS SO
10 CRITICAL, YOU SHOULD HAVE, YOU SHOULD HAVE -- I
11 NEED TO PUT OFFICIAL LIMITS ON THIS CASE IN SOME
12 FASHION AND YOU CAN'T OPERATE IN DISCOVERY AS IF
13 YOUR PREFERRED READING IS GOING TO GOVERN THE WAY
14 THIS CASE PROCEEDS.
15        MR. KRAMER: LET ME BE CLEAR. ONE, WE
16 HAVEN'T LIMITED DISCOVERY TO JUST ADSENSE FOR
17 CONTENT. THEY GOT A BUNCH OF DOCUMENTS AND MR.
18 KRATZ ADMITTED THAT.
19        THE COURT: OKAY.
20        MR. KRAMER: LET ME SAY AGAIN, THERE'S
21 ONLY ONE PARAGRAPH IN THIS COMPLAINT THAT TALKS
22 ABOUT WHAT USE IS AT ISSUE. IT IS NONINFORMATION
23 SEARCH ADVERTISEMENTS. THEY CONCEDE THAT THAT'S
24 NOT ADSENSE FOR SEARCH. SO IT'S NOT JUST ME THAT
25 READS THIS COMPLAINT THIS WAY. THERE'S NOTHING

### Page 36

1  ELSE IN THIS COMPLAINT THAT SAYS OTHERWISE.
2         BUT, YOUR HONOR, IN TERMS OF SAYING THAT
3  WE SHOULD HAVE DONE SOMETHING MORE FORMAL TO
4  MEMORIALIZE OUR UNDERSTANDING OF THE COMPLAINT, I'M
5  NOT SURE WHAT YOUR HONOR WOULD HAVE HAD US DO.
6  THEY ASKED FOR DISCOVERY IN AUGUST. WE TOLD THEM,
7  WE TOLD THEM THIS ISN'T IN THE CASE. WE SAID IF
8  YOU WANT TO PUT IT IN THE CASE BACK IN JANUARY, GO
9  AHEAD. WE'LL TALK ABOUT AN AMENDMENT. THEY DIDN'T
10 DO IT.
11        SO WE STOOD BY THE POSITION IT'S NOT IN
12 THE CASE AND IT'S NOT BECAUSE IT'S NOT IN THE
13 COMPLAINT. SO IN TERMS OF MEMORIALIZING OUR
14 UNDERSTANDING, ALL WE CAN DO IS SAY THIS IS WHERE
15 WE WERE AND UNDERSTOOD AND YOU DIDN'T AMEND YOUR
16 COMPLAINT AND THERE'S NOTHING ELSE IN HERE, IN THIS
17 COMPLAINT TO LEAD US TO BELIEVE THAT THERE IS SOME
18 OTHER CLAIM.
19        THE COURT: I MEAN, FRANKLY, YOUR BEST
20 ARGUMENT IS TO SAY THAT AT THAT JUNCTURE WHEN THE
21 ISSUE WAS OR THAT ISSUE WAS BROUGHT TO A HEAD THAT
22 KNOWING YOUR POSITION, THAT THE DIGITAL ENVOY
23 PEOPLE SHOULD HAVE THEN BROUGHT A MOTION TO COMPEL
24 EARLIER THAN THEY NOW HAVE.
25        MR. KRAMER: OR BROUGHT A MOTION TO AMEND

### Page 37

1  OR SOUGHT CLARIFICATION.
2         THE COURT: YES, THE MOTION TO AMEND,
3  THOUGH, IS THEIR SAYING WE AGREE WITH YOU, THAT'S
4  HOW YOU INTERPRET THIS COMPLAINT. AND THEY'RE NOT
5  OBLIGED TO HEAR FROM YOUR INTERPRETATION. AND
6  WE'LL HEAR FROM MR. KRATZ WHY HE THINKS THE NUMBER
7  40 IS NOT IN THE PARAGRAPH YOU SUGGEST.
8         MR. KRAMER: 41.
9         THE COURT: I THOUGHT YOU READ FROM THE
10 LANGUAGE.
11        MR. KRAMER: I'M LOOKING -- LET ME MAKE
12 SURE I'M LOOKING AT THE ANSWER AND COUNTERCLAIMS.
13 I'M NOT LOOKING --
14        THE COURT: I'M LOOKING AT THE AMENDED
15 COMPLAINT OF DIGITAL ENVOY FILED SEPTEMBER 2, '04
16 AND THE FOLLOWING PARAGRAPH IS PART OF THE SERVICES
17 TO PROVIDE TO ITS CLIENTS GOOGLE USES DIGITAL ENVOY
18 TO PROVIDE GEOGRAPHICAL TARGETED AND NONINFORMATION
19 ON THE THIRD PARTY WEB SITES IN THE GOOGLE NETWORK.
20        MR. KRAMER: PARAGRAPH 40 IN THE AMENDED
21 COMPLAINT, 41 IN THE ORIGINAL. I'M SORRY. AND
22 THAT'S ONLY POINT WE THOUGHT THERE WAS AN
23 IDENTIFICATION OF THE ISSUE IN THIS CASE. WE HAVE
24 PROCEEDED AND LIMITED OUR DISCOVERY TO ADSENSE FOR
25 CONTENT IN THIS CASE AND THAT'S CRITICAL BECAUSE