Page 38

WRITTEN DISCOVERY IS CLOSED NOW. WE PROCEEDED BASED ON OUR UNDERSTANDING OF WHAT THIS COMPLAINT SAID.

HAD WE KNOWN OTHERWISE, HAD THE ISSUE FOR ADSENSE FOR SEARCH BEEN JOINED EARLIER IN THIS CASE, OUR SUMMARY JUDGMENT WOULD HAVE BEEN ENTIRELY DIFFERENT.

WE SPENT 15 PAGES OF OUR SUMMARY JUDGMENT MOTION TALKING ABOUT INFORMATION SEARCH.

WE SPENT ONE PAGE TALKING ABOUT DISCLOSURE AND SHARING OF INFORMATION. IT'S ONE PAGE IN OUR BRIEF. WHY? BECAUSE IT WAS A THROW AWAY ISSUE THAT AROSE AFTER THE FACT WHEN THE DEFINITION OF BUSINESS AND INFORMATION SEARCH DIDN'T APPEAR TO BE GOING THE WAY THEY WANTED IT TO.

IF ADSENSE FOR SEARCH WERE IN THIS CASE FROM THE START, WE WOULD HAVE HAD A 15-PAGE SUMMARY JUDGMENT MOTION JUST ON THE ISSUE OF DISCLOSURE BECAUSE THAT'S THE ONLY ISSUE THAT IMPACTS ADSENSE FOR SEARCH.

THE COURT: WHAT DISCOVERY WOULD YOU HAVE DONE DIFFERENTLY THAN YOU?

MR. KRAMER: THERE ARE, THERE ARE A DOZEN OTHER ADVERTISING NETWORKS THAT DIGITAL ENVOY

Page 39

LICENSES UNDER CONTRACTS THAT ARE EXACTLY THE SAME AS OURS, WITH EXACTLY THE SAME NONDISCLOSURE PROVISIONS.

GOOGLE OPERATES ITS NETWORK THE SAME WAY EVERY ONE OF THOSE NETWORKS OPERATES.

THE COURT: OKAY.

MR. KRAMER: AND DIGITAL ENVOY HAS NEVER TOLD ANY OF THOSE COMPANIES THAT THEY'RE IN BREACH. DIGITAL -- THOSE COMPANIES UNDERSTOOD FROM THE GET GO THAT THEY WERE ALLOWED TO USE THIS DATA INTERNALLY.

THE COURT: WHAT WOULD YOU HAVE DONE IN DISCOVERY?

MR. KRAMER: I WOULD HAVE DEPOSED EVERY SINGLE ONE OF THOSE ADVERTISING NETWORKS AND GOT THEM TO SAY DIGITAL ENVOY KNEW AT THE TIME WE STARTED THAT WE WERE GOING TO USE THIS DATA TO TARGET ADS ON THIRD PARTY WEB SITES AND DIGITAL ENVOY KNEW AND THERE'S NO WAY YOU CAN INTERPRET THIS CONTRACT TO MEAN THAT WE CAN'T USE THIS TO RUN AN AD NETWORK.

THE COURT: JUST WHAT I SAID WITH RESPECT TO THE QUOVA CONTRACT, I'M NOT SURE WHY THAT WOULD BE INDICATIVE OF ANYTHING.

MR. KRAMER: THE LANGUAGE IS IDENTICAL.

Page 40

THE COURT: SO.

MR. KRAMER: THE OPERATION OF THESE COMPANIES IS IDENTICAL. THEY ARE USING THE TECHNOLOGY IN EXACTLY THE SAME WAY.

THE COURT: BUT THE CRITICAL POINT TO THE EXTENT THAT I SEEMED TO CONSIDER IT TO BE AMBIGUOUS IS WHAT THE UNDERSTANDING OF THESE PARTIES IN THIS ROOM WAS WITH RESPECT TO THAT, WHAT ONE PARTY MAY THINK OR THE UNDERSTANDINGS THAT THEY HAVE WITH SOME OTHER, MAYBE IT'S A CUSTOM OR PRACTICE OR SOME OTHER THEORY, BUT IT'S NOT, AND IT'S THE SAME REASON, QUITE FRANKLY, THAT I'M INCLINED TO SAY YOU'RE RIGHT ABOUT NOT GETTING THE QUOVA CONTRACT. EXCUSE ME.

MR. KRAMER: LET ME BE VERY CLEAR. DIGITAL ENVOY'S UNDERSTANDING OF THE LANGUAGE THAT IS REMAINING IN THIS CASE, THE NONDISCLOSURE PROVISIONS IN THESE CONTRACTS IS ABSOLUTELY INFORMED, IT'S ABSOLUTELY REVEALED BY THE FACT THAT THEY USE THE SAME PROVISION IN A DOZEN OTHER CONTRACTS WITH A DOZEN OTHER AD NETWORKS FULLY KNOWING AND EXPECTING THAT THEY WILL USE IT TO DISPLAY ADS ON THIRD PARTY SITES AND THEY DON'T THINK THAT'S SHARING THE DATA OR DISCLOSING THE DATA OR ALLOWING SOMEONE TO ACCESS THE DATA. IF

Page 41

THEY DID, THEY WOULD BE GOING AFTER THESE OTHER COMPANIES FOR BREACH, THAT'S WHY IT'S RELEVANT AND FRANKLY WE JUST DEPOSED ADVERTISING.COM, ONE OF THEIR CUSTOMERS, AND WHO SAID THAT IT'S RIDICULOUS TO READ THE CONTRACT THAT WAY. THEY KNEW FROM THE BEGINNING THAT WE WERE GOING TO USE IT TO RUN AN AD NETWORK. OF COURSE WE ARE OPERATING AN AD NETWORK AND THEY KNEW IT. WE WERE GOING TO USE IT THIS WAY.

THEY USED THIS LANGUAGE TO DEFINE THE RELATIONSHIP. SO THEY KNEW FROM THE START THAT'S WHAT WAS GOING TO HAPPEN AND THAT'S WHY THAT DISCOVERY IS RELEVANT AND THERE ARE A DOZEN OF OTHER COMPANIES OUT THERE WE WOULD HAVE GONE TO TALK TO HAD WE KNOW THAT THAT ISSUE WAS FRONT AND CENTER IN THIS CASE.

THE COURT: HOLD OFF. ON THE PARAGRAPH 40 OF THE FIRST AMENDED COMPLAINT, MR. KRAMER'S POINT THAT THAT IS A LIMITING PARAGRAPH, WHY IS HE WRONG?

MR. KRATZ: JUST RESPONDING TO THAT?

THE COURT: YES.

MR. KRATZ: HE'S WRONG BECAUSE THAT'S NOT WHAT THE COMPLAINT SAYS. THE COMPLAINT DETAILS ALL OF THE THINGS THEY DID AND THEN IT SAYS THAT WE'RE

INCORPORATING EVERYTHING AND WHAT THEY HAVE DONE IS A VIOLATION. AND IF THEY WANTED MORE INFORMATION ABOUT IT, THEY WOULD HAVE ASKED AND THEY DID.

THE COURT: WHERE WOULD YOU POINT TO IN YOUR COMPLAINT THAT YOU SAY IS A PROVISION THAT FAIRLY PUTS AT ISSUE THE ADSENSE PROGRAM, OTHER THAN THE ADSENSE PROGRAM, OTHER THAN THE GENERAL REFERENCE?

MR. KRATZ: THAT'S IT. WE SAID WE HAVE GOOGLE'S MISUSE AND THE FIRST PARAGRAPH IS RELATED TO ADSENSE RESEARCH, WHICH IT DOESN'T SAY THAT, JUST IS AND THE SECOND PARAGRAPH IS ADSENSE FOR CONTENT.

THE REASON IT'S BROKEN OUT DIFFERENTLY IS BECAUSE THERE'S A LITTLE BIT OF A NUANCE THAT IS DIFFERENT ABOUT CONTENT BECAUSE THERE'S ANOTHER ARGUMENT TO BE MADE ABOUT ADSENSE FOR CONTENT AND HE SAID THAT THE REST OF THE ARGUMENT, THE MAIN ARGUMENT IS A THROW AWAY BECAUSE IT'S ALL ABOUT INFORMATION SEARCH OR NOT. THE VERY FIRST TIME GOOGLE WAS CONTACTED ABOUT IT, THEY WERE TOLD WE HAVE A PROBLEM WITH IT BECAUSE IT'S IMPROPER SHARING AND DISCLOSURE AND LICENSING AND ALL OF THE RESTRICTIVE THINGS. IT'S IN THE COMPLAINT THAT THEY CAN'T DO THIS LICENSING AND THE IDEA THAT HE

SPENT 15 PAGES ON SEARCH AND 1 PAGE ON THE REST OF THE ALLEGATIONS IN THE COMPLAINT RELATING TO 3.1 AND 7, YOU CAN LOOK AT THEIR BRIEF AND IT'S ABSURD THAT HE'S MAKING THIS ARGUMENT NOW. IT'S ABSURD THAT HE'S MAKING THIS ARGUMENT WITH RESPECT TO THE THIRD PARTIES AND CONTRACTS BEING IDENTICAL WHICH THEY'RE NOT.

THE COURT: OKAY. WE'RE NOW GOING FAR AFIELD.

MR. KRAMER: YOUR HONOR, I'M NOT GOING TO JOIN THAT ARGUMENT. I JUST WANT TO POINT YOU TO 41.

THE COURT: LET ME STOP YOU ALL NOW FOR A MOMENT. EVERYONE STOP.

YOU CAN GO AHEAD AND SIT DOWN, MR. KRATZ, AND WE WILL RESUME.

MR. KRAMER: PARAGRAPH 41 ALSO MAKES SPECIFIC REFERENCE TO GOOGLE MAKES SUBSTANTIAL INCOME AND PROFIT FROM THE PLACEMENT OF GEOGRAPHICALLY TARGETED NONINFORMATION SEARCH RELATED ADVERTISEMENTS. THAT'S IN THE AMENDED COMPLAINT 41.

SO IN 40 IT REFERENCES NONINFORMATION SEARCH RELATED ADVERTISEMENTS AND THEN IN 41 WHEN THEY TALK ABOUT HOW THEY HAVE BEEN INJURED, GOOGLE

MAKES SUBSTANTIAL MONEY FROM NONINFORMATION SEARCH RELATED ADVERTISEMENTS.

IT'S ABOUT NONINFORMATION SEARCH RELATED PROGRAMS, ADSENSE FOR CONTENT. 40 AND 41 BOTH LIMIT IT THAT WAY.

SO THAT'S WHAT WE HAVE BEEN OPERATING UNDER. THAT'S WHY WE DON'T THINK ADSENSE FOR SEARCH IS IN THE CASE.

WE HAVE SPECIFICALLY SAID IF YOU WANT TO ADD IT TO THIS CASE, WE'LL CONSIDER IT, WE'RE WILLING TO DO IT BACK IN JANUARY, BUT SEVEN MONTHS LATER OR SIX MONTHS LATER, SIX AND A HALF MONTHS LATER, DISCOVERY IS CLOSED. WE'RE GOING TO TRIAL. IT SHOULDN'T BE IN THE CASE, AND IF IT IS WE HAVE BEEN SUBSTANTIALLY PREJUDICED AS A RESULT. SO THAT'S MY TAKE ON ADSENSE SEARCH, YOUR HONOR.

THE COURT: TO THE EXTENT THAT YOU'RE MAKING SOME BURDEN ARGUMENT WITH RESPECT TO ADSENSE RESEARCH --

MR. KRAMER: UH-HUH.

THE COURT: -- I DIDN'T GET MUCH IN THE WAY OF GIVING ME A SENSE OF WHAT IT WOULD MEAN IF I SAID THAT THAT IS MATERIAL THAT SHOULD GO OVER.

MR. KRAMER: YES, YOUR HONOR. BEFORE I START TALKING ABOUT THE BURDEN, I DON'T KNOW

EVERYBODY IN THE COURTROOM AND THERE ARE SOME RELATIVELY SENSITIVE DATA POINTS THAT GOOGLE WOULD LIKE NOT DISCLOSED PUBLICLY.

THE COURT: ABOUT THE BURDEN?

MR. KRAMER: ABOUT THE NUMBER OF PUBLISHERS AND ADVERTISERS IN ITS VARIOUS PROGRAMS.

THE COURT: BUT THAT'S NOT WHAT I'M ASKING ABOUT. I DON'T NEED TO KNOW THAT FOR THIS PURPOSE. WHAT I NEED TO KNOW IS SOME VOLUME ASSESSMENT OF MATERIAL. YOU DON'T HAVE TO SAY HOW MANY. I WANT TO KNOW IS IT -- DOES IT INVOLVE SEARCHING AT NUMEROUS FACILITIES? DOES IT INVOLVE, YOU KNOW, THAT KIND OF THING? I DON'T SEE WHY THAT IS DISCLOSING ANYTHING OTHER THAN JUST MAGNITUDE.

MR. KRAMER: WELL, THE MAGNITUDE IS DEFINED BY THE NUMBER OF PUBLISHERS AND THAT IS ACTUALLY IN THE PAPERS BUT IT'S WITHOUT DISCLOSING.

THE COURT: NUMBERS DON'T TELL ME MUCH. YOU CAN HAVE --

MR. KRAMER: IT'S NOT 10 CONTRACTS. IT'S NOT 100 CONTRACTS. IT'S NOT 1,000 CONTRACTS. IT'S NOT 1,000 NEGOTIATIONS. IT'S HUNDREDS OF THOUSANDS OF NEGOTIATIONS AND MILLIONS OF WEB SITES. AND YOUR HONOR IS RIGHT TO FOCUS ON BURDEN WITH RESPECT TO VIRTUALLY ALL OF THIS DISCOVERY BECAUSE IT'S

Page 46

MASSIVELY BURDENSOME AND AS YOU WERE GOING BACK AND FORTH WITH MR. KRATZ, I HAD A DEJA VU EXPERIENCE BECAUSE WE WERE HERE TALKING ABOUT DISCOVERY RELATING TO 22 PUBLISHERS, DISCOVERY RELATING TO 22, AND THE COURT SAID THAT IS ENORMOUSLY BURDENSOME. WHAT ARE YOU TALKING ABOUT? SHOW ME THE CAUSAL CONNECTION. SHOW ME WHAT THE DISCOVERY IS GOING TO SHOW YOU THAT BEARS ON YOUR CASE AND NOW WE'RE TALKING ABOUT HUNDREDS OF THOUSANDS OF PUBLISHERS AND MILLIONS OF WEB SITES. THAT IS PROBLEMATIC. THAT WOULD TAKE, ACCORDING TO THE DECLARATIONS THAT WE SUBMITTED, WHICH ARE UNREBUTED, MONTHS.

THE COURT: AND THIS IS SHIFTING FOCUS A BIT BUT WHAT IS THE DEGREE TO WHICH MR. KRATZA IS ARGUING THAT DIGITAL ENVOY'S TECHNOLOGY IS USED IN EVERYTHING? ADDRESS THAT POINT.

MR. KRAMER: YOUR HONOR, I FIND MYSELF IN THE UNIQUE POSITION OR SELDOM POSITION OF AGREEING WITH MR. KRATZA. THE AMENDMENT, THE LIMITATION THAT YOUR HONOR IS PROPOSING IS NOT AN ACTUAL LIMITATION.

THE COURT: OKAY.

MR. KRAMER: THE WAY GOOGLE USES THIS TECHNOLOGY IS THAT WHEN A REQUEST COMES FOR AN AD

Page 47

IN MOST CASES THERE WILL BE SOME CONSULTATION OF THE DATA TO DECIDE WHAT AD. IF IT'S ONE OF MANY VARIABLES, 20 TO 25 DIFFERENT VARIABLES THAT GOOGLE USES IN ORDER TO DETERMINE WHAT AD TO SELECT BUT IMPOSING A LIMITATION BY SAYING WHAT, WHAT ADS USE THEIR IP AND WHICH DO NOT IS NOT EFFECTIVE.

THE COURT: ALL RIGHT.

MR. KRAMER: IT'S EFFECTIVE WITH ADVERTISERS BUT NOT WITH RESPECT TO PUBLISHERS.

THE COURT: ALL RIGHT.

MR. KRAMER: I DON'T KNOW IF YOU WANT ME TO TALK ABOUT THE ISSUE MORE GENERALLY ABOUT THEIR DAMAGES THEORY, YOUR HONOR, BECAUSE I THINK THAT'S WHERE THE RUBBER MEETS THE ROAD IN THIS CASE AND ON THESE MOTIONS AND I'M HAPPY TO DO IT.

THE COURT: ALL RIGHT.

MR. KRAMER: THEY HAVE TWO. THEY HAVE AN ACTUAL DAMAGES THEORY AND AN UNJUST ENRICHMENT THEORY. THE ACTUAL DAMAGES THEORY IS THAT SOME OF THE HUNDREDS OF THOUSANDS OR ONE OF THE THOUSANDS OF PUBLISHERS IN GOOGLE'S NETWORK WOULD HAVE TAKEN A LICENSE FROM DIGITAL ENVOY BUT FOR GOOGLE'S USE OF THE DATA IN ITS ADVERTISING PROGRAMS.

THE COURT: RIGHT.

MR. KRAMER: WE SAID TO THEM, TELL US HOW

Page 48

YOU'RE IN A POSITION TO KNOW. YOU LOST A SALE. YOU LOST A LICENSEE. WHO, IDENTIFY THAT ONE FOR US, OR IDENTIFY THOSE TEN FOR US AND THEN WE HAVE SOMETHING TO TALK ABOUT. THAT'S WHAT I SAID THE LAST TIME WE WERE HERE TALKING ABOUT THIS ISSUE.

COME FORWARD WITH SOMETHING TO MAKE ME BELIEVE THAT THAT ACTUALLY HAPPENED AND THEN YOU HAVE DEMONSTRATED GOOD CAUSE FOR DISCOVERY RELATING TO THAT PUBLISHER.

NOW, THERE'S A REASON WHY THEY HAVEN'T COME FORWARD WITH THAT. BECAUSE IT DOESN'T MAKE ANY SENSE GIVEN THE WAY THIS BUSINESS WORKS. THE PUBLISHERS WHO ARE OPERATING IN GOOGLE'S NETWORK DON'T CARE ABOUT GEOTARGETING.

THE COURT: THAT'S YOUR ASSUMPTION. ISN'T YOUR ARGUMENT THAT THOSE PEOPLE WEREN'T OUT IN THE MARKETPLACE BECAUSE THEY DIDN'T HAVE TO BECAUSE YOU UTILIZING THEIRS TOOK THOSE PLAYERS OUT OF THE MARKETPLACE?

MR. KRAMER: YOUR HONOR, GEOTARGETING ISN'T EVEN MENTIONED IN GOOGLE'S MATERIALS FOR PUBLISHERS. THEY RENTED THE SPACE ON THEIR SITES. WE DO NOT OFFER PUBLISHERS THE ABILITY TO GEOTARGET OR OTHERWISE. THEY HAVE NO IDEA WHETHER THE ADS THAT THEY'RE GETTING ARE GEOTARGETED OR NOT. THEY

Page 49

HAVE NO CONTROL OVER THE ADS THAT ARE RECEIVED. ALL THEY CARE ABOUT IS THAT THEY GET ADS, USERS CLICK ON THEM AND THERE'S A REVENUE SHARE. THAT'S WHAT DRIVES THE DECISION. THERE'S BEEN NO SHOWING AT ALL THAT A PUBLISHER THAT PARTICIPATES IN GOOGLE'S NETWORK CARES ABOUT GEOTARGETING AT ALL AND GOOGLE DOESN'T THINK THEY DO BECAUSE THEY DON'T MARKET. PUBLISHERS DON'T FIND OUT.

THE COURT: SO IN YOUR THEORY WHAT IS IT THAT THEY NEED TO SHOW? THEY NEED TO SHOW SOME POTENTIAL CUSTOMER COMING TO THEM AND SAYING WE'RE CONSIDERING WHETHER OR NOT TO LICENSE DIRECTLY WITH YOU AND THEN THOSE PEOPLE GO OFF AND THEY BECOME, THEY BECOME GOOGLE CUSTOMERS AND YOU NEVER SEE THEM AGAIN.

MR. KRAMER: THAT CERTAINLY WOULD BE GOOD CAUSE FOR THAT PUBLISHER BUT WE'RE NOT EVEN THERE. AND I HAVE TO TELL YOU NOT ONLY HAVE THEY NOT DEMONSTRATED THAT ANY OF THE PUBLISHERS IN GOOGLE'S CARE ABOUT IT BUT THERE'S A REASON WHY THEY PARTICIPATE IN A ADVERTISING NETWORK.

MY SON'S WEB SITE HAS ADS FROM GOOGLE ON IT. I'M NOT GOING TO GO GET A LICENSE FROM DIGITAL ENVOY SO I CAN HAVE GEOTARGETED ADS ON MY SON'S SITE. THEY DON'T HAVE INVENTORY OF ADVERTISEMENTS.

THEY DON'T HAVE HARDWARE AND TARGETING PROCESSES. THEY DON'T HAVE SOFTWARE. THEY DON'T HAVE A LICENSE FROM DIGITAL ENVOY AND THEY DON'T NEED ONE. THAT'S WHAT WE'RE TALKING ABOUT.

THE COURT: NOW, BRING THIS BACK IN, HAVING LET YOU OPEN THE DOOR TO HAVING DISCUSSED THIS GENERALLY BRING IT BACK TO THE DISCOVERY MOTIONS.

MR. KRAMER: SO THEY ASKED US TO IDENTIFY PUBLISHERS IN THE NETWORK, HUNDREDS OF THOUSANDS, THEN THEY ASKED FOR EVERY CONTRACT OF EVERY PUBLISHER, HUNDREDS OF THOUSANDS. THEN THEY ASKED FOR ALL NEGOTIATIONS OR NEGOTIATOR, HUNDREDS OF THOUSANDS. THEN THEY SAID FOR EVERY PUBLISHER THAT PARTICIPATES IN YOUR NETWORK, HERE'S AN EIGHT FACTORED MULTI CALCULATED MATHEMATICAL PROCESS I WANT YOU TO ENGAGE IN DRAWING INFORMATION FROM SERVERS ALL OVER THE PLACE TO FIGURE OUT FOR EVERY ONE OF THOSE PUBLISHERS HOW MUCH MONEY YOU GOT, HOW MUCH WAS DERIVED THAT WERE GEOTARGETED WHETHER THEY CARED OR NOT, AND HOW MUCH WAS DERIVED FROM. I MEAN, IT'S MIND BOGGLING IN TERMS OF WHAT THE REQUESTS ACTUALLY ASK FOR WITH RESPECT TO PUBLISHERS.

IT'S LAID OUT IN OUR PAPERS AND I

PROBABLY LAID IT OUT IN THE PAPERS BETTER THAN I COULD. THERE'S ONE INTERROGATORY THAT IS EIGHT PARTS, WHICH IN AND OF ITSELF IS OBJECTIONABLE BUT IT'S PARTICULARLY OBJECTIONABLE WHEN YOU APPLY THAT EIGHT PART INTERROGATORY TO A WORLD IN WHICH THESE PUBLISHERS DON'T CARE, THESE PUBLISHERS, YES, THEY'RE POTENTIAL CUSTOMERS OF DIGITAL ENVOY BUT IT'S NOT ENOUGH TO SAY THAT. EVERYBODY IS A POTENTIAL CUSTOMER OF ENVOY. WHAT THEY NEED TO SHOW IS SOME CAUSAL CONNECTION BETWEEN LOST BUSINESS AND GOOGLE'S OPERATION.

AND ONE LAST CAUSAL LINK THAT IS MISSING HERE IS LET'S ASSUME THERE'S A PUBLISHER WHO ACTUALLY CARES ABOUT GEOTARGETING. LET'S ASSUME THAT THAT PUBLISHER WAS ACTUALLY WILLING TO CREATE AN INFRASTRUCTURE TO SERVE GEOTARGETED ADS AS OPPOSED TO GOING TO SOME DIFFERENT NETWORK THAT WOULD GIVE THEM THE ADS IF THEY CARED ABOUT GEOTARGETING, THEN THERE'S A QUESTION THAT THERE ARE STILL PEOPLE OUT IN THE WORLD THAT APPLY GEOTARGETING AND HOW WOULD WE KNOW THEY WOULD HAVE GONE TO DIGITAL ENVOY?

THE COURT: BUT, AGAIN, I'M NOT GOING TO SUGGEST THAT THE ANSWER TO A DISCOVERY MOTION REQUEST IS ALWAYS, WELL, IT'S JUST DISCOVERY SO,

YOU KNOW, YOU KNOW, CALM DOWN ON THE MERITS AND LET'S GO ON WITH DISCOVERY.

MR. KRAMER: UH-HUH. BUT ONE THING THAT IS NOT IN DISPUTE, AS I UNDERSTAND IT, IS THAT DIGITAL, OR THAT GOOGLE, RIGHTLY OR WRONGLY, IS AT A CERTAIN POINT IN TIME OUT TELEVISING DIGITAL ENVOY'S INTELLECTUAL PROPERTY FOR PURPOSES OF DOING SOME GEOTARGETING. THEY'RE LICENSED TO OR NOT AND THAT'S THE DISPUTE THAT WE'RE LITIGATING.

MR. KRAMER: UH-HUH.

THE COURT: BUT THAT HAS HAPPENED?

MR. KRAMER: YES, YOUR HONOR.

THE COURT: ALL RIGHT. NOW, FOR DISCOVERY PURPOSES, THEY ARE SAYING THAT, THAT THEY WANT TO GET INFORMATION THAT IN A GROSS SENSE GIVES THEM SOME BASIC FACTS ABOUT WHO THESE PEOPLE ARE THAT ARE USING, MAYBE THEY DON'T CARE ABOUT USING IT, BUT NONETHELESS THEY ARE USING THEIR INTELLECTUAL PROPERTY, AND THEN THEY ARE MOUNTING THE ARGUMENT THAT THOSE CUSTOMERS ARE NOT CUSTOMERS AVAILABLE TO THEM.

AND I HEAR WHAT YOU SAY WHICH IS, WELL, IN ORDER TO GET I GUESS TO JUSTIFY THAT, THAT REQUEST FROM IN YOUR MIND THEY NEED TO SAY SHOW SOME INSTANCES IN WHICH THOSE PEOPLE WERE SHOPPING

AROUND FOR GEOTARGETING AND UNTIL THEY DO THAT, THIS IS TOO FAR AFIELD.

MR. KRAMER: IT'S MORE THAN THAT, THAT IT'S NOT JUST TOO FAR AFIELD, IT'S A MIND BOGGLING AND BURDENSOME AS REQUESTED. THE REASON FOR SAYING THEY NEED TO COME FORWARD WITH SOMETHING FIRST IS BECAUSE THAT'S HOW YOU LIMIT THE BURDEN. THAT'S HOW YOU SAY, OKAY, HERE'S SOMEBODY, HERE ARE FIVE COMPANIES THAT WE THINK WE WOULD HAVE LICENSED OUR DATA TO, BUT FOR GOOGLE'S SUPPOSED MISUSE OF THE DATA ON THE PUBLISHER SIDE. WE HAVEN'T TALKED ABOUT THE ADVERTISER'S SIDE YET.

AND I HAVE A SEVENTH CIRCUIT CASE BY JUDGE POSNER WHICH TALKS ABOUT DAMAGES IN A TRADE SECRET CONTEXT AND HE SAID, "FOR YEARS WE HAVE BEEN SAYING WITHOUT MUCH VISIBLE EFFECT THAT PEOPLE WHO WANT DAMAGES HAVE TO PROVE THEM USING METHODOLOGIES THAT NEED NOT BE INTELLECTUALLY SOPHISTICATED BUT MUST NOT INSULT THE INTELLIGENCE. POST HOC ERGO PROPTER HOC WILL NOT DO; NOR THE ENDUING OF SIMPLISTIC EXTRAPOLATION AND CHILDISH ARITHMETIC WITH THE APPEARANCE OF AUTHORITY BY HIRING A PROFESSOR TO MOUTH DAMAGES THEORIES THAT MAKE A JOKE OF THE CONCEPT OF EXPERT KNOWLEDGE."

THE COURT: OF COURSE, JUDGE POSNER IS

NOT OPINING ON A DISCOVERY MOTION ONE ASSUMES?

MR. KRAMER: THAT'S RIGHT, HE IS NOT OPINING. THE CASE IS SCHILLER & SCHMIDT, INC., V. NORDISCO CORP., 969 F.2D AT 416, SEVENTH CIRCUIT, 1992.

WHAT HE'S SAYING IS THAT THIS THEORY THEY'RE ADVANCING HERE YOU CAN LOOK AT IT NOW AND DECIDE THIS DOESN'T MAKE A LOT OF SENSE AND IT DOESN'T MAKE ANY SENSE AS FAR AS GOOGLE IS CONCERNED.

THE COURT: IT DOESN'T MAKE ANY SENSE IF YOU ACCEPT THE ASSUMPTION BEHIND THE ARGUMENT WHICH IS NONE OF THESE PEOPLE, NONE OF THESE PUBLISHERS IS GOING TO CARE ABOUT THE GEOTARGETING ASPECT OF IT. IT COMES ALONG WITH THE PACKAGE. THEY REALLY DON'T CARE.

MR. KRAMER: THEY DON'T KNOW.

THE COURT: EITHER THEY DON'T KNOW OR CARE BUT THE BOTTOM LINE IS THAT IT'S A GIVEN THAT THEY WILL NOT BE IN THE MARKETPLACE FOR GEOTARGETING. THEY WON'T BE OUT THERE ACQUIRING THAT SERVICE.

MR. KRAMER: IF THAT'S WHAT THEY CONTEND, LET THEM COME FORWARD AND SAY, HERE'S PROOF. WE HAVE PROOF. WE OFFERED EVIDENCE THAT THEY DON'T

CARE. WE OFFERED THE TESTIMONY OF MR. SIMMELL WHO EXPLAINED THAT PUBLISHERS DON'T CARE AND WOULDN'T DO WHAT THEY'RE SUGGESTING HERE. I HAVE AS A RESULT OF DEPOSITIONS THAT WERE TAKEN AFTER THE PAPERS WERE SUBMITTED ON THIS MOTION, THE TESTIMONY OF DOUBLE CLICK AND ADVERTISING.COM, TWO OTHER ADVERTISING NETWORKS WHO SAID THAT THEY DON'T CARE. THEY WOULDN'T DO WHAT DIGITAL ENVOY IS SUGGESTING. I'M HAPPY TO SHOW IT.

THE COURT: BUT IF ANECDOTAL MATERIAL THAT SHOWS VARIOUS PUBLISHERS DON'T CARE, WHY IS THIS?

MR. KRAMER: THESE AREN'T PUBLISHERS, THEY OPERATE NETWORKS. THEY'RE IN THE SAME EXACT POSITION AS GOOGLE. THEY SAY NO ONE WOULD LEAVE FROM THEIR NETWORK. ACTUALLY DOUBLE CLICK SAYS ONE A YEAR MIGHT, MIGHT, MIGHT, MIGHT LEAVE FROM BEING A PUBLISHER TO TAKING A LICENSE DIRECTLY, ONE A YEAR, AND ADVERTISING.COM SAYS, NO, THAT DOESN'T MAKE ANY SENSE AND THEY'RE IN THE EXACT SAME THROWS AS GOOGLE. THEY WERE AT THE DEPOSITION AND I'M HAPPY TO SHARE THE TESTIMONY WITH THE COURT. THE POINT IS RULE 26 SAYS FOR GOOD CAUSE SHOWN.

THE COURT: RIGHT.

MR. KRAMER: THEY'RE LOOKING TO IMPOSE AN

UNIMAGINABLE BURDEN ON GOOGLE WITH RESPECT TO THIS DISCOVERY, LITERALLY, UNDISPUTED, MONTHS, TO GATHER THIS INFORMATION AND DO THE CALCULATIONS, THEY SEEM TO THINK WE CAN DO IT AT THE TOUCH OF A BUTTON. THAT'S NOT SO AND THE EVIDENCE IS TO THE CONTRARY AND IT'S UNDISPUTED. THEY WANT THIS MASSIVE BURDEN TO BE TAKEN BY MY CLIENT AND HUNDREDS OF MILLIONS OF DOLLARS FOR A PIPE DREAM. AND UNTIL THEY COME FORWARD WITH SOMETHING THAT SHOWS THAT PIPE DREAM HAS SOME BASIS IN REALITY, SOME GOOD CAUSE, THERE'S NO BASIS FOR GRANTING THE DISCOVERY CONCERNING THE PUBLISHERS.

THE COURT: LAST COMMENT AND THEN WE'LL BRING IT TO A CLOSE.

MR. KRAMER: YOUR HONOR, I DID NOT DISCUSS THE ISSUE OF ADVERTISEMENTS, WHICH IS EQUALLY BURDENSOME AND EQUALLY PROBLEMATIC. THAT'S THEIR UNJUST ENRICHMENT THEORY. AND I DON'T WANT TO SUGGEST. IT'S CRITICAL THAT WE TALK ABOUT BOTH OF THESE SO THE COURT UNDERSTANDS EXACTLY WHAT BURDEN IS BEING ORDERED IN THE EVENT THAT ANY DISCOVERY ON ANY OF THIS PROCEEDS.

THE COURT: YOU'VE GOT BY THE TIME IT'S 20 OF YOU'RE SITTING DOWN. OKAY. GO AHEAD.

MR. KRAMER: WITH RESPECT TO THE

ADVERTISERS, THE DISCOVERY IS IF ANYTHING EVEN MORE BURDENSOME. THERE'S A REQUEST THAT SAYS THAT GIVE ME ALL COMMUNICATIONS ABOUT ANYTHING EVER WITH ANY OF THE HUNDREDS OF THOUSANDS OF ADVERTISERS IN YOUR NETWORK. THAT'S A REQUEST THAT THEY SERVED AND IT'S HARD TO TELL WHETHER THEY'RE SERIOUS ABOUT THAT BECAUSE THE BURDEN WOULD BE UNIMAGINABLE.

THE COURT: WELL, ARE THERE ANY LIMITS THAT YOU CAN SUGGEST TO IT? I KNOW YOUR POSITION IS THAT YOU DON'T WANT ANY DISCOVERY BUT --

MR. KRAMER: NOT AT ALL. IF THEY CAME FORWARD AND SAID HERE'S A PUBLISHER THAT WE WOULD HAVE LICENSED TO BASED ON SOME EVIDENCE, WE WOULD GIVE THEM DOCUMENTS. IN FACT, I REPRESENTED AT THE LAST HEARING, WE WOULD GIVE THEM DOCUMENTS REFLECTING THE COMMUNICATIONS BACK AND FORTH WITH THE PUBLISHER. THERE AREN'T GOING TO BE ANY THAT MENTION GEOTARGETING OR DIGITAL ENVOY BUT THAT'S A FACT AND WE'LL LET AND GET THEM THAT WITH THE SAME PUBLISHER.

THE COURT: WHY ISN'T THERE A POSSIBILITY OF DOING IT ON A SAMPLING BASIS? I MEAN, THE NOTION THAT THEY HAVE TO COME FORWARD AND GIVE YOU NAMES AND THEN THEY'LL GIVE YOU DISCOVERY, I THINK THAT'S SHIFTING THE BURDEN SOMEWHAT.

Page 58

I MEAN, IF YOUR ARGUMENT IS THAT YOU'RE NEVER GOING TO FIND ANYTHING IN HERE THAT IS GOING TO DEMONSTRATE THAT THESE ARE POTENTIAL CUSTOMERS THAT WERE NOT AVAILABLE FOR YOUR CONDUCT, YOU'RE JUST NOT GOING TO DO IT, WELL, MAYBE ONE ALTERNATIVE TO CONSIDER IS WHETHER OR NOT THERE IS SOME KIND OF INITIAL DISCLOSURE ON SOME SORT OF SAMPLING BASIS SO THEY CAN LOOK AT IT. I MEAN, MY CONCERN ABOUT ALL OF THE WAY YOU'RE APPROACHING THIS, MR. KRAMER, IS THAT YOU HAVE A VERY DEFINITE VIEW OF THIS CASE, GREAT, YOU MAY WIN WHEN YOU LITIGATE IT ALL OUT, BUT YOU'RE APPLYING YOUR VIEW OF THE WORLD TO THEIR DISCOVERY REQUESTS.

MR. KRAMER: UH-HUH.

THE COURT: NOW, ON THE BURDEN ISSUE YOU HAVE TO HAVE SOMETHING TO SAY AND I UNDERSTAND THAT BUT IT IS NOT THE USUAL PRACTICE, AND YOU DID NOT GET SUMMARY JUDGMENT ON EVERYTHING. YOU GOT IT ON SOME THINGS. YOU CAN'T SAY MY VIEW OF THE WORLD IS X AND THAT'S HOW MY DISCOVERY IS GOING TO PROCEED, CONSISTENT WITH MY VIEW OF THE WORLD.

MR. KRAMER: I UNDERSTAND, YOUR HONOR. THE IDEA IN APPROACHING THIS, I MEAN, I WISH WE WEREN'T HERE IN THE CONTEXT OF A MOTION TO COMPEL AND WE INSTEAD WERE ADDRESSING ISSUES INVOLVING

Page 59

LIMITATION OF LIABILITY CAUSES IN THE CONTRACT AND THE INABILITY TO DEMONSTRATE CAUSATION AS A MATTER OF LAW, BUT THAT'S NOT WHY WE'RE HERE.

THE COURT: I --

MR. KRAMER: WE'RE HERE TO TALK ABOUT DISCOVERY AND SINCE THIS IS THE VEHICLE, THE ONLY VEHICLE WHICH I HAVE TO RAISE THE ARGUMENTS INVOLVING THE PIE IN SKY NATURE OF THEIR DAMAGES THEORY I HAVE TO RAISE IT HERE. I WISH I COULD BRING IT IN A DIFFERENT CONTEXT, BUT THE COURT IS ENTITLED TO RECOGNIZE JUST AS TENUOUS A THEORY THIS IS IF IT HAS ANY BASIS IN REALITY AT ALL. AND WITH RESPECT TO THE ADVERTISERS, LET ME BRING IT BACK TO THEY WANT TO SHOW THAT AN ADVERTISER WOULDN'T HAVE ADVERTISED WITH GOOGLE BUT FOR THE AVAILABILITY OF GEOTARGETING. THAT'S THEIR UNJUST ENRICHMENT THEORY.

THE COURT: OKAY.

MR. KRAMER: GOOGLE MAKES ITS MONEY FROM ADVERTISERS. PUBLISHERS DON'T PAY GOOGLE. THE OTHER WAY AROUND.

THE COURT: THEY'RE JOINT VENTURERS.

MR. KRAMER: IN EFFECT. WE, WE RENT OUT THE SPACE THAT THE PUBLISHERS OFFER.

THE PROBLEM FOR DIGITAL ENVOY IN THIS

Page 60

REGARD IS THAT THEY CONCEDE AND HAVE CONCEDED ALL ALONG IS THAT AD WORDS IS LICENSED. ADVERTISING COME TO GOOGLE FOR AD WORDS. MR. DENUCCI'S DECLARATION SAYS THAT. THAT'S THE PROGRAM THEY ALL PARTICIPATE IN. SOME PARTICIPATE IN ADSENSE FOR CONTENT. SO IF DIGITAL ENVOY WANTS TO SHOW THAT THERE'S AN ADVERTISER OUT THERE THAT WOULD NOT HAVE PARTICIPATED IN THE ADSENSE FOR CONTENT PROGRAM ONLY, IF DIGITAL ENVOY'S DATA WASN'T AVAILABLE FOR THEM THROUGH GOOGLE, HAVE AT IT. IT'S IMPOSSIBLY SPECULATIVE. IT'S IMPOSSIBLY SPECULATIVE AND IT'S EVEN MORE COMPLICATED THAN THAT BECAUSE AT THE END OF THE DAY THE ADVERTISERS IF THEY THINK THAT THEIR ADS ARE GOING TO BE SLIGHTLY LESS TARGETS BECAUSE DIGITAL ENVOY'S DATA ISN'T THERE, THEY'RE STILL GOING TO PARTICIPATE IN THE PROGRAM. THEY'RE STILL GOING TO PARTICIPATE BECAUSE ALL THEY CARE ABOUT IS GETTING USERS TO THEIR SITE. THEY CARE ABOUT CHECKS.

SO IF GOOGLE'S IS SLIGHTLY LESS TARGETED THEY MIGHT GET FEWER AND MIGHT HAVE PAID SLIGHTLY LESS MONEY FOR THEM HYPOTHETICALLY BUT HOW YOU CAN POSSIBLY GET THERE BY SAYING GIVE ME EVERY DOCUMENT YOU EVER EXCHANGED WITH EVERY ONE OF YOUR HUNDREDS OF THOUSANDS OF ADVERTISERS, IT JUST, THERE'S NO

Page 61

EFFORT AT ALL AS YOUR HONOR SAID AT THE START.

THE COURT: THE SECOND PART, THE LAST THING YOU JUST SAID IS THE ONE THAT HAS SOME, SOME RESONANCE WITH ME WHICH IS THE BURDEN ISSUE, BUT THE MERITS DISCUSSION, THE ARGUMENT THAT, THAT YOU THINK YOU'RE GOING TO BE ABLE TO EVISCERATE THEIR DAMAGES THEORY AND THE LIKE IS NOT A DISCOVERY ARGUMENT TO ME.

WHAT I WANTED TO FOCUS ON IS IF YOU SAY IT'S GROSSLY OVER, GROSSLY BURDENSOME AND OVERBROAD, THEN WHAT ARE THE LIMITS ON IT THAT MAKE SENSE, NOT THE, YOU KNOW, THEY'RE NOT GETTING ANYTHING BECAUSE THEY'RE CIRCLING AROUND AND THERE'S NO WAY THEY'RE GOING TO MAKE THIS DAMAGE CLAIM AND THIS, THAT, AND THE OTHER THING. YOU MAY BE RIGHT, MR. KRAMER, I DON'T KNOW, WE HAVEN'T REACHED THAT POINT IN THE CASE BUT I HAVE REAL TROUBLE WITH THE NOTION THAT IN A DISCOVERY CONTEXT I OUGHT TO BE MAKING THE CALLS ON WHETHER OR NOT THEY HAVE GOT A DAMAGE THEORY OR NOT AND, AND THAT'S -- AND YOU ARE NOT GIVING ME A LOT OF HELP ON. OKAY. GRANTED WE DON'T THINK MUCH OF THEIR DAMAGE THEORY BUT AT THE VERY LEAST, BECAUSE OF THE BURDEN ISSUE, WE SHOULD LIMIT, WE SHOULD PUT THESE CONSTRAINTS ON THEIR REQUEST, AND RESERVING THEIR

RIGHT TO SAY THEY SHOULDN'T EACH GET A PIECE OF PAPER, I UNDERSTAND THAT, BUT I'VE GOT THE CHOICE NOW BETWEEN WHAT YOU'RE TELLING ME IS THE BEGINNING OF THE APOCOLAS AND THEY'RE SAYING THEY DON'T GET A PIECE OF PAPER.

MR. KRAMER: YOUR HONOR, I DON'T MEAN TO GIVE YOU THAT EITHER OR CHOICE, BUT I THINK THE LAST TIME WE WERE HERE YOUR HONOR SAID THAT'S NOT YOUR JOB TO REWRITE THEIR REQUESTS.

THE COURT: THAT'S TRUE.

MR. KRAMER: THESE ARE THEIR REQUESTS.

THE COURT: YES.

MR. KRAMER: WE TOLD THEM WHAT OUR POSITION WAS IN THE MEET AND CONFER NINE MONTHS AGO. THEY'RE NOT SAYING I WANT THE SUBSET. THEY'RE SAYING I WANT YOU TO DO THIS. I WANT YOU TO ORDER THIS, YOUR HONOR. AND IF THEY HAVE SOMETHING ELSE THAT THEY WANT US TO PRODUCE THAT'S LESS BURDENSOME THAT WE COULD MANAGE WITHOUT MILLIONS OF DOLLARS IN EXPENSE, WELL, THEN WE SHOULD BE TALKING ABOUT THAT BUT IT'S NOT FOR US TO INTRODUCE THAT INTO THE CONVERSATION. THESE ARE THEIR REQUESTS AND THEIR MOTION.

LAST POINT.

THE COURT: YES.

MR. KRAMER: LAST POINT AND THIS WILL BE THE LAST ONE. I DISAGREE WITH YOUR HONOR WITH RESPECT TO WHETHER OR NOT YOU CAN LOOK AT THEIR DAMAGES CLAIM IN CONNECTION WITH THE DISCOVERY MOTION. THE STANDARD IS, AS YOUR HONOR ARTICULATED IT HAS TO BE RELEVANT. IF THIS DAMAGE CLAIM ISN'T GOING ANYWHERE.

THE COURT: OR TO GOOD CAUSE AND LIKELY LEAD TO THE DISCOVERY.

MR. KRAMER: IF THIS DAMAGE CLAIM ISN'T GOING ANYWHERE, YOU CAN DECIDE THAT AND SAY DISCOVERY ISN'T RELEVANT BECAUSE THIS DAMAGE CLAIM ISN'T GOING ANYWHERE. IF YOU HAVE A DIFFERENT THEORY THAT IT IS RELEVANT, LET ME HEAR IT BUT THIS CLAIM ISN'T GOING ANYWHERE.

AND LASTLY, IF YOUR HONOR IS GOING TO ORDER THIS KIND OF BURDENSOME DISCOVERY WE TALKED ABOUT THE MOTION TO BIFURCATE. THERE'S NO REASON THAT WE COULDN'T NOW BIFURCATE LIABILITY AND DAMAGES. IT'S AN ISSUE OF INTERPRETATION AND INTENT. AND WE CAN TRY THOSE ISSUES AND TALK ABOUT WHAT DISCOVERY, IF ANY, THEY ARE ENTITLED TO BUT BEFORE YOU IMPOSE MILLIONS OF DOLLARS OF BURDEN ON GOOGLE I THINK WE OUGHT TO CONSIDER THE ISSUE OF BIFURCATION.

THE MOTION WE MADE PREVIOUSLY WAS NOT LIABILITY AND DAMAGES, IT WAS CONTRACT INTERPRETATION AND EVERYTHING ELSE AND THAT WAS MY MISTAKE. IT SHOULD HAVE BEEN LIABILITY AND DAMAGES AND IF THE COURT IS CONSIDERING ALLOWING THIS KIND OF SWEEPING DISCOVERY BIFURCATION IS APPROPRIATE.

THE COURT: ALL RIGHT. THE FINAL WORD, MR. KRATZ.

MR. KRATZ: YOUR HONOR, I KNOW YOU WANT TO MOVE THIS ALONG.

THE COURT: PROFOUNDLY.

MR. KRATZ: AND THE PROBLEM IS I'M STRUGGLING WITH THAT BECAUSE WE HAVE GOT A SITUATION WHERE WE'RE HAVING OUR CLAIMS DEFINED FOR US, WE'RE HAVING OUR DAMAGES THEORIES DEFINED FOR US INCORRECTLY. IT'S NOT THAT HE GETS TO SPEND ALL OF THIS TIME CHARACTERIZING.

THE COURT: AND I'M NOT GOING TO BE MAKING -- THIS IS NOT THE HEARING, I KEEP REITERATING, WHERE I AM GOING TO BE MAKING CALLS ON THE MERITS OF THE CASE.

BUT THE PROBLEM THAT I HAD, AND THIS GOES BACK TO MY COMMENT BEFORE, AS I READ YOUR DISCOVERY REQUESTS, AND AS MR. KRAMER CORRECTLY POINTS OUT, THEY ARE EXPANSIVE. YOU'RE NOT HELPING AND IT'S

YOUR ROLE AT THIS JUNCTURE, FRANKLY, TO PUT SOME PARAMETERS ON IT BECAUSE YOU FORCE THE ISSUE IN SOME WAYS BY HAVING -- I'M WILLING TO EXCEPT, BY THE WAY FOR PURPOSES OF DISCUSSION, THAT TO ORDER SIMPLY LET'S SAY I GRANT DIGITAL ENJOY'S MOTION WITH RESPECT TO DISCOVERY, I DON'T THINK THERE'S ANY DOUBT THAT IT WOULD BE BURDENSOME. I MEAN, I THINK IT IS EXTENSIVE AND YOU'RE NOT EVEN SAYING IT ISN'T.

AND THE RESULT OF THAT IS THAT I EXPECT SOME, SOME EFFORT TO SAY, ALL RIGHT, THAT WHAT WE WOULD BE ASKING FOR WOULD BE VERY, VERY, VERY EXTENSIVE. AND WE'RE TRYING TO DO THIS IN A FASHION WHERE PERHAPS WE DON'T NEED EVERY PIECE OF PAPER AND WE'LL LIVE WITH THIS BATCH AND COME BACK. THERE'S ABSOLUTELY NO EFFORT BETWEEN THE PARTIES TO TRY TO FIND SOME MIDDLE GROUND IN TERMS OF MATERIALS THAT YOU GET RESERVING THE RIGHT TO ASK FOR ME AND NOW DISCOVERY IS CLOSED SO THAT'S A WHOLE DIFFERENT ISSUE, BUT I DON'T GET THE SENSE THAT THE MEETING AND CONFERRING, TO PUT IT MILDLY, IS NOT A MODEL OF HOW THIS SHOULD BE DONE BECAUSE IT SOUNDS LIKE THERE'S EVEN SOME QUESTION ABOUT, ABOUT BASED ON MR. KRAMER'S COMMENTS, HE THINKS HE LIMITED THE CASE IN SOME FASHION AND YOU DON'T

d5455ece-baf4-4ca6-89f1-26d20ce3db9a

Page 66

THINK HE DID AND ALL OF THIS OTHER STUFF BUT THESE REQUESTS, THE REASON THAT HE IS ARGUING THAT THESE MERIT ISSUES IS BECAUSE THESE REQUESTS ARE SO EXTENSIVE.

MR. KRATZ: MAY I ADDRESS THAT?

THE COURT: YES.

MR. KRATZ: OF COURSE BEFORE I DO IF WE'RE TALKING ABOUT BURDEN ONLY I'M FINE WITH THAT FOR PURPOSES OF THIS DISCUSSION BUT MR. KRAMER MADE SEVERAL COMMENTS THAT ARE FACTUALLY INACCURATE THAT ARE BOTH WITH RESPECT TO OUR CLAIM AND PLUS WITH RESPECT TO THE FACTS IN THIS CASE.

NOW, I WANT AN OPPORTUNITY, AT SOME POINT, TO ADDRESS THAT CONDUCT BECAUSE IT'S HAPPENED AGAIN AND AGAIN AND IT'S IMPORTANT BECAUSE IT'S LEFT WITH THIS FRAMEWORK THAT WE'RE THIS LITTLE PIECE THAT'S OUT THERE TRYING TO GET A BIG, A BIG CLAIM AGAINST IT AND THAT IMPRESSION HAS BEEN REPEATED AGAIN AND AGAIN AND AGAIN AND IT'S WRONG. IT'S FALSE. AND THEY'RE FALSE BASED ON FALSE STATEMENTS.

WHAT I'D LIKE TO DO IS TO HAVE AN OPPORTUNITY TO RESUBMIT BASED ON A TRANSCRIPT OF THIS HEARING BECAUSE IT'S THERE AND IT'S A BIG PROBLEM.

Page 67

THE COURT: WHAT IS IT THAT YOU'RE ASKING? I MEAN, I SELDOM HAVE A DISCOVERY MOTION THAT IS NOW, IT'S IN THE CONTEXT OF THE DISCOVERY MOTION WE APPEAR TO BE HAVING THE TRIAL OF THE CASE.

MR. KRATZ: I UNDERSTAND THAT. AND IF ALL WE'RE TALKING ABOUT IS BURDEN, I WANT TO TALK ABOUT THAT BUT THE PROBLEM IS --

THE COURT: THAT'S WHAT MY FOCUS IS BECAUSE I AGREE WITH YOU THAT THIS IS A DISCOVERY MOTION AND SO TO THE EXTENT THAT -- BUT MR. KRAMER IS CORRECT THAT I HAVE TO APPLY THE STANDARD AND THE STANDARD IS IF HE WAS RIGHT, AND IF HE IS RIGHT AND GO BACK AND LOOK AT IT, THAT SOME OF WHAT YOU'RE ASKING FOR DOESN'T RISE TO THE LEVEL OF LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.

OBVIOUSLY I HAVE TO LOOK AT THE SUBSTANCE OF THE CASE.

MR. KRATZ: THEN THAT'S THE PROBLEM.

THE COURT: BUT I NEED TO LOOK AT IT THROUGH THE LENS OF NOT DECIDING THE ISSUES BUT DETERMINING WHETHER OR NOT SOMETHING IS ARGUABLY IN THE CASE OR NOT IN THE CASE.

MR. KRATZ: AND THAT'S THE PROBLEM, AND I

Page 68

WANT TO TALK ABOUT BURDEN BUT THE PROBLEM IS THAT HE'S MAKING ARGUMENTS WHETHER THIS IS DISCOVERABLE OR NOT BASED ON FALSEHOODS WITH RESPECT TO WHAT OUR CLAIM IS BUT ALSO WITH RESPECT TO WHETHER THERE IS EVIDENCE IN THERE AND I'VE GOT A BIG PROBLEM WITH THAT. I'M READY TO TALK ABOUT BURDEN BUT NOW HERE AGAIN, YOU KNOW, IF THE RULING IS THAT IT'S DISCOVERABLE THEN, THEN ALL RIGHT, HE DID IT AND THAT'S FINE, LET'S TALK ABOUT BURDEN. OKAY. BUT THAT'S NOT WHAT I'M HEARING.

THE PROBLEM IS WE STILL NEED TO LOOK AT THE OVERALL FRAMEWORK AND I HAVE A LOT TO SAY ABOUT THAT BECAUSE THE ONLY PERSON THAT HAS BEEN ABLE TO GIVE OUR DAMAGE THEORY IS MR. KRAMER. HE'S GOT IT WRONG BASED ON THE FACTUAL UNDERPINNING EVIDENCE, HE HAS IT WRONG WITH RESPECT TO WHAT ARGUMENTS WE'RE GOING TO MAKE AND SO THAT'S THE PROBLEM I'VE GOT. AND I KNOW YOU WANT TO GET DONE, AND I KNOW YOU WANT TO TALK ABOUT BURDEN AND I'M GOING TO DO THAT RIGHT NOW BUT THEN WHAT ARE WE LEFT WITH?

THE COURT: WHAT WE'RE LEFT WITH IS AN OUT OF HAND DISCOVERY HEARING. I MEAN, IT IS OUT OF HAND. THE PARTIES ARE NOT ASSISTING THE COURT IN TRYING TO FOCUS ON WHAT DISCOVERY IS REASONABLE AND WHAT DISCOVERY ISN'T. ALL I'M HEARING,

Page 69

FRANKLY, FROM BOTH SIDES IS THEY'RE EAGER LITIGATORS WHO WANT TO ARGUE THE MERITS OF THE CASE, BUT, REALLY, YOU KNOW, THIS IS NOT, THIS IS NOT THE HEARING ON THE SUBSTANCE OF THIS CASE AND NEITHER SIDE IS, I MEAN, I'M ALMOST INCLINED TO FORCE YOU TO GO AND SIT AND DO SOME MORE MEETING AND CONFERRING BECAUSE IT'S NOW THE TWO, YOU KNOW, I, I --

MR. KRATZ: MAY I ADDRESS SOME OF THIS?

THE COURT: SOME OF IT BUT I'M LOSING GROUND. THIS IS ONE OF THE FEW HEARINGS WHERE I KNOW LESS AFTER THE HEARING THAN I DID BEFORE.

MR. KRATZ: AND I SUBMIT THE PROBLEM IS THE MISCONCEPTION OF WHAT OUR CASE IS.

THE COURT: THAT'S NOT THE ENTIRE PROBLEM.

MR. KRATZ: IT IS.

THE COURT: THE PROBLEM IS, I'LL TELL YOU WHAT THE PROBLEM IS, IS THAT THE LAWYERS HAVE NOT FOCUSSED THE QUESTION. INSTEAD THEY HAVE USED THIS OPPORTUNITY AS A SPRING BOARD TO ARGUE EVERY CONCEIVABLE ISSUE IN THE CASE AND THE FOCUS OUGHT TO BE ON THE MAGNITUDE OF THE DISCOVERY THAT IS BEING REQUESTED AND WHETHER OR NOT UNDER THAT BROAD RUBRIC OF DISCOVERABILITY IF IT FALLS OUTSIDE OR

NOT.

MR. KRATZ: OKAY.

THE COURT: AND I AM HEARING -- BUT GO AHEAD. I'LL GIVE YOU FIVE MORE MINUTES AND IF THERE'S SOME REQUEST THAT YOU WANT TO GIVE ME SOME WRITTEN SUBMISSION, I'LL CONSIDER DOING THAT BUT I COULD BE HERE FOR DAYS THE WAY THIS IS GOING AND I HAVE OTHER THINGS TO DO.

MR. KRATZ: AND, YOUR HONOR, THEIR SPECIFIC REQUEST THAT DIRECTLY ADDRESSES ADSENSE AND NOT ANY WHETHER IT BE GOOGLE'S OR NOT. INTERROGATORIES 5, 6, 10, AND 11 DIRECT TO ADSENSE WHICH IS THE ENTIRETY OF OUR CLAIM. REQUEST FOR PRODUCTION 3.

THE COURT: WELL, YES. BUT THEIR ARGUMENT IS THAT ADSENSE IS NOT IN THE CASE. THERE'S NO DISPUTE THAT'S WHAT YOU'RE ASKING FOR, I AGREE WITH YOU. YOU'RE ASKING FOR MATERIAL PERTAINING TO ADSENSE FOR SEARCH, RIGHT, IN ADDITION TO ADSENSE FOR CONTENT.

MR. KRATZ: YEAH.

THE COURT: WHY IS -- WELL, I DON'T WANT TO GO THERE. THIS WILL GO ON FOREVER.

MR. KRATZ: I KNOW BUT THE DAMAGE THEORY IS NOT WHAT HE SAYS. THE DAMAGE THEORY IS WE HAVE

A MULTITUDE OF FORCED PLACED LICENSES THAT THEY HAVE OUT THERE. THEY HAVE FORCED ALL OF THESE PEOPLE TO DO GEOTARGETING AND THEY WANT TO DO GEOTARGETING DESPITE MR. KRAMER TO THE CONTRARY, THERE'S PUBLIC STATEMENTS BY PUBLISHERS, BY GOOGLE THAT SAYS, THAT SAYS THAT THIS IS A GREAT OFFERING, THIS IS SOMETHING THEY WANT. THIS ADVERTISING.COM DEPOSITION THAT HE'S TALKING ABOUT, THERE'S DOCUMENTS IN THERE THAT SAYS THAT BEFORE THEY SIGN UP WITH US, THEY WERE TRYING TO DO GEOTARGETING ON THEIR OWN. THEY WERE BAD AT IT AND THEY SAID THEY'RE LOSING CUSTOMERS AS A RESULT OF THAT. OKAY. SO THIS NOTION -- BUT OUR DAMAGE THEORY IS MORE THAN JUST, YOU KNOW, WE LOST A CUSTOMER HERE OR THERE. WE WANT TO DO A MARKET SHARE ANALYSIS. THEY INVADED A TREMENDOUS AMOUNT OF SPACE AND GIVEN LICENSES TO USE OUR TECHNOLOGY.

THE COURT: BUT IN ORDER TO DO THAT, BUT THIS IS DANGEROUS FOR ME TO VENTURE INTO THIS, BUT IN ORDER TO DO THAT AREN'T YOU GOING TO HAVE TO SHOW THAT THERE WAS SOME MARKET FOR YOUR SERVICES INDEPENDENT AND BY WAY OF DOING THAT AREN'T YOU GOING TO HAVE TO MAKE SOME PRESENTATION THAT THERE ARE PLAYERS IN THE MARKET THAT ARE SEEKING TO HAVE YOUR SERVICES AND THAT YOU HAVE, AND BUT FOR GOOGLE

COMING INTO THIS AREA AND PROVIDING IT AS PART OF THEIR SERVICE THAT THEY WOULD HAVE LICENSED WITH YOU? DON'T YOU HAVE TO HAVE SOME PEOPLE THAT YOU COULD IDENTIFY?

MR. KRATZ: WE HAVE SOME PEOPLE BUT THAT'S NOT OUR DAMAGE CLAIM WITH RESPECT TO JUST THOSE PEOPLE BECAUSE THEY WENT AND TOOK IT ALL.

THE COURT: THE PLAINTIFFS WERE HOPEFULLY SPECULATIVE.

MR. KRATZ: ABSOLUTELY NOT. THEY LICENSED IT TO THEM AND WE SHOULD GET THE REVENUE FOR THOSE LICENSES.

THE COURT: BUT THAT'S LIKE SAYING IF THERE'S AN ASPECT TO THE LICENSE THAT THEY THROW IN, BUT THERE'S NO MARKET FOR AN INDEPENDENT OF THAT, AREN'T YOU GOING TO HAVE TO SHOW THERE IS A MARKET?

MR. KRATZ: WELL, THERE IS, WE ARE IN BUSINESS. THAT'S WHAT WE DO.

THE COURT: OKAY.

MR. KRATZ: AND IT'S NOT JUST -- MR. KRAMER SAYS IT'S INCONCEIVABLE THAT THESE CONTENT SITES WANT TO LICENSE.

THE COURT: OKAY. THIS IS WHAT I'M GOING TO DO. I'M GOING TO BRING THIS TO A CONCLUSION AND

I'M GOING TO DO TWO THINGS: ONE IS WITH THE UNDERSTANDING THAT YOU NOW HAVE THAT I DON'T VIEW A LOT OF THE ARGUMENT AS HAVING SHED A LOT OF LIGHT ON MY DISCOVERY REQUEST, YOU'RE GOING TO BE AT THE MERCY OF WHAT I ORDER WITH RESPECT TO I'LL GO BACK AND I'LL READ ALL OF THIS AND I'LL GIVE IT CONSIDERABLE THOUGHT, AND I WILL MAKE AN ORDER.

IN THE MEANTIME, I REALLY DO THINK THAT IT IS APPROPRIATE THAT FOR THE PARTIES THAT KNOW THIS CASE AS WELL AS THEY KNOW IT TO TRY TO GET TOGETHER AND SEE IF THEY CAN TRY AND MEET ON THESE DISCOVERY REQUESTS.

ON THE GOOGLE MOTION I AM PREPARED TO RULE ON THE GOOGLE MOTION, AS I INDICATED, BUT ON YOUR MOTION, I THINK IT IMPLICATES SOME ISSUES THAT MAY BE THE PARTIES TOGETHER COULD TRY TO WORK THROUGH IT, AND THEY COULD PUT SOME, SOME PARAMETERS ON THIS DISCOVERY THAT WOULD BE WORKABLE FOR BOTH.

IF YOU DON'T DO THAT, I'LL GIVE YOU AN ORDER.

AND IF YOU'RE ALL SO, YOU KNOW, YOU THINK THAT THERE'S MORE THAT I NEED TO KNOW BESIDES THE PAD OF PAPERS THAT I HAVE ALREADY SEEN, ARE YOU REQUESTING AN OPPORTUNITY TO SUBMIT SOMETHING? IS

Page 74

THIS WHAT YOU WANT TO DO TO QUOTE-UNQUOTE CORRECT THE RECORD FROM WHAT MR. KRAMER HAS ARGUED?

MR. KRATZ: THE PROBLEM IS I HAVE NOT BEEN GIVEN AN OPPORTUNITY TO MAKE A COMPLETE RECORD.

THE COURT: I'M OFFERING YOU THAT OPPORTUNITY.

MR. KRATZ: I HAVE GIVEN ONE DAMAGE THEORY AND WE HAVE THREE.

THE COURT: MR. KRATZ, I'M TELLING YOU YOU COULD DO THAT, YOU CAN DO IT ORALLY OR IN WRITING.

MR. KRATZ: OKAY. THAT'S FINE, THAT'S WHAT I WOULD LIKE TO DO.

THE COURT: OKAY. OKAY. SO WHEN WOULD YOU BE PREPARED TO GIVE ME THIS SUBMISSION?

MR. KRATZ: I WOULD LIKE TO HAVE THE TRANSCRIPT.

THE COURT: OKAY. WELL.

MR. KRATZ: WE'RE TALKING ABOUT -- WE'RE DERAILED ANYWAY.

THE COURT: YOU'RE NOT DERAILED. YOU'RE ASSUMING I'M GOING TO CHANGE ALL SORTS OF DATES AND I MAY NOT SO DON'T ASSUME THAT. BUT I'M NOT GOING TO FURTHER THE DERAILMENT BY A PROLONGED SUBMISSION

Page 75

PERIOD ON A DISCOVERY MOTION.

SO IF YOU WANT TO SUBMIT SOMETHING FURTHER TO ME, NO, WE'RE NOT GOING TO AWAIT THE TRANSCRIPT. YOU KNOW WHATEVER IT IS YOU WANT TO TELL ME, GOD KNOWS YOU'RE PREPARED TO TELL ME RIGHT NOW, SO SUBMIT IN WRITING ANYTHING FURTHER THAT YOU THINK I SHOULD CONSIDER IN CONJUNCTION WITH THIS DISCOVERY MOTION AND I WANT IT SUBMITTED BY NEXT FRIDAY, A WEEK FROM FRIDAY, AND IT'S GOING TO BE LIMITED TO, I'M GOING TO LIMIT IT TO TEN PAGES BUT I WOULD BE DELIGHTED IF PEOPLE USE LESS THAN TEN PAGES.

CAN YOU TELL ME WHATEVER YOU THINK I NEED TO KNOW WITH RESPECT TO THIS DISCOVERY MOTION, AND I AM NOT GOING TO HAVE REPLY BRIEFS AND SURREPLY BRIEFS AND EACH SIDE IS GOING TO I'M SURE SAY THE OTHER SIDE HE'S MISCHARACTERIZED THIS, THAT, AND THE OTHER. I'M BRINGING IT TO A CLOSE. SO A WEEK FROM FRIDAY, GIVE ME WHATEVER YOUR SUBMISSION IS AND THEN YOU'LL GET AN ORDER FROM ME BECAUSE YOU HAVE TO MOVE THIS CASE ALONG.

MR. KRATZ: I WOULD LIKE NOTHING BETTER, YOUR HONOR.

MR. KRAMER: YOUR HONOR, COULD I PROPOSE A STATUS CONFERENCE OR A CMC WITHIN THE NEXT SAY

Page 76

THREE OR FOUR WEEKS SO WE CAN TALK ABOUT THE ISSUES THAT MAY FLOW OUT OF THIS?

THE COURT: THAT'S FINE. IT WOULD HAVE TO BE TOWARDS THE END OF JULY BECAUSE BETWEEN THE NINTH CIRCUIT CONFERENCE AND OTHER THINGS THERE'S NO WAY YOU CAN GET ON THE SCHEDULE BEFORE THEN.

MR. KRATZ: I AGREE WITH THAT. I THINK WE NEED TO DO THAT. WE HAVE A DEADLINE COMING UP OF EXPERT DISCLOSURES.

THE COURT: RIGHT. WELL, I WAS UNDER THE IMPRESSION I WAS GOING TO GET A STIPULATION FROM YOU PEOPLE TO MOVE SOME DATES.

MR. KRATZ: PRESUMING THAT'S NOT A PROBLEM BECAUSE THAT'S GOING TO COME AND GO BEFORE THE CASE MANAGEMENT. AGAIN WE NEGOTIATED -- LET'S TRY TO DO THIS BY STIPULATION AND ENDED UP SAYING NOW LET'S JUST WAIT. SO, YOU KNOW, HERE AGAIN WE'RE LEFT WITH THIS NO IDEA WHAT GOOGLE'S ULTIMATE POSITION IS GOING TO BE ON THIS. HE SAYS IT'S ALL OVER AND THE PROBLEM IS WE CAN'T GIVE AN EXPERT DISCLOSURE, WE DON'T HAVE ANY DATA, YOU KNOW, I MEAN, WE JUST DON'T.

THE COURT: WELL, WHAT I WILL DO IS I WILL SET A CMC DATE. IN THE INTERIM, IF YOU ARE CONCERNED THERE'S A DATE, EXPERT DISCLOSURES DATES

Page 77

ARE GOING TO COME AND GO, AND YOU WANT TO AGREE TO GIVE ME A STIPULATION TO EXTEND IT, I DON'T HAVE A PROBLEM WITH THAT.

THE THING I DO HAVE A PROBLEM WITH IS THIS NOTION THAT SEEMS TO BE FLOATING AROUND THE COMMENT THAT IT'S A DERAILED CASE, THAT THAT MEANS THAT EVERYTHING IS JUST GOING TO GO OFF INTO LIMBO AND THAT DATES ARE NATURALLY GOING TO EVAPORATE. ALL I'M GOING TO DO IS WHATEVER DATE IS COMING UP PRIOR TO THE CMC THAT I'M ABOUT TO SET AT THE END OF JULY, I WILL. IF YOU WANT TO EXTEND THAT OUT BY STIPULATION, I DON'T HAVE A PROBLEM WITH THAT.

MR. KRATZ: DO YOU HAVE A PROBLEM WITH THAT?

MR. KRAMER: I WOULD LIKE TO GET A SPECIFIC PROPOSAL.

THE COURT: YOU'RE NOT GOING TO DO IT WITH ME SITTING HERE BUT DO IT WHILE YOU'RE TOGETHER.

MR. KRAMER: NO, NO, CERTAINLY NOT.

MR. KRATZ: WELL, AS LONG AS --

THE COURT: OKAY. I'M GOING TO SET A CASE MANAGEMENT CONFERENCE, A FURTHER CASE MANAGEMENT CONFERENCE FOR JULY 28TH, A THURSDAY, AT 2:00 O'CLOCK.

d5455ece-baf4-4ca6-89f1-26d20ce3db9a

MR. KRAMER: THANK YOU, YOUR HONOR.

THE COURT: OKAY. AND JUST TO REVIEW THE BIDDING AGAIN, IT'S GOING TO BE WHATEVER FURTHER SUBMISSION ANYBODY WANTS TO SEE LIMITED TO TEN PAGES OR LESS WITH RESPECT TO THE PENDING DISCOVERY MOTIONS BY A WEEK FROM FRIDAY AND THEN THE MATTER WILL BE TAKEN UNDER SUBMISSION AND I WILL BE RECEIVING A STIPULATION AS I UNDERSTAND IT FROM YOU REGARDING THE IMPENDING EXPERT DISCLOSURE DATES; RIGHT?

MR. KRAMER: YES, YOUR HONOR.

MR. KRATZ: NO, YOUR HONOR.

THE COURT: THANK YOU.

(WHEREUPON, THE PROCEEDINGS IN THIS MATTER WERE CONCLUDED.)

d5455ece-baf4-4ca6-89f1-26d20ce3db9a