**KRAMER DECLARATION EXHIBIT G**

P. CRAIG CARDON, Cal. Bar No. 168646
BRIAN R. BLACKMAN, Cal. Bar No. 196996
KENDALL M. BURTON, Cal. Bar No. 228720
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone: 415-434-9100
Facsimile: 415-434-3947

TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
LUKE ANDERSON (Admitted *Pro Hac Vice*)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5500
Facsimile: 404.443.5751

Attorneys for DIGITAL ENVOY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC., <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> GOOGLE, INC., <br><br> Defendant/Counterclaimant. | Case No. C 04 01497 RS <br><br> **DIGITAL ENVOY, INC.'S RESPONSE TO GOOGLE, INC.'S SECOND SET OF INTERROGATORIES** |

PROPOUNDING PARTY:    GOOGLE, INC.

RESPONDING PARTY:    DIGITAL ENVOY, INC.

SET NO.:    TWO

1  Digital Envoy, Inc. ("Digital Envoy") responds to Google, Inc.'s ("Google") Second Set of
2  Interrogatories as follows:
3  **INTERROGATORY NO. 5:**
4  IDENTIFY and DESCRIBE any ambiguity in the AGREEMENT, including but not
5  limited to any ambiguity in its terms or the wording thereof.
6  **RESPONSE TO INTERROGATORY NO. 5:**
7  Digital Envoy objects to this interrogatory to the extent it seeks disclosure of attorney-
8  client privileged communication or information protected by the work product doctrine.
9  Subject to this objection, Digital Envoy states that it has not identified any ambiguity in the
10 Agreement at this time and does not contend, in the first instance, that there is any ambiguity in
11 the terms of the Agreement, both as the parties understood them and agreed to during the
12 negotiation of the Agreement, and as interpreted in accordance with their plain meanings and
13 common understandings. Digital Envoy will not accept Google's proposed interpretation of the
14 Agreement or that Google's proposed interpretation creates ambiguity where none exists. In the
15 event that Google supports interpretations contrary to those given by Digital Envoy, Digital Envoy
16 will seek rejection of such interpretations first through the unambiguous terms of the contract
17 itself, and secondarily, with parole evidence supporting Digital Envoy's interpretation of the
18 Agreement.
19 **INTERROGATORY NO. 6:**
20 For each ambiguity identified in response to Interrogatory No. 5, DESCRIBE DIGITAL
21 ENVOY's understanding of the term, wording or other ambiguity.
22 **RESPONSE TO INTERROGATORY NO. 6:**
23 For the reasons set forth in response to Interrogatory No. 5, Digital Envoy has not
24 presently identified any ambiguity.
25 **INTERROGATORY NO. 7:**
26 DESCRIBE all facts and circumstances supporting YOUR contention that GOOGLE'S
27 AdSense for Content program is unlicensed by and/or beyond the scope of GOOGLE'S license in
28 the AGREEMENT.

**RESPONSE TO INTERROGATORY NO. 7:**

Digital Envoy objects to this interrogatory to the extent it seeks disclosure of attorney-client privileged communication or information protected by the work product doctrine. Further, Digital Envoy objects because the interrogatory is vague and ambiguous.

Subject to these objections, Digital Envoy states: Digital Envoy contends that GOOGLE's AdSense for Content is unlicensed and beyond the scope of the AGREEMENT for at least the presently identified reasons:

1. The Agreement is a limited license and without specific authorization, Google's use of Digital Envoy's technology is unlicensed and actionable. Accordingly, Digital Envoy contends Google's use in its AdSense for Content program is unlicensed because none of the language in the Agreement permits Google to use Digital Envoy's technology as used in its AdSense for Content program.

2. The Agreement is limited on its face to use by Google in the business of "producing and maintaining information search technology." AdSense for Content is not "information search technology" as that term was used in November 2000, nor as that term is commonly used today. Nor is it "information search" as reasonably defined by Google's own statements, by Digital Envoy's understanding of the term, by the use of the term in the industry or by the general public. In AdSense for Content, there is no Internet user search query that prompts the showing of an AdSense for Content advertisement. Google's own patent filings, mission statements, public statements by officers, web site, S-1 and other security filings, deposition testimony, and internal communications make this clear, and differentiate Google's search-related advertisement technology (which the parties agree is considered to be "information search") from non-search advertisement technology (which is not "information search"). In addition, Google also acquired two separate companies to aid in the technical development and marketing of its AdSense for Content program, which further shows that this use was not contemplated by Google in November 2000.

-3-

3. In AdSense for Content, Digital Envoy's trade secrets were not being used by Google in the process of producing or maintain information search technology. Instead, Digital Envoy's technology was used by Google to target an advertisement to a user based on that user's IP address as the user visited a third party web site, well after the content for the web page had been contextually interpreted and categorized. In AdSense for Content, Digital Envoy's trade secrets had no relation to a user search or even to information search "web crawling" by Google, but were solely used in the process to target a user at a third party web site to provide a relevant advertisement at the time the user visited the third party web site.

4. Section 3 of the Agreement expressly prohibits Google from selling, licensing, distributing, sharing or otherwise giving (in any form) Digital Envoy's trade secrets to any party, and prohibits use of Digital Envoy's technology outside of the site defined in the Agreement. This section also prohibits the access and use of the trade secrets outside of the site. In AdSense for Content, as well as other Google advertisement programs used by third party web sites in which the trade secrets were wrongfully deployed, Google distributed and allowed other parties to access, use and share in the benefits of Digital Envoy's trade secrets. These third party web sites were permitted by Google to actively use Digital Envoy's trade secrets to geo-target advertising for their (non-Google) users who visit their web sites. Google touts this benefit to third parties on its web site and in its sales and marketing collateral. In addition, in every case, Google shares a majority, or a significant portion, of revenue derived from the geo-targeted advertisements with the owners of these web sites. Google admits in its sales collateral, public statements and patent filings that these third party sites are the primary consumer of the geo-targeting capability derived from Digital Envoy's trade secrets.

5. Additionally, Google's web site, sales collateral and patent filings admit that access to, and use of, Digital Envoy's trade secrets are initiated by the third party web site through its inclusion of certain code its web servers, which then allow the third

-4-

W02-SF:5BB\61433640.1 DIGITAL ENVOY'S RESPONSE TO GOOGLE'S SECOND SET OF INTERROGATORIES

party site's users to receive targeted advertising. Google admits that this allows the third party site to benefit through providing more relevant advertisements that enhance its users' experience and allows the third party site to obtain more revenue from advertisements through higher click-through rates. This often is initiated and accomplished by third parties through a "self-service" method with little or no involvement from Google.

6. Furthermore, during the negotiation of the Agreement, the parties expressly agreed and understood that Google would not be allowed to let third party web sites have access to, or directly benefit from, Digital Envoy's technology, and that Digital Envoy's trade secrets would only be accessed by, and used for the benefit of, Google. Email communication between the parties as well as phone communications between the parties both before and after the signing of the Agreement make it clear that both parties understood these restrictions.

DATED: November 3, 2004

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
P. CRAIG CARDON
BRIAN R. BLACKMAN

TIMOTHY H. KRATZ (*Pro Hac Vice* To Be Applied For)
LUKE ANDERSON (*Pro Hac Vice* To Be Applied For)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5706
Facsimile: 404.443.5751

Attorneys for DIGITAL ENVOY, INC.

# CERTIFICATE OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in the County of San Francisco; I am over the age of eighteen years and not a party to the within entitled action; my business address is Four Embarcadero Center, 17th Floor, San Francisco, California 94111-4106.

On November 3, 2004, I served the following document(s) described as:

**DIGITAL ENVOY, INC.'S RESPONSE TO GOOGLE, INC.'S SECOND SET OF INTERROGATORIES**

on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows:

David Kramer, Esq.
David L. Lansky, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304
Telephone: 650-493-9300
Facsimile: 650-565-5100

[X] **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at San Francisco, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ] **BY OVERNIGHT DELIVERY:** I served such envelope or package to be delivered on the same day to an authorized courier or driver authorized by the overnight service carrier to receive documents, in an envelope or package designated by the overnight service carrier.

[X] **BY FACSIMILE:** I served said document(s) to be transmitted by facsimile pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was 415-434-3947. The name(s) and facsimile machine telephone number(s) of the person(s) served are set forth in the service list. The sending facsimile machine (or the machine used to forward the facsimile) issued a transmission report confirming that the transmission was complete and without error. Pursuant to Rule 2008(e), a copy of that report is attached to this declaration.

[ ] **BY E-MAIL:** I served said document(s) to be transmitted by e-mail. The e-mail address of the person served is: dkramer@wsgr.com.

[ ] **BY HAND DELIVERY:** I caused such envelope(s) to be delivered by hand to the office of the addressee(s).

W02-SF:5DA\61428539.1

PROOF OF SERVICE

**STATE:** I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **November 3, 2004**, at San Francisco, California.

*[signature]*
Diane Anderson

W02-SF:5DA\61428539.1                -2-