\*\*E-Filed\*\*
September 8, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DIGITAL ENVOY, INC.,

    Plaintiff,

v.

GOOGLE, INC.,

    Defendant.

NO. 5:04-cv-1497 RS

**ORDER DENYING DIGITAL ENVOY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiff Digital Envoy, Inc. ("Digital") asks the Court to grant partial summary judgment in its favor on the following issues: (1) that the parties' November 30, 2000 License Agreement ("Agreement") expressly prohibited defendant Google, Inc. ("Google") from licensing Digital's proprietary technology to third parties, and (2) that Google violated that express prohibition by providing such third parties with access to Digital's proprietary technology as a component of Google's AdSense advertising program. Google responds that the terms of the Agreement permitted it to use Digital's technology in the AdSense campaign and that, in any event, its conduct vis-a-vis third parties cannot be characterized as the "licensing" or "sublicensing" of Digital's intellectual property. The motion was fully briefed and heard by the Court on August 31, 2005. Based on all papers filed to date, as well as on the oral argument of counsel, the Court finds that Digital has failed to demonstrate an entitlement to summary judgment on the issues it identifies, as

explained below.

## II.  BACKGROUND

Numerous orders have been issued in this case, obviating the need to set forth the background of the parties' dispute in this order.  In fact, the opinion issued by the Court on May 20, 2005, regarding Google's motion for summary judgment addressed at some length the interpretation of various terms used in the paragraph of the Agreement at issue in this motion.  Much of that discussion is directly applicable here, as set forth below.

## III.  STANDARDS

Fed. R. Civ. Pro. 56(d) provides in relevant part that, in those instances where judgment is not rendered upon the whole case, the court "by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." Should the court determine that certain facts appear without substantial controversy, an order specifying such facts shall be issued and those facts shall be deemed established at trial. Id.

"The obligation imposed on the court by Rule 56(d) to specify uncontroverted material facts is technically compulsory.  However, if the court determines that identifying indisputable facts through partial summary judgment would not expedite the adjudicative process, it may decline to do so."  Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp., 99 F.Supp.2d 1123, 1124 (E.D. Cal. 2000).

## IV.  DISCUSSION

As noted above, Digital requests two findings of facts: (1) that the Agreement prohibited Google from licensing Digital's technology to third parties, and (2) that Google's actions constituted just such conduct.  Although there does not appear to be a dispute that the Agreement prohibited Google from licensing Digital's proprietary technology to any third party, the "adjudication" of that fact at this juncture will not advance the resolution of this case since Digital's claims, as well as this specific motion, focus on the disputed material issue of whether Google actually licensed the proprietary technology to third parties. Accordingly, the Court finds that the adjudicative process would not be expedited by declaring Digital's first fact without substantial controversy and, therefore, declines to do so. With respect to the proposed second

finding of fact, Digital argues that Google violated the terms of the Agreement by incorporating Digital's proprietary technology into an algorithm and then by transferring the results of its application to third party websites participating in the AdSense program.

Google argues that its operation of the AdSense program in conjunction with third party websites in no manner constitutes a sublicense of Digital's intellectual property to such third parties. As a matter of law, Google notes that the Federal Circuit has resoundingly declined to characterize analogous conduct as amounting to a sublicense. Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1569 (Fed. Cir. 1993); Lisle Corp. v. Edwards, 777 F.2d 693, 694 (Fed. Cir. 1985). In each of those decisions, the Federal Circuit declared that no sublicenses had been created by licensed manufacturers who resold products covered by those licenses to third parties. In the Intel case, Intel and Hewlett Packard ("HP") entered into cross-license agreements regarding patents for coprocessors which implicitly prohibited sublicenses. Subsequently, HP contracted with ULSI to manufacture coprocessors, to which Intel objected and sued ULSI for patent infringement. The Circuit concluded that the coprocessor sales by HP to ULSI were lawful and did not constitute a sublicense of Intel's intellectual property rights. Moreover, since the sale by HP was valid under its license from Intel, there could be no patent infringement by ULSI.

Similarly, in Lisle, defendant Edwards had obtained a patent on his powered wind shield track cutter and granted a license to Lisle to make, use, and sell the tool under certain conditions. The license prohibited sublicenses. Lisle manufactured the tool and sold it to Snap-On, who resold the tool under its trademark. Edwards sued Snap-On for patent infringement and Lisle filed a declaratory judgment action seeking a declaration that its sales to Snap-On were valid under the license agreement with Edwards. The Federal Circuit agreed with Lisle, held that the sales to Snap-On were authorized under the license, and found that no sublicense was created by the resale of the tools.

Digital attempts to distinguish these cases based on the express limitation in the parties' Agreement prohibiting Google from licensing Digital's technology. Such distinction, however, is illusory since neither the agreement in Intel nor in Lisle appear to have permitted sublicenses, a restriction which is similar in effect to the third party license prohibition at issue in the parties' Agreement. Digital also notes that both cases involved the sale of goods rather than a license of technology, and that therefore the conclusion by

3

1  those courts that the sale of a product does not constitute a license to its component parts is inapposite in
2  this context. Digital fails, however, to cite any authority in support of its argument, simply noting at oral
3  argument that such position is "self-evident." As the moving party, in short, Digital fails to sustain its burden
4  that a Google license to third parties participating in the AdSense program necessarily amounts to a
5  sublicense to those parties to use Digital's proprietary technology.

6  Moreover, as Google also argues, Digital points to no undisputed facts reflecting a license or
7  sublicense of its technology by Google to any third party.  While Digital submits a sample AdSense contract
8  to support its position that Google licenses Digital's technology, a review of that document reveals that no
9  third party is granted the right to access or use Digital's data. See Han Declaration at Exh. G.  Google
10 confirms that its algorithm which included Digital's data was never sent to third parties. See Declaration of
11 Mark Rose, filed February 23, 2005 at ¶ 9. Rather, AdSense participants were provided only with the
12 results of Google's internal use of Digital's geo-targeting method.  As a result, no third party could access
13 Digital's proprietary data. Further, to the extent that Digital attempts to substitute its complaint of inadequate
14 production of third party license agreements by Google for the requisite showing of undisputed facts, Digital
15 sidesteps its obligation as moving party to identify those portions of the pleadings and admissions on file,
16 together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material
17 fact. Celotex v. Catrett, 477 U.S. at 323.

18 Digital similarly fails to rebut, at least for purposes of summary judgment, Google's contention that
19 Section 3 of the Agreement gives it the right to use Digital's proprietary data to develop new services for
20 third parties. See Agreement at Section 3. Although Digital contends that such portion of the Agreement
21 referred only to the "development" (i.e., manufacture or design) of new services and did not, therefore,
22 permit Google actively to provide third parties with access to Digital's data, it provides no evidence to
23 support that interpretation.  Accordingly, based on the evidence submitted to date, a reasonable trier of fact
24 could conclude that Google was authorized under Section 3 of the Agreement to utilize Digital's technology
25 in the creation of Google's AdSense program for third parties.

## V.  CONCLUSION

27 For the reasons stated above, the Court declines to adjudicate on summary judgment the issue of

4

whether the Agreement prohibited Google from licensing Digital's proprietary technology to third parties. In addition, Digital has failed to satisfy its burden to show that Google licensed the technology to third parties in violation of the Agreement.  Therefore, Digital's motion for partial summary judgment is denied.

IT IS SO ORDERED.

Dated: September 8, 2005                                             /s/ Richard Seeborg
                                                                                             RICHARD SEEBORG
                                                                                             United States Magistrate Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER WERE ELECTRONICALLY PROVIDED TO:**

Brian R. Blackman     bblackman@sheppardmullin.com

P. Craig Cardon     ccardon@sheppardmullin.com, msariano@sheppardmullin.com

Charles Tait Graves     tgraves@wsgr.com

Stephen C. Holmes     sholmes@wsgr.com, pmarquez@wsgr.com

David H. Kramer     dkramer@wsgr.com, dgrubbs@wsgr.com

Michael S. Kwun     mkwun@google.com

David L. Lansky     dlansky@wsgr.com

1  Chan S. Park    cpark@wsgr.com

2  Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

3

4  **Dated: 9/8/05**                                              **Richard W. Wieking, Clerk**

5

6                                                                 **By:___DM_____**
                                                                       **Chambers**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28