1  DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgr.com)
   DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile:  (650) 565-5100
5
   Attorneys for Defendant/Counterclaimant
6  Google Inc.

7

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12 DIGITAL ENVOY, INC.,                )   CASE NO.: C 04 01497 RS
                                       )
13              Plaintiff/Counterdefendant, )
                                       )   **GOOGLE INC.'S REPLY IN
14       v.                            )   SUPPORT OF MOTION FOR
                                       )   PARTIAL SUMMARY JUDGMENT
15 GOOGLE INC.,                        )   REGARDING DIGITAL ENVOY,
                                       )   INC.'S DAMAGES CLAIMS**
16              Defendant/Counterclaimant. )
                                       )
17                                     )   Judge:     Hon. Richard Seeborg
                                       )   Courtroom: 4, 5th Floor
18                                     )   Date:      September 21, 2005
                                       )   Time:      9:30 a.m.
19                                     )
                                       )
20 _____ )

21

22

23

24

25

26

27

28

2717832_4.DOC

REPLY ISO MOTION FOR PARTIAL SUMMARY JUDGMENT
RE DIGITAL ENVOY, INC.'S DAMAGES CLAIMS
CASE NO.: 04 01497 RS

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................................1

II. ARGUMENT .......................................................................................................................2

    A.  The License Agreement Bars Digital Envoy's Damage Claims .............................2

        1.  Digital Envoy Cannot Recover Damages in This Case Because It Cannot Show Willful Misconduct by Google ............................................2

        2.  The License Agreement Limits Digital Envoy's Recovery to Monies Paid to It by Google. ................................................................................5

            a.  The Limitation of Liability Clause Is Not Contrary to California Public Policy ................................................................5

            b.  Digital Envoy's Claim Is Undeniably "Brought Under" the License Agreement ..............................................................................8

    B.  Digital Envoy Cannot Establish that It Suffered Actual Loss or that Google Was Unjustly Enriched Because of the Alleged Misappropriation .......................11

        1.  Digital Envoy Has Abandoned Any Claims of Actual Loss Caused by Google's Supposed Misappropriation ......................................................11

        2.  Digital Envoy Cannot Establish Any Unjust Enrichment Caused by Google's Supposed Misappropriation ............................................................11

        3.  Digital Envoy's Discussion about the Calculation of Damages Is Inapposite ......................................................................................................14

III. CONCLUSION .................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Ace Formal Wear v. Baker Protective Serv., Inc.*, 416 So.2d 8 (Fla. App. 1982) ..........................6

*Allied Paper, Inc. v. H.M. Holdings, Inc.*, 619 N.E.2d 1121 (Oh. App. 1993) ...............................6

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................................4

*Brawthen v. H & R Block, Inc.*, 52 Cal. App. 3d 139 (1975)..........................................................14

*Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191 (2d Cir.1989) ......................................6

*Colich & Sons v. Pacific Bell*, 198 Cal. App. 3d 1225 (1988).........................................................3

*Crowe v. County of San Diego*, 303 F. Supp. 2d 1050 (S.D. Cal. 2004) .......................................11

*Davidson v. Welch*, 270 Cal. App. 2d 220 (1969)............................................................................3

*Dazo v. Globe Airport Security Servs.*, 295 F.3d 934 (9th Cir. 2002) ............................................3

*Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478 (1998)....................................................3, 6

*Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23 (2d Cir. 1985) .........................................14

*Evans v. Pacific Indem. Co.*, 49 Cal. App. 3d 537 (1975) ...............................................................4

*Farnham v. Superior Court*, 60 Cal. App. 4th 69 (1997)........................................................5, 6, 7, 9

*Hawaiian Pineapple Co., Ltd. v. Indus. Accident Comm'n,* 40 Cal. 2d 656 (1953) .......................3

*I-Enterprises Company, LLC v. Draper Fisher Jurvetson Mgnt. Co. V, LLC*, No. C-03-1561MMC, 2005 WL 1661959 (N.D. Cal. July 15, 2005) .........................................11

*Koos Van Den Akker Atelier Ltd. v. Honeywell Protection Servs.*, 148 A.D.2d 359 (N.Y. App. 1989)..............................................................................................................6

*L. Luria & Son, Inc. v. Honeywell, Inc.*, 460 So.2d 521 (Fla. App. 1984).....................................6

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988).......................................10

*New v. Consolidated Rock Prods. Co.*, 171 Cal. App. 3d 681 (1985) ............................................2

*O'Shea v. Claude C. Wood Co.*, 97 Cal. App. 3d 903 (1979) .........................................................2

*Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608 (1996)..........................................................................9

*Perez v. Southern Pacific Transp. Co.*, 218 Cal. App. 3d. 462 (1990) ..........................................3

*SEC v. Gonzalez de Castilla*, 184 F. Supp. 2d 365 (S.D.N.Y. 2002)..............................................4

*SEC v. Truong*, 98 F. Supp. 2d 1086 (N.D. Cal. 2000) .................................................................4

*Saelzler v. Advanced Group 400*, 5 Cal. 4th 763 (2001) ............................................................13

*Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658 (2003) ........................................14

*Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410 (7th Circ. 1992) ..............................13

*Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061 TEH, 2005 WL
    2045807 (N.D. Cal. Aug. 25, 2005) ...............................................................................11

*State Farm Fire & Cas. Co. v. Byrd*; 729 F.Supp. 1265 (N.D. Cal.,1990) ....................................4

*State Farm Fire & Cas. Co. v. Huie*, 666 F. Supp. 1402 (N.D. Cal. 1987) ...................................4

*Stott v. Johnson*, 36 Cal. 2d 864 (1951) ......................................................................................14

*Telex Corp. v. Int'l Bus. Mach. Corp.*, 510 F.2d 894 (10th Cir. 1975) .......................................14

*Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688 (8th Cir. 1997) ................................10

*Ting v. AT&T*, 182 F. Supp. 2d 902 (N.D. Cal. 2002), *rev'd in part on other
    grounds*, 319 F.3d 1126 (9th Cir. 2003) ..........................................................................7

*Tomerlin v. Canadian Indem. Co.*, 61 Cal. 2d 638 (1964) ............................................................4

*USM Corp. v. Marson Fastener Corp,* 467 N.E.2d 1271 (Mass. 1984) ................................14, 15

**STATUTES**

Cal. Civ. Code §1654 .....................................................................................................................9

Cal. Civ. Code § 1668 ...........................................................................................................1, 3, 4, 5

Cal. Civ. Code § 3426.1(b)(2)(B)(ii) ..............................................................................................9

Cal. Civ. Code § 3426.3(a) ..................................................................................................1, 14, 15

**MISCELLANEOUS**

BLACK'S LAW DICTIONARY (7th ed. 1999) ................................................................................4, 7

## I. INTRODUCTION

In its motion for partial summary judgment, Google Inc. ("Google") established that Digital Envoy, Inc.'s ("Digital Envoy's") damage claims are precluded or severely limited by two separate limitation of liability clauses in the parties' License Agreement. As Google explained, the application of these provisions raises pure questions of law that should be resolved in Google's favor through summary judgment.

Digital Envoy's attempts to avoid these provisions are badly misguided. Its construction of the phrase "willful misconduct" completely misstates controlling law. Its reliance on California Civil Code Section 1668 is likewise legal error. And its strained interpretation of the provision capping Google's potential liability is at odds with all available authority as well as common sense. The limitation of liability provisions are enforceable and entitle Google to partial summary judgment barring, or substantially circumscribing, Digital Envoy's damage claims.

Digital Envoy fares no better in seeking to overcome the causation problems endemic to its claims. It failed completely to respond to Google's showing that it could not establish any actual damages caused by Google's alleged trade secret misappropriation. It has therefore abandoned its actual damages claim as a matter of law. As for the unjust enrichment theory, Digital Envoy's simplistic conclusions, devoid of evidence, do nothing to carry its burden of proving that Google was enriched *because* of its use of Digital Envoy's data. Accordingly, Google is also entitled to partial summary judgment barring Digital Envoy from seeking either an actual damages or unjust enrichment recovery under Civil Code Section 3426.3(a).

**II.   ARGUMENT**[1]

    **A.   The License Agreement Bars Digital Envoy's Damage Claims**

          **1.   Digital Envoy Cannot Recover Damages in This Case Because It Cannot Show Willful Misconduct by Google**

The first ground Google relied upon in its motion for partial summary judgment was the provision of Section 8 in the License Agreement that bars Digital Envoy from seeking to impose against Google "ANY LIABILITY WHATSOEVER ... FOR ERRORS, OMISSIONS, DELAYS, INTERRUPTIONS, OR LOSSES UNLESS CAUSED BY [GOOGLE'S] WILLFUL MISCONDUCT." Kramer Decl., Ex. A, § 8 (capitalization in original). As Google explained, there is no evidence of "willful misconduct" by Google. Accordingly, Google is entitled to partial summary judgment barring the imposition of any liability against it.

Digital Envoy's sole ground for opposing this portion of Google's motion is its legal contention that it can demonstrate "willful misconduct" merely by pointing to an "an act [that was] not the result of an error or inadvertence in the performance of [Google's] duties under the License Agreement." Opp. Brf. at 15. That interpretation of the contract is wrong as a matter of law.

As Google set forth in its opening brief, "[t]he concept of willful misconduct has a well-established, well defined meaning in California law. 'Willful or wanton misconduct is intentional wrongful conduct, done either with a knowledge that serious injury to another will probably result, or with a wanton and reckless disregard of the possible results.'" *New v. Consolidated Rock Prods. Co.,* 171 Cal. App. 3d 681, 689 (1985) (quoting *O'Shea v. Claude C. Wood Co.,* 97 Cal. App. 3d 903, 912 (1979)). Under California law, "willful misconduct is not

---

[1] At the start of Digital Envoy's Opposition ("Opp. Brf."), it claims that Google's motion is premature in light of purportedly outstanding discovery. Digital Envoy has not, however, moved under Rule 56(f) in an effort to forestall a decision on Google's pending motion. Such a motion would be meritless. There is no outstanding discovery that has any relationship at all to this motion. Moreover, fact discovery closed on April 29, 2005. *See* Stipulation and Order to Extend Time to File Motions to Compel Discovery (Document No. 1157, entered May 13, 2005). And the deadline for motion practice has likewise long since passed. *Id.* (extending deadline to file motions to compel discovery to May 17, 2005).

1  marked by a mere absence of care.  Rather, it involves a more positive intent actually to harm

2  another or to do an act with a positive, active and absolute disregard of its consequences." *Dazo*

3  *v. Globe Airport Sec. Servs.*, 295 F.3d 934, 941 (9th Cir. 2002); *see also Hawaiian Pineapple*

4  *Co., Ltd. v. Indus. Accident Comm'n,* 40 Cal. 2d 656. 662 (1953) ("willful misconduct involves

5  the further intent that the performance be harmful or that it be done with a positive, active and

6  absolute disregard of the consequences"); *Perez v. Southern Pacific Transp. Co.,* 218 Cal. App.

7  3d. 462, 471 (1990) (willful misconduct "involves conduct of a *quasi* criminal nature, the

8  intentional doing of something either with the knowledge that it is likely to result in serious

9  injury or with a wanton and reckless disregard of its possible consequences") (internal quotations

10 omitted); *Colich & Sons v. Pacific Bell,* 198 Cal. App. 3d 1225, 1242 (1988) (plaintiff could not

11 state a cause of action for willful misconduct where it could "[not] show an intentional,

12 conscious act of misconduct.").

13      In addition to these unambiguous pronouncements, California courts have also

14 interpreted the requirement of "willful" misconduct in the specific context of contractual

15 provisions exempting a party from liability.  The very statute that Digital Envoy cites later in its

16 brief, California Civil Code Section 1668, states that a party may not exempt itself from liability

17 for "willful" injury.  Cal. Civ. Code § 1668.  Here again, California law recognizes that a

18 "willful" act must be done with "malevolence" as distinguished from an act motivated by good

19 intentions but founded in negligence.  *Davidson v. Welch*, 270 Cal. App. 2d 220, 223 (1969)

20 (equating the standard for liability under § 1668 with Insurance Code § 533 which bars insurance

21 coverage for "willful acts" and stating:  "A 'wilful act' . . . connotes something more

22 blameworthy than the sort of misconduct involved in ordinary negligence, and something more

23 than the mere intentional doing of an act constituting such negligence. [Citations.]"); *Downey*

24 *Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 500 (1998) (equating § 1668 and § 533 and noting

25 "A 'wilful act' under section 533 will include either 'an act deliberately done for the *express*

26

27

28

2717832_4.DOC

1  *purpose* of causing damage or intentionally performed *with knowledge* that damage is highly

2  probable or *substantially certain* to result.'").[2]

3  Digital Envoy somehow ignores this controlling authority in its opposition, and instead

4  offers a definition from Black's Law Dictionary as ostensible support for its position.

5  Unfortunately for Digital Envoy, if Black's Law Dictionary were at all relevant, it supports

6  Google's position. The definition Digital Envoy cites is for the word "willful" ("voluntary and

7  intentional, but not necessarily malicious"). But if that is the definition of "willful," then "willful

8  misconduct" obviously refers to "voluntary and intentional" *misconduct*. Not surprisingly,

9  Black's Law Dictionary defines "willful misconduct" as *"[m]isconduct* committed voluntarily

10  and intentionally." BLACK'S LAW DICTIONARY 1014 (7th ed. 1999) (emphasis added). The

11  dictionary offers Digital Envoy no solace.

12  Digital Envoy separately protests that "bad faith is not an element" of a trade secret

13  claim. Opp. Brf. at 14. But even if true, that too is of no moment. Regardless of the elements of

14  its cause of action, the parties contractually agreed that neither would be liable to the other

15  absent "willful misconduct." Digital Envoy cited no statutory or common-law proscription

16  forbidding such an agreement, and offered no evidence whatsoever to show that Google acted

17  with "malevolence," that it engaged in "quasi-criminal" conduct, that it consciously chose to

18  engage in conduct it knew to be "wrongful" or that it intended to harm Digital Envoy.[3] In short,

---

[2] California courts have long equated the standards under California Insurance Code Section 533 and California Civil Code Section 1668, explaining that both are directed to "willful" torts. *See, e.g.*, *Tomerlin v. Canadian Indem. Co.*, 61 Cal. 2d 638, 648 (1964) ("Section 1668 of the Civil Code and section 533 of the Insurance Code establish a public policy to prevent insurance coverage from encouragement of willful tort."); *Evans v. Pacific Indem. Co.*, 49 Cal. App. 3d 537 (1975) ("Section 533 of the Insurance Code reflects the very sound and long standing public policy (also contained in Civ. Code § 1668) which disapproves of contracts which directly or indirectly exempt anyone from personal responsibility for his own willful injury to another."); *see also State Farm Fire & Cas. Co. v. Byrd*; 729 F. Supp. 1265, 1266 (N.D. Cal.1990) (J. Jensen); *State Farm Fire & Cas. Co. v. Huie*, 666 F. Supp. 1402, 1403-04 (N.D. Cal. 1987) (J. Legge).

[3] To survive summary judgment, Digital Envoy may not rest on either mere allegations or evidence that is "merely colorable." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citation omitted). Rather, it must produce significant probative evidence sufficient to support a reasonable jury verdict. *See also SEC v. Truong*, 98 F. Supp. 2d 1086, 1098 (N.D. Cal. 2000) ("The summary judgment tool filters out cases in which plaintiffs rely entirely upon conclusory assertions and speculative allegations to state a claim for relief. After a respectable period of

(continued...)

2717832_4.DOC

it is undisputed that Google did not engage in "willful misconduct" in using Digital Envoy's data in its AdSense program. Accordingly, Google is entitled to a partial summary judgment barring Digital Envoy from recovering damages on its claim.

### 2. The License Agreement Limits Digital Envoy's Recovery to Monies Paid to It by Google.

The second clause from Section 8 of the License Agreement that is at issue here limits one party's recovery from the other for any claim brought under the agreement to the total amount paid by Google, $308,600. *See* Kramer Decl., Ex. A at § 8 ("In no event shall either party's damages in any lawsuit or action brought under this agreement exceed the amounts paid by licensee hereunder."); Wojcicki Decl. at ¶5. Digital Envoy seeks to avoid the application of this clause as well, invoking two supposed bases for doing so. Neither has merit.

#### a. The Limitation of Liability Clause Is Not Contrary to California Public Policy

According to Digital Envoy, "any provision in the License Agreement that purports to limit liability for an intention (*sic*) tort, such as the misappropriation of trade secrets, would be invalid pursuant to California Civil Code Section 1668." Opp. Brf. at 13. Digital Envoy is wrong for two reasons.

First, as discussed above, Google's alleged misappropriation simply does not rise to the level of "willful" misconduct to which Section 1668 applies. *See supra* 2-3. As the Court of Appeals has made plain, not all claims for intentional torts fall within the ambit of Section 1668. *Farnham v. Superior Court*, 60 Cal. App. 4th 69, 76 & n.7 (1997). In *Farnham*, a case cited by Digital Envoy, the court held that Section 1668 does not impact a limitation on liability clause's effectiveness as against the intentional tort of defamation. *Id.* It then supplied a lengthy list of

---

(...continued from previous page)
time for discovery … reliance upon pure speculation is unacceptable."); *SEC v. Gonzalez de Castilla*, 184 F. Supp. 2d 365, 376 (S.D.N.Y. 2002) (granting summary judgment where plaintiff produced only circumstantial evidence: "While in a motion for summary judgment every inference based upon an established fact must be drawn against [defendant] and the other movants, as juries are regularly advised, speculation cannot substitute for proof."); *SEC v.*
(continued...)

out-of-state cases in which limitations of liability were applied to claims for intentional torts. *Id.*[4] Accordingly, while the statute bars enforcement of a limitation of liability clause in the event of "willful misconduct," there is no *per se* bar on the enforcement of a clause for claims denoted as intentional torts.

More importantly, Digital Envoy has maintained that it need not show that Google had any intent to cause harm in order to establish a claim for trade secret misappropriation. *See, e.g.,* Digital Envoy's Supp. Brf. in Opp. to Google's Mot. for Summary Judgment at 2, n.3 (filed June 6, 2005) ("[T]he intent required here is simply that Google intended that it use the Digital Envoy technology in its AdSense program . . . . it need not [have done] so with the knowledge that it is breaching its duty to maintain its secrecy or limit its use."); Digital Envoy's Opp. to Google's Mot. for Partial Summary Judgment (filed March 9, 2005) at 23 ("a tortfeasor can still be liable for misappropriation of trade secrets, even when he is acting in good faith").  In fact, it defeated Google's motion for summary judgment on this basis. Order, June 16, 2005 at 3 (Digital Envoy can establish trade secret claim by showing Google "should have known" its use of data was improper under the contract). But Digital Envoy cannot have it both ways. Having survived Google's first summary judgment motion by claiming it did not have to show intent, it cannot also survive this one by asserting that its "intentional tort" claim is within the ambit of Section 1668. Again, Digital Envoy has offered no evidence that Google caused any "willful" injury within the meaning of the statute. *See Downey,* 66 Cal. App. 4th at 500 (equating § 1668 and § 533 and noting "A 'wilful act' under section 533 will include either 'an act deliberately done for the *express purpose* of causing damage or intentionally performed *with knowledge* that damage

---

(...continued from previous page)
*Ginsburg*, 242 F. Supp. 2d 1310, 1321-22 (S.D. Fla. 2002) (overturning jury verdict where circumstantial evidence was too speculative).

[4] *See Allied Paper, Inc. v. H.M. Holdings, Inc.,* 619 N.E.2d 1121, 1127-28 (Oh. App. 1993) (notwithstanding that dispositive law prohibited contractual indemnity for fraud, the indemnity may legitimately cover liability for "bad faith acts."); *L. Luria & Son, Inc. v. Honeywell, Inc.,* 460 So.2d 521 (Fla. App. 1984) (applying alarm company's limitation of liability to certain intentional tort claims); *Ace Formal Wear v. Baker Protective Serv., Inc.*, 416 So.2d 8 (Fla. App. 1982); *Koos Van Den Akker Atelier Ltd. v. Honeywell Protection Servs.*, 148 A.D.2d 359, 539 (N.Y. App. 1989); *Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191 (2d Cir.1989).

1  is highly probable or *substantially certain* to result.'"). For this reason alone, Section 1668 has
2  no impact on the limitation of liability in the parties' contract.

3  Second, Section 1668 is inapplicable because the clause at issue is merely a limitation of
4  liability as opposed to a complete exemption from liability. Section 1668 provides that "All
5  contracts which have for their object, directly or indirectly, to *exempt* anyone from responsibility
6  for his own fraud or willful injury… are against the policy of the law." (emphasis added). Thus
7  the statute precludes parties from contractually "exempting" themselves from liability. It says
8  nothing about contracts that merely limit a party's liability, such as the clause at issue here.

9  The words "exempt" and "limit" mean different things. Black's Law Dictionary defines
10 "exempt" as: "Free or released from a duty or liability to which others are held," in contrast to
11 "limit" which is defined as "a restriction or restraint." BLACK'S LAW DICTIONARY 593 (7th ed.
12 1999). Had the legislature intended to invalidate a mere limitation – as well as an exemption –
13 on liability for misconduct, it would have simply used the word "limit" instead of the word
14 "exempt" in the statute. That word choice would have invalidated both such clauses. Instead,
15 the legislature chose only to address clauses that constitute exemptions.

16 The Court of Appeals agrees. As it explained in *Farnham*: "there is a difference between
17 clauses that *exempt* someone from liability for intentional wrongs from those that (like here)
18 merely address *limitations* on liability for intentional wrongs." *Farnham*, 60 Cal. App. 4th at 75.
19 Recognizing that mere limitations on liability for intentional wrongs did not run afoul of Section
20 1668, the court continued: "[t]he question, therefore, is whether Farnham's retention of his rights
21 against Sequoia permits us to view his waiver of his claims against Whitehurst and Brown as a
22 *limitation* on liability rather than as a complete exemption from *all* liability." *Id*. It then
23 answered its own question affirmatively and enforced the limitation of liability with respect to a
24 claim for the intentional tort of defamation. *Id.* at 77 ("it follows that a contractual *limitation* on

the liability of directors for defamation arising out of their roles as directors is equally valid where, as here, the injured party retains his right to seek redress from the corporation.").[5]

Here, the provision at issue merely *limits* Digital Envoy's potential damages; it does not *exempt* Google from *all* liability. Accordingly, for this reason as well, the clause does not run afoul of Section 1668.

### b. Digital Envoy's Claim Is Undeniably "Brought Under" the License Agreement

Digital Envoy separately claims that the limitation of liability provision only "was meant to apply to claims such as breach of contract or breach of warranty." It adds that this case "is not brought pursuant to the License Agreement." Opp. Brf. at 9, 11. It is wrong on both counts.

The provision in question is not limited to claims for "breach of contract." Digital Envoy fails to offer any explanation – let alone a single factual cite – as to why, if that had been the parties' intent, they did not simply say that liability for claims for breach of contract would be capped. Instead, the parties used considerably broader language covering "any lawsuit or other action brought under th[e] agreement."

Digital Envoy likewise has no answer for why the parties would agree to limit their liability for "breach of contract" claims, yet leave themselves exposed to the far greater potential liability of a tort claim *for precisely the same conduct*. And while it claims that the persuasive authorities Google has cited on the meaning of the language arise in a different context (as Google itself noted), Digital Envoy does not challenge their interpretation of the language or

---

[5] Digital Envoy also cites *Ting v. AT&T* in support of its misguided public policy argument. 182 F. Supp. 2d 902 (N.D. Cal. 2002), *rev'd in part on other grounds*, 319 F.3d 1126 (9th Cir. 2003). In *Ting*, AT&T residential customers brought a class action challenging a new AT&T service contract that contained, *inter alia,* a clause limiting AT&T's liability to the amount the customer paid for its services. *Id.* at 923 n.8. Without addressing the issue of whether limitations on liability should be treated as exemptions under Section 1668, the court held the provision was not enforceable. *Id.* at 926. Putting aside the lack of analysis on the specific point at issue here, *Ting* is easily distinguished since it involved a one-way clause in contract between a massive corporation and sixty million consumers, each of whom was given the contract on a "take it or leave it" basis. *Id.* at 912-13; *cf. Farnham v. Superior Court,* 60 Cal. App. 4th 69, 74 & n.4 (1997)(distinguishing prior case based in part on non-negotiable nature of clause). By contrast, the clause here appears in a contract and provision drafted by Digital Envoy and equally limits both parties' remedies.

offer a single case of its own. Indeed, Digital Envoy does not even respond to the dictionary definition of the provision. The reason that Digital Envoy has failed to address these shortcomings in its position is obvious – the protections of the limitation of liability clause are not as narrow and ineffectual as Digital Envoy, now a plaintiff in litigation, claims.

Digital Envoy next suggests that the limitation of liability clause should be construed against its drafter. Google has no objection to the application of that maxim. Digital Envoy drafted the language in question. Kramer Decl., Ex. B §8 (redline of license agreement showing Google's changes to Digital Envoy's draft). The same language appears in Digital Envoy's form contract. *See, e.g.,* Supplemental Declaration of David Kramer (filed March 16, 2005, Document No. 117-1), Exs. P, R (Digital Envoy license agreements with 24/7 Media and Advertising.com) at § 8. Google's only contribution was to make reciprocal the unilateral protection that Digital Envoy had drafted for itself. Kramer Decl., Ex. B §8; Opp. Brf. at 9, n.6. Accordingly, to the extent a construction against the drafter is appropriate, it should favor Google's position. *See* Cal. Civ. Code § 1654.[6]

As a last gasp, Digital Envoy argues that its misappropriation claim is independent of the License Agreement, and thus is not "brought under" it. According to Digital Envoy, its claim is that Google made use of the data "beyond" the scope of agreement, rather than in breach of it. Opp. Brf. at 11. This argument too is meritless.

Putting Digital Envoy's word-play aside for a moment, it cannot and does not dispute that its trade secret claim depends entirely upon the provisions of the License Agreement. *See* Am. Compl., ¶¶ 27-28, 40, 46 (theory of misappropriation is that Google misused trade secrets while *under a duty to limit their use*); *see also* Cal. Civ. Code § 3426.1(b)(2)(B)(ii). Again, those

---

[6] Digital Envoy also suggests that the limitation of liability clause should be construed narrowly. California law does not require a narrow interpretation of the clause. "[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . . [C]ommercial entities are entitled to contract to limit the liability of one to the other or otherwise to allocate the risk of doing business." *Farnham*, 60 Cal. App. 4th at 77-78; *see also Olsen v. Breeze, Inc*., 48 Cal. App. 4th 608, 619 (1996) ("[w]hen the public interest is not implicated, private parties are free among themselves to shift a risk elsewhere than where the law would otherwise place it.").

provisions supply the use-limitations upon which Digital Envoy's claim rests. Whether Digital Envoy characterizes Google's use as "beyond" the agreement or a violation thereof, it plainly would have no claim absent the License Agreement. Digital Envoy undeniably seeks to enforce rights that owe their existence to the parties' contract.[7] Its action is therefore one "brought under" the agreement and is subject to the limitation of liability clause.

In any event, Digital Envoy's characterization of its claim is not accurate. The Court has already rejected the theory that Google used Digital Envoy's data outside of its "business" and thus "beyond the scope" of the license granted to it. *See* May 20, 2005 Order at 9:18 – 10:27. All that remains of Digital Envoy's claim is the allegation that Google breached the contractual provisions prohibiting it from "distribut[ing], shar[ing] or otherwise giv[ing] (in any form) [Digital Envoy's database libraries] to any other party." *Id.; see also* Digital Envoy's Mot. for Partial Summary Judgment on Contract Issues (seeking order that Google violated the contract between the parties). Thus, Digital Envoy truly is asserting a claim for breach of contract dressed up as one for trade secret misappropriation. The parties could not possibly have intended to permit circumvention of their limitation of liability clause through such pleading ploys. *See, e.g., Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) (court should not permit a party to use "[s]trategic or artfully drawn pleadings . . . to circumvent an otherwise applicable" contractual provision); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (interpretation of clause depends not on a party's artful pleading but on whether "resolution of the claims relates to interpretation of the contract").

In sum, there is no justification for allowing Digital Envoy to escape an enforceable limitation of liability clause that it itself inserted into the parties' private, commercial contract. Digital Envoy's claim is one "brought under" the contract. It is therefore subject to the clause that caps Digital Envoy's recovery at $308,600.

---

[7] Tellingly, Digital Envoy acknowledges as much, framing the issue as "whether Google's use was '*unauthorized*' *under the License Agreement.*" Opp. Brf. at 14 (emphasis added).

**B.    Digital Envoy Cannot Establish that It Suffered Actual Loss or that Google Was Unjustly Enriched Because of the Alleged Misappropriation**

**1.    Digital Envoy Has Abandoned Any Claims of Actual Loss Caused by Google's Supposed Misappropriation**

Digital Envoy chastises Google for "continu[ing] to devote its critique of Digital Envoy's damage theories to the actual loss prong of recovery" and "ignoring" its unjust enrichment theory.  Opp. Brf. at 17.  Google did no such thing.  *See* Mot. at 18-20 (discussing Digital Envoy's failure of proof on its unjust enrichment theory).  Ironically, however, Digital Envoy *flatly ignored Google's argument* that the actual damages claim fails as a matter of law.  Opp. Brf. at 16-23.  Digital Envoy's failure to respond to this dispositive argument is a concession warranting partial summary judgment in Google's favor with respect to the actual damages claim.  *Scognamillo v. Credit Suisse First Boston LLC*, No. C03-2061 TEH, 2005 WL 2045807, at *7 (N.D. Cal. Aug. 25, 2005) (granting motion to dismiss with prejudice where "Plaintiffs' utter failure to respond to these arguments essentially concedes them"); *I-Enterprises Co., LLC v. Draper Fisher Jurvetson Mgmt. Co. V, LLC*, No. C-03-1561MMC, 2005 WL 1661959, at *14 (N.D. Cal. July 15, 2005) (granting motion to dismiss where "I-Enterprise fails to address this portion of defendants' motion in its opposition and, thus, effectively concedes that it is not pursuing a negligent misrepresentation claim ..."); s*ee also Crowe v. County of San Diego,* 303 F. Supp. 2d 1050, 1115 (S.D. Cal. 2004) ("[T]he court deems plaintiff['s] failure to address this argument as a concession that he is unable to make this showing.").

**2.    Digital Envoy Cannot Establish Any Unjust Enrichment Caused by Google's Supposed Misappropriation**

Having failed to support its claim that Google's alleged misappropriation caused it any actual loss, Digital Envoy now rests its damages case entirely on the theory that Google was unjustly enriched because of its use of Digital Envoy's data.  However, Digital Envoy's inability to articulate *any* causal connection between Google's use of Digital Envoy's data and any profits earned from the AdSense program bars it from seeking a recovery on this ground as well.

In its opposition brief, Digital Envoy does not dispute that its recovery is limited to the amount that it can prove was *caused* by Google's alleged misappropriation.  But Digital Envoy

seeks to discharge its burden by merely asserting that "Google achieved revenue through its sale of a product that incorporated Digital Envoy's trade secret." Opp. Brf. at 18. In addition to being factually incorrect and unsupported, Digital Envoy's blanket statement does nothing to meet its burden of establishing causation.

To satisfy that burden, Digital Envoy must show that *but for* Google's allegedly unlicensed use of Digital Envoy's data, Google would *not* have earned the profits it did from the AdSense program. But all that Digital Envoy puts forth is the argument that its data was "necessarily a factor" in the display of any advertisement for which the advertiser requested geotargeting. From there, it concludes that "but for" use of the data, Google would not have earned the profit it did from these advertisers. But Digital Envoy's conclusion does not follow from its premise.

An analogy illustrates the problem. Assume that plaintiff possesses a proprietary formula used to darken the shade of red paint used by defendant on cars it manufactures and sells. Plaintiff contends that defendant improperly used the formula, and demands all of the defendant's profits from the sale of the cars, claiming the formula was "necessarily a factor" in each sale. To be sure, the formula was used for each red car sold, yet to recover the defendant's profits, the plaintiff must show that its formula actually caused the sale of a car; that is, but for the use of the formula, the defendant would have sold fewer red cars or earned less profit from those it sold. Absent use of the formula, the defendant obviously could not have sold cars of the same shade of red. But it is quite possible that the defendant would have sold at least as many lighter red cars and earned at least the same profit had it not used the formula. A claim that the defendant would have earned less without use of the formula is nothing but speculation.

So too here. The fact that Digital Envoy's data was used (or may have been a "factor") in the AdSense program, by itself, does not meet Digital Envoy's burden.[8] The question that

---

[8] Likewise, Digital Envoy obtains no benefit from its citation to hearsay statements supposedly recounting advertisers' fondness of Google's ability to locally target advertisements. *See* Opp. Brf. at 21. While a customer may proclaim that it likes a particular shade of red car, such an assertion is not evidence that the customer would not have purchased the car if it were not available in that shade. That advertisers liked the ability to locally target advertisements simply
(continued...)

2717832_4.DOC

Digital Envoy must answer is whether that made any difference to advertisers or to Google's profits from its AdSense program. *See Schiller & Schmidt, Inc. v. Nordisco Corp.*, 969 F.2d 410, 415 (7th Cir. 1992) (Judge Posner on trade secret damages claim: "For years we have been saying, without much visible effect, that people who want damages have to prove them, using methodologies that need not be intellectually sophisticated but must not insult the intelligence. *Post hoc ergo propter hoc* will not do."). Digital Envoy has already conceded that it has no evidence that any advertiser would have acted any differently if Google could not have offered them geotargeting capabilities in AdSense.[9] *See* Kramer Decl., Ex. I (Response to Interrogatory Nos. 11-14). Accordingly, it cannot show the connection between the use of its data and any profits earned by Google. Without evidence of such a connection, its unjust enrichment claim cannot stand.

---

(...continued from previous page)
does not show that these customers would not have signed up for AdSense (or that they would have paid less to Google) *but for* Google's use of Digital Envoy's data. *See also* Google's Objections to Evidence submitted herewith.

[9] Digital Envoy blithely dismisses Google's discussion of alternative universes in which Google did not have use of Digital Envoy's data. Yet that is precisely what a causation analysis involves. By examining what would have happened in the absence of some element, one can determine whether that element is causally connected to the outcome that actually did result. *See Saelzler v. Advanced Group 400,* 5 Cal. 4th 763, 776, 781 (2001) (affirming grant of summary judgment in favor of defendants because plaintiff failed to demonstrate beyond "speculative possibility" that in alternative universe where defendants had employed additional security precautions, plaintiff's injury might have been avoided). In *Saelzer*, the court explained that "proof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence." *See id*. at 775, 780, 781 (no matter how inexcusable a defendant's act might appear, the plaintiff must nonetheless prove and the court must consider whether injury would have been avoided but for defendant's misconduct). Accordingly, it is perfectly appropriate, indeed essential, to consider "what ifs" in assessing causation. In this regard, it is worth noting that without Digital Envoy's data, an advertiser that asked to have its messages geotargeted would never have had its messages shown, because without the data, Google could not determine whether a user was actually in the targeted location. Instead of showing the geotargeted ad, Google would have selected a different, non-geotargeted ad for display. Again, Digital Envoy cannot possibly know or prove that Google would have earned less from the display of this alternative message. In fact, it is entirely possible that Google would have earned more from another ad, as it might have yielded a higher price-per-click or a higher clickthrough rate.

### 3. Digital Envoy's Discussion about the Calculation of Damages Is Inapposite

Instead of attempting to resolve the causation problems in its unjust enrichment claim, Digital Envoy takes the Court on an extended tangent, discussing case law relating to the calculation of damages. In doing so, Digital Envoy places the damages cart before the causation horse. Without a showing of causation, Digital Envoy is not entitled to damages, however calculated. *See* Cal. Civ. Code § 3426.3(a) (plaintiff may recover for "unjust enrichment *caused* by misappropriation") (emphasis added); *see also Sargent Fletcher, Inc. v. Able Corp.*, 110 Cal. App. 4th 1658, 1665-66 (2003) (stating that plaintiff bears burden on each element of claim under California's enactment of Uniform Trade Secrets Act).

There is little point in correcting the errors in Digital Envoy's discussion of these damages cases, because not one of them suggests that a damages analysis is appropriate without regard for whether the plaintiff establishes causation.[10] There is, however, one case cited by Digital Envoy worth noting. In *USM Corp. v. Marson Fastener Corp.,* the Massachusetts Supreme Court explicitly discussed the situation that would obtain here if Digital Envoy had shown causation. 467 N.E.2d 1271, 1276-77 (Mass. 1984). It explained that even where a plaintiff had shown some causal nexus:

> the use of a trade secret might well not be the sole source of a defendant's profits and thus the defendant's entire profits from the sale of a product manufactured by use of the trade secret would *not* be a just measure of the restitution owed. In such a case, . . . fairness might indicate that the plaintiff's recovery should not be measured in any respect by the defendant's profits but instead by the value, or cost saving, to the defendant of the use of the trade secret.

---

[10] *See, e.g., Telex Corp. v. Int'l Bus. Mach. Corp.*, 510 F.2d 894, 932-33 (10th Cir. 1975) (affirming award for "monthly rentals lost by IBM *as a result of* Telex's misappropriation of trade secrets," but reversing award for security and manufacturing costs because they cannot be attributed to Telex's stealing IBM employees and are "far too speculative to be permitted to stand"); *Stott v. Johnson*, 36 Cal. 2d 864, 875 (1951) ("plaintiff must show with reasonable certainty that he has suffered damages *by reason of* the wrongful act of defendant") (emphasis added); *Brawthen v. H & R Block, Inc.*, 52 Cal. App. 3d 139, 147 (1975) (stating that if shown with reasonable certainty, anticipated profits can be recovered "*if* their loss is a direct and natural consequence of the breach") (emphasis added); *Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985) (granting damages after determining that defendant's misappropriation of plaintiff's secret assembly drawings *resulted* in lost sales to plaintiff, the only company who also manufactured printed circuit slip ring assemblies).

1  *Id.* at 1277 & n.3.  Again, however, this would be a question for another day only if
2  Digital Envoy could meet its causation burden, which it has not done.

3  **III.   CONCLUSION**

4        For the foregoing reasons, Google respectfully requests that the Court grant it partial
5  summary judgment barring Digital Envoy from recovering damages from Google in this action, or
6  in the alternative, limiting any such recovery to $308,600, the amount paid by Google to Digital
7  Envoy under the License Agreement.  Google further requests that the Court grant partial
8  summary judgment barring Digital Envoy from seeking damages for Google's alleged trade secret
9  misappropriation under California Civil Code Section 3426.3(a).

|    |    |
|----|----|
|    | Respectfully submitted, |
| Dated:  September 8, 2005 | WILSON SONSINI GOODRICH & ROSATI<br>Professional Corporation |
|    | By:  /s/ David H. Kramer<br>      David H. Kramer |
|    | Attorneys for Defendant/Counterclaimant<br>Google Inc. |

2717832_4.DOC