# EXHIBIT B

1  P. CRAIG CARDON, Cal. Bar No. 168646
   BRIAN R. BLACKMAN, Cal. Bar No. 196996
2  KENDALL M. BURTON, Cal. Bar No. 228720
   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
3  Four Embarcadero Center, 17th Floor
   San Francisco, California 94111-4106
4  Telephone:   415-434-9100
   Facsimile:   415-434-3947
5
6  TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
   LUKE ANDERSON (Admitted *Pro Hac Vice*)
7  McGUIRE WOODS, L.L.P.
   1170 Peachtree Street, N.E., Suite 2100
8  Atlanta, Georgia 30309
   Telephone: 404.443.5500
9  Facsimile: 404.443.5751

10 Attorneys for DIGITAL ENVOY, INC.

Document No. 109
Electronically Filed on 3/9/05

11                     UNITED STATES DISTRICT COURT
12                    NORTHERN DISTRICT OF CALIFORNIA
13                            SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC.,<br><br>            Plaintiff/Counterdefendant,<br><br>     v.<br><br>GOOGLE, INC.,<br><br>            Defendant/Counterclaimant. | Case No. C 04 01497 RS<br><br>**DECLARATION OF ROBERT FRIEDMAN IN SUPPORT OF DIGITAL ENVOY, INC.'S OPPOSITION TO GOOGLE, INC.'S SECOND MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        March 30, 2005<br>Time:        9:30 a.m.<br>Courtroom:   4, 5th Floor<br><br>**The Honorable Richard Seeborg** |

W02-SF:5BK\61446864.1                              DECLARATION OF ROBERT FRIEDMAN

1  I, Robert Friedman, hereby declare:

2  1.  I am an officer of Digital Envoy, Inc. I have personal knowledge of the facts
3  attested to in this declaration and if called to testify at trial I would do so competently.

4  2.  Digital Envoy's licensing program allows is to be compensated in exchange for the
5  portion of the market it give up, and each licensing agreement it enters into reflects this concept.
6  If a licensee of Digital Envoy distributes Digital Envoy's licensed information to a third party, this
7  takes away a business opportunity from Digital Envoy. Digital Envoy generates revenue
8  exclusively through licensing its technology.

9  3.  Digital Envoy limits and controls access to its information through the use of
10  standardized licensing agreements. Particularly, sections 3.1 and 7.2 of the agreement. This
11  standard agreement was used in the drafting of the Google license agreement. What changes were
12  made to that licensing agreement did not allow Google to geo-locate users on third party sites.

13  4.  The interpretation of the licensing agreement advanced by Google would
14  essentially mean that Digital Envoy gave away all of the rights to its information for $3,000 per
15  month.

16  5.  Google's Adwords program does not share Digital Envoy's information with third
17  party sites. Only Google receives revenue from the Adwords program. The Adwords program
18  does not violate the licensing agreement. The Adwords program does not take away a potential
19  customer from Digital Envoy.

20  6.  Adsense is different from Adwords in that in Adsense, a user is not "searching", but
21  is browsing a third party site.

22  7.  The protections found in Digital Envoy's licensing agreements prevent the licensee
23  from acquiring a new and distinct line of business and use and using the technology in that
24  business without an expansion of the license.

25  8.  Digital Envoy had no knowledge Google was misusing its data until Google
26  confirmed as much on February 6, 2004.

27  9.  Digital Envoy's database coverage of internet IP addresses is 99.99% complete.
28

-1-

W02-SF:5BK\61446864.1   DECLARATION OF ROBERT FRIEDMAN

1     I declare that the above stated facts are true under penalty of perjury under the laws of the
2 United States of America.

4 Executed this 9th day of March at Norcross, Georgia.

/s/ Robert Friedman
Robert Friedman