Dockets.Justia.com

**LANSKY DECLARATION EXHIBIT B**

Timothy H. Kratz
McGuireWoods LLP
1170 Peachtree Street, NE
Suite 2100
Atlanta, GA 30309
Telephone: (404) 443-5730
Facsimile: (404) 443-5784

Attorney for Plaintiff/Counterdefendant
Digital Envoy, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC., | CASE NO.: C 0401497 RS |
| Plaintiff/Counterdefendant, | **DIGITAL ENVOY'S SUPPLEMENTAL AND AMENDED RESPONSES TO GOOLE'S THIRD SET OF INTERROGATORIES (NOS. 8-10 AND 19)** |
| v. | |
| GOOGLE INC., | |
| Defendant/Counterclaimant. | |

Pursuant to Rule 33 of the Federal Rules, and in response to the Court's June 23, 2005 Order, Plaintiff/Counterdefendant Digital Envoy, Inc. ("Digital Envoy") further responds to Interrogatories 8 - 10 and 19 of Google's Third Set of Interrogatories as follows:

**INTERROGATORY NO. 8:**

If YOU contend that GOOGLE improperly disclosed DIGITAL ENVOY'S data to third parties in violation of the Agreement, state all facts and IDENTIFY all evidence that supports your contention.

## SUPPLEMENTAL RESPONSE:

DIGITAL ENVOY incorporates by reference its previous objections and responses to this Interrogatory. Pursuant to the Court's June 23, 2005 Order, Digital Envoy supplements its responses as follows:

Prior to November 30, 2000, Digital Envoy and Google entered into negotiations for Google to license Digital Envoy's geo-targeting technology. During the negotiations, Digital Envoy explicitly clarified that Google would <u>not</u> be permitted to provide third-parties direct or indirect access to Digital Envoy's database or allow third parties to use it directly or indirectly, and that Google could only apply the database against its own information (and not information of third parties), and that any use of the databases in applications, products or services that were provided or made available to third parties would require a new license agreement between Digital Envoy and Google, or in lieu of a new license agreement, Google would refer the third-party directly to Digital Envoy. GOOG 009358-009359.

Upon being assured that Digital Envoy was "fully legally covered," on November 30, 2000, Digital Envoy and Google entered into the Product and Electronic Database Evaluation and License Agreement (the "Agreement"). *See* Deposition of Steve Schimmel (hereafter "Schimmel Deposition"), 122-25; Deposition of Robert B. Friedman (hereafter "Friedman Deposition") at 204-209; 233-34; Google's Answer to Amended Complaint of Digital Envoy and Counterclaims for Breach of Contract and Declaratory Judgment ("Answer to Amended Complaint"), ¶¶ 26 and 72.

The subject matter of the Agreement included Digital Envoy's proprietary and confidential geographic/IP address database (the "Database Libraries"), which was the very subject-matter that was discussed during the negotiations. *See* GOOG 000458-000466; GOOG 000595-000603; GOOG 005046-005047; GOOG 009318-009332; GOOG 009201-009206; GOOG 009265; GOOG 009217-009225; GOOG 009188-009190; GOOG 007350-007368; GOOG 009213-009214; GOOG 009358-

009360. The Database Libraries included information that permits IP-based geo-targeting. *See* Agreement at 1.

The Agreement expressly provided that Digital Envoy is the sole owner of the Database Libraries. *See* Agreement, § 7.1. Section 3.1 of the Agreement allowed Google to "use in its Business (and not distribute to any third party in whole or in part)" Digital Envoy's Database Libraries. *See* Agreement, § 3.1.

Reflecting the negotiations, section 3.1 of the Agreement also specifically recited:

> Such rights shall be <u>strictly limited</u> to the right to . . . input, download, and store some or all of the Database Libraries in file and memory; and compile some or all of the Database Libraries at the Site. . . . In no event, however, are the Database Libraries to be sold, licensed, distributed, shared, or otherwise given (in any form) to any other party or used outside of the site set forth herein.

*See* Agreement, § 3.1. In addition to the limitations in section 3, section 7.2 of the Agreement provided that "in no event shall Licensee [Google] distribute, disclose, or otherwise make available the Database Libraries, or any information contained therein . . . ." *See* Agreement, § 7.2; Schimmel Deposition at 122-25.

Even after the Agreement was executed, Google confirmed its understanding that Google was not permitted to resell products and services based on Digital Envoy's Database Libraries. GOOG 00062; GOOG 009358-009360; Deposition of Kulpreet Rana ("Rana Deposition") at 24-26; 43-44; Declaration of Andrew Linder.

Between November 30, 2000, and January of 2005, Google implemented AdSense, a program that was licensed to third parties. *See* Declaration of Susan Wojcicki in Support of Google Inc.'s Motion for Summary Judgment ("Wojcicki Declaration"), ¶¶ 6, 7, and 8; *Google Licenses Web Search and Sponsored Links to Amazon.com*, April 3, 2003 <http://www.google.com/press/pressrel/amazon.html>; *Google AdSense Program Policies* <http://www.google.com/adsense/policies>; *Google Press Centre: Product Descriptions* (hereafter

3

"Google Press Centre") (visited Jun. 16, 2005) <http://www.google.co.uk/press/descriptions.html>; *Sample Contracts and Business Forms - Advertising Services Agreement*, ¶¶ 2.4, 9.3, 9.5 <http://contracts.onecle.com/shopping/google.sales.2003.04.14.shtml>; *Securities and Exchange Commission, Form 10-Q, Ask Jeeves, Inc., For the Quarterly Period Ended June 30, 2002*, Attachment 10.52 <http://yahoo.brand.edgar-online.com/EFX_dll/EDGARpro.dll?FetchFilingHTML0?SessionID=jK3vBIuNeO_1VRQM2&ID=3121>; Wojcicki Deposition, Ex. 61; Final Prospectus, filed by Google Inc. with the SEC, August 18, 2004 ("Final Prospectus"); Plaintiff's Ex. 48; Google web site at https://www.google.com/adsense/afc-online-overview, http://www.google.com/intl/en/press/pressrel/applied.html, and http://www.google.com/intl/en/press/pressrel/yahoo_ip_2002.html.

AdSense included geo-targeting features. Declaration of Mark Rose in Support of Google Inc.'s Motion for Summary Judgment ("Rose Declaration"), ¶ 8; Deposition of Susan Wojcicki ("Wojcicki Deposition") at 117, 148, and 169-70; Deposition of Mark Rose ("Rose Deposition"), *passim* (describing Google's use of Digital Envoy's data in its advertisement targeting process). Google used Digital Envoy's Database Libraries to implement the geo-targeting capabilities for third parties who licensed AdSense with geo-targeting capabilities. Rose Declaration, ¶ 8. In fact, "Google often used Digital Envoy's IP Address/Location data as one of several factors in making its determination about a user's geographic location in AdSense." Rose Declaration, ¶ 4 (emphasis added); *see also* Rose Deposition, *passim*. Those geo-targeting capabilities were mechanized (*i.e.*, automated), thereby requiring no intervention from Google once AdSense with geo-targeting was licensed to third parties. Rose Declaration, ¶ 8; *see also*, Rose Deposition, *passim*. In fact, "[t]he mechanical process by which Google selects the advertising messages to display to users visiting third party sites is identical, in all relevant respects, to the process used to locate advertising messages to display to users visiting Google's own site." Rose Declaration, ¶ 8. As such, those third-party sites

necessarily had identical access to Digital Envoy's Database Libraries as Google. Rose Declaration, ¶ 8; *see, also*, Rose Deposition, *passim*; GOOG 007158-007161; GOOG 007124-007135. (Google's counsel has admitted that Digital Envoy's technology "is used in everything." *See* Transcript of June 22, 2005 Motions Hearing at 46.)

Insofar as Google used or deployed Digital Envoy's Database Libraries in products or services used by, deployed by, made available to, or licensed to third party web sites, Google distributed, disclosed, or otherwise made available the Database Libraries, or any information contained therein, to third parties, it violated the Agreement. Agreement, § 7.2. Insofar as Google used or deployed Digital Envoy's Database Libraries in products or services used by, deployed by, made available to, or licensed to, third party web sites, Google sold, licensed, distributed, shared, or otherwise gave the Database Libraries to third parties, it violated the Agreement. Agreement, § 3.1. Insofar as Google permitted third parties access to Digital Envoy's Database Libraries, Google used the Database Libraries outside of Google's offices and data centers, it violated the Agreement. Agreement, §§ 3.1 and 3.2.

In other words, in every instance in which Google licensed, deployed, made available or permitted third parties to use AdSense (for Content or for Search) containing geo-targeting capabilities to third parties and those capabilities were accessed or utilized (directly or indirectly) by those third parties or made available to them, Google "disclosed" Digital Envoy's data. The specific instances of Google's disclosures are contained in Google's AdSense agreements and any related records of use, which are in the sole custody of Google.

**INTERROGATORY NO. 9:**

State all facts and IDENTIFY all evidence that supports YOUR contention in paragraph 8 of the Amended Complaint that "Google's misappropriation of Digital Envoy's trade secrets have [sic] also unjustly enriched Google."

5

## SUPPLEMENTAL RESPONSE:

DIGITAL ENVOY incorporates by reference its previous objections and responses to this Interrogatory. Pursuant to the Court's June 23, 2005 Order, Digital Envoy supplements its responses as follows:

As specifically described and detailed in Digital Envoy's supplemental responses to Interrogatories 8 and 19, Google violated the Agreement by utilizing and licensing Digital Envoy's technology in Google's AdSense programs to enable geo-targeting of advertisements.

Google's AdSense programs were enhanced by the geo-targeting capabilities made possible by Digital Envoy's technology. In its own statements and on its own web site, Google has admitted the importance of geo-targeting. *See, e.g.*, http://www.google.com/adsense/greenwich2000?hl=en_GB (quoting customer "We were attracted to Google for several reasons, the main one being that Google is the only company which has the ability to link content to local audience advertising"); http://www.google.co.uk/services/adsense_tour/page4.html, (noting that ads are targeted by geography, so global businesses can display local advertising with no additional effort and use AdSense in multiple languages); http://www.google.com/adsense/ourhometown, (quoting customer "'Relevant ads appear on relevant pages.' And, he adds, 'The advertising information is so unique. *We're seeing ads that are geographically appropriate . . . .*'"); http://www.google.com/adsense/wifinder (quoting customer " Google's AdSense lets us show geographically targeted ads" and that "AdSense advertising revenue is consistent enough to hire an employee dedicated to improving geographical listings, increasing the effectiveness of WiFinder.com searches"); https://www.google.com/adsense/afc-online-overview; http://www.google.com/intl/en/press/pressrel/applied.html; http://www.google.com/intl/en/press/pressrel/yahoo_ip_2002.html; http://www.google.com/intl/en/corporate/history.html; Final Prospectus.

6

Internet advertisers and publishers also have stated the importance of geo-targeting. *See, e.g.*, http://searchenginewtach.com/searchday/article/php/3099591 (quoting Google "We want all the syndication partners to work with [regional targeting], and generally they are very excited to do it"); http://siliconvalley.internet.com/news/article.php/3098431 ("[Geo-targeting is] an incredibly powerful tool for local and regional advertisers . . . "[i]t could be used by national advertisers looking to message locally, speaking differently to different audiences"); http://volokh.blogspot.com/2004/10/bellsouths-alliance-with-google.html ("Google is excited to add a new way to reach prospective advertisers, while continuing to provide users with relevant local information and advertisements"); Wojcicki Deposition, Ex. 61.

Google has earned significant revenues from its AdSense programs, which incorporated Digital Envoy's proprietary technology. *See* Final Prospectus; GOOG 012157 – GOOG 012159; GOOG 012756 – GOOG 012784; GOOG 013506-013563; Google Inc.'s Form S-1 Registration Statement filed April 29, 2004. Digital Envoy has requested, but Google has so far not provided, additional information related to the amount and nature of Google's revenue.

Because Google achieved these revenues due to its use of Digital Envoy's technology in ways not permitted by the Agreement, these revenues unjust enriched Google.

### INTERROGATORY NO. 10:

State all facts and IDENTIFY all evidence in support of YOUR contention in paragraph 50 of the Amended Complaint that "Google's actions have been willful and malicious."

### SUPPLEMENTAL RESPONSE:

DIGITAL ENVOY incorporates by reference its previous objections and responses to this Interrogatory. Pursuant to the Court's June 23, 2005 Order, Digital Envoy supplements its responses as follows:

Prior to execution of the Agreement, Google was aware of Digital Envoy's contention that under the Agreement Google was not permitted to among other things disclose, license, make available, distribute Digital Envoy's technology to third parties or share it with them. GOOG 009358-009360; DE - 59165. Google's internal communications demonstrate that this was also Google's understanding of the Agreement. GOOG 000501-000504. Google confirmed this understanding to Digital Envoy. Schimmel Deposition at 122-25. During the course of the Agreement, Google represented to Digital Envoy that Google was not using Digital Envoy's technology in Google's AdSense programs. GOOG 005154. Also during the course of the Agreement, Google represented to third parties that it was not using Digital Envoy's technology in its AdSense programs. Linder Declaration; GOOG 000062.

However, in spite of these representations (or misrepresentations), Google had been using Digital Envoy's technology in its AdSense programs. GOOG 007468-007470. In fact, Google had never intended to limit its use of Digital Envoy's technology and had always intended to offer geo-targeting services to third party sites on which it provided search and advertising services. GOOG 009876-009877; GOOG 009696-009698; Rana Deposition at 80-83. Even after Digital Envoy confronted Google regarding its unauthorized use of Digital Envoy's Technology, Google continued to use Digital Envoy's technology in its AdSense programs.

**INTERROGATORY NO. 19:**

State the legal and factual bases for YOUR contention that GOOGLE was under an obligation to limit its use of DIGITAL ENVOY'S data and IDENTIFY all evidence supporting that contention.

**SUPPLEMENTAL RESPONSE:**

DIGITAL ENVOY incorporates by reference its previous objections and responses to this Interrogatory. Pursuant to the Court's June 23, 2005 Order, Digital Envoy supplements its responses as follows:

Prior to November 30, 2000, Digital Envoy and Google entered into negotiations for Google to license Digital Envoy's geo-targeting technology. During the negotiations, Digital Envoy explicitly clarified that Google would not be permitted to provide third-parties access to Digital Envoy's database, or allow third-parties to use it directly or indirectly, and that Google could only apply the database against its own information (and not information of third parties), and that any use of the databases in applications, products or services that were provided or made available to third parties would require a new license agreement between Digital Envoy and Google, or in lieu of a new license agreement, Google would refer the third-party directly to Digital Envoy. GOOG 009358-009359.

Upon being assured that Digital Envoy was "fully legally covered," on November 30, 2000, Digital Envoy and Google entered into the Product and Electronic Database Evaluation and License Agreement (the "Agreement"). *See* Deposition of Steve Schimmel ("Schimmel Deposition"), 122-25; Deposition of Robert B. Friedman (hereafter "Friedman Deposition") at 204-209; 233-34; Google's Answer to Amended Complaint of Digital Envoy and Counterclaims for Breach of Contract and Declaratory Judgment ("Answer to Amended Complaint"), ¶¶ 26 and 72.

The subject matter of the Agreement included Digital Envoy's proprietary and confidential geographic/IP address database (the "Database Libraries"), which was the very subject-matter that was discussed during the negotiations. *See* GOOG 000458-000466; GOOG 000595-000603; GOOG 005046-005047; GOOG 009318-009332; GOOG 009201-009206; GOOG 009265; GOOG 009217-009225; GOOG 009188-009190; GOOG 007350-007368; GOOG 009213-009214; GOOG 009358-009360. The Database Libraries included information that permits IP-based geo-targeting. *See* Agreement at 1.

The Agreement expressly provided that Digital Envoy is the sole owner of the Database Libraries. *See* Agreement, § 7.1. Section 3.1 of the Agreement allowed Google to "use in its Business

9

(and not distribute to any third party in whole or in part)" Digital Envoy's Database Libraries. *See* Agreement, § 3.1.

> Reflecting the negotiations, section 3.1 of the Agreement also specifically recited:
>
>> Such rights shall be <u>strictly limited</u> to the right to . . . input, download, and store some or all of the Database Libraries in file and memory; and compile some or all of the Database Libraries at the Site. . . . In no event, however, are the Database Libraries to be sold, licensed, distributed, shared, or otherwise given (in any form) to any other party or used outside of the site set forth herein.

*See* Agreement, § 3.1. In addition to the limitations in section 3, section 7.2 of the Agreement provided that "in no event shall Licensee [Google] distribute, disclose, or otherwise make available the Database Libraries, or any information contained therein . . . ." *See* Agreement, § 7.2; Schimmel Deposition at 122-25.

Even after the Agreement was executed, Google confirmed its understanding that Google was not permitted to resell products and services based on Digital Envoy's Database Libraries. GOOG 00062; GOOG 009358-009360; Deposition of Kulpreet Rana ("Rana Deposition") at 24-26; 43-44; Declaration of Andrew Linder.

Between November 30, 2000, and January of 2005, Google implemented AdSense, a program that was licensed to third parties. *See* Declaration of Susan Wojcicki in Support of Google Inc.'s Motion for Summary Judgment ("Wojcicki Declaration"), ¶¶ 6, 7, and 8; *Google Licenses Web Search and Sponsored Links to Amazon.com*, April 3, 2003 <http://www.google.com/press/pressrel/amazon.html>; *Google AdSense Program Policies* <http://www.google.com/adsense/policies>; *Google Press Centre: Product Descriptions* (hereafter "Google Press Centre") (visited Jun. 16, 2005) <http://www.google.co.uk/press/descriptions.html>; *Sample Contracts and Business Forms - Advertising Services Agreement*, ¶¶ 2.4, 9.3, 9.5 <http://contracts.onecle.com/shopping/google.sales.2003.04.14.shtml>; *Securities and Exchange Commission, Form 10-Q, Ask Jeeves, Inc., For the Quarterly Period Ended June 30, 2002,*

10

Attachment 10.52 <http://www. yahoo.brand.edgar-online.com/EFX_dll/EDGARpro.dll?FetchFilingHTML1?SessionID=jKwBIuNdQ_VRQM2&ID=1963121>; Wojcicki Deposition, Ex. 61; Final Prospectus, filed by Google Inc. with the SEC, August 18, 2004 ("Final Prospectus"); Plaintiff's Ex. 48; Google web site at https://www.google.com/adsense/afc-online-overview, http://www.google.com/intl/en/press/pressrel/applied.html, and http://www.google.com/intl/en/press/pressrel/yahoo_ip_2002.html.

AdSense included geo-targeting features. Declaration of Mark Rose in Support of Google Inc.'s Motion for Summary Judgment ("Rose Declaration"), ¶ 8; Deposition of Susan Wojcicki ("Wojcicki Deposition") at 117, 148, and 169-70; Deposition of Mark Rose ("Rose Deposition"), *passim* (describing Google's use of Digital Envoy's data in its advertisement targeting process). Google used Digital Envoy's Database Libraries to implement the geo-targeting capabilities for third parties who licensed AdSense with geo-targeting capabilities. Rose Declaration, ¶ 8. In fact, "Google often used Digital Envoy's IP Address/Location data as one of several factors in making its determination about a user's geographic location in AdSense." Rose Declaration, ¶ 4 (emphasis added); *see also* Rose Deposition, *passim*. Those geo-targeting capabilities were mechanized (*i.e.*, automated), thereby requiring no intervention from Google once AdSense with geo-targeting was licensed to third parties. Rose Declaration, ¶ 8; *see also*, Rose Deposition, *passim*. In fact, "[t]he mechanical process by which Google selects the advertising messages to display to users visiting third party sites is identical, in all relevant respects, to the process used to locate advertising messages to display to users visiting Google's own site." Rose Declaration, ¶ 8. As such, those third-party sites necessarily had identical access to Digital Envoy's Database Libraries as Google. Rose Declaration, ¶ 8; *see, also*, Rose Deposition, *passim*; GOOG 007158-007161; GOOG 007124-007135. (Google's counsel has admitted that Digital Envoy's technology "is used in everything." *See* Transcript of June 22, 2005 Motions Hearing at 46.)

11

Insofar as Google used or deployed Digital Envoy's Database Libraries in products or services used by, deployed by, made available to or licensed to third party web sites, Google distributed, disclosed, or otherwise made available the Database Libraries, or any information contained therein, to third parties, it violated the Agreement. Agreement, § 7.2. Insofar as Google used or deployed Digital Envoy's Database Libraries in products or services used by, deployed by, made available to, or licensed to, third party web sites, Google sold, licensed, distributed, shared, or otherwise gave the Database Libraries to third parties, it violated the Agreement. Agreement, § 3.1. Insofar as Google permitted third parties access to Digital Envoy's Database Libraries, Google used the Database Libraries outside of Google's offices and data centers, it violated the Agreement. Agreement, §§ 3.1 and 3.2.

Dated this 8th day of July, 2005.

_____
Timothy H. Kratz
Georgia Bar No. 429297
Luke Anderson
Georgia Bar No. 018330
John A. Lockett III
Georgia Bar No. 455549

**McGuireWoods LLP**
1170 Peachtree Street, NE
Suite 2100, The Proscenium
Atlanta, Georgia 30309-1234
Telephone:   (404) 443-5730
Facsimile:   (404) 443-5784

Attorneys for Plaintiff/Counterdefendant
Digital Envoy, Inc.

12

## CERTIFICATE OF SERVICE BY FACSIMILE AND MAIL

I, John A. Lockett III, declare:

I am employed in Fulton County, Georgia. I am over the age of 18 years and not a party to the within action. My business address is McGuireWoods LLP, 1170 Peachtree Street, NE, Suite 2100, Atlanta, GA 30309.

I am readily familiar with McGuireWoods LLP's practice for collection and processing of documents for facsimile transmittal and correspondence for mailing with the United States Postal Service. In the ordinary course of business, documents would be transmitted via facsimile, and correspondence would be deposited with the United States Postal Service on this date.

On this date, I served

1) **DIGITAL ENVOY'S SUPPLEMENTAL AND AMENDED RESPONSES TO GOOLE'S THIRD SET OF INTERROGATORIES (NOS. 8-10 AND 19)**

on each person listed below, by consigning the document(s) to a facsimile operator for transmittal and by placing the document(s) described above in an envelope addressed as indicated below, which I sealed. I placed the envelope(s) for collection and mailing with the United States Postal Service on this day, following ordinary business practices at McGuireWoods LLP.

> David H. Kramer
> Wilson Sonsini Goodrich & Rosati
> 650 Page Mill Road
> Palo Alto, CA 94304-1050
> Fax No.: (650) 565-5100

I declare under penalty of perjury under the laws of the State of Georgia that the foregoing is true and correct. Executed at Atlanta, Georgia on July 8, 2005.

_____
John A. Lockett III

\\COM\523266.1