1  P. CRAIG CARDON, Cal. Bar No. 168646
   BRIAN R. BLACKMAN, Cal. Bar No. 196996
2  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   Four Embarcadero Center, 17th Floor
3  San Francisco, California 94111-4106
   Telephone:   415-434-9100
4  Facsimile:   415-434-3947

5

   TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
6  LUKE ANDERSON (Admitted *Pro Hac Vice*)
   MCGUIRE WOODS, L.L.P
7  1170 Peachtree Street, N.E., Suite 2100
   Atlanta, Georgia 30309
8  Telephone: 404.443.5500
   Facsimile:  404.443.5751
9
   Attorneys for DIGITAL ENVOY, INC.
10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12
                         SAN JOSE DIVISION
13

   DIGITAL ENVOY, INC.,                   Case No. C 04 01497 RS
14
              Plaintiff/Counterdefendant, **[REDACTED VERSION]**
15
        v.                                **DIGITAL ENVOY'S POINTS AND**
16                                        **AUTHORITIES IN SUPPORT OF ITS**
   GOOGLE, INC.,                          **MOTION TO COMPEL FURTHER**
17                                        **RESPONSES TO DIGITAL ENVOY'S**
              Defendant/Counterclaimant.  **INTERROGATORIES, REQUESTS FOR**
18                                        **PRODUCTION OF DOCUMENTS, AND**
                                          **30(b)(6) DEPOSITION NOTICES**
19
                                          Date:       December 5, 2005
20                                        Time:       10:00 a.m.
                                          Courtroom:  4, 5th Floor
21
                                          The Honorable Richard Seeborg
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION .................................................................................................1

II. ARGUMENT AND CITATION OF AUTHORITY .........................................1

    A.  Google's Failure to Comply with the Court's July 15 Order..................1

        1.  Google's Incomplete Responses to Interrogatories 6, 10, and 11 ........................................................................................2

        2.  Google's Failure to Produce Documents in Response to Request Numbers 18 and 19. .....................................................4

    B.  Google's Refusal to Produce Witnesses Pursuant to Digital Envoy's Proper Rule 30(b)(6) Deposition Notice. ...................................6

III. CONCLUSION ....................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

### CASES

Buffalo Carpenters Pension Fund v. CKG Ceiling and Partition Co., Inc.,
192 F.R.D. 95 (W.D.N.Y. 2000) .................................................................................. 1

Postx Corp. v. Secure Data Motion, Inc., No. C 02-04483 SI,
2005 WL. 767593 (N.D. Cal. 2005) .......................................................................... 6

### FEDERAL STATUTES

Federal Rules of Civil Procedure
Rule 26(b) .......................................................................................................... 10, 11
Rule 30(b)(6) ............................................................................................ 1, 6, 7, 8, 11
Rule 33(b)(1) ................................................................................................................ 2, 4
Rule 37(a) ............................................................................................................... 1
Rule 37(b) ............................................................................................................... 1

W02-SF:5BB\61474285.1

-ii-

REDACTED - P&A ISO MTN. TO COMPEL FURTHER
RESPONSES TO ROGS, RFPS, AND 30(b)(6) NOTICES

Digital Envoy, Inc. ("Digital Envoy") submits this Brief in Support of its Motion to Compel:

## I. INTRODUCTION

Google Inc. ("Google") continues to obstruct Digital Envoy's efforts to obtain discovery to which Digital Envoy is entitled – by failing to comply with the Court's Order of July 15 requiring Google to respond to Digital Envoy's discovery requests and refusing to designate and to produce witnesses for depositions. Digital Envoy in good faith has attempted repeatedly to resolve these issues with Google – a process which has continued through October of 2005.

Google has acknowledged these ongoing efforts by expressly noting: "We appreciate your 'good faith effort to confer' and hope to keep the process moving so we can resolve any outstanding issues." Declaration of Robert J. Waddell, Jr. ("Waddell Decl."), Ex. G. Unfortunately, these efforts have been essentially fruitless, thus requiring Digital Envoy to seek relief from the Court.

## II. ARGUMENT AND CITATION OF AUTHORITY

**A.  Google's Failure to Comply with the Court's July 15 Order**

Rule 37(b) provides a remedy in the event that a party fails to comply with a court order. Fed. R. Civ. P. 37(b); *Buffalo Carpenters Pension Fund v. CKG Ceiling and Partition Co., Inc.*, 192 F.R.D. 95 (W.D.N.Y. 2000) (sanctions may be imposed for failure to comply with any discovery order, not just an order under Rule 37(a)).

Here, the Court's Order of July 15, 2005, held that:

- Google's refusal to provide responses and produce documents related to both AdSense for Search and AdSense for Content was unjustified and required Google to supplement its responses accordingly;

- Google must completely respond to Digital Envoy's Interrogatory Numbers 6, 10, and 11; and

- Google must produce all documents responsive to Digital Envoy's Requests for Production Numbers 14, 18, and 19 (although Google is permitted to limit its production to the top 100 advertisers if providing full responses would be too burdensome).

-1-

1   The Court's Order is clear on its face; nevertheless, Google refuses to provide complete responses required by the Court, hiding behind technicalities and contorted interpretations of the July 15 Order's plain language and intent.  Google's refusal to comply with the July 15 Order leaves Digital Envoy with no other choice than to seek assistance from the Court.

### 1. Google's Incomplete Responses to Interrogatories 6, 10, and 11

Digital Envoy's interrogatory numbers 6, 10 and 11 requested Google to:

> **Interrogatory Number 6:** Identify by month <u>and web site</u>, the total revenue received by Google for the placement of advertisements on third party web sites <u>where the placement of the advertisement included the use of Digital Envoy's technology</u>.
>
> **Interrogatory Number 10:** On page 54 of the Prospectus for Google, Inc. dated August 18, 2004 (the "Prospectus"), you set forth revenue from the subcategory of revenue source labeled Google Network web sites ("Google Network revenue").  For the total Google Network revenue, provide an <u>itemized breakdown</u> which (1) divides the revenue into AdSense for search and AdSense for content (as those terms are used on page 51 of the Prospectus); <u>(2) divides the subdivision in part (1) of this interrogatory into revenue associated with each Google Network member's web site</u> (as described on page 51 of the Prospectus); and (3) for each revenue listing for each web site listed in part (2) of this interrogatory, <u>provide the cost of revenue recognized as a result of the portion of the advertiser fee paid to a Google Network member, identifying the member</u> (all as described on page 51 of the Prospectus).
>
> **Interrogatory Number 11:** For the revenue listing in part (2) of the previous interrogatory, <u>divide each revenue listing into two categories reflecting revenue generated from advertiser fees (as described on page 51 of the Prospectus) where the advertiser whose ad resulted in the fee either (a) selected "all countries" when the ad was enabled or (b) selected something other than "all countries" when enabled</u>.

*See* Waddell Decl., Exs. A and B (emphasis added).

In its July 15 Order, the Court expressly ruled that "Google <u>shall</u> provide responses which include both its AdSense for Content and AdSense for Search programs to Digital . . . ." Order at 5 (emphasis added).  The Federal Rules unambiguously require that "[e]ach interrogatory <u>shall</u> be answered separately <u>and fully</u> in writing under oath . . . ." Fed. R. Civ. P. 33(b)(1), emphasis added.  Thus, it is evident that the Court's Order to "provide responses" clearly requires Google to answer interrogatories 6, 10, and 11 <u>in full</u>.

Google, however, has taken the curious position that the Court's Order "did not obligate Google to respond to the interrogatories 'in full.'" Waddell Decl., Ex. C.  And, Google has

-2-

refused to provide the following information, which has expressly been requested by Digital Envoy:

- identification, by web site, of the total revenue received by Google for the placement of advertisements on third party web sites where the placement of the advertisement included the use of Digital Envoy's technology;

- an itemized breakdown of the portion of the advertiser fee paid to a Google Network member, identifying the member, for AdSense for Search;

- an itemized breakdown of the portion of the advertiser fee paid to a Google Network member, identifying the member, for AdSense for Content;

- revenue generated from advertiser fees, for AdSense for Search, where the advertiser selected "all countries";

- revenue generated from advertiser fees, for AdSense for Content, where the advertiser selected "all countries"; and

- revenue generated from advertiser fees, for AdSense for Search, where the advertiser selected something other than "all countries"; and

- revenue generated from advertiser fees, for AdSense for Content, where the advertiser selected something other than "all countries."

Instead, Google has provided truncated, summary information that falls far short of the information requested. *See* Waddell Decl., Exs. D, E, and F. These details of Google's revenue related to geotargeted advertisements (implicating Google's use of Digital Envoy's technology) is at the heart of the parties' dispute and necessary for a full analysis of revenue achieved due to Google's incorporation of Digital Envoy's technology in AdSense. Moreover, upon information and belief, such information would be available to Google from Google's electronic records. Given Google's position, and its refusal to be reasonable, Digital Envoy requests this Court to grant Digital Envoy's Motion, and require Google to provide full and complete responses to interrogatories 6, 10 and 11, as required by this Court's Order and the Federal Rules.[1]

---

[1] As an alternative, Digital Envoy requests this Court to find that Google's production was literally compliant with Digital Envoy's interrogatory number 6, and preclude Google from introducing any evidence to rebut that finding. Namely, that the three spreadsheets were provided to identify "the total revenue received by Google for the placement of

-3-

2.  **Google's Failure to Produce Documents in Response to Request Numbers 18 and 19.**

Digital Envoy's document request numbers 18 and 19 request:

> **Document Request 18:** All <u>documents</u> relating to information other than web site information provided by Google to then existing or prospective AdWords or AdSense customers <u>relating to AdWords, AdSense, and any other program or offering relating to the placement of advertisements on any web site</u>.

> **Document Request 19:** All <u>documents</u> containing any projections or expectation relating to revenue or profit or other economic factor relating to AdWords, AdSense, or any other program or offering relating to the placement of advertisements on any web site, specifically including any projection relating to the use of Digital Envoy's technology in placing advertisements on third party web sites.

*See* Waddell Decl., Ex. A (emphasis added).

The July 15 Order expressly ruled that "Google <u>must</u> now produce <u>all</u> responsive documents regarding its AdSense for Search program." Order at 6 (emphasis added). Moreover, the Order required that "Google <u>must</u> provide <u>all</u> responsive documents concerning its AdSense for Search <u>and</u> AdSense for Content programs for its top 100 advertisers during the license period . . . ." *Id.* (emphasis added). These responsive documents included "documents concerning its use of Digital's data, including communications which refer to that data, as well as <u>all</u> revenue information <u>and other responsive documents</u> . . . ." *Id.* at 5.

Google has failed to comply with the Court's Order, despite numerous efforts by Digital Envoy to obtain the requested information. Google appears to have adopted an unstated (but unsupportable) limitation of its obligation to produce documents pursuant to the July 15 Order. By way of example, Google refuses to produce documents related to its top-100 advertisers' AdSense advertising campaigns. As part of advertising campaigns, advertisers enter into agreements with Google using a standard order form. *See* Waddell Decl., Ex. L.

---

advertisements on third party web sites <u>where the placement of advertisements included the use of Digital Envoy's technology</u>." *See* Waddell Decl., Ex. A (emphasis added).

-4-

Therefore, these "order forms" and other documents related to various advertising campaigns set up by advertisers for Google's AdSense programs fall squarely within Digital Envoy's request for documents "relating to AdWords, AdSense, and any other program or offering relating to the placement of advertisements on any web site." Google, however, has failed to produce <u>any</u> advertising agreements with its top 100 advertisers, despite the plain language of Digital Envoy's request and the Court's Order.

Nevertheless, Google states that it has produced all documents responsive to these document requests. However, a close review of the document production belies Google's position. Specifically, Google has only produced summary created-for-litigation spreadsheets, and it is clear that the spreadsheets were compiled from other data that were available to Google but not produced to Digital Envoy. Thus, despite the Court's Order to "provide <u>all</u> revenue information and other responsive documents[,]" it is evident that Google has <u>not</u> provided all of the documents used to generate these spreadsheets. As such, Google has failed to comply with the Court's Order.

Therefore, Digital Envoy is entitled to complete responses to these document requests, including:

- all documents concerning geotargeting, including Google's use of Digital Envoy's data, for Google's top 100 advertisers;

- all communications with Google's top 100 advertisers concerning geotargeting, including references to Digital Envoy's data;

- all revenue information (and not merely summaries) for Google's top 100 advertisers;

- documents relating to information provided by Google to its top 100 advertisers; and

- documents containing projections of revenue concerning geotargeting, including the use of Digital Envoy's technology in placing advertisements on third party web sites for Google's top 100 advertisers;

Due to Google's plain failure to comply with the Court's Order, and its adamant refusal to cooperate in discovery, Digital Envoy requests that the Court grant Digital Envoy's Motion.

**B.    Google's Refusal to Produce Witnesses Pursuant to Digital Envoy's Proper Rule 30(b)(6) Deposition Notice.**

Rule 30(b)(6) requires that "persons so designated [as the representative] shall testify as to matters known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). As such, "[i]f the designated deponent cannot answer those questions, then the entity has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions." *Postx Corp. v. Secure Data Motion, Inc.*, No. C 02-04483 SI, 2005 WL 767593, *1 (N.D. Cal. 2005). "The entity has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are known or reasonably available to the corporation. Rule 30(b)(6) delineates this affirmative duty." *Id.* (internal quotations omitted).

Here, Google's designated representatives failed to answer various questions that were either known or reasonably available to Google. For example, Google clearly knew of relevant information regarding AdSense for Search, but limited its depositions to only AdSense for Content. Likewise, as described in greater detail below, Google's designated representative knew of information that was reasonably available to Google, but failed to satisfy its "affirmative duty to produce a representative who c[ould] answer questions that [we]re both within the scope of the matters described in the notice and [we]re known or reasonably available to the corporation." *Id.*

In addition to failing to provide witnesses who were able to answer questions on properly-noticed topics, Google has outright refused to provide witnesses on various significant topics. In view of Google's refusal to cooperate, Digital Envoy now moves this Court to compel designation and production of witnesses to which Digital Envoy is entitled.[2]

---

[2] Google contends that "the time for noticing depositions (or moving to compel them) has long since past [sic]." Waddell Declaration, Ex. C. However, Google's actions and representations contradict Google's position. For example, as noted above, both Digital Envoy and Google have continued to notice depositions well beyond May 17, 2005, which was the close of written discovery. *See, e.g.*, Waddell Decl., Exs. U through FF. Additionally, both Digital Envoy and Google continued to dialogue and arrange depositions after the close of written discovery. *See, e.g.*, Waddell Decl. Exs. G through K. These include the deposition of Google's Matthew Cutts, which is not yet scheduled, and additional Rule 30(b)(6) testimony from Digital Envoy, which Google continues to seek.

-6-

1  **Deposition Topic 1:** All uses made by Google of Digital Envoy's data or technology, including but not limited to the technical flow that results in an advertisement being displayed in connection with the AdSense programs

Topic 1 requests that Google's representative be knowledgeable about Google's AdSense programs, which, as this Court held, encompasses both AdSense for Search and AdSense for Content. During Mr. Rose's deposition, Google's counsel explicitly stated that "Mr. Rose is testifying on behalf of the corporation <u>solely with respect to the use of Digital Envoy's data in the AdSense for Content program</u>." *See* Deposition of Mark Rose ("Rose Dep.") at 9, Waddell Decl., Ex. M. Thus, it is clear that Google did not produce a representative that would testify on matters relating to AdSense for Search.

Additionally, during Mr. Rose's deposition, the following exchange occurred:

**REDACTED**

*See* Rose Dep. at 36, Waddell Decl., Ex. M, emphasis added.

Throughout Mr. Rose's deposition, Mr. Rose stated

**REDACTED**

From Mr. Rose's own testimony, it is evident

**REDACTED**

Based on Google's failure to produce a knowledgeable witness, Digital Envoy requested a supplemental deposition on this topic. *See* Waddell Declaration, Ex. C. However, Google has

-7-

1  refused to provide a supplemental deposition, expressing that "Mr. Rose was amply prepared for
2  his deposition" and that Digital Envoy had "not identified any relevant questions Mr. Rose was
3  unable to answer . . . ." *Id.* Google has refused to provide "additional testimony on this topic."
4  *Id.*

5        Google has failed to provide a representative that was prepared to answer any questions
6  relating to AdSense for Search; and failed to fulfill its affirmative duty under Fed. R. Civ. P.
7  30(b)(6). Therefore, Digital Envoy requests this Court for an Order compelling Google to produce
8  a witness who is able to answer questions relating to the technical aspects of AdSense for Search
9  and AdSense for Content.

> **Deposition Topic 2:** Google's procedures for confirming adherence to and compliance with Google's licensing agreements with third party licensors
>
> **Deposition Topic 3:** Google's actions in confirming adherence to and compliance with the terms of Google's Licensing Agreement with Digital Envoy

14        Topics 2 and 3 are relevant to whether or not Google's use of Digital Envoy's technology
15  outside the scope of the license was willful. Although Google has recently indicated its
16  willingness to produce a witness to testify concerning payments made by Google to Digital Envoy
17  and regarding Google's non-disclosure of Digital Envoy's data to third parties, Google has noted
18  that the 30(b)(6) witness for Topic 3 would be strictly limited to only those topics.

19        The nature and circumstances of Google's use of Digital Envoy's technology outside the
20  permitted scope of its license is a central matter in the pending litigation. Hence, Digital Envoy's
21  ability to <u>fully</u> question Google's representative on this matter is both relevant and necessary. As
22  such, Digital Envoy requests that this Court compel Google to produce a witness who is able to
23  answer questions relating to Google's procedures and actions in complying with the plain
24  limitations on its use of Digital Envoy's technology.

> **Deposition Topic 5:** Revenue generated under the AdSense programs during the time in which Digital Envoy's data was used, broken down by month, broken down further by AdSense customer, and broken down further by whether the advertisement generating the revenue was geo-targeting enabled

-8-

W02-SF:5BB\61474285.1    REDACTED - P&A ISO MTN. TO COMPEL FURTHER RESPONSES TO ROGS, RFPS, AND 30(b)(6) NOTICES

**Deposition Topic 6:** Google's system for recording the data described in topic 5, including capabilities for search and retrieval of specific data within the system

The Court has ruled that Digital Envoy is entitled to "non-privileged documents concerning its use of Digital's data, including communications which refer to that data, as well as <u>all</u> revenue information and other responsive documents regarding its AdSense for Content program." July 15 Order at 5-6 (emphasis added). The Court further ruled that Google must fully respond to Interrogatories 6, 10 and 11. *Id.* at 6.

Because these documents and underlying issues are relevant, Digital Envoy is also entitled to depose Google about Google's revenue generated from AdSense for Search and AdSense for Content. Google incorrectly asserts that the "Court has already ruled that Digital Envoy is not entitled to documents on this subject based inter alia on relevance grounds." Waddell Declaration, Ex. C. To the contrary, as set forth above, the Court has expressly ruled that Digital Envoy <u>is</u> entitled to information and documents on these topics. Hence, Digital Envoy is also entitled to question Google about its revenue information as it pertains to AdSense in which Digital Envoy's technology was incorporated.

For this reason, Digital Envoy requests that the Court compel Google to produce a witness who is able to answer questions relating to Google's revenue for both AdSense for Search and AdSense for Content.

**Deposition Topic 7:** Google's responses to discovery requests, including but not limited to its search for and retrieval of documents.

Google contends that it was diligent in its search. Waddell Declaration, Exs. J and R. However, Digital Envoy has uncovered various Google documents, which Google never disclosed or produced. For example, on September 3, 2003, Google filed a patent application that is directly related to geo-targeting. Waddell Decl., Ex. GG. This application is now published as an official document on the U.S. Patent and Trademark Office's official website.

In touting the importance of deriving geolocation information, Google's patent application expressly noted that Digital Envoy's technology could be used as a component of the invention. Waddell Decl., Ex. GG ("The present invention may be used to derive or estimate geolocation

-9-

information from other information. For example, the present invention may use known techniques (such as that used by the "NetAcuity" product from Digital Envoy of Norcross, Ga.) to map Internet protocol ("IP") address and/or domain information to geolocation information").

This patent application, which is relevant, easy to find, and within Google's possession was never produced to Digital Envoy. It is apparent, in view of the independent discovery of such documents, that Google did not conduct "a thorough search for documents" as it represented to Digital Envoy and this Court. Given such omissions by Google, Digital Envoy is entitled to question Google's representatives on their search and retrieval procedures in responding to Digital Envoy's discovery requests.

Further, in her deposition, Google's Susan Wojcicki testified that she later found responsive documents (in this case, a communication between Google and its publishers regarding AdSense), but to date Google has refused to produce that responsive document or to provide an explanation about why its "extensive" document search failed to identify it. *See* Waddell Decl., Ex. JJ. Google should be required to produce this "newly-discovered" document, and Digital Envoy should be permitted to explore the sources of potentially responsive documents with a properly-designated Google witness.

Google has failed to discharge its duty to designate and produce a proper 30(b)(6) representative on this topic. Thus, Digital Envoy requests that the Court compel Google to produce a witness who is able to answer questions relating to Google's search for and retrieval of documents responsive to Digital Envoy's discovery requests.

> **Deposition Topic 9:** All damages claimed by Google in its counterclaims, including the causation of such damages
>
> **Deposition Topic 10:** All affirmative defenses raised by Google
>
> **Deposition Topic 12:** The factual basis for your claim that Digital Envoy disclosed each of the alleged trade secrets (treating each subpart separately) in your 2019(d) disclosure

Google contends that these are contention interrogatories and objects to these topics. Waddell Declaration, Ex. C. However, Google's position finds no support in the Federal Rules. To the contrary, Fed. R. Civ. P. 26(b) permits broad latitude in discovery, so long as it is: **(1)**

-10-

1  "relevant," Fed. R. Civ. P. 26(b)(1); **(2)** not cumulative, Fed. R. Civ. P. 26(b)(2); and **(3)** not
2  unduly burdensome, *Id.* This includes deposition testimony. *See*, Fed. R. Civ. P. 30(a)(2).
3      Google in this case has asserted counterclaims and affirmative defenses (including waiver
4  and estoppel). Digital Envoy is entitled to discover, from the testimony of Google's own
5  witnesses, the factual basis for these claims. These topics are within the permissible bounds of the
6  Federal Rules, Digital Envoy requests this Court to order Google to designate and produce one or
7  more representatives that can answer questions relating to: (1) Google's counterclaim; (2) Google's
8  affirmative defenses; and (3) any factual bases for Google's trade secret claim against Digital
9  Envoy.

> **Deposition Topic 14:** All analysis undertaken at any time regarding any measure of improvement in performance (clicks, conversions, revenue or otherwise) associated with geo-targeted vs. non-geo-targeted advertisements, including the connection between the improvement and the financial benefit to Google

    Google has indicated that it has not found any analysis relating to the performance of geo-targeted (as compared to non-geo-targeted) advertisements, other than the documents that it has already produced. Some of the documents that Google produced include:

- 
- 
- 
- 
- 

**REDACTED**

-11-

1
2
3
4
5

- In an October 30, 2005 article appearing in The New York Times, Google VP of Engineering is quoted touting the value and benefits of geographically-relevant advertising: "If someone is coming from a particular location, a certain ad may be more popular there." *See* Waddell Decl., Ex. HH at 4. Further, the article notes that Google is able to analyze the effectiveness of its advertisement placement process – including its ability to "infer" the geographic location of a user based on the user's IP address. *See id.* at 3-4.

6
7
8
9
10
11
12
13
14
15
16

Therefore, Google plainly analyzes the effectiveness of its programs – including the effectiveness of its advertisement placement process utilizing geotargeting. That senior Google officers can tout the effectiveness of Google's AdSense programs leads to the logical conclusion that some form of "analysis" has occurred. Importantly, Digital Envoy's request is not limited to formal, commissioned studies, but calls for testimony of regarding Google's internal positions (including speculation) regarding the value of geotargeted advertisements. The fact that Google has now entered into multiple agreements with providers of geotargeting technology and touts its ability to geotarget advertisements, Google's refusal to produce a witness on this topic – even if only to explain why Google added geotargeting as a prominent feature in its AdSense program without any understanding or belief that its incorporation would be beneficial – is plainly not acceptable. Digital Envoy is entitled to depose a 30(b)(6) representative on this topic.

17

### III. CONCLUSION

18
19
20
21
22
23
24
25
26
27
28

For all of the foregoing reasons, Digital Envoy respectfully requests that this Court enter an Order compelling Google to: (1) provide *full and complete responses* to Digital Envoy's interrogatory numbers 6, 10, and 11 for both AdSense for Content and AdSense for Search; (2) provide full and complete responses to Document requests 14, 18 and 19, including *all* documents concerning geotargeting for Google's top 100 advertisers (including Google's use of Digital Envoy's technology), *all* communications with Google's top 100 advertisers that refer to geotargeting (including the use of Digital Envoy's data), *all* revenue information for Google's top 100 advertisers, and *all* other responsive documents regarding its AdSense programs for Google's top 100 advertisers; (3) designate one or more 30(b)(6) deponents for Digital Envoy's designated topics, noticed on May 13, 2005; and (4) pay costs and fees associated with this pending motion.

-12-

DATED: October 31, 2005

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  /s/ Brian Blackman
P. CRAIG CARDON
BRIAN R. BLACKMAN

TIMOTHY H. KRATZ (*Pro Hac Vice* To Be Applied For)
LUKE ANDERSON (*Pro Hac Vice* To Be Applied For)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5706
Facsimile:  404.443.5751

Attorneys for DIGITAL ENVOY, INC.