\*\*E-Filed\*\*
November 8, 2005

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC., <br><br> Plaintiff, <br> v. <br><br> GOOGLE, INC., <br><br> Defendant. <br>_____/ | NO. 5:04-cv-1497 RS <br><br> **ORDER GRANTING IN PART AND DENYING IN PART GOOGLE'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## I. INTRODUCTION

Defendant Google, Inc. ("Google") seeks partial summary judgment on the damages claims asserted by plaintiff Digital Envoy, Inc. ("Digital"), arguing that the parties' November 30, 2000 License Agreement ("Agreement") bars or circumscribes the amount of damages recoverable in this case. In particular, Google asserts that the Agreement operates to permit recovery by an aggrieved party only where the other party has engaged in "willful misconduct" and, in any event, the Agreement limits any damages otherwise recoverable by Digital to twice the amount paid by Google under the terms of the license. Google further argues that Digital is not entitled to recover damages pursuant to Cal. Civ. Code § 3426.3(a) because Digital cannot establish the requisite causal nexus between the alleged misuse of Digital's proprietary technology and any gain enjoyed by Google. Digital responds that the Agreement does not bar or limit the damages it may recover in this instance. Further, Digital contends it can establish advertisers

viewed Google's ability to geotarget advertisements as a valuable facet of the offered services, thereby entitling Digital to recover damages for the unjust enrichment obtained by Google in its AdSense program through the use of Digital's technology.

Google's motion for partial summary judgment was fully briefed and heard by the Court on September 21, 2005.  Based on all papers filed to date, including the supplemental briefs filed by both parties, as well as on the oral argument of counsel, the Court finds that Google has demonstrated the Agreement bars the recovery of actual damages on Digital's contract claims, but has failed to establish, as a matter of law, that Digital is precluded from recovering any "unjust enrichment" on Digital's trade secret misappropriation claim.[1]

## II.  STANDARDS

Fed. R. Civ. Pro. 56(d) provides in relevant part that, in those instances where judgment is not rendered upon the whole case, the court "by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted." Should the court determine that certain facts appear without substantial controversy, an order specifying such facts shall be issued and those facts shall be deemed established at trial.  Id.

"The obligation imposed on the court by Rule 56(d) to specify uncontroverted material facts is technically compulsory.  However, if the court determines that identifying indisputable facts through partial summary judgment would not expedite the adjudicative process, it may decline to do so."  Dept. of Toxic Substances Control v. Interstate Non-Ferrous Corp., 99 F.Supp.2d 1123, 1124 (E.D. Cal. 2000).

## III.  DISCUSSION

### A.  Digital's Damages Are Barred or Limited

Google seeks judgment in its favor regarding Digital's claims for actual damages based on the language set forth in the Agreement which it contends either: (1) completely bars recovery in this case due to the absence of any evidence that Google committed "willful misconduct" or (2) limits any recovery by

---

[1] The background of this dispute has been discussed at some length in prior orders by this Court and need not be reiterated here.

2

Digital to the amount paid by Google under the terms of the Agreement, which in this instance was $308,600. As an initial matter, Digital notes that Google's motion is premature because discovery has not been completed nor have experts been designated. As a result, Digital argues that Google's motion is based on an incomplete factual record, lacks expert analysis and opinion, and unjustifiably attempts to "short-circuit the legal process."

Addressing the substantive arguments raised by Google, Digital insists that the Agreement's limitation to actions based on "willful misconduct" refers to any action that is not the result of an error or inadvertence in the performance of a party's duties under the Agreement and does not, therefore, require a heightened showing of intent on Google's part. Digital also contends that the clause in the Agreement purporting to cap Digital's damages to twice the amount paid by Google is void as against the public policy of California.

The proper interpretation of Section 8 of the Agreement, entitled "Warranties; Limitations; Disclaimer," lies at the center of the pending motion. That section provides:

> Licensor warrants that the Product will materially conform with its written specifications during the term of this Agreement. It is mutually acknowledged that data entry, communication and storage are subject to a possibility of human and machine errors, omissions, delays, and losses, including inadvertent loss of data or damage to media, which may give rise to loss or damage. Neither party hereto undertakes any liability to the other for any such errors, omissions, delays, or losses. EXCEPT AS STATED ABOVE, LICENSOR MAKES AND LICENSEE RECEIVES NO WARRANTIES, EXPRESS, IMPLIED, STATUTORY, OR IN ANY OTHER PROVISION OF THIS AGREEMENT OR ANY OTHER COMMUNICATION, REGARDING THE PRODUCT, THE DATABASE LIBRARIES AND THE SERVICES, AND THE LICENSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NEITHER PARTY UNDERTAKES OR ACCEPTS ANY LIABILITY WHATSOEVER TO THE OTHER FOR ERRORS, OMISSIONS, DELAYS, INTERRUPTIONS, OR LOSSES UNLESS CAUSED BY THEIR WILLFUL MISCONDUCT. EXCEPT FOR INDEMNIFICATION UNDER SECTION 7.5, IN NO EVENT SHALL EITHER PARTY'S DAMAGES IN ANY LAWSUIT OR OTHER ACTION BROUGHT UNDER THIS AGREEMENT EXCEED THE AMOUNTS PAID BY LICENSEE HEREUNDER.

See Declaration of David Kramer, Exh. B, Section 8.

1. <u>Willful Misconduct Defined</u>

1  Google cites the portion of Section 8 which states, "Neither party undertakes or accepts any liability whatsoever to the other for errors, omissions, delays, interruptions, or losses unless caused by their willful misconduct," to support its contention that Digital is not entitled to actual damages in this instance because it cannot establish that Google engaged in "willful misconduct."  More specifically, Google asserts that, in order to recover damages, Digital must show that in utilizing its technology in the AdSense program, Google knew that it was breaching the parties' Agreement and intended to do so in order to harm Digital. Dazo v. Globe Airport Security Services, 295 F.3d 934, 941 (9th Cir. 2002).  As Google correctly notes,

> Under California law, willful or wanton misconduct is separate and distinct from negligence.... Unlike negligence, which implies a failure to use ordinary care, and even gross negligence, which connotes such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, willful misconduct is not marked by a mere absence of care. Rather, it involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences.

Dazo v. Globe Airport Security Services, 295 F.3d at 941. (internal quotes omitted).

Digital does not quibble with the definition of "willful misconduct" proffered by Google, acknowledging the Ninth Circuit formulation that, "Where an actor's conduct is of an unreasonable character and in disregard of a known risk, or one that should have been known, and that risk is so great as to make it highly probable that harm will follow, we term it willful misconduct..." Rost v. United States, 803 F.2d 448, 451 (9th Cir. 1986). See Digital's Supplemental Reply Brief, Document 340, at p. 2.  Digital also notes, however, that a party is not protected simply because it fails to appreciate the risk and acts without regard to the consequences.  "The actor is not protected because he personally failed to recognize the precise peril posed....It is enough that he knows or has reason to know of the circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct."  Id.  Accordingly, the dispute in this motion turns on whether the evidence establishes that Google, by incorporating Digital's technology into the AdSense program, acted in violation of the parties' Agreement with a specific intent to harm Digital or with a positive, active, and absolute disregard of the consequences of its actions.

2. No Evidence That Google Engaged in Willful Misconduct

Digital contends that "willful misconduct" on the part of Google is shown through the evidence submitted, which it argues establishes that Google intentionally performed an act, namely, utilized Digital's

4

proprietary technology in the AdSense campaign without Digital's permission, in reckless disregard of the probable consequences that Digital would be harmed thereby. <u>Dazo v. Globe Airport Security Services</u>, 295 F.3d at 941. To support this argument, Digital relies on email correspondence between the parties at the time that the License was being negotiated in which Google confirmed its understanding that it would not be authorized, under the terms of the License, "....to repackage [Digital's] database in conjunction with product offerings and [allow] other third parties to directly access it." Waddell Declaration, Exh. 3. Thereafter, and contrary to Google's expressed understanding, Digital claims that Google repackaged its database in conjunction with the AdSense campaign and allowed third parties to access Digital's proprietary data.

Digital's evidence fails to raise a material, triable issue of fact regarding whether Google engaged in willful misconduct for two reasons. First, the email correspondence upon which Digital relies simply sets forth Google's confirmation that it would not ship Digital's database libraries to third parties or allow third parties to access the data directly. <u>See</u> Exh. 3 to Waddell Declaration. The correspondence does not suggest that Google acted with the intent to contravene that limitation. Indeed, Google has consistently maintained that it honored this limitation in the parties' Agreement and neither shipped the database to any third party nor allowed anyone else directly to access the data. To date, no evidence has been submitted which establishes that Google believed it was providing Digital's libraries to any third party or otherwise allowing them direct access to it. Instead, as indicated in previous orders issued by the Court, the record raises questions as to whether a trier of fact could conclude that Google "shared" or "distributed" Digital's data by incorporating that data into the algorithm used in the AdSense program. No reasonable trier of fact could conclude, however, based on the materials presented, that Google believed its conduct amounted to the shipment of database libraries to a third party, or that any third party was being permitted direct access to those libraries.

Second, the evidence fails to establish that Google acted in reckless disregard of the prospect that Digital would be harmed through Google's incorporation of Digital's technology into its AdSense program. Although Digital has suggested such reckless disregard is demonstrated by Google's failure to create internal procedures or controls to ensure compliance with all license agreements, no evidence has been

submitted which supports that contention.[2] Moreover, even assuming Google lacked adequate "compliance controls" in connection with the implementation of its license from Digital, such omission does not demonstrate reckless disregard on Google's part. Indeed, as Google observes, its AdSense campaign as launched would have received compliance approval since, from its perspective, the program did not violate the terms of the License Agreement.    While any use by Google of Digital's proprietary technology that exceeded the scope of the parties' license agreement could constitute misappropriation of trade secrets regardless of Google's motivation, that question is separate and apart from the issue of whether the Agreement prohibits the recovery of damages for anything other than "willful misconduct."    Simply phrased, no evidence has been submitted which supports a finding that Google intended to harm Digital by incorporating the geo-targeting technology into the AdSense program or that Google, in creating AdSense, acted with a positive, active and absolute disregard of the consequences of its actions.[3]

Rather, indulging all inferences in favor of Digital, the evidence submitted establishes, perhaps, a failure on Google's part to apprise all employees involved with the Digital License Agreement of its terms. A reasonable trier of fact could not, however, based on the record submitted, find that Google acted with a positive, active and absolute disregard of the consequences inherent in incorporating Digital's technology into the algorithm utilized in the AdSense program. The "willful misconduct" language set forth in Section 8 of the parties' Agreement, therefore, bars Digital, as a matter of law, from recovering actual damages on Digital's contract claims, even assuming Digital is ultimately able to prove that Google's use of Digital's proprietary technology exceeded the scope of the Agreement.[4]

---

[2] Contrary to Digital's assertion, Google employees Matt Cutts and Kulpreet Rana testified they believed Google had contract compliance mechanisms in place. See Waddell Decl., Exhs. 4, 6.

[3] Digital's argument that willful misconduct applies only to "errors, omissions, delays, interruptions, or losses," is beside the point since it clearly alleges a "loss" in this instance, and no basis arises for interpreting that term to connote only a narrow subset of its generally understood meaning. Rather, a fair reading of the disputed clause reflects no ambiguity. Under section 8, neither party undertook any liability to the other for any human and machine errors, omissions, delays, and losses, as set forth in the third sentence of that clause. The fifth sentence, however, which exempts willful misconduct, applies to all other "errors, omissions, delays, interruptions, or losses." To adopt Digital's argument would defy the "plain meaning" rule since the fifth sentence of the clause would, under that interpretation, be rendered meaningless.

[4] Based on its conclusion, the Court does not reach Google's additional argument that the Agreement limits any recovery by Digital to the amount paid under the License.

6

C. <u>Digital Is Not Precluded From Seeking Recovery For Unjust Enrichment</u>

Google contends that Digital cannot establish a casual link between Google's alleged improper use of Digital's technology and any profits earned by Google as a result. Specifically, Google argues that Digital must establish, but for its allegedly unauthorized use of Digital's data, Google would not have earned the profits it did from the AdSense program. <u>Unilogic, Inc. v. Burroughs Corp.</u>, 10 Cal.App.4th 612 (1992). According to Google, Digital cannot make such a showing and is not, therefore, entitled to recover damages based on a theory of unjust enrichment.

Digital responds that its alternative damage theory of unjust enrichment remains viable based on statements made by Google customers who opined that at least one of the factors which attracted them to Google was the ability by Google to deliver geo-targeted advertisements. <u>See</u> <u>e.g.</u>, Waddell Declaration , ¶ 8 and Exh. G. This evidence, Digital contends, supports its claim that, at least in some respect, Google earned profits which it otherwise would not have made absent Digital's technology.

Digital also points out that the only case upon which Google relies in support of its argument on unjust enrichment is inapplicable here as it involved a product allegedly containing a misappropriation of a trade secret that was never marketed and, therefore, on which no profits were earned. <u>Unilogic</u>, 12 Cal.App.4th at 627-28. In contrast, while conceding that its trade secrets were not the sole factor used to generate the algorithm prompting the selection of ads to display on various websites, Digital notes that it has established its technology was at least *a factor* which advertisers identified as being important to them in their decision to join the Google ad network, thereby enabling it to attempt to prove an entitlement to some portion of the profits earned by Google in the AdSense campaign.

Under California law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties. <u>McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.</u>, 339 F.3d 1087, 1091 (9th Cir. 2003); <u>Paracor Finance, Inc. v. General Electric Capital Corp.</u>, 96 F.3d 1151, 1167 (9th Cir. 1996). As a result, Digital cannot recover unjust enrichment on an alleged breach of contract theory against Google, since an enforceable and binding License Agreement exists between the parties governing their contractual rights.

Nonetheless, as Digital correctly notes, the California Uniform Trade Secret Act ("CUTSA")

authorizes the recovery of unjust enrichment where a plaintiff establishes a loss due to the misappropriation of its trade secret. Cal. Civil Code § 3426.3(a).[5] Moreover, contrary to the argument advanced by Google and as stated in the very case Google characterized as "noteworthy," at least one court has observed that the use of a party's trade secret need not be the sole source of a defendant's profits where a plaintiff has shown some causal nexus between such profits and the use of its trade secrets. See e.g., USM Corp. v. Marson Fastener Corp., 467 N.E.2d 1271, 1276-77 (Mass. 1984) (Massachusetts Supreme Court explained that the use of a trade secret might not be the sole source of a defendant's profits and that, in such instance, fairness might indicate that the plaintiff's recovery should be measured by the value of or cost savings to the defendant rather than by the defendant's profits). While this case provides no precedential value, the court's reasoning, coupled with the evidence proffered by Digital; in particular, statements made by Google's customers concerning the importance of geo-targeting to them, raises a triable issue of material fact concerning a causal connection between Google's profits from the AdSense program and its use of Digital's geolocation technology.[6] Google has failed to establish, therefore, that it is entitled to a judgment that Digital cannot recover for the unjust enrichment caused by the alleged misappropriation of Digital's trade secrets. Rather, pursuant to the CUTSA, Digital may attempt to prove an entitlement to unjust enrichment recovery arising from the misappropriation of its trade secrets by Google.[7]

## IV. CONCLUSION

As a result of this order, as well as on prior orders issued in this action, Google's motion for partial

---

[5] The CUTSA also provides, in the event that neither damages nor unjust enrichment by misappropriation is proven, that the court may order payment of a reasonable royalty. Cal. Civ. Code § 3426.3(b).

[6] During oral argument on its motion, Google intimated that the evidence cited by Digital addressed a time period after the parties' Agreement had expired. At least one Google AdSense customer, GreenwichMeantime.com, however, appears to confirm that the main reason it was attracted to the AdSense program in June 2003, the time frame covered by the Agreement, was Google's ability to link content to local audience advertising. See Waddell Decl. at Exh. G. Google's evidentiary objections to this exhibit are overruled in that the exhibit derives from Google's own website.

[7] Google also noted that Digital cannot recover for unjust enrichment since Google was awarded summary judgment on that claim. The Court's order, however, provided only that Digital's state law claims, including its claim for unjust enrichment, were preempted by the California UTSA. The Court did not address the availability of unjust enrichment for an otherwise viable trade secret claim. See Order filed on May 20, 2005. As set forth above, the California UTSA authorizes such relief for the misappropriation of trade secrets. Id.

summary judgment concerning actual damages is granted. Digital may not recover actual damages in this case based on the language contained in the parties' Agreement which precludes the recovery for losses other than those caused by the willful misconduct of Google, which Digital has failed to establish. As a practical matter, therefore, Digital cannot recover damages for its breach of contract claim.

With respect to its remaining claim for misappropriation of trade secrets, however, in the event Digital establishes liability on the part of Google for misappropriation, it is not precluded from attempting to show its entitlement to recover any unjust enrichment gained by Google.[8] The motion for partial summary judgment concerning unjust enrichment is, therefore, denied.

IT IS SO ORDERED.
Dated: November 8, 2005

/s/ Richard Seeborg
RICHARD SEEBORG
United States Magistrate Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER WERE ELECTRONICALLY PROVIDED TO:**

Brian R. Blackman     bblackman@sheppardmullin.com

P. Craig Cardon     ccardon@sheppardmullin.com, msariano@sheppardmullin.com

Charles Tait Graves     tgraves@wsgr.com

Stephen C. Holmes     sholmes@wsgr.com, pmarquez@wsgr.com

David H. Kramer     dkramer@wsgr.com, dgrubbs@wsgr.com

Michael S. Kwun     mkwun@google.com

David L. Lansky     dlansky@wsgr.com

Chan S. Park     cpark@wsgr.com

Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the Court's CM/ECF program.

**Dated: 11/8/05**                              **Richard W. Wieking, Clerk**

---

[8] At oral argument, Digital acknowledged that it is seeking only equitable relief and does not claim an entitlement to actual damages based on the alleged misappropriation of trade secrets by Google.

1  By:____DM_____
      **Chambers**