DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgr.com)
DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendant/Counterclaimant
Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC., <br><br> Plaintiff/Counterdefendant, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant/Counterclaimant. | CASE NO.: C 04 01497 RS <br><br> **GOOGLE INC.'S OPPOSITION TO DIGITAL ENVOY'S MOTION TO COMPEL FURTHER RESPONSES TO DIGITAL ENVOY'S INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND 30(b)(6) DEPOSITION NOTICES** <br><br> Judge: Hon. Richard Seeborg <br> Courtroom: 4, 5th Floor <br> Date: December 5, 2005 <br> Time: 10:00 a.m. |

GOOGLE'S OPPOSITION TO MOTION TO COMPEL FURTHER
RESPONSES TO ROGS. RFPS, AND 30(B)(6) NOTICES
C 04 01497 RSP

2756322_1.DOC

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................................1

ARGUMENT ..................................................................................................................................2

I.   DIGITAL ENVOY IS NOT ENTITLED TO FURTHER RESPONSES TO ITS INTERROGATORIES – GOOGLE FULLY COMPLIED WITH THE COURT'S JULY 15 ORDER ..................................................................................................................2

II.  DIGITAL ENVOY IS NOT ENTITLED TO FURTHER DOCUMENT PRODUCTION AS THERE IS NOTHING TO COMPEL – GOOGLE FULLY COMPLIED WITH THE COURT'S JULY 15 ORDER ......................................................4

III. DIGITAL ENVOY IS NOT ENTITLED TO FURTHER DEPOSITIONS .......................5

    A.   Digital Envoy's Motion to Compel Additional Depositions is Untimely ...............5

    B.   Google Properly Objected To Digital Envoy's 30(b)(6) Topics .............................7

CONCLUSION ..............................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aetna Cas. & Sur. Co. v. Superior Court*, 153 Cal. App. 3d 467 (1984) ...................................... 11

*Coleman v. General Elec. Co.*, No. 94-CV-4740, 1995 U.S. Dist. LEXIS 8186
 (E.D. Pa. June 8, 1995) ............................................................................................................ 10

*Diglio v. Air Prods. & Chems.*, No. 95-7818, 1998 U.S. Dist. LEXIS 3401 (E.D.
 Pa. Mar. 17, 1998) .................................................................................................................... 10

*EEOC v. American Int'l Group, Inc.*, No. 93 CIV. 6390 (PKL) RLE, 1994 WL
 376052 (S.D.N.Y. July 18, 1994) ............................................................................................... 8

*Exxon Research and Eng'g Co. v United States*, 44 Fed. Cl. 597 (Fed. Cl. 1999) ....................... 12

*Hanan v. Corso*, No. 95-0292 (TPJ/JMF), 1998 U.S. Dist. LEXIS 11877 (D.D.C.
 Apr. 24, 1998) .......................................................................................................................... 10

*In re Independent Ser. Orgs. Antitrust Litig.*, 168 F.R.D 651 (D. Kan. 1996) .............................. 11

*McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275 (N.D. Cal.
 1991), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991) ....................................... 12

*Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082
 (N.D. Ill. Jan. 24, 2000) ...................................................................................................... 11, 12

*United States v. District Counsel of New York City*, No. 90 CIV. 5722 (CSH), 1992
 WL 208284 (S.D.N.Y. Aug. 18, 1992) .................................................................................... 12

## STATUTES

CAL. EVID. CODE § 954 ................................................................................................................ 11

## RULES

FED. R. CIV. PROC. 26(b) .............................................................................................................. 11

FED. R. CIV. PROC. 26(b)(1) ........................................................................................................... 9

## MISCELLANEOUS

CIV. L. R. 26-2 ............................................................................................................................ 6, 7

**INTRODUCTION**

Digital Envoy, Inc.'s ("Digital Envoy") Motion to Compel borders on frivolous. At times, it crosses the border.

Google Inc. ("Google") has fully complied with the Court's July 15 Order (the "Order") on the three interrogatories at issue in Digital Envoy's motion. The Court absolutely did not, as Digital Envoy repeatedly claims, order Google to "fully and completely respond" to the massively burdensome, multi-part interrogatories demanding Google dissect each of millions of relationships with Google network members. To the contrary, in its Order, the Court explained that Digital Envoy "has failed to establish any link between its claims that Google exceeded the scope of its License and discovery regarding Google's agreements, revenue, negotiations, and communications with Google network members." Order at 6:16-18. Indeed, Digital Envoy has since conceded it is "out of court" on its claim concerning Google's network. Its contention now that the Court nevertheless ordered production of such information is preposterous.

What the Court actually ordered was that Google further respond to the interrogatories "to the extent" that its original responses were limited to AdSense for Content. Google thus supplemented its responses to provide information on its AdSense for Search program as well. Digital Envoy is entitled to no more. It is certainly not entitled to have the Court reconsider its objectionable interrogatories.

Digital Envoy's demand for additional documents is equally meritless. Again, Google has complied fully with the Court's Order that it provide "all responsive documents concerning its AdSense for Search and AdSense for Content programs for its top one hundred advertisers during the License period." Order at 6. Google has produced all such documents located after a thorough search. There is nothing more to compel.

Finally, for the first time, Digital Envoy seeks an order compelling corporate deposition testimony. That demand comes six months after the deadline for motions to compel set forth in the Scheduling Order. It also comes months after the discovery cut-off, in violation of Local Civil Rule 26-2. The demand for depositions is thus time-barred. But the demand would fare no

better even if it were considered, as the topics on which Digital Envoy seeks testimony are patently objectionable.

For these reasons, Google respectfully requests that the Court deny Digital Envoy's motion to compel in its entirety.

## ARGUMENT

### I. DIGITAL ENVOY IS NOT ENTITLED TO FURTHER RESPONSES TO ITS INTERROGATORIES – GOOGLE FULLY COMPLIED WITH THE COURT'S JULY 15 ORDER

Digital Envoy's Interrogatory Nos. 6, 10 and 11 were facially objectionable. They called for Google to conduct complex, multi-step economic analyses for each of hundreds of thousands of publishers and millions of websites in the Google advertising network. Digital Envoy demanded to know, for each of the millions of websites in Google's network: (1) the revenue, by month and website, received by Google for the placement of advertisements on the website where the placement involved the use of Digital Envoy's technology; and (2) how much revenue from Google's network web sites was from AdSense for Search and how much was from AdSense for Content. They further demanded Google specify (3) the AdSense for Search revenue associated with *each site*; (4) the AdSense for Content revenue associated with *each site*; and (5) the cost of revenue for *each revenue listing* for *each site*. Finally, *for each revenue listing* for *each site*, Digital Envoy demanded that Google (6) segregate the revenue listing by advertisers who selected "all countries" when the ad was enabled versus advertisers who selected something else. *See* Motion at 2 (quoting Interrogatory Nos. 6, 10 and 11).

Google detailed the mammoth burden associated with these interrogatories in opposing Digital Envoy's first motion to compel. *See generally* Declaration of Kim Malone In Support of Google Inc.'s Opposition to Digital Envoy's Motion to Compel (filed June 1, 2005). It also explained that the information relating to Google's network partners was irrelevant. *See* Google Inc.'s Opposition to Digital Envoy's Motion to Compel (filed June 1, 2005) at 4-7.

In its July 15 Order, the Court sustained Google's relevance objection barring Digital Envoy from obtaining evidence concerning Google's network partners. According to the Court, Digital Envoy had *"failed to establish any link between its claims that Google exceeded the*

*scope of its License and discovery regarding Google's agreements, revenue, negotiations, and communications with Google network members."* Order at 6:16-18 (emphasis added).[1] Since then, Digital Envoy has admitted that it is "out of court" on the actual damages theory it offered as justification for obtaining such information. *See* Declaration of David L. Lansky ("Lansky Decl.") Ex. A (Transcript of September 21, 2005 Hearing) at 35-36 (counsel for Digital Envoy: "[w]e're out of court on that . . . . We're on unjust enrichment and reasonable royalty."). Digital Envoy's renewed demand for a mountain of information on Google's network partners is thus completely unjustified.

Digital Envoy reveals the weakness of its position by basing it entirely upon an obvious misreading of the Court's Order. According to Digital Envoy, the Court ordered Google to provide "full" and "complete" respond to Interrogatories 6, 10 and 11. Motion at 2-3. Digital Envoy's only citation to the Order in support of its position is to the ruling that "Google shall provide responses which include both its AdSense for Content and AdSense for Search programs[.]" Motion at 2 (emphasis in original). But that sentence plainly does not overrule all of Google's objections and require "full" and "complete" responses to the interrogatories. *Id*. The Order says no such thing. And it would make no sense if it did given the Court's clear conclusions about the irrelevance of information concerning Google's network partners.

In truth, the entirety of the Court's holding with respect to Interrogatories 6, 10 and 11 was that:

> *to the extent* that Google limited its discovery responses to its AdSense for Content program and did not include responsive materials concerning its AdSense for Search program, its answers to interrogatory numbers six, ten and eleven are incomplete. Digital's motion to compel further responses to those interrogatories is, therefore, granted *to the extent* that Google shall provide responses which include both its AdSense for Content and AdSense for Search programs to Digital . . .

---

[1] The Court's comments barring Digital Envoy from obtaining information regarding Google network members are found in the portion of the Court's Order denying Digital Envoy's demands for documents. Nevertheless, the import is the same. The Court has already made clear that the information Digital Envoy is demanding yet again is simply not relevant.

GOOGLE'S OPPOSITION TO MOTION TO COMPEL FURTHER            3
RESPONSES TO ROGS. RFPS, AND 30(B)(6) NOTICES
C 04 01497 RSP

Order at 5:17-22 (emphasis added); *see also id.* at 3-5 (discussion on whether AdSense for Search is properly part of the case preceding holding regarding interrogatories). At no point in the Order did the Court ever suggest that Google's well-taken burden and relevance objections to the interrogatories were overruled. The Court merely ordered Google to supplement the responses it had already provided concerning AdSense for Content with similar information on AdSense for Search. That is precisely what Google did. *See* Declaration of Robert J. Waddell, Jr. ("Waddell Decl.") Exs. D, E (Google production of monthly breakdown of gross revenues, net revenues, allocated costs, and contribution margins first for AdSense for Content and subsequently for AdSense for Search). Digital Envoy is entitled to no more. It is certainly not entitled to resurrect its absurdly burdensome demands for information that the Court has already held is irrelevant.

## II. DIGITAL ENVOY IS NOT ENTITLED TO FURTHER DOCUMENT PRODUCTION AS THERE IS NOTHING TO COMPEL – GOOGLE FULLY COMPLIED WITH THE COURT'S JULY 15 ORDER

In its initial responses to Request Nos. 18 and 19, Google asserted "various objections [but] agree[d] to produce non-privileged documents concerning its use of Digital's data, including communications which refer to that data, as well as all revenue information and other responsive documents regarding its AdSense for Content program" but not regarding AdSense for Search. Order at 5-6. The Court's July 15 Order directed Google to supplement its responses to Request Nos. 18 and 19 with documents regarding AdSense for Search. Order at 6. The Court also limited "production to the top 100 advertisers in the AdSense programs during the relevant license period" and held that "Google must provide all responsive documents concerning its AdSense for Search and AdSense for Content programs for its top 100 advertisers during the license period[.]" *Id.* Google has fully complied with the Order.

To locate the responsive documents called for by the Order, Google undertook an extensive search. Waddell Decl., Ex. F; Declaration of Hilary Ware ("Ware Decl."), ¶ 3. At the conclusion of its search effort, Google supplemented its production with all of the documents it was able to locate. *Id.* These include all communications provided by Google to its top 100 advertisers concerning the AdSense program during the license period, as well as all revenue

projections provided to those advertisers for the program during that time. Lansky Decl., ¶ 5. That is precisely what the Order calls for. Order at 5-6. Google has repeatedly informed Digital Envoy that its production is complete. Waddell Decl., Ex. J (discovery correspondence). There is nothing more to produce and no basis for a motion to compel.

Digital Envoy also demands "all revenue information (and not merely summaries) for Google's top 100 advertisers." Motion at 5. Nowhere does Digital Envoy explain why such information is responsive to Document Request Nos. 18 and 19 which are the subject of its motion. In truth, it is not, as Google's revenue information is neither provided to its advertisers nor constitutes revenue projections. Digital Envoy seems to be claiming this information is responsive to Request No. 14, which is not the subject of this motion. In any event, Request No. 14 calls for "[d]ocuments sufficient to determine the identity of" Google's AdSense revenue from its top 100 advertisers during the relevant period. Waddell Decl., Ex. A. That is precisely what Google produced – a spreadsheet generated from its accounting database containing that information. Waddell Decl., Ex. F.[2] Digital Envoy has offered no explanation as to why it is entitled to any more than that under any request, much less the ones on which it has now moved.

### III. DIGITAL ENVOY IS NOT ENTITLED TO FURTHER DEPOSITIONS

Digital Envoy finally demands that Google present corporate designees to testify in response to a 30(b)(6) deposition notice it first sent to Google in March, formally served in May and to which Google objected on May 16, 2005. Lansky Decl., ¶ 6; Waddell Decl., Exs. N, O. Digital Envoy's motion is both procedurally and substantively without merit.

#### A. Digital Envoy's Motion to Compel Additional Depositions is Untimely

Under the Original Scheduling Order entered in this case, the deadline for filing all motions to compel was May 10, 2005. *See* Stipulation and Order to Extend Time to File

---

[2] While Digital Envoy is correct "that the spreadsheets [produced by Google] were compiled from other data that were available to Google but not produced to Digital Envoy," the underlying data is but a series of 1s and 0s residing in a massive database that, without more, would be incomprehensible and of no use to Digital Envoy. Motion at 5. The way to access the data is by running reports, which Google did, thereby providing Digital Envoy with "documents sufficient to determine" the information called for by the request.

Motions to Compel Discovery filed May 13, 2005 (Document 157). Upon the stipulation of the parties, the Court extended the motion to compel deadline until May 17, 2005. *Id.* Though well aware of that stipulated deadline,[3] Digital Envoy has never sought to extend it further, even though it has repeatedly requested that the Court extend other deadlines in the Scheduling Order.[4]

Digital Envoy's motion to compel deposition testimony comes almost six months after the Court-Ordered deadline. It also comes more than four months after the June 24, 2005 Court Ordered discovery cut-off for depositions, in plain violation of Local Civil Rule 26-2 ("no motions to compel fact discovery may be filed more than 7 court days after the fact discovery cut-off."). CIV. L.R. 26-2.

Digital Envoy offers no justification whatsoever for bringing such a long overdue motion. Instead, it sheepishly claims in a footnote that its motion is somehow proper because the parties continued to notice depositions "well beyond May 17, 2005, which was the close of written discovery." Motion at 6 n.2. (Emphasis in original) Digital Envoy is badly confused. May 17 was the Court Ordered deadline for motions to compel, not the close of written discovery. The Court Ordered discovery cut-off was April 29, 2005, although the parties agreed to extend the deadline for obtaining deposition discovery to June 24, 2005. *See* Stipulation and Order re: Amending Scheduling Order, entered April 12, 2005.[5] There have been no agreements further

---

[3] Digital Envoy filed two motions to compel on and just before May 17, reflecting consciousness of the Court-Ordered deadline.

[4] Through Orders upon the parties' stipulation, the Court has twice extended Digital Envoy's expert disclosure deadline. *See* Stipulation and Orders re: Amending Scheduling Order, filed April 12, 2005 and October 21, 2005. Both times, the parties' stipulation and the Court's order stated that the Scheduling Order shall otherwise remain "in full force and effect." *Id.*

[5] Given the parties' agreement to a June 24, 2005 cut-off for deposition discovery, Digital Envoy's defense that the parties continued to notice depositions in late May and early June is of no moment. Stipulation and Order re: Amending Scheduling Order, filed April 12, 2005. It is also misleading. Back in April, 2005 Google agreed that Digital Envoy would be permitted to redepose Matt Cutts on issues relating to Google's counterclaims which were added after his first deposition in the case. Google agreed further that Mr. Cutts would testify on specific topics in Digital Envoy's deposition notice relating to Google's counterclaims. In return, Digital Envoy agreed that Google could depose its corporate designee on a notice served on June 8, 2005. The parties have repeatedly agreed to continue the dates of those depositions, but have made no other
(continued...)

1 extending the deadline for motions to compel, much less an agreement extending it indefinitely
2 as Digital Envoy appears to believe.

3 There is simply no reason Digital Envoy could not have brought its motion to compel
4 deposition testimony months ago.[6] It has not offered any cause, much less good cause for relief
5 from the Scheduling Order, and has completely ignored Local Civil Rule 26-2. Its motion to
6 compel further depositions is time barred and should be denied for this reason alone.

**B.    Google Properly Objected To Digital Envoy's 30(b)(6) Topics**

Even if its motion were procedurally proper, Digital Envoy would not be entitled to the deposition testimony it demands. The topics set forth in its deposition notice are clearly objectionable.

**Topic No. 1 – Technical Information regarding AdSense**

Digital Envoy complains that Google's designee for Topic No. 1 in its 30(b)(6) notice was inadequate for two reasons. First, Digital Envoy claims that it was deprived of a witness to testify regarding AdSense for Search because, at the start of Mark Rose's deposition, counsel for Google indicated that Mr. Rose would be "testifying on behalf of the corporation solely with respect to the use of Digital Envoy's (sic) data in the Ad Sense For Content Program." Waddell Decl., Ex. M. However, Digital Envoy has not identified any questions that Mr. Rose refused to (or was instructed not to) answer because they were beyond the scope of the 30(b)(6) designation. Instead, Digital Envoy closed the deposition without any reservation of rights and then waited five and one-half months to claim that Mr. Rose did not answer questions that were never posed to him regarding AdSense for Search.

---

(...continued from previous page)
agreements concerning depositions, extensions of the discovery cut-off or extensions of the deadline for filing motions to compel. Lansky Decl., ¶ 7.

[6] The 30(b)(6) deposition for which Digital Envoy now demands witnesses was noticed in mid-May, prior to the motion to compel cutoff. Waddell Decl., Ex. N. Google objected to the deposition topics in May 2005. The allegedly inadequate testimony provided by Google's designee, Mr. Rose, was given in May 2005. *Id.,* Ex. M.

GOOGLE'S OPPOSITION TO MOTION TO COMPEL FURTHER          7
RESPONSES TO ROGS. RFPS, AND 30(B)(6) NOTICES
C 04 01497 RSP

1  Digital Envoy also complains that Mr. Rose was unable to answer three questions without
2  looking at the AdSense source code. And it makes the ridiculous assertion that "it is evident that
3  [Mr. Rose] had not looked at the code prior to his deposition." Motion at 7.[7] In reality, Digital
4  Envoy was eliciting highly specific technical information that no individual could possibly be
5  expected to have memorized, even assuming it were relevant.[8] Corporate designees are not
6  required to have an encyclopedic knowledge of computer source code. They are required to be
7  prepared, not omniscient. *EEOC v. American Int'l Group, Inc.*, No. 93 CIV. 6390 (PKL) RLE,
8  1994 WL 376052, at *3 (S.D.N.Y. July 18, 1994) ("Rule 30(b)(6) is not designed to be a
9  memory contest. It is not reasonable to expect any individual to remember every fact . . .").
10 Mr. Rose was well prepared and testified at length about Google's use of Digital Envoy's data.
11 Digital Envoy is not entitled to any further deposition.

### Topic Nos. 2 and 3 – License Compliance

While Digital Envoy lists Topic No. 2 in its motion (all efforts by Google to comply with any license agreement ever), there is no discussion of that extraordinarily broad topic other than the conclusory claim that it and Topic No. 3 are "relevant to whether or not Google's use of Digital Envoy's technology outside the scope of the license was willful." Motion at 8. The Court's recent Summary Judgment order disposes of that question, even assuming the topic was

---

[7] Of course, Digital Envoy never asked Mr. Rose whether he had looked at the computer code that interacts with Digital Envoy's data in preparation for his deposition. The question would make no sense as Mr. Rose works with that code every day. Indeed, Mr. Rose wrote portions of the code relating to how Google processed geodata. Lansky Decl., Ex. B (excerpts of the deposition transcript of Mark Rose) at 58-59.

[8] Specifically, Mr. Rose was asked: to identify whether "IP look ups [are] still done in all instances regardless of whether or not, ultimately, the query parsing results in the override of the look up" (Waddell Decl., Ex. M. at 36); to identify all fields other than keyword and IP addresses sent in requests the back-end ad system (*id*. at 43); and to identify other things (unrelated to Digital Envoy's technology) that are done to extract information from requests to the system (*id.* at 56). As Mr. Rose explained, he did not know the answers to those specific questions off the top of his head, and would need to actually look at the code implementing those processes to provide a definitive answer. Moreover, the three questions Mr. Rose was unable to answer did not relate to "uses made by Google of Digital Envoy's data or technology" the subject called in Topic No. 1. In the first question, the question's premise is that Google's lookup of an IP address in Digital Envoy's database is overridden (and thus Digital Envoy's data is not used). The remaining two questions discuss information other than IP addresses (the only data point used in connection with Digital Envoy's data), and thus do not relate to Google's use of the data.

1  properly drawn (which it is not). *See* Order filed November 8, 2005 (Document 366) at 4-6.

2  There is no basis for compelling further testimony on the topic.

3  Topic No. 3 suffers the same fate, as the Court's recent Order disposes of Digital Envoy's

4  claim that Google engaged in willful misconduct. *Id.* Further, the Court's Order makes plain

5  that Google's compliance procedures are irrelevant because Google's "AdSense campaign as

6  launched would have received compliance approval since, from its perspective, the program did

7  not violate the terms of the License Agreement." Order filed November 8, 2005 (Document 366)

8  at 6:3-5.[9] Accordingly, Digital Envoy is not entitled to further testimony regarding Google's

9  actions to ensure compliance with the terms of the License Agreement.

**Topic Nos. 5 and 6 – AdSense Revenue**

These topics seek testimony on Google's AdSense revenue "broken down by month, broken further down by AdSense customer, and broken down further by whether the advertisement generating the revenue was geo-targeting enabled[.]" Motion at 8. This is the same information regarding Google's hundreds of thousands of AdSense Network members to which this Court has already found Digital Envoy is not entitled. *See supra* at 2-4. Testimony about the documents to which Digital Envoy is not entitled is plainly unwarranted.

**Topic 7 – Discovery about Discovery**

Digital Envoy's Topic No. 7 demands corporate testimony regarding Google's "search for and retrieval of documents" responsive to Digital Envoy's "discovery requests." Motion at 10. Digital Envoy thus demands discovery about discovery – information that is simply not relevant to its claims or defenses under Federal Civil Procedure Rule 26(b)(1).[10]

---

[9] All of Google's percipient witnesses have testified on this subject during their depositions, and Google has offered to adopt their testimony as its own. Waddell Decl., Ex. C. There is no justification for re-deposing these witnesses or forcing a new witness to review and regurgitate the same testimony.

[10] That is all the more true absent any evidence that Google's production was somehow deficient. Digital Envoy's "evidence" of purported gaps in Google's production does not contradict Google's position that it has diligently produced all responsive documents. While Digital Envoy claims to have located a publicly available patent application that Google did not produce, Digital Envoy fails to explain why the document is relevant, what request it is responsive to, or why Google is obligated to specially produce that and other publicly available

(continued...)

GOOGLE'S OPPOSITION TO MOTION TO COMPEL FURTHER         9
RESPONSES TO ROGS. RFPS, AND 30(B)(6) NOTICES
C 04 01497 RSP

In any event, Digital Envoy should not be entitled to depose a corporate designee on the *process of discovery* in this action. Digital Envoy does not seek to learn *facts* about the custodial history of any *evidence* in this case; rather, it seeks to learn how counsel for Google (both outside and in-house) conducted discovery and interacted with Google employees. Ware Decl., ¶ 2. Such "discovery about discovery" has been routinely rejected by other courts. In *Hanan v. Corso*, No. 95-0292 (TPJ/JMF), 1998 U.S. Dist. LEXIS 11877, at *24 (D.D.C. Apr. 24, 1998), the Court refused to compel the production of all documents relating to defendant's previous efforts to respond to plaintiff's document requests:

> [t]o add another level of discovery in every case is fraught with peril; to do so in a case in which discovery is about to have its third anniversary without any clear showing that the discovery will lead to relevant evidence is truly foolhardy. I therefore will not permit any discovery about discovery.

*See also Diglio v. Air Prods. & Chems.*, No. 95-7818, 1998 U.S. Dist. LEXIS 3401, at **33-34 (E.D. Pa. Mar. 17, 1998) (refusing to compel "a request that defendant be directed to furnish proof satisfactory to plaintiff's counsel that all files have been searched which might contain information responsive to above-enumerated discovery requests, and that all employees who might harbor such information have been questioned concerning the existence of responsive material"); *Coleman v. General Elec. Co.,* No. 94-CV-4740, 1995 U.S. Dist. LEXIS 8186, at **3-5 (E.D. Pa. June 8, 1995) (granting protective order from Rule 30(b)(6) deposition concerning "efforts to locate documents responsive to each and every document request [and] . . . to find information responsive to each and every interrogatory", reasoning: "Details and patterns of counsel's investigation clearly will reveal counsel's mental impressions including strategy decisions."). For the very same reasons, this Court should reject Digital Envoy's motion to compel "discovery about discovery."

---

(...continued from previous page)
documents. As to the document referenced by Susan Wojcicki, she did not, as Digital Envoy contends, indicate that she found a responsive communication between Google and publishers regarding AdSense. Waddell Decl., Ex. JJ. Rather, she described an internal, draft. There is no evidence that such an email was ever sent to publishers. *Id*. In reality, the email was not responsive to Digital Envoy's requests and, accordingly, it was not produced.

Finally, because Google's discovery efforts were conducted and/or directed by its counsel, the information Digital Envoy seeks to discovery is plainly protected by the attorney-client and work product privileges. Ware Decl., ¶ 2; *See* CAL. EVID. CODE § 954; *See, e.g., Aetna Cas. & Sur. Co. v. Superior Court*, 153 Cal. App. 3d 467, 479 (1984). For this reason as well, Digital Envoy is not entitled to testimony on the topic.

**Topic Nos. 9, 10 and 12 – Contention Interrogatories Regarding Google's Counterclaims and Affirmative Defenses**

Digital Envoy improperly seeks to depose a Google representative on Google's counterclaims and affirmative defenses. It testimony on:

- "All damage claimed by Google in its counterclaims, including the causation of such damages" (Topic No. 9);
- "All affirmative defenses raised by Google" (Topic No. 10); and
- "The factual basis for [Google's] claim that Digital Envoy disclosed each of the alleged trade secrets . . . in [Google's] 2019(d) disclosure" (Topic No. 12).

Citing Federal Civil Procedure Rule 26(b) for the proposition that it "permits broad latitude in discovery" Digital Envoy argues that its contention interrogatories masquerading as deposition topics are thus "within the permissible bounds of the Federal Rules[.]" Motion at 10-11. But "[e]ven under the present-day liberal discovery rules, [a party] is not required to have counsel 'marshal all of its factual proof' and prepare a witness to be able to testify on a given defense or counterclaim." *In re Independent Ser. Orgs. Antitrust Litig.*, 168 F.R.D 651, 654 (D. Kan. 1996); *Smithkline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, *9 (N.D. Ill. Jan. 24, 2000) (same). Indeed, although Digital Envoy once had "a right to discover the facts upon which [Google] will rely for its defense and counterclaims, [Digital Envoy's] attempt to discover those facts through a Rule 30(b)(6) deposition is overbroad, inefficient and unreasonable. It also implicates serious privilege concerns[.]" *In re Independent Ser. Orgs. Antitrust Litig.*, 168 F.R.D at 654.

The complex topics Digital Envoy seeks to cover are far beyond the purview of non-attorney or non-expert witnesses. For instance, testimony about the damages caused by Digital Envoy's disclosure of Google's trade secrets (*see* Topic No. 9) is fodder for an expert witness,

not a 30(b)(6) representative. Likewise, "no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party like [Google]." *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 286 (N.D. Cal. 1991), *rev'd on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991).

In reality, the bases for Google's contentions and affirmative defenses have been developed throughout the course of discovery in this litigation, and the determination as to whether a particular fact has relevance to any given legal claim or defense would necessarily be made by Google's attorneys.[11] Such information and the legal implications thereof is best addressed by attorneys responding to contention interrogatories, not by oral testimony of a Rule 30(b)(6) witness. *Id.* at 286-287 (contention interrogatories, not Rule 30(b)(6) testimony, were the proper device to elicit discovery on a party's contentions and affirmative defenses); *Exxon Research and Eng'g Co. v United States*, 44 Fed. Cl. 597, 601-02 (Fed. Cl. 1999) (same); *United States v. District Counsel of New York City*, No. 90 CIV. 5722 (CSH), 1992 WL 208284, at *15 (S.D.N.Y. Aug. 18, 1992) (same); (denying motion to compel; holding that requiring party "to marshal all of its factual proof and then provide it to [the witness] so that she could respond to what are essentially a form of contention interrogatories[,] [a]side from any issues of privilege . . . would be highly inefficient and burdensome"). In short, the only way for Google to provide a deponent to testify on these topics would be to put its counsel up for deposition. But any inquiries of counsel regarding Google's claims or defenses indisputably trespass on areas of work product and attorney-client privilege. *Smithkline Beecham Corp.*, 2000 WL 116082, at \*\*9-10; *District Counsel of New York City*, 1992 WL 208284, at \*\*15-16. Accordingly, Digital Envoy's motion to compel testimony on Google's contentions and affirmative defenses should be denied.

---

[11] Indeed, many of the underlying facts are contained in documents designated by Digital Envoy as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and, as such, could not even be shared with employees of Google.

**Topic 14 – Analyses re: Measurement of Improvement Between Geo-Targeted vs. Non-Geo-Targeted Advertisements**

Despite Digital Envoy's unsubstantiated rhetoric (Motion at 11-12), Google has not analyzed the "measure of improvement in performance . . . associated with geo-targeted vs. non-geo-targeted advertisements[.]" (Topic 14). Ware Decl., ¶ 4 ("After reasonable and repeated inquiries over several months, I have determined to the best of my abilities that Google has not undertaken any analysis of any measure of improvement in performance of advertisements associated with geo-targeted vs. non-geotargeted advertisements."). Absent any such analyses, Google cannot produce a witness to provide the requested testimony. Digital Envoy's motion to compel is pointless.

The evidence cited by Digital Envoy does not remotely suggest that Google measured and analyzed the improvement between geo-targeted and non-geo-targeted advertisements. The documents referenced in Digital Envoy's first four bullet points (regarding various forecasts and "reporting tools to measure results") do not even purport to relate to geotargeting, let alone a measure of improvement between geo-targeted and non-geo-targeted advertisements. Motion at 11. Nor does Exhibit 62 (Waddell Decl., Ex. JJ) contain a "internal case study demonstrat[ing] that geo-targeted advertisements generated a *117 percent increase* in 'click-thrus' over non-geo-targeted advertisements" as Digital Envoy contends. Motion at 11. That is simply nowhere in the document. Waddell Decl., Ex. JJ.[12] Finally, Digital Envoy cites to an article published the day before it filed its motion in which a Google executive opined that "[i]f someone is coming from a particular location, a certain ad may be more popular there." Motion at 12; Waddell Decl., Ex. HH. This common sense comment is hardly evidence that Google

---

[12] A different document (not cited in Digital Envoy's motion) does reference a 117% increase in clicks when using one type of geo-targeting vs. *another type of geo-targeting*. *See, e.g.,* Lansky Decl., Ex. C (excerpt from Marissa Mayer deposition transcript) at 119-20. This, however, is not evidence that Google measured any improvement between geo-targeted and *non-*geo-targeted advertisements, as the deposition topic calls for.

1   measured the improvement between geo-targeted and non-geo-targeted advertisements and then

2   analyzed the measurement. *Id.*[13]  There is no basis for compelling testimony on this topic either.

## CONCLUSION

For the foregoing reasons, Digital Envoy's motion to compel further discovery responses should be denied in its entirety.

Dated: November 14, 2005

WILSON SONSINI GOODRICH & ROSATI
  Professional Corporation

By:  /s/ David H. Kramer
        David H. Kramer

Attorneys for Defendant/Counterclaimant
Google Inc.

---

[13] Lacking any evidence demonstrating that Google analyzed some measurement of the purported improvement between geo-targeted and non-geo-targeted advertisements, Digital Envoy attempts to broaden the topic on the fly, claiming that "[i]mportantly, Digital Envoy's request is not limited to formal, commissioned studies, but calls for testimony of regarding [sic.] Google's internal positions (including speculation) regarding the value of geotargeted advertisements." Motion at 12. But the Topic clearly does not call for speculation regarding the value of geotargeted advertisements. It calls for "analysis . . . regarding any measure of improvement in performance . . . associated with geo-targeted vs. non-geo-targeted advertisements[.]" Motion at 11. Again, Google has conducted no such analysis. Ware Decl., ¶ 4.