P. CRAIG CARDON, Cal. Bar No. 168646
BRIAN R. BLACKMAN, Cal. Bar No. 196996
KENDALL M. BURTON, Cal. Bar No. 228720
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:    415-434-9100
Facsimile:    415-434-3947

TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
LUKE ANDERSON (Admitted *Pro Hac Vice*)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5500
Facsimile: 404.443.5751

Attorneys for DIGITAL ENVOY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC.,<br><br>　　　　Plaintiff/Counterdefendant,<br><br>　　v.<br><br>GOOGLE, INC.,<br><br>　　　　Defendant/Counterclaimant. | Case No. C 04 01497 RS<br><br>**[REDACTED VERSION]**<br><br>**DIGITAL ENVOY'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO ITS INTERROGATORIES, REQUESTS FOR PRODUCTION OF DOCUMENTS, AND 30(b)(6) DEPOSITION NOTICES**<br><br>Date:　　　　December 5, 2005<br>Time:　　　　10:00 a.m.<br>Courtroom:　4, 5th Floor<br><br>The Honorable Richard Seeborg |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT AND CITATION OF AUTHORITIES ...................................................... 2

    A. Google Has Not Complied With the Court's July 15, 2005 Order. ......................... 2

        1. Interrogatories 6, 10, and 11 .......................................................................... 2

        2. Requests for Production 18 and 19. .............................................................. 3

    B. Google Has Failed to Satisfy Its Obligations Under Federal Rule 30(b)(6). ............ 4

        1. Topic Number 1 – Google's Use of Digital Envoy's Data in AdSense. ........ 5

        2. Topics 2 and 3 – Google's Compliance Programs. ...................................... 5

        3. Topics 5 and 6 – Google's AdSense Revenue. ............................................. 6

        4. Topic 7 – The source and search for relevant documents and information. ..................................................................................................... 7

        5. Topics 9, 10, and 12 – The factual bases for Google's affirmative defenses and counterclaims. ........................................................................... 9

        6. Topic 14 – Analyses of geotargeted advertisements. .................................. 10

III. CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

E-Systems, Inc. v. Monitek, Inc.,
 720 F.2d 604 (9th Cir. 1983) .................................................................................. 9

Exxon Research and Eng'g Co. v. United States
 944 Fed. Cl. 597 (Fed. Cl. 1999) ............................................................................ 9

Green v. Baca,
 226 F.R.D. 624 (C.D. Cal. 2005) ........................................................................... 7

Hickman v. Taylor,
 329 U.S. 495 (1947) ........................................................................................... 1, 7

McCormick-Morgan, Inc. v. Teledyne Industries, Inc.,
 134 F.R.D. 275 (N.D. Cal. 1991) ......................................................................... 10

Santa Maria v. Pacific Bell,
 202 F.3d 1170 (9th Cir. 2000) ................................................................................ 9

Shoen v. Shoen,
 5 F.3d 1289 (9th Cir. 1993) .................................................................................... 7

United States v. Procter & Gamble Co.,
 356 U.S. 677 (1958) ................................................................................................ 1

### FEDERAL STATUTES

Federal Rules of Civil Procedure
 Rule 26 ..................................................................................................................... 7
 Rule 26(a)(1) ........................................................................................................... 7
 Rule 37 ..................................................................................................................... 1
 Rule 37(a)(3) ........................................................................................................... 1
 Rule 26(b)(1) ........................................................................................................... 7
 Rule 30(b)(6) .................................................................................................. 1, 4, 9

## I. INTRODUCTION

The Federal Rules of Civil Procedure contemplate broad and liberal discovery by the parties in the service of finding facts and clarifying the true issues in dispute in the litigation. The Federal Rules were intended to serve "(1) as a device . . . to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). These rules should "make trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). In furtherance of these goals, Rule 37 makes plain that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3).

Yet, Google's posture throughout the discovery process in this case has been (and continues to be) antithetical to these foundational principles. Google

- Refuses to provide information or produce documents plainly relevant to the claims and defenses in this lawsuit, which Digital Envoy properly requested and the Court ordered produced in its July 15, 2005 Order Granting in Part and Denying in Part Digital's Motions to Compel and Denying Motion for Sanctions ("July 15 Order"); and

- Refuses to make witnesses available on topics central to issues and defenses in this lawsuit, which Digital Envoy properly noticed pursuant to Rule 30(b)(6) and which Digital Envoy has continued to seek in good faith negotiations with Google. Moreover, the Rule 30(b)(6) witnesses Google did produce for deposition were insufficiently prepared to address the most basic issues relevant to the topics on which Google produced them.

In justification of its refusal to engage in meaningful discovery, Google mounts highly technical and inaccurate arguments based on narrow interpretations of Digital Envoy's requests and this Court's discovery order. Indeed, Google's behavior threatens the very truth seeking that is at the heart of the Federal Rules. Despite Google's continued and vehement assertions, Digital Envoy's discovery requests are not overly burdensome and do not seek irrelevant information (nor are they "frivolous"). Rather, they seek information that is crucial to a full and proper analysis of the issues in this case, and there is no justification for Google to continue to withhold meaningful responses.

## II. ARGUMENT AND CITATION OF AUTHORITIES

### A. Google Has Not Complied With the Court's July 15, 2005 Order.

#### 1. Interrogatories 6, 10, and 11.

Interrogatories 6, 10, and 11 seek detailed information about Google's AdSense revenue, during the time period in which Google admittedly incorporated Digital Envoy's trade secrets into its AdSense program. The July 15 Order noted in the subsection addressing these interrogatories that "Google states that *all non-privileged documents related to its AdSense for Content program will be produced*," which reasonably presumes that Google had, or would, fully respond to these interrogatories. *See* July 15 Order at 4. After a detailed analysis rejecting Google's position that only AdSense for Content was at issue, the Court ruled that "to the extent that Google limited its discovery responses to its AdSense for Content program and did not include responsive materials concerning its AdSense for Search program, its answers to interrogatory numbers six, ten, and eleven are incomplete" and ordered Google to supplement its incomplete responses. *See id.* at 5. Nowhere in the Order does the Court sustain any of Google's many objections to these interrogatories or otherwise find Google's responses to be sufficient.

Google is attempting to take a second bite at the apple, forcing Digital Envoy to re-argue and re-justify its entitlement to discovery based on issues already (and extensively) briefed, argued, and ruled upon by the Court. The revenue information sought by these interrogatories is highly relevant to the issues in this case. For example, these interrogatories ask Google to disclose how much of its AdSense revenue was achieved through the placement of advertisements for which the advertiser placed a geographic limitation on the advertisement.[1] In other words, Digital Envoy wants to know how often and by what magnitude advertisers exercised their option to avail themselves of Google's geo-targeting capabilities – made possible in large part due to Google's incorporation of Digital Envoy's trade secret into AdSense. This is a fundamental piece of information that relates directly to Digital Envoy's unjust enrichment claim and Google's use of

---

[1] If an advertiser elected to have its advertisements served to users on any basis other than "all countries," then the geotargeting capability of AdSense was implicated, including IP address-based geotargeting made possible by Google's use of Digital Envoy's technology.

-2-

1 Digital Envoy's technology. Google does not suggest that such information is unknowable or
2 unobtainable; instead, Google simply refuses to provide it.

### 2. Requests for Production 18 and 19.

Likewise, the Court's Order could not have been more clear in ordering Google to respond fully to Digital Envoy's requests, which include "all non-privileged documents concerning its use of Digital Envoy's data, including communications which refer to that data, as well as *all* revenue information and *other responsive documents*" regarding both AdSense for Content and AdSense for Search, which Google may limit to its top-100 advertisers. *See* Order at 5-6 (emphasis added). To reiterate, request number 18 seeks "[a]ll documents *relating to* information other than web site information provided by Google to then existing or prospective" AdSense customers. *See* Waddell Decl., Exs. A-B (emphasis added).

Nevertheless, Google contends that it need not produce documents related to the actual advertising campaigns negotiated, set up, and implemented by Google with the advertisers – even though those advertising campaigns would reveal the scope and magnitude of the advertisers' use of the geotargeting capabilities of AdSense (and, as such, plainly *relate* to Google use of Digital Envoy's data). For example, the number of instances in which advertisers elected to geotarget their advertisements to particular users is *highly* relevant to an analysis of the importance and popularity of the geotargeting capabilities of AdSense. Likewise, communications between Google and the advertisers (or their advertising agencies) regarding the scope and substance of any such campaigns, including inquiries from the advertisers (or their advertising agencies) about the functionality and capabilities of AdSense, including geotargeting, is highly relevant and called for by these requests.

Google also mischaracterizes its obligation to respond to request number 19, which calls for "[a]ll documents containing any projections or expectation relating to revenue or profit or other economic factor relating to . . . AdSense . . . relating to the placement of advertisements on any web site, specifically including any projection relating to the use of Digital Envoy's technology in placing advertisements on third party web sites." *See* Waddell Decl., Exs. A-B. Although the Court did permit Google to limit its production to the top 100 advertisers during the license period,

-3-

Google is wrong when it states that it this request is limited to "revenue projections provided to those advertisers." *See* Opposition at 5. Instead, the request calls for all documents containing *any* projection or expectation related to revenue or profit or other economic factor, including analyses internal to Google or which were never provided to the advertisers at all.[2] Google's self-described limitations on its discovery obligations reveal that it has produced (or searched for) less than it was obligated to do.

**B.    Google Has Failed to Satisfy Its Obligations Under Federal Rule 30(b)(6).**

Google attempts to preempt any discussion of its failure to produce witnesses in response to Digital Envoy's Rule 30(b)(6) notice by claiming that deposition discovery is over. However, as Google even admits, deposition discovery has continued beyond the cutoff date for written discovery, with Google noticing many depositions of Digital Envoy and nonparties thereafter. *See* Digital Envoy's Brief in Support of Motion to Compel at 6, n.2. Moreover, Google has continued to insist that it is entitled to additional Rule 30(b)(6) deposition testimony of Digital Envoy, even serving a new notice as late as August 26, 2005. *See* Waddell Decl., Ex. FF. Most importantly, the parties were continuing to negotiate and discuss the very issues related to Google's corporate witness designations and schedule those depositions until well after the date which Google now claims was the last possible date to conduct deposition discovery.[3] It is sharp practice indeed for Google to withdraw effectively from such discussions and refuse to make witnesses available.

Google's substantive objections to Digital Envoy's Rule 30(b)(6) deposition topics are also without merit:

---

[2]   Digital Envoy acknowledges that the July 15 Order limits Google's response to its top 100 advertisers; nevertheless, even as limited, any analyses (internal or otherwise) in Google's possession that that project or analyze the effect on revenue of targeted advertising, including geotargeted advertising, that relate in any way to its top 100 advertisers are responsive to this request. These would include internal analyses of Google's revenue potential or expectation that consider revenue generated or to be generated from Google's top 100 advertisers.

[3]   This is especially true considering that Google had been withholding responsive documents, the production of which it admittedly did not complete until September 1, 2005. Also, Google explicitly restricted the testimony of Mr. Rose, one of only two corporate designees Google has made, to AdSense for Content, which the Court later found to be without merit.

### 1. Topic Number 1 – Google's Use of Digital Envoy's Data in AdSense.

Google admits that it made its witness, Mark Rose, available only "with respect to the use of Digital Envoy's data in the AdSense for Content Program." *See* Opposition at 7. Because the Court has rejected Google's efforts to limit discovery to AdSense for Content, Google must provide a witness to testify regarding its use of Digital Envoy's data for AdSense for Search.[4] More importantly, Mr. Rose could not (or would not) answer basic and important questions about how Google used Digital Envoy's data. Google mischaracterizes the questions that Mr. Rose could not (or would not) answer. Each of these questions relate directly to how Google incorporates Digital Envoy's data in AdSense and how that data functions in the larger context of the AdSense program. Mr. Rose, however, could not even testify about whether Digital Envoy's data is accessed or relied upon in every advertising placement scenario – a key issue in this case (and plainly encompassed within the topic of how Google used Digital Envoy's data). Likewise, Google has repeatedly insisted in brief after brief that Digital Envoy's data is only a small part of the AdSense program[5], yet Mr. Rose would not provide any context for Google's use of the data. Mr. Rose's unwillingness (or inability) to provide comprehensive testimony regarding Google's incorporation of Digital Envoy's data into AdSense and AdSense's ad targeting renders his testimony incomplete and noncompliant.

### 2. Topics 2 and 3 – Google's Compliance Programs.

Google correctly notes that the Court recently held that no showing of willfulness on the part of Google is necessary for Digital Envoy's claim for unjust enrichment[6] due to Google's

---

[4] It is disingenuous for Google to assert boldly and finally prior to the deposition that its witness will *not* testify regarding AdSense for Search, and now suggest that it was somehow Digital Envoy's fault for not obtaining testimony on that topic. *See* Opposition at 7.

[5] *See, e.g.*, Google Inc.'s Brief in Opposition to Digital Envoy's Motion for Partial Summary Judgment at 3. Moreover, Mr. Rose submitted a declaration after his deposition that makes, generally, precisely this point. Google plainly intends to rely on Mr. Rose (or others) in its effort to minimize the contribution of Digital Envoy's data in AdSense. *See, e.g.*, Declaration of Mark Rose in Opposition to Digital Envoy's Motion for Partial Summary Judgment, ¶¶ 3-4. Digital Envoy, pursuant to this deposition topic, should be permitted to ask a competent and properly-prepared witness about the functionality of Digital Envoy's data *vis a vis* other factors in the search process.

[6] Or a reasonable royalty.

-5-

misappropriation of Digital Envoy's trade secrets. However, Google's program or efforts to communicate (or not) the limitations contained in the License Agreement are relevant to the issue of whether Google knew or should have known that its use of Digital Envoy's technology in AdSense was not permitted. For example, Digital Envoy seeks to discover evidence that will rebut Google's litigation contention that the only limitation on its use of Digital Envoy's data was a wholesale distribution of the entire database to third parties. Similarly, Google continues to contend that Digital Envoy is estopped from claiming misappropriation (or has waived its right to do so). A necessary element to these affirmative defenses is that Google reasonably relied on Digital Envoy's conduct. Therefore, Google's compliance efforts are plainly relevant to the issue of whether Google made any effort to communicate its interpretation of Digital Envoy's conduct to justify any "reasonable reliance." To the extent that the Google employees who incorporated Digital Envoy's technology into AdSense were never made aware of the License Agreement or discussions with Digital Envoy representatives, Google's claim of waiver or estoppel is severely undermined. Therefore, these topics remain quite relevant to the claims and defenses in this case, and Digital Envoy is entitled to discovery on these issues.

### 3. Topics 5 and 6 – Google's AdSense Revenue.

Google is simply wrong when it asserts that the testimony about AdSense revenue sought by topics 5 and 6 have been excluded by the Court. *First*, as set forth above in the discussion about interrogatories 6, 10, and 11, the Court's July 15 Order did not obviate Google's burden of responding to these interrogatories. (Even based on Google's own narrow and incorrect interpretation of its obligations, it is indisputably obligated to provide some form of response to these interrogatories; therefore, its refusal to provide testimony, even on any limited response, demonstrates that its hard-line position is untenable.) *Second*, Digital Envoy is entitled to testimony regarding the compilation of this revenue information, including any underlying assumptions and the nature of the data contained therein. Indeed, by Google's own admission, it ran "reports" to obtain the revenue information it did provide; yet, Google refuses to provide *any* information about these reports – such as what variables or information was used to obtain these "reports" or from what sources this information was obtained? Moreover, these "reports"

-6-

themselves are untitled and contain no explanation about what they purport to be.[7] Why Digital Envoy is not entitled to question a Google witness with knowledge, about the substance of this information, Google does not (or cannot) say.

        4.        **Topic 7 – The source and search for relevant documents and information.**

Digital Envoy seeks information relating to "search for and retrieval of documents." In its opening brief, Digital Envoy specifically noted that it was entitled to query, among other things, "the sources of potentially responsive documents with a properly-designated Google witness." Digital Envoy's Brief at 11. Although Google argues that such information "is simply not relevant to its claims or defenses under Rule 26(b)(1)[,]" Google fails to recognize that the Federal Rules expressly permit Digital Envoy to obtain a "description by category and location of all documents, data compilations, and tangible things that are in the possession, custody or control of [Google.]" *See* Fed. R. Civ. P. 26(a)(1)(B); *Green v. Baca*, 226 F.R.D. 624 (C.D. Cal. 2005) (quoting Rule 26). Additionally, courts have recognized the sources of information is relevant, and they have permitted depositions to obtain such information. *See, e.g., Hickman*, 329 U.S. at 503 ("the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether relating to the claim or defense of the examining party or of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things."); *Shoen v. Shoen*, 5 F.3d 1289, 1299 (9th Cir. 1993) ("Parties may obtain discovery regarding any matter, not privileged . . . including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter."). Therefore, Digital Envoy's request for deposition testimony on the source and search for relevant documents is both relevant and permissible.

---

[7] By way of example, Digital Envoy specifically seeks the amount of revenue achieved by Google through its placement of advertisements using Digital Envoy's technology. *See* Waddell Decl., Exs. A-B (interrogatories 6, 10, and 11). However, Digital Envoy is all but certain that Google will attempt to qualify and explain that the revenue numbers provided in response to these requests is something other than what Digital Envoy asked for. Digital Envoy is entitled to discover and explore these qualifications and explanations in the discovery process.

1    To date, Google has asserted repeatedly that it has conducted a thorough search for all
2  responsive documents. However, each time Google claimed that it conducted a thorough search,
3  Digital Envoy has been able to uncover, independently, responsive documents, which Google's
4  "thorough" search failed to uncover.[8] By way of example, during Ms. Wojcicki's 30(b)(6)
5  deposition, she testified that her search for responsive documents consisted of not much more than
6  a search her email inbox for documents containing the term "geotargeting." *See, e.g.*,
7  Supplemental Declaration of Robert J. Waddell, Jr. in Support of Digital Envoy, Inc.'s Motion to
8  Compel ("Supp. Waddell Decl."), Ex. B at 79-90.[9] Google's mantra is "there is nothing more –
9  take our word for it." However, considering these specific examples of Google's non-compliance
10 with its obligations, Digital Envoy seeks to discover, for itself, the location of potentially
11 responsive information and documents. To the extent that Google's so-called comprehensive
12 search has not included likely sources of information, Google's discovery responses remain
13 incomplete and must be supplemented.

---

[8]  One example of such a document is Google's patent application (publication number 20050050027 and titled "Determining and/or Using Location Information in an Ad System"), on which Mr. Mark Rose is a named inventor. Supp. Waddell Decl., Ex. A. Paragraph 0072 of Google's patent application expressly recites that "the present invention may use known techniques (such as that used by the "NetAcuity" product from Digital Envoy of Norcross, Ga.) to map Internet protocol ("IP") address and/or domain information to geolocation information." The exact product cited in Google's patent application is at the heart of this dispute. Another patent application, publication number 20050050027, also expressly cites Digital Envoy's geo-targeting capabilities. Digital Envoy is puzzled as to how this information, which has always been in Google's possession, is not a part of the documents that Google promised to produce in response to Digital Envoy's Request for Production of Documents. *See* Google Inc.'s Supplemental and Amended Responses to Digital Envoy's First Set of Document Requests, Supp. Waddell Decl., Ex. D, at 5.

[9]  The deficiency of Google's "thorough" search is evident from Google's own 30(b)(6) deposition testimony. For example:

**REDACTED**

Supp. Waddell Decl., Ex. B at 84.

### 5. Topics 9, 10, and 12 – The factual bases for Google's affirmative defenses and counterclaims.

Google agrees with Digital Envoy that Topics 9, 10, and 12 are proper subject matter for discovery. *See* Opposition at 11 (Google stated that Digital Envoy has "a right to discover facts upon which Google will rely for its defense and counterclaims."). However, Google argues that 30(b)(6) depositions are not the proper vehicle for obtaining such information. In short, Google has no problem with the substance of the requested information, but merely objects to the method by which Digital Envoy seeks to obtain the information.

In *Exxon Research and Eng'g Co. v. United States*, cited by Google in its Opposition, the court expressly noted that "[w]hether a 30(b)(6) deposition or contention interrogatories are more appropriate is decided on the facts of each case." 44 Fed. Cl. 597, 601 (Fed. Cl. 1999). In analyzing many cases addressing this issue, the court noted: the "attorney for the corporation is not at liberty to manufacture the corporation's contentions. Rather, the corporation may designate a person to speak on its behalf and it is this position which the attorney must advocate." *Id.* at 599-600. The court further noted that "[t]he Court understands that preparing for a Rule 30(b)(6) deposition can be burdensome. However, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form to conduct business." *Id.* at 600.

Therefore, in the same way, Google's attorneys are not at liberty to manufacture Google's contentions. Rather, Google's attorneys merely advocate the position that is provided by Google.[10] Thus, because Google enjoys the privilege of being able to use the corporate form to

---

[10] For example, Google's affirmative defense of laches requires a showing of circumstances that would estop Digital Envoy from obtaining relief. *E-Systems, Inc. v. Monitek, Inc.*, 720 F.2d 604 (9th Cir. 1983). The factual knowledge relating to such circumstances resides with Google, and not with Google's attorney. Similarly, Google's affirmative defense of equitable estoppel requires a showing of reasonable reliance. *Santa Maria v. Pacific Bell*, 202 F.3d 1170 (9th Cir. 2000). The factual knowledge relating to Google's reliance (*i.e.*, what Google relied on) resides with Google, and not with Google's attorneys. Also, Google, in its counterclaims, has alleged misappropriation of Google's trade secret by Digital Envoy. Therefore, the factual inquiry dealing with Google's reasonable efforts to maintain secrecy of its alleged trade secret is a proper subject of deposition discovery.

conduct business, Google must shoulder the concomitant obligation of designating a corporate representative that can speak to Google's contentions in the case.[11]

      6.    **Topic 14 – Analyses of geotargeted advertisements.**

Google reveals the unjustified narrowness of its position when it states that a document containing an analysis of the effectiveness of geotargeting is not an analysis of geotargeting. *See* Opposition at 13, n. 12. Based on Google's own document, there is a 117% percent increase in click-thrus when more specific geotargeting is used instead of more general geotargeting (which, by common sense, would suggest that regional targeting compared to NO targeting could be orders of magnitude higher). *See* Supp. Waddell Decl., Ex. C, at GOOG 012026. The fact that Google conducted at least one study regarding the difference between country-level targeting and region-level targeting (which both utilize Digital Envoy's technology), while claiming to conduct no studies concerning the most basic effectiveness of geotargeting is simply unbelievable. By Google's own admission, Google conducted analyses of the effectiveness of geotargeting, on which it must produce a witness to testify.

### III.    CONCLUSION

For the foregoing reasons, Digital Envoy respectfully requests that its Motion to Compel be granted.

---

[11] Google cites *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275 (N.D. Cal. 1991) for the proposition that 30(b)(6) depositions are the improper vehicle for exploring contentions. However, in *McCormick-Morgan*, the *same* topics were sought in *both* contention interrogatories and 30(b)(6) depositions. Thus, that court saw "no reason to permit the parties in th[at] case to pursue the kind of information . . . through more than one discovery device . . . ." *Id.* at 286. Here, Digital Envoy seeks to obtain the requested information through only one discovery device, namely, through a 30(b)(6) deposition.

-10-

DATED: November 21, 2005

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/ Brian Blackman
P. CRAIG CARDON
BRIAN R. BLACKMAN

TIMOTHY H. KRATZ (*Pro Hac Vice* To Be Applied For)
LUKE ANDERSON (*Pro Hac Vice* To Be Applied For)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5706
Facsimile: 404.443.5751

Attorneys for DIGITAL ENVOY, INC.