1  P. CRAIG CARDON, Cal. Bar No. 168646
   BRIAN R. BLACKMAN, Cal. Bar No. 196996
2  BRIAN D. ANDERSON, Cal. Bar. No. 221645
   SHEPPARD, MULLIN, RICHTER & HAMPTON  LLP
3  Four Embarcadero Center, 17th Floor
   San Francisco, CA 94111-4106
4  Telephone: (415) 434-9100
   Facsimile: (415) 434-3947
5
   Attorneys for Plaintiff/Counterdefendant
6  Digital Envoy, Inc

7  DAVID H. KRAMER, State Bar No. 168452
   DAVID L. LANSKY, State Bar No. 199952
8  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
9  650 Page Mill Road
   Palo Alto, CA 94304-1050
10 Telephone:  (650) 493-9300
   Facsimile:  (650) 565-5100
11
   Attorneys for Defendant/Counterclaimant
12 Google Inc.

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                   SAN JOSE DIVISION

16 DIGITAL ENVOY, INC.,                    | CASE NO.:  C 04 01497 RS

17         Plaintiff/Counterdefendant,     | **MOTION TO LEAVE TO FILE FOR RECONSIDERATION**

18    v.

19 GOOGLE INC.,

20         Defendant/Counterclaimant.

21

22              **I.        INTRODUCTION**

23        Pursuant to Civil Local Rule 7-9(b), Digital Envoy, Inc. ("Digital Envoy") seeks

24 leave to file a motion for reconsideration of the Court's November 8, 2005 Order ("Order")

25 granting in part and denying in part Google Inc.'s Motion for Partial Summary Judgment

26 Regarding Digital Envoy, Inc.'s Damages Claims.

27

28

## II.    ARGUMENT AND CITATION OF AUTHORITIES

The Court's Order correctly ruled that Section 8 of the parties' License Agreement did not apply to Digital Envoy's claim for unjust enrichment[1] authorized by and arising under California's Uniform Trade Secrets Act. Nevertheless, now Google is asking the Court to expand the application of certain findings in the Order in an effort to "bar[] any monetary recovery at all" by Digital Envoy in this action. *See* November 22, 2005 Order Granting Google's Request for Leave to File a Motion for Reconsideration at 1. However, the finding on which Google now seeks expanded application – namely that the evidence cannot establish, as a matter of law, that Google engaged in willful misconduct – failed to consider material facts presented by Digital Envoy to the Court. Digital Envoy respectfully submits that this constitutes error, and for this reason, Digital Envoy seeks leave to file a motion for reconsideration on this issue. *See* Civil L.R. 7-9(b)(3) (authorizing a motion for reconsideration where material facts presented to the court were not considered).

In particular, the Order fails to consider that, according to Google's subjective understanding of its rights under the license, it was prohibited from engaging in precisely the conduct in which it ultimately engaged by incorporating Digital Envoy's technology into AdSense. The Order states that "the email correspondence [presented by Digital Envoy] simply sets forth Google's confirmation that it would not ship Digital's database libraries to third parties or allow third parties to access the data directly." Order at 5 (citing Declaration of Robert J. Waddell, Jr. in Support of Digital Envoy's Supplemental Brief in Opposition to Google Inc.'s Motion for Partial Summary Judgment Regarding Digital Envoy, Inc.'s Damages Claims ("Waddell Decl."), Exh. 3). However, the evidence submitted by Digital Envoy actually demonstrates that Google knew the license restricted far more than merely shipping or allowing direct access to Digital Envoy's technology; the evidence demonstrates that Google understood that it also was prohibited from allowing third parties to have indirect access to Digital Envoy's

---

[1]    Or for a reasonable royalty.

-2-

1   technology and from "repackaging" the databases into Google's own product offerings to third

2   parties.[2]  The Order's undue emphasis exclusively on the prohibitions against Google's actual

3   "shipping" or allowing "direct access" does not consider material evidence that establishes that

4   Google, in fact, understood the License prohibitions to be much broader than those cited by the

5   Court.

6        Specifically, the Court failed to consider and did not address the following pieces of

7   evidence:

8   • The email correspondence between Digital Envoy and Google, along with the deposition

9      testimony of key witnesses, plainly show that Google understood the license restrictions on

10     distribution and sharing to mean that Google could apply Digital Envoy's technology only

11     against *Google's own information* (*i.e.*, but not to IP addresses of third-party web sites).

12     *See* Waddell Decl., Ex. 3.  Digital Envoy's Robert Friedman wrote to Google's Steven

13     Schimmel, stating: "I assume that these services or indices would not involve shipping our

14     database to third parties (or giving them direct access to our database) and ***would merely***

15     ***be applications that are created by applying our country information to Google's own***

16     ***information (as I think we discussed on the phone).***"  Waddell Decl., Ex. 3 at GOOG

17     009359 (emphasis added).  Mr. Friedman also testified that he told Mr. Schimmel: "if [any

18     new Google product] needed our technology to operate, then they would either – Google

19     would come to use for a separate license or the third party themselves would have to get a

20     separate license."  Waddell Decl., Ex. 2 at 124-25.

21     A reasonable inference from this undisputed evidence would be that:

22

23
    _____

24  [2]  Also, the Court, in prior orders, seemed to note that Digital Envoy's evidence could support
    a finding that Google could not "repackage" or provide indirect access to Digital Envoy's
    technology.  *See, e.g.*, May 20, 2005 Order Denying Google's Motion for Summary
25  Judgment and Granting Google's Motion for Partial Summary Judgment at 9; June 16, 2005
    Order Denying Google's Motion for Summary Judgment on Trade Secret Claim at 2 (noting
26  that the Court has not made a factual finding that Google acted upon a reasonable, but
    mistaken, interpretation of the License Agreement and that the evidence "creates triable
27  issues . . concerning the scope of the License" including whether Google would be permitted
    "to provide third parties indirect access to Digital's technology by including it within
28  Google's services").

1         1.   While negotiating the Agreement, Google and Digital Envoy discussed limitations

2              which only allowed Google to create applications by applying Digital Envoy's data

3              to Google's data, and not to data from third party web sites; and

4         2.   The parties intended the Agreement to reflect these limitations.

5    •   In response to a Digital Envoy investor's query:[3] "Did I understand from our conversation

6    that your agreement w/ DE allows you to use their raw IP data for internal consumption,

7    but *not to resell products or services based on it*?", Google's Matthew Cutts responded:

8    "[T]hat's basically correct." *See* Declaration of Timothy Kratz in Opposition to Google's

9    Motion for Partial Summary Judgment, Ex. H .[4]  A reasonable inference from this email

10   would point to Cutts' reference to "advertising" to mean "Google's AdWords advertising –

11   the only Google advertising in effect at that time, and the only use that Matt Cutts knew

12   Google was making of Digital Envoy's data.  (Cutts admits that he did not learn that

13   Google was using Digital Envoy's data for third party web sites until Digital Envoy asked

14   Google, in February 2004.  *See* Decl. of Timothy Kratz in Opposition to Google's Motion

15   for Partial Summary Judgment, Ex. N).

---

18   [3]   In April 2001, a prospective investor in Digital Envoy confirmed with Google that Google
     did not have distribution rights to Digital Envoy's technology.  That investor explained:

20        I sought clarification of Google's understanding of its prohibition against reselling
          products or services based on Digital Envoy's technology or data due to my
21        understanding that Digital Envoy's business model was based on the ability to
          license its technology to web site owners who would be interested in the
          technology for a variety of purposes and it was imperative that Google was
22        prohibited from sharing the benefit of the technology with potential licensees of
          Digital Envoy without either expanding its license or requiring a license to be
23        obtained by the third party.

24   *See* Declaration of Andrew Lindner in Opposition to Google's Second Motion for
     Summary Judgment. ¶5 [Docket No. 139].

26   [4]   Google's disingenuous excuse for this email is that Matt Cutts mentioned that Google used
     Digital Envoy's technology in its "advertising."  However, this is of no help because this
27   email was written in April 2001 – more than a year before Google's first use of Digital
     Envoy's technology for third-party sites (which was beyond the permission granted in the
28   License).

---

W02-SF:5BB\61477284.1        -4-        MOTION TO LEAVE TO FILE FOR
RECONSIDERATION

- Digital Envoy confirmed with Google, in writing and by phone, that Google could not distribute or share Digital Envoy's technology with third parties or repackage/bundle Digital Envoy's technology with Google's technology and provide that bundle to third parties. *See* Waddell Decl., Ex. 1 at 185 and Ex. 2 at 211

- At the time of the negotiations, the only use of Digital Envoy's data that the parties discussed was use by Google for its own web sites. *See* Waddell Decl., Ex. 1 at 205. And, as Google admits, the parties *never discussed at any point* – either before or after the signing of the agreement – allowing Google to look up IP addresses of users on third-party web sites. *See id.*, Ex. 1 at 234.

Therefore, although the Court correctly notes that Google's "shipment" or provision of "direct access" to Digital Envoy's technology could be outside the bounds of the License Agreement, *see* Order at 5, the Order fails to consider or address that the parties' explicit understanding (pre-and post-dispute) that Google was also barred from incorporating of Digital Envoy's technology into Google products provided to third parties – such as Google's AdSense programs. Indeed, it is worth noting that Google has proffered absolutely zero evidence that it believed that its use in AdSense was permitted.

Thus, although the Order states that "Google has consistently maintained that it honored this limitation in the parties' Agreement," Google's position is actually that of its lawyers in this litigation for there is no testimony or evidence from any Google witness contemporaneous with Google's decision to incorporate the technology into AdSense suggesting that Google was "honoring" or even considering the License Agreement.[5] In fact, the only evidence before the

---

[5] The Order states "[Google's] Adsense campaign as launched would have received compliance approval since from [Google's] perspective, the program did not violate the terms of the License Agreement." *See* Order at 6. However, this conclusion assumes too much and is entirely speculative considering that the Google agents in communication with Digital Envoy, and responsible for negotiating the License Agreement, Messrs. Cutts and Schimmel, were not involved in *any* compliance effort. Moreover, based on the actual statements of Messrs. Cutts and Schimmel, a juror could quite reasonably conclude that they would never have approved Google's incorporation of Digital Envoy's technology into AdSense.

1  Court suggests that Google *knew* that it was not permitted to use Digital Envoy's technology in

2  third-party applications such as AdSense.

3        At issue here is Google's state of mind when it executed the License Agreement (*i.e.,*

4  whether Google acted in disregard of a known risk or with an intent to harm digital envoy).

5  "When an issue requires determination of state of mind, it is unusual that disposition may be

6  made by summary judgment." *Consolidated Electric Co. v. U.S.,* 355 F.2d 437, 438 (9th Cir.

7  1966). "If under any reasonable construction of the evidence and any acceptable theory of law,

8  one would be entitled to prevail, the summary judgment against him cannot be sustained."

9  *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999).[6] On a motion for summary judgment, a

10  trial court must "draw all reasonable inferences supported by the evidence in favor of the non-

11  moving party." *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002).

12        Given the above standards, based on the evidence presented, a reasonable juror

13  could find that Google *knew* that its use of Digital Envoy technology in AdSense was outside the

14  bounds of the License Agreement. That Digital Envoy cannot adduce a written admission on the

15  part of Google that it was planning deliberate harm of Digital Envoy is not surprising, nor is it

16  dispositive. *See Husain v. Olympic Airways,* 316 F.3d 829, 839 (9th Cir. 2002) ("Determining

17  willful misconduct is based on a subjective standard and can be satisfied through circumstantial

18  evidence."); *Colich & Sons v. Pacific Bell,* 198 Cal. App. 3d 1225, 1242 (1988) ("Ordinarily

19  whether an action constitutes willful misconduct is a question of fact." If a juror were to find, as

20  the Court in prior orders indicated one could, that Google *knew that* its use was outside the

21  bounds of the License Agreement, then that juror could also reasonably conclude that Google

22  had engaged in willful misconduct. *See, e.g., Rost v. United States,* 803 F.2d 448, 451 (9th Cir.

23  1986) ("Where an actor's conduct is of an unreasonable character and in disregard of a known

24  risk, or one that should have been known, and that risk is so great as to make it highly probable

---

27  [6]  Importantly, there is no requirement that the non-movant's theory of the case be the only
     reasonable explanation of the evidence – only that it be *a* reasonable explanation that a juror
28   could believe after considering the evidence.

1   that harm will follow, we term it willful misconduct and apply to it the consequences and legal

2   rules which we use in the field of intended torts.").

3                   **III.        CONCLUSION**

4           For the foregoing reasons, Digital Envoy respectfully requests that the Court grant

5   it leave to file a motion to reconsider.

6   DATED:  November 29, 2005

7                                   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

8

9                           By  _____

                                        P. CRAIG CARDON
10                                      BRIAN R. BLACKMAN
                                        BRIAN D. ANDERSON
11

12                                      TIMOTHY H. KRATZ (*Pro Hac Vice* To Be
                                        Applied For)
13                                      LUKE ANDERSON (*Pro Hac Vice* To Be
                                        Applied For)
14                                      MCGUIRE WOODS, L.L.P
                                        1170 Peachtree Street, N.E., Suite 2100
15                                      Atlanta, Georgia 30309
                                        Telephone: 404.443.5706
16                                      Facsimile:  404.443.5751

17                                      Attorneys for DIGITAL ENVOY, INC.

18

19

20

21

22

23

24

25

26

27

28