P. CRAIG CARDON, Cal. Bar No. 168646
BRIAN R. BLACKMAN, Cal. Bar No. 196996
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4106
Telephone:   415-434-9100
Facsimile:   415-434-3947

TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
LUKE ANDERSON (Admitted *Pro Hac Vice*)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5500
Facsimile: 404.443.5751

Attorneys for DIGITAL ENVOY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DIGITAL ENVOY, INC.,<br><br>    Plaintiff/Counterdefendant,<br><br>v.<br><br>GOOGLE, INC.,<br><br>    Defendant/Counterclaimant. | Case No. C 04 01497 RS<br><br>**DIGITAL ENVOY'S OPPOSITION TO GOOGLE'S MOTION FOR RECONSIDERATION**<br><br>The Honorable Richard Seeborg |

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT AND CITATION OF AUTHORITY ........................................................... 1

    A. Section 8 Does Not Apply to a Claim For Misappropriation of Trade Secrets. ................................................................................................................... 1

    B. Google's Interpretation of Section 8 Renders It Invalid as a Matter of Law. ............ 6

        1. Section 8 is invalid because it is vague and ambiguous. ............................... 6

        2. Section 8 is invalid pursuant to Cal. Civ. Code § 1668. ................................ 7

III. CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

Anderson v. Century Products Co.,
    943 F. Supp. 137 (D.N.H. 1996) ......................................................................................... 7

Burten v. Milton Bradley Co.,
    763 F.2d 461 (1st Cir. 1985) .............................................................................................. 7

Level 3 Communications, Inc. v. Fed. Ins. Co.,
    272 F.3d 908 (7th Cir. 2001) .............................................................................................. 5

Taylor v. DaimlerChrysler AG,
    237 F. Supp. 2d 789 (E.D. Mich. 2002) ............................................................................. 4

### STATE CASES

Baker Pacific Corp. v. Suttles,
    220 Cal. App. 3d 1148 (1990) ........................................................................................ 6, 8

Bank of the West v. Superior Court (Industrial Indemnity Co.),
    2 Cal. 4th 1254 (1992) .................................................................................................... 1, 4

Benedek v. PLC Santa Monica, LLC,
    104 Cal. App. 4th 1351 (2002) ........................................................................................... 8

Bruce Gardner v. Downtown Porsche Audi,
    180 Cal. App. 3d 713 (1986) .............................................................................................. 8

Continental Mfg. Corp. v. Underwriters at Lloyd's of London,
    185 Cal. App. 2d 545 (1961) .......................................................................................... 2, 3

Farnham v. Superior Court,
    60 Cal. App. 4th 69 (1997) ............................................................................................. 8, 9

Health Net of California, Inc. v. Department of Health Services,
    113 Cal. App. 4th 224 (2004) ............................................................................................. 8

Jaffe v. Cranford Ins. Co.,
    168 Cal. App. 3d 930 (1985) .............................................................................................. 5

Lund v. Bally's Aerobic Plus, Inc.,
    78 Cal. App. 4th 733 (2000) ............................................................................................... 6

McCarn v. Pacific Bell Directory,
    3 Cal. App. 4th 173 (1992) ................................................................................................. 8

Paralift, Inc. v. Superior Court,
    23 Cal. App. 4th 748 (1993) ............................................................................................... 7

YMCA of Metro Los Angeles v. Superior Court,
    55 Cal. App. 4th 22 (1997) ................................................................................................. 8

-iii-

## STATE STATUTES

California Civil Code
  § 1664 .................................................................................................................. 4
  § 1668 .......................................................................................................... 1, 7, 8, 9
  § 3426 .................................................................................................................. 3
  § 3426.1(b)(2) ....................................................................................................... 8

California Commercial Code
  § 2316 .................................................................................................................. 3

## I. INTRODUCTION

Google now contends that Section 8 of the License Agreement (a provision which was only intended to apply in certain limited situations relating to the parties' technical performance under the License Agreement) shields it from liability for its misappropriation of Digital Envoy's trade secrets and from Digital Envoy's claim for unjust enrichment (or a reasonable royalty) which is premised exclusively on the California Uniform Trade Secret Act ("CUTSA").[1] Not only is Google's contention factually inaccurate (Section 8 was never intended to apply to such a situation), but Google's attempt to apply it to Digital Envoy's misappropriation claim renders Google's proffered interpretation invalid and unenforceable as a matter of law. In fact, Google's apprehension of this entire case is fundamentally flawed: the License Agreement is not the source of the legal right Digital Envoy seeks to enforce; Digital Envoy is enforcing a statutory right pursuant to CUTSA. The License Agreement would be, instead, a defense to Digital Envoy's claim. For these reasons, Google's motion to reconsider should be denied.

## II. ARGUMENT AND CITATION OF AUTHORITY

**A. Section 8 Does Not Apply to a Claim For Misappropriation of Trade Secrets.**

Section 8 of the License Agreement, in its entirety and in the appropriate context, states:

> Licensor warrants that the Product will materially conform with its written specifications during the term of this Agreement. It is mutually acknowledged that data entry, communication and storage are subject to a possibility of human and machine errors, omissions, delays, and losses,

---

[1] Google is necessarily attempting to bring an entirely new matter and argument before the Court in that the issue addressed in Google's Motion for Reconsideration was not adequately raised in Google's original Motion for Partial Summary Judgment. The Court's quotation of Google's own statements reveals the "discrepancy" was created after the fact by Google. It is well-established law in California that "damages" – the term Google used in its Motion for Partial Summary Judgment – does not include unjust enrichment or other equitable remedies. *See Bank of the West v. Superior Court (Industrial Indemnity Co.)*, 2 Cal. 4th 1254, 1266-68 (1992) (distinguishing between "damages" and "monetary recovery" pursuant to equitable remedies). Google's Motion for Reconsideration is a semiotic exercise, claiming that Google didn't really mean "damages" when it said "damages," despite the California Supreme Court's longstanding and well-known interpretation of this term. (If there is no "discrepancy" other than one created by Google after the fact, it would seem that reconsideration is not appropriate. *See* Civil L.R. 7-9(b)(3) (limiting motions for reconsideration to "[a] manifest failure by the Court to consider . . . dispositive legal arguments *which were presented to the Court before such interlocutory order*." (emphasis added).) For these reasons, Digital Envoy recently filed a motion seeking oral argument on Google's motion.

including inadvertent loss of data or damage to media, which may give rise to loss or damage. Neither party undertakes any liability to the other for any such errors, omissions, delays or losses. EXCEPT AS STATED ABOVE, LICENSOR MAKES AND LICENSEE RECEIVES NO WARRANTES, EXPRESS, IMPLIED, STATUTORY, OR IN ANY OTHER PROVISION OF THIS AGREEMENT OR IN ANY OTHER COMMUNICATION, REGARDING THE PRODUCT, THE DATABASE LIBRARIES AND THE SERVICES, AND LICENSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NEITHER PARTY UNDERTAKES OR ACCEPTS ANY LIABILITY WHATSOEVER TO THE OTHER FOR ERRORS, OMMISSIONS, DELAYS, INTERRUPTIONS, OR LOSSES UNLESS CAUSED BY THEIR WILLFUL MISCONDUCT. EXCEPT FOR INDEMNIFICATION UNDER SECTION 7.5, IN NO EVENT SHALL EITHER PARTY'S DAMAGES IN ANY LAWSUIT OR OTHER ACTION BROUGHT UNDER THIS AGREEMENT EXCEED THE AMOUNTS PAID BY THE LICENSEE HEREUNDER.

Declaration of David H. Kramer to Google's Motion for Partial Summary Judgment, Ex. A.

A hallmark of proper contract interpretation is the examination of "the whole contract" using the other clauses to interpret the clause in question. *See Continental Mfg. Corp. v. Underwriters at Lloyd's of London*, 185 Cal. App. 2d 545, 549 (1961). As Digital Envoy has previously explained, Section 8's limitations apply only to "machine errors, omissions, delays, and losses" which might affect "data entry, communication and storage." *See* Digital Envoy's Reply to Google's Supplemental Brief in Support of Its Motion for Partial Summary Judgment Regarding Digital Envoy's Damages Claims at 4-5. As such, the limitation was meant to apply only to the parties' performance under the contract and was *only* meant to limit the parties' liability for acts undertaken in performing the contract. The parties qualified this limitation by adding that no liability arose whatsoever unless caused by the other party's "willful misconduct." Clearly, the parties were intending to limit liability to situations where the other party's "willful misconduct" damaged the other party's network.

In the Court's November 8, 2005 Order Granting in Part and Denying in Part Google's Motion for Partial Summary Judgment (the "Order"), the Court held that "Digital's argument that willful misconduct applies only to 'errors, omissions, delays, interruptions, or losses' is beside the point since it clearly alleges a 'loss' in this instance." Order at 6, n. 3. However, "loss," as that

-2-

word is used throughout Section 8, clearly refers to losses of data – not abstract economic losses. The first time the word "loss" is used it is followed by the phrase "including the inadvertent loss of data". The second time the word "loss" is used is in the following sentence and it is preceded by the qualifier "such," indicating that it is the same "loss" referred to in the preceding sentence. The third use of "loss" – the very same word in the very same paragraph – would naturally relate the same *data* "losses" defined in prior sentences, not to an unrelated and unbounded definition, applying to abstract business losses arising from acts unrelated to the parties' performance under the License Agreement. Instead it must carry a meaning similar to the first two usages.[2] *See Continental Mfg. Corp.*, 185 Cal. App. 2d at 549.

The plain language of Section 8 suggests the parties did *not* intend to limit liability for one party's tortious conduct arising entirely independently of the License Agreement. Digital Envoy is not seeking to recover based on allegations that Google committed "ERRORS, OMMISSIONS, DELAYS, INTERRUPTIONS, OR LOSSES" affecting Digital Envoy. Rather, Digital Envoy seeks to recover Google's unjust enrichment achieved from Google's misappropriation of Digital Envoy's trade secrets – an act not covered or contemplated in the License Agreement.[3] However, under Google's *new* reading of Section 8, "no matter what legal theory [Digital Envoy] pursues and no matter what type of recovery it seeks, Digital Envoy's claims for relief against Google in this case fail as a matter of law."[4] *See* Google Memorandum and Points and Authorities in

---

[2] The fact that the third use of the word "loss" is contained in a sentence with all capital letters is clearly to meant to insure that the waiver satisfies the California Commercial Code's "conspicuous" disclaimer requirements (*see, e.g.*, Cal. Com. Code § 2316) in case the uncapitalized use of the word did not suffice, not to create multiple, conflicting definitions of the word "loss" in the paragraph. The parties surely would have been specific if they intended the third use of the word "loss" to apply to the abstract concept of business losses relating to the misappropriation of trade secrets.

[3] Cal. Civ. Code § 3426 also authorizes recovery of a reasonable royalty.

[4] Google's interpretation is "new" because throughout the course of this litigation it has repeatedly argued that Digital Envoy's claim is brought under the License Agreement and Section 8 limits all claims brought "under the agreement." Now, Google has taken the position that all claims by Digital Envoy, regardless of their connection to the subject matter of the License Agreement, are somehow limited by Section 8.

1  Support of its Motion for Reconsideration, at 2. Google is now adamantly insisting that there need
2  not be any nexus at all between the License Agreement and the reach of Section 8.[5] According to
3  Google, *any* claim Digital Envoy might make against Google – whether it be for personal injuries
4  arising from a slip-and-fall at the Googleplex, losses from owning Google stock purchased by
5  Digital Envoy as an investment, or a defamation claim arising from statements made to the press
6  unrelated to the License Agreement – would be barred by Section 8. For Google to suggest that
7  Digital Envoy (or anyone, for that matter) would enter into a contract whereby it waives its right to
8  bring all claims no matter the circumstances defies credulity, and, in this case, is simply not true.[6]
9       Furthermore, as Digital Envoy explained in its Reply to Google's Supplemental Brief in
10 Support of its Motion for Partial Summary Judgment, there is an important distinction between
11 "damages" and "losses" as those terms are used in Section 8, and a recovery for "unjust
12 enrichment." California courts have long held that "unjust enrichment" and "restitution" are
13 distinct from "damages." *See Bank of the West*, 2 Cal. 4th at 1266 (holding that insured's
14 insurance policy which provided coverage for "damages" paid did not cover restitution paid); *see*

---

[5] Google's reliance on *Taylor v. DaimlerChrysler AG*, 237 F. Supp. 2d 789 (E.D. Mich. 2002), is grossly misplaced. In *Taylor*, the court merely applied the content of the parties' agreement, which explicitly granted Chrysler permission to use the plaintiff's "suggestion." See *Taylor*, 237 F. Supp. 2d at 791. ("no obligation of any kind is assumed and may be implied against Chrysler Corporation for any claimed or actual use by it of all or any part of the suggestion.") Indeed, the so-called "limitation of liability" explicitly addressed the very issue on which the plaintiff sued. Therefore, the limitation did not relate directly to the parties' agreement – it *is* the parties' agreement. Here, Google is instead seeking to apply Section 8 to circumstances far abroad the License Agreement.

[6] Despite Google's repeated (and inaccurate) assertion to the contrary, it was Google which drafted that portion of Section 8 which made the limitation apply to Google. *See* Declaration of Robert J. Waddell, Jr. ("Waddell Decl.") in Opposition to Google's Motion for Reconsideration, Ex. A ("redline" version of License Agreement in which Google edits Section 8 to make section reciprocal). Thus, any ambiguity in the wording of the limitation must be construed against Google, not against Digital Envoy. *See* Cal. Civ. Code § 1664 (stating that ambiguities in contracts are to be construed against the drafter). The Court should disregard Google's repeated misrepresentations on this issue and decline to apply Google's idiosyncratic interpretation. *See* Google's Notice of Motion and Motion for Reconsideration at 2 ("the motion was based on a limitation of liability provision in the parties' Agreement. The provision, drafted by Digital Envoy. . .").

*also Jaffe v. Cranford Ins. Co.*, 168 Cal. App. 3d 930, 934-35 (1985) (distinguishing between "damages" and "restitution"). Quite simply, a "loss" is not the same as recovery of an ill-gotten gain (*i.e.*, unjust enrichment).

> [A] loss within the meaning of an insurance contract does not include the restoration of an ill-gotten gain . . . An insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen, even if a more polite word than "stolen" is used to characterize the claim for the property's return.

Level 3 Communications, Inc. v. Fed. Ins. Co., 272 F.3d 908, 910-11 (7th Cir. 2001). In the very same way, the parties here did not (and could not) intend Section 8 to shield Google from retaining its ill-gotten gains – *i.e.*, unjust enrichment.[7]

In short, unjust enrichment under CUTSA is available as a remedy regardless of any business "loss" (under any commonly-recognized meaning of the word) or "damages" that Digital Envoy may have incurred and is available even if Digital Envoy has incurred no loss whatsoever. As the Court noted in the Order, "unjust enrichment is an action in quasi-contract" and CUTSA specifically provides for unjust enrichment as a remedy. Order at 7. More to the point, in the Order the Court implicitly recognized that Google's argument that Digital Envoy's quasi-contractual remedies were barred by a contractual waiver which was aimed at preventing liability for certain acts under the contract was erroneous. As the Court plainly recognized, Digital Envoy's misappropriation claim is, and has always been, statutory in nature. It in no way implicates the License Agreement – except, and to the extent, the License Agreement serves as a defense by Google to a claim for misappropriation. Accordingly, Digital Envoy's recovery of unjust enrichment for Google's misappropriation of its trade secrets is not affected by Section 8.

Lastly, it is undisputed that the parties explicitly agreed that "distribution" of Digital Envoy's technology would not be covered under the License Agreement. *See* Declaration of Robert J. Waddell, Jr. in Support of Digital Envoy's Supplemental Brief in Opposition to Google's

---

[7] Google painstakingly defines "liability" without offering much at all to define to what conduct such liability would be limited. Digital Envoy does not dispute that "liability" means "liability." The real issue is liability for what? Quite plainly, Section 8 provides no shield against Digital Envoy's recovery of Google's ill-gotten gains.

1  Motion for Partial Summary Judgment Regarding Digital Envoy, Inc.'s Damage Claims, Ex. 1.

2  Therefore, it is illogical to conclude that the parties would have agreed that Section 8 (which,

3  according to Google's proffered interpretation, effectively authorizes any use of Digital Envoy's

4  technology Google can envision) applied to the "distribution" of Digital Envoy's technology,

5  considering that the parties specifically negotiated excluding the subject matter of "distribution"

6  from the scope of the License Agreement.

**B.  Google's Interpretation of Section 8 Renders It Invalid as a Matter of Law.**

**1.  Section 8 is invalid because it is vague and ambiguous.**

Google's proffered interpretation of Section 8 fails as a matter of law. California law is clear that:

> For it to be valid and enforceable, a written release exculpating a tortfeasor from liability for future negligence or misconduct must be *clear, unambiguous and explicit in expressing the intent of the parties.* If a tortfeasor is to be released from such liability the language used must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.

*Baker Pacific Corp. v. Suttles*, 220 Cal. App. 3d 1148, 1153 (1990) (emphasis added).

Section 8 does not state that the parties are waiving rights under tort law nor does it state that the parties are waiving any statutory claims (such as misappropriation of trade secrets). Thus, the language is too vague to stand for the proposition suggested by Google.[8] In order to be enforceable, a waiver of liability must "be clear, unambiguous, and explicit in expressing the intent of the parties." *Lund v. Bally's Aerobic Plus, Inc.*, 78 Cal. App. 4th 733, 738 (2000).

---

[8] Google clearly understands the legal significance of clear and unambiguous waivers of certain causes of action in contracts. In its own AdSense contracts, Google uses the following language:

(i) IN NO EVENT SHALL EITHER PARTY BE LIABLE UNDER THIS AGREEMENT FOR ANY CONSEQUENTIAL, SPECIAL, INDIRECT, EXEMPLARY, OR PUNITIVE DAMAGES WHETHER IN CONTRACT, **TORT OR ANY OTHER LEGAL THEORY**, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH.

*See* Waddell Decl., Ex. B (capitalization in original; bolding added).

1  "Waiver and release forms are to be strictly construed against the defendant." *Id.* "Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement." *Paralift, Inc. v. Superior Court*, 23 Cal. App. 4th 748, 755 (1993).

Many other courts have held that waiver of prospective tort liability must be clear and unambiguous to be effective. "To constitute a clear and unambiguous waiver, the language must disclaim the specific obligation that the waiving party seeks to avoid." *Anderson v. Century Products Co.*, 943 F. Supp. 137, 150 (D.N.H. 1996) (ruling that under New Hampshire law a contract provision stating that a party agreed "to rely solely on his rights under patent law" did not waive that party's right to bring a trade secret misappropriation claim because it did not specifically state that a claim for misappropriation was being waived). The *Anderson* court explained that "contractual obligations are easier to waive than those arising under tort law. '[L]anguage necessary to waive contractual obligations may not be sufficient to waive tort liability.'" *Id.* (citing *Burten v. Milton Bradley Co.*, 763 F.2d 461, 466 (1st Cir. 1985) (holding that under Massachusetts law a waiver provision which required party to rely solely on its rights under U.S. patent law did not waive the party's right to bring a misappropriation of trade secrets claim)).

### 2. Section 8 is invalid pursuant to Cal. Civ. Code § 1668.

"All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, *or violation of the law, whether willful or negligent*, are against the policy of the law." Cal. Civ. Code § 1668 (emphasis added). Google contends that, at least, it has negligently operated outside the scope of its License Agreement with Digital Envoy (and presumably, negligently violated CUTSA). As such, it argues that the "willful misconduct" limitation in Section 8 shields it from liability. Google's argument is at odds with established California law.

Regardless of whether Google violated the License Agreement *willfully* or *negligently*, Cal. Civ. Code § 1668 renders the limitation provision unenforceable with regard to a claim for misappropriation of trade secrets. Cal. Civ. Code § 1668 invalidates limitation provisions which seek to limit liability for: (1) intentional torts; (2) *willful or negligent violations of statutory law;*

-7-

or (3) negligent violations of common law where a public interest is involved. *See Bruce Gardner v. Downtown Porsche Audi,* 180 Cal. App. 3d 713, 716 (1986) ("[t]his section made it clear a party could not contract away liability for his fraudulent or intentional acts or for his negligent violations of *statutory* law.") (emphasis original); *see also Baker Pacific* at 1154 (a contract exempting a party from liability for ordinary negligence is valid where no public interest is involved and where no statute expressly prohibits it). As one California court recently stated:

> It is now settled – and in full accord with the language of [Cal. Civ. Code § 1668] – that notwithstanding its different treatment of ordinary negligence, under section 1668, a party cannot contract away liability for his fraudulent or intentional acts or for his negligent violations of *statutory* law.

*Health Net of California, Inc. v. Department of Health Services,* 113 Cal. App. 4th 224, 234 (2004) (emphasis original) (citation omitted).

Digital Envoy's claims against Google are based solely on statutory law – namely, CUTSA. CUTSA defines misappropriation of a trade secret as "[d]isclosure or use of a trade secret of another without express or implied consent by a person who at the time of the disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." *See* Cal. Civ. Code § 3426.1(b)(2)(B)(ii). It is Google's violation of this statutory provision for which Digital Envoy seeks recovery from Google.

Therefore, every California case Google's cites in support of its contention that the limitation is enforceable is distinguishable. *Benedek v. PLC Santa Monica, LLC,* 104 Cal. App. 4th 1351 (2002), and *YMCA of Metro Los Angeles v. Superior Court,* 55 Cal. App. 4th 22 (1997), both involve waivers of ordinary negligence claims stemming from personal injuries. *McCarn v. Pacific Bell Directory,* 3 Cal. App. 4th 173 (1992), involved a claim for negligence resulting from a telephone company's failure to list a business in a telephone directory. *Farnham v. Superior Court,* 60 Cal. App. 4th 69 (1997), involved a common law defamation claim. These types of claims, which do not involve the violation of statutory law, can properly be the subject of a prospective waiver of liability. It is significant to note that Google cites not one case in which a court upheld a prospective waiver of liability for misappropriation of trade secrets.

1    Furthermore, as Digital Envoy pointed out in its Brief in Opposition to Google's Motion
for Partial Summary Judgment, *Farnham* is also distinguishable on separate grounds. *Farnham* involved a claim for defamation made by a former employee of a company against the directors of that company. *Id.* at 71. The plaintiff had previously entered into an agreement whereby he agreed for any claims he may have arising out of his employment he would look only to the corporation – not to its directors. *Id.* The plaintiff instituted an arbitration proceeding alleging defamation against the corporation and recovered a $1.5 million award. *Id.* at 73. He then sought to sue the directors in their individual capacity and recover a second award. The *Farnham* court, in holding that this particular waiver was not *per se* unenforceable, stated that the plaintiff's "retention of his rights against his corporate employer validates his waiver of his right to sue the corporation's directors" even for an intentional tort. *Id. Farnham*, therefore, stands for the limited proposition that in the employment law context, prospective waiver of liability for an intentional tort against certain parties is not *per se* invalid if the plaintiff is given adequate recourse against other parties. There simply is no California case that has ever decided that all recovery for an intentional tort or a violation of statutory law can be foreclosed by a prospective waiver in a contract in light of the provisions of Cal. Civ. Code § 1668.

### III.    CONCLUSION

In sum, Google's interpretation of the License Agreement, indeed, of this entire case, is completely backwards. The License Agreement is not the source of the legal obligation Digital Envoy is seeking to enforce. Digital Envoy is seeking to enforce a statutory based claim for trade secret misappropriation. The License Agreement is, instead, a defense to Digital Envoy's claim against Google. Viewed this way, it is clear that Digital Envoy's claim is not the type of claim contemplated in Section 8 of the License Agreement. For the foregoing reasons, Google's Motion should be denied.

-9-

DATED: December 7, 2005

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/ Brian Blackman
P. CRAIG CARDON
BRIAN R. BLACKMAN

TIMOTHY H. KRATZ (Admitted *Pro Hac Vice*)
LUKE ANDERSON (Admitted *Pro Hac Vice*)
MCGUIRE WOODS, L.L.P
1170 Peachtree Street, N.E., Suite 2100
Atlanta, Georgia 30309
Telephone: 404.443.5706
Facsimile: 404.443.5751

Attorneys for DIGITAL ENVOY, INC.