1  DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgr.com)
   DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
2  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
3  650 Page Mill Road
   Palo Alto, CA 94304-1050
4  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
5
   Attorneys for Defendant/Counterclaimant
6  Google Inc.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12 | DIGITAL ENVOY, INC.,              )  CASE NO.: C 04 01497 RS
                                       )
13 |        Plaintiff/Counterdefendant,)  **GOOGLE INC.'S REPLY BRIEF
                                       )  IN SUPPORT OF ITS MOTION
14 |   v.                              )  FOR RECONSIDERATION;
                                       )  MEMORANDUM OF POINTS
15 | GOOGLE INC.,                      )  AND AUTHORITIES IN SUPPORT
                                       )  THEREOF**
16 |        Defendant/Counterclaimant. )
                                       )
17                                     )
                                       )

GOOGLE'S REPLY BRIEF ISO
MOTION FOR RECONSIDERATION
C 04 01497 RS

PALIB1_2781012_1.DOC

**INTRODUCTION**

Digital Envoy, Inc.'s ("Digital Envoy") arguments in its opposition brief may seem familiar. That is because they are almost entirely a rehash of the arguments that Digital Envoy unsuccessfully advanced when opposing Google's original motion for summary judgment. The arguments have not gotten any better with age.

The sole issue raised in Google's Motion for Reconsideration is whether the phrase "any liability whatsoever" – a phrase that Digital Envoy drafted and inserted as a limitation of liability provision in the parties' Agreement – encompasses all of the theories of liability that Digital Envoy asserts in this case. Digital Envoy tortures the phrase in its opposition, effectively claiming it covers only a small subset of liabilities -- those arising from specific acts causing damage to the other party's network. As the Court has expressly held, this proposed interpretation of the limitation of liability provision cannot be reconciled with the provision's plain language. While Digital Envoy may disagree with the Court's ruling, the issue has already been resolved.

Digital Envoy's return to the argument that it does not seek redress for an alleged "loss" or "error" within the meaning of the limitation of liability provision and its argument that its claim has nothing to do with parties' contract should again be rejected. And Digital Envoy's resurrected argument based on California Civil Code Section 1668 must fail as it badly misconstrues the statute and the policy behind it.

Seeking, no doubt, to protect itself, Digital Envoy included a provision in the parties' agreement stating that neither party would have "any liability whatsoever" to the other absent willful misconduct. Digital Envoy cannot now rewrite its own language to afford it a claim for relief based on Google's mere negligence or error. Google is therefore entitled to summary judgment on all of Digital Envoy's claims for recovery.

# ARGUMENT

### A. The Court Has Already Rejected Digital Envoy's Proposed Construction of the Limitation of Liability Provision.

Digital Envoy spends most of its opposition to Google's Motion for Reconsideration rehashing the same failed contractual interpretation arguments that it advanced in opposition to Google's original Motion for Summary Judgment. Once again, Digital Envoy asks the Court to distort an unambiguous limitation of liability provision in the parties' Agreement so that it can pursue a claim that the parties intended to foreclose. As before, Digital Envoy's arguments are meritless.

The limitation of liability provision in question here is sweeping: "NEITHER PARTY... ACCEPTS ANY LIABILITY WHATSOEVER TO THE OTHER FOR ERRORS, OMISSIONS, DELAYS, INTERRUPTIONS OR LOSSES, UNLESS CAUSED BY THEIR WILLFUL MISCONDUCT." Order at 3. According to Digital Envoy, when the parties agreed that neither would have "any liability whatsoever" to the other, they intended to cover an extremely restricted category of potential liability, only that arising from machine errors, omissions, delays and losses which might affect data entry, communication and storage and thereby damage the other party's network. *See* Digital Envoy's Opposition ("Opp'n Br.") at 2:13-24. The Court, however, has already expressly rejected this construction. As it explained:

> Under section 8, neither party undertook any liability to the other for any human and machine errors, omissions, delays and losses, as set forth in the third sentence of that clause. The fifth sentence, however, which exempts willful misconduct, ***applies to all other*** "errors, omissions, delays, interruptions, or losses." To adopt Digital's argument would defy the 'plain meaning' rule since the fifth sentence would, under that interpretation, be rendered meaningless.

Order, November 8, 2005 at 6, n.3 (emphasis added). Despite the Court's Order, Digital Envoy again offers the same alternative construction based on the same arguments. Its construction is no more tenable and no less at odds with the rules of contractual interpretation. *See* Cal. Civ. Code §1638 ("[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity"); § 1641 ("[t]he whole of a contract is to be taken together, so as to give effect to every part"); § 1644 ("[t]he words of a contract are to be

understood in their ordinary and popular sense").[1]  This second time, the argument should be rejected out of hand.[2]

### B. The Court Has Already Held That Digital Envoy Seeks Recovery For "Errors, Omissions, Delays, Interruptions or Losses"

As it did in opposing Google's original motion, Digital Envoy again argues that its claim for unjust enrichment does not seek to impose liability upon Google for any "errors, omissions, delays, interruptions or losses" within the meaning of limitation of liability provision.  But here too, the Court has already considered and rejected its argument.  Again, Digital Envoy is simply

---

[1] The Court has also already held that there is no ambiguity in the language that the parties actually agreed upon.  Order, November 8, 2005 at n.3 ("a fair reading of the disputed clause reflects no ambiguity").  But if there were any ambiguity, then yet another statutory rule of interpretation – a construction against the drafter of the language – would apply.  Cal. Civ. Code § 1654.  Again, Digital Envoy contends that that maxim of interpretation works in its favor and against Google.  *See* Opp'n Br. at 4, n.6.  Its argument is simply dishonest.  The limitation of liability provision at issue here was not in any way drafted by Google.  Rather, it appears in Digital Envoy's form contract, and was in the first draft of the agreement that Digital Envoy sent to Google.  *See, e.g.*, Supplemental Declaration of David H. Kramer (filed March 16, 2005, Document No. 117-1), Exs. P, R (Digital Envoy license agreements with 24/7 Media and Advertising.com) § 8 ("Neither party..."); Declaration of David H. Kramer filed August 11, 2005, Ex. C (November 22, 2000 email to Google attaching draft agreement).  The only changes made by Google to Section 8 of the Agreement at any time made reciprocal only the last sentence of Section 8 (that provision capping any party's liability under any circumstances to the total amount paid under the contract).  *See* Declaration of Robert J. Waddell, Ex. A.  The provision in question, which appears in the preceding sentence, was reciprocal from the start ("Neither party undertakes or accepts any liability whatsoever . . . ."); Declaration of David Kramer filed August 11, 2005, Ex. C (November 22, 2000 email to Google attaching draft agreement).  Again, to the extent a construction against the drafter is appropriate, it works in Google's favor and against Digital Envoy.

[2] Digital Envoy also argues that "any liability whatsoever" cannot possibly have been intended to cover liabilities arising from conduct that has no nexus at all to the parties' Agreement.  *See* Opp'n Br. at 4 (discussing a hypothetical defamation claim "unrelated to License Agreement").  The Court, however, need not address Digital Envoy's hypothetical.  The claim here is amply connected to the parties' Agreement.  Indeed, the claim depends entirely upon the provisions of the Agreement, because those provisions supply the use limitations upon which Digital Envoy has predicated its entire claim.  *See* Am. Compl. ¶¶ 27-28, 40, 46 (theory of misappropriation is that Google misused trade secrets while *under a duty to limit their use*).  All that remains of Digital Envoy's case is the allegation that Google breached the contractual provisions prohibiting it from "distribut[ing], shar[ing] or otherwise giv[ing] (in any form) [Digital's database libraries] to any other party."  *See* May 20, 2005 Order at 9:18 – 10:27; *See also* Hearing Tr., Sept. 21, 2005 (attached as Exhibit A to Google's Supplemental Brief in Support of its Original Motion) at 2 ("I just don't see how it isn't a claim arising out of that agreement").  Accordingly, even if the provision is limited to claims arising out of the parties' contractual relationship, it clearly applies in these circumstances.

1  asking the Court to reconsider an aspect of a prior decision with which Digital Envoy does not
2  agree.
3     At the hearing on Google's original motion, Digital Envoy contended that the term
4  "losses" in the limitation of liability provision did not cover Digital Envoy's claims for unjust
5  enrichment:

> MR. KRATZ:  . . . So, it says "neither party accepts liability for errors, omissions, delays, interruptions or losses" – a series of five things.  It is our contention that this entirety of the sentence doesn't apply because none of those five things are what we're talking about here.
>
> THE COURT:  Losses?
>
> MR. KRATZ:  Well, for one, we're not talking about losses.  We're talking about unjust enrichment.  We're talking about theft of trade secrets.
>
> THE COURT:  Isn't that a loss to you?  You're claiming it's a loss.
>
> MR. KRATZ:  We're out of court on that.  This isn't a loss.  This isn't an actual loss then.  We're on unjust enrichment and reasonable loyalty.
>
> THE COURT:  Which translates as a loss to you.

Hearing Tr. at 35-36.[3]  The Court found thus found Digital Envoy's argument unpersuasive.[4]  Ultimately, it held that Digital Envoy's claim: "clearly alleges a 'loss' in this instance, as no basis arises for interpreting that term to connote only a narrow subset of its generally understood meaning."  Order, November 8, 2005 at 6, n.3.  Once again, Digital Envoy simply disagrees with that conclusion and is improperly asking the Court to reconsider it.  *See* Order, December 5, 2005 (denying Digital Envoy's request for leave to file for reconsideration because reconsideration is not appropriate where "a party simply disagrees with the result reached by the Court").

---

[3] Digital Envoy boldly asserts that in seeking to bar its recovery for unjust enrichment, Google is bringing "an entirely new matter and argument before the Court."  Opp'n Br. at 1, n.1.  But as this exchange from the hearing shows, Digital Envoy clearly understood that Google's original motion sought to preclude its unjust enrichment recovery.   Even then, Digital Envoy was arguing, albeit unpersuasively, about why that theory should survive.

[4] Section 8 of the Agreement bolsters the Court's sentiment, as earlier in the provision it expressly distinguishes between "losses" and "damages," which Digital Envoy sought to equate.

GOOGLE'S REPLY BRIEF ISO                            4
MOTION FOR RECONSIDERATION
C 04 01497 RS

1  In any event, as Google argued in its opening brief, "Digital Envoy's claims could just as
2  easily be read as seeking a recovery from Google based on Google's alleged 'error' in
3  interpreting the parties' Agreement to permit use of the data in AdSense." Motion at 3, n.2.
4  Claims based upon such "errors" also come within the ambit of the limitation of liability
5  provision in question. Accordingly, for this reason as well, Digital Envoy's attempts to evade
6  the limitation of liability provision must fail.

      **C.    Section 1668 Does Not Impact the Parties' Private Agreement**

As a last gasp, Digital Envoy again invokes California Civil Code Section 1668, which it argued at length, albeit unsuccessfully, in opposition to Google's original motion for summary judgment. *See* Opposition to Google's Motion for Partial Summary Judgment Re: Digital Envoy, Inc.'s Damages Claims, at 12-14. This time, Digital Envoy must concede that its remaining claim seeks to hold Google liable for mere negligence – using Digital Envoy's data in a way that Google allegedly should have known was not authorized by the parties' Agreement (i.e. unreasonably). According to Digital Envoy, however, the limitation of liability provision it placed in the parties' private contract does not protect against such supposedly negligent conduct. It contends that application of the limitation of liability provision to its remaining claim would relieve Google of liability for a supposed "violation of law," namely the Uniform Trade Secrets Act ("UTSA"). Cal. Civ. Code §§ 3426.1-.11. Again, Digital Envoy badly misapprehends the purpose and operation of Section 1668.

In the seminal case concerning Section 1668, *Tunkl v. Regents,* the California Supreme Court made clear that the statute is designed to safeguard the public interest, and not to interfere with the manner in which private parties' structure their allocations of risk. *Tunkl v. Regents of Univ. of California,* 60 Cal. 2d 92, 101 (1963). As the Supreme Court explained:

> [O]bviously, no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party.

*Id.*; *Madison v. Superior Court,* 203 Cal. App. 3d 589, 598-600 (1988) (finding waiver operated as complete defense to wrongful death claim); *Hohe v. San Diego Unified Sch. Dist.*, 224 Cal.

GOOGLE'S REPLY BRIEF ISO                  5
MOTION FOR RECONSIDERATION
C 04 01497 RS

App. 3d 1559, 1563 (1990); *YMCA of Metro. Los Angeles v Superior Court*, 55 Cal. App. 4th 22, 27 (1997).

Section 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. Civ. Code §1668. However, as court after court has explained, "[d]espite its broad language, section 1668 does not apply to every contract." *Vilner v. Crocker Nat'l Bank*, 89 Cal. App. 3d 732, 735 (1979); *Madison,* 203 Cal. App. 3d at 598. ***It will be applied only to contracts that involve 'the public interest.'*** *Cregg v. Ministor Ventures,* 148 Cal. App. 3d 1107, 1111 (1983) (emphasis added); *Belshaw v. Feinstein,* 258 Cal. App. 2d 711, 727 (1968); *Nichols v. Hitchcock Motor Co.,* 22 Cal. App. 2d 151, 156-59 (1937) ("the public neither had nor could have any interest whatsoever in the subject-matter of the contract...The agreement between the parties concerned 'their private affairs only'"); *Allan v. Snow Summit, Inc*., 51 Cal. App. 4th 1358, 1373 (1996) (release and waiver valid where ski school contract did not affect public interest); *YMCA*, 55 Cal. App. 4th at 27 (finding release enforceable where not contrary to public policy); *Randas v. YMCA of Metro. Los Angeles,* 17 Cal. App. 4th 158, 162 (1993) (same); *Hohe*, 224 Cal. App. 3d at 1563 (same).

The Courts of Appeal have repeatedly set out the analytic framework for effecting *Tunkl*'s public versus private distinction:

> In placing particular contracts within or without the category of those affected with a public interest, the courts have revealed a rough outline of that type of transaction in which exculpatory provisions will be held invalid. Thus the attempted but invalid exemption involves a transaction which exhibits some or all of the following characteristics. [1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person

> or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.

*Madison,* 203 Cal. App. 3d at 598-599 (quoting *Tunkl*, 60 Cal.2d at 98-101, fns. omitted); *see also McCarn v. Pacific Bell Directory,* 3 Cal. App. 4th 173, 178-79 (1992); *Hohe,* 224 Cal. App. 3d at 1564; *Randas*, 17 Cal. App. 4th at 161 n.4. The contract at it issue here implicates none of the relevant factors. It is a purely private contract with a bargained for allocation of risk between sophisticated commercial entities represented by counsel. In short, it is not the sort of contract that involves "the public interest," and thus not a contract to which Section 1668 applies.

In addition to ignoring the well-established public versus private contract distinction, Digital Envoy misreads Section 1668 as applicable to any claim implicating any statute. That is nonsensical. In California, Civil Code Section 1708 provides that "[e]very person is bound, without contract, to abstain from injuring the person or property of another, or infringing upon any of his or her rights." Cal. Civ. Code § 1708. Thus, in California, virtually every claim for relief alleges a statutory violation, yet limitation of liability clauses are routinely enforced. *See, e.g., Madison*, 203 Cal. App. 3d at 602 (enforcing limitation of liability precluding wrongful death action); *Randas,* 17 Cal. App. 4th at 164 (enforcing limitation of liability provision precluding action for personal injury incurred at swimming pool). Likewise, Civil Code Section 1714 proscribes negligence rendering "everyone...responsible not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person" Cal. Civ. Code § 1714. Again, limitations of liability are regularly enforced as against negligence claims, even though such claims implicate a California statute. *See, e.g. Madison*, 203 Cal. App. 3d at 602; *Randas,* 17 Cal. App. 4th at 164; *Allan,* 51 Cal. App. 4th at 1373 (enforcing limitation of liability precluding action for skiing injury); *YMCA*, 55 Cal. App. 4th at 27 (enforcing limitation of liability precluding action for injury at senior center).

In reality, the protection of Section 1668 applies only to claims for violations of statutes that create rights "not just for the benefit of individuals but also for public purposes." *See Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 506 (2005); *Independent*

*Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 415 (2005). The UTSA is not such a statute. Rather, the UTSA simply provides a framework through which one party may seek redress against another for private wrongs.[5] *See Futurecraft Corp. v. Clary Corp.*, 205 Cal.App.2d 279, 290 (1962) (trade secret "protection is not based on a policy of rewarding or otherwise encouraging the development of secret processes or devices. The protection is merely against breach of faith and reprehensible means of learning another's secret.") For this reason as well, Section 1668 is inapplicable.

Ultimately, in highlighting the absence of authority upholding a limitation of liability clause against a UTSA claim, Digital Envoy has it backwards.[6] If Digital Envoy now wishes to invalidate the clause that it drafted for its own benefit – a gambit never-before-seen in Section 1668 jurisprudence – it is incumbent upon Digital Envoy to offer authority for its request. But Digital Envoy cites no case, and Google knows of none, in which Section 1668 invalidated an allocation of the risk of unintentional misconduct in a purely private contract so as to allow pursuit of a claim under a statute safeguarding purely private interests. This case should not be the first to recognize a novel impingement upon parties' freedom to contract.[7]

## CONCLUSION

For the foregoing reasons, and based on the entire record in this case, Google respectfully requests that the Court reconsider its November 8, 2005 Order and grant summary judgment in

---

[5] Notably, the UTSA does not contain even a single prohibition. Thus, Digital Envoy's claim that it is pursuing Google for "violating" the UTSA is misguided. Digital Envoy is instead seeking redress under the UTSA for conduct by Google that Digital Envoy claims was a breach of the parties' Agreement.

[6] Google actually did cite a Michigan case enforcing a limitation of liability provision against a claim for misappropriation of ideas. *See* Google's Motion for Reconsideration at 5, citing *Taylor v. DaimlerChrysler AG*, 237 F. Supp. 2d 789, 791-93 (E.D. Mich. 2002).

[7] As Google explained in its original motion for summary judgment, even if the Court finds that Section 1668 is implicated here, it is inapplicable to a second limitation of liability clause in the Agreement which limits Google's total liability to the amount Google paid under the contract. This second provision merely "limits" liability and does not "exempt" Google from liability as Section 1668 requires. *See* Google Inc.'s Reply In Support of Motion for Partial Summary Judgment (Document No. 314) at 7-8; *Farnham v. Superior Court*, 60 Cal. App. 4th 69, 75 (1997)(recognizing distinctions between exemptions from liability and limitations on liability).

Google's favor precluding any recovery by Digital Envoy in light of the limitation of liability provision contained in the parties' Agreement.

Dated: December 9, 2005

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/ David H. Kramer
         David H. Kramer

Attorneys for Defendant/Counterclaimant
Google Inc.