1  DAVID H. KRAMER, State Bar No. 168452 (dkramer@wsgr.com)
   COLLEEN BAL, State Bar No. 167637 (cbal@wsgr.com)
2  DAVID L. LANSKY, State Bar No. 199952 (dlansky@wsgr.com)
   WILSON SONSINI GOODRICH & ROSATI
3  Professional Corporation
   650 Page Mill Road
4  Palo Alto, CA 94304-1050
   Telephone: (650) 493-9300
5  Facsimile: (650) 565-5100

6  Attorneys for Defendant/Counterclaimant
   GOOGLE INC.
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

12  DIGITAL ENVOY, INC.,            )  CASE NO.: C 04 01497 RS
                                    )
13              Plaintiff/Counterdefendant, )  **GOOGLE INC.'S OPPOSITION TO
                                    )  DIGITAL ENVOY'S MOTION TO
14       v.                         )  DISMISS GOOGLE'S
                                    )  DECLARATORY JUDGMENT
15  GOOGLE INC.,                    )  COUNTERCLAIM AND MOTION
                                    )  FOR ENTRY OF JUDGMENT**
16              Defendant/Counterclaimant. )
                                    )
17                                  )  Date:      March 22, 2006
                                    )  Time:      9:30 a.m.
18                                  )  Courtroom: 4, 5th Floor
                                    )
19                                  )  The Honorable Richard Seeborg
                                    )
20  _____)

21

22

23

24

25

26

27

28

GOOGLE'S OPPOSITION TO DIGITAL ENVOY'S
MOTION TO DISMISS AND FOR ENTRY OF
JUDGMENT
CASE NO.: C 04 01497 RS

2826761_3.DOC

Dockets.Justia.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...................................................................................................................1

FACTUAL STATEMENT .....................................................................................................2

ARGUMENT ..........................................................................................................................5

I.  GOOGLE'S COUNTERCLAIM FOR DECLARATORY RELIEF IS NOT MOOT ........5

    A.  An Ongoing Controversy Exists As Long As Digital Envoy Claims A Right To Damages And The Court Of Last Resort Has Not Ruled On The Issue............5

    B.  The Cases Cited by Digital Envoy Do Not Support Dismissal of Google's Declaratory Relief Counterclaim ...............................................................................8

II.  RULE 54(B) CERTIFICATION IS NOT WARRANTED...............................................10

    A.  There are No Compelling Circumstances to Justify an Immediate Appeal ..........11

    B.  Judicial Economy Weighs Heavily Against Rule 54(b) Certification ..................13

CONCLUSION .....................................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. 04-35553, D.C. No. CV-01-01655-RE, 2006 WL 26210 (9th Cir. Jan. 5, 2006) ............................................................ 12

*Aldens, Inc. v. Packel*, 524 F.2d 38 (3d Cir. 1975) ....................................................................... 9

*Angoss II P'ship v. Trifox, Inc.*, No. C 98-1459 SI, 2000 WL 288435 (N.D. Cal. Mar. 13, 2000) .............................................................................................................. 14

*Ashcroft v. Mathis*, 431 U.S. 171 (1977) ....................................................................................... 9

*Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83 (1993) ............................................. 6, 8, 10

*City of Rome, New York v. Verizon Commc'ns, Inc.*, 362 F.3d 168 (2d Cir. 2004) ...................... 10

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993) ............................................ 14

*Cover v. Schwartz*, 133 F.2d 541 (2d Cir. 1942) .................................................................. 5, 8, 9

*Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1 (1980) ....................................... 11, 12, 13

*Digital Envoy, Inc. v. Google, Inc.*, 319 F. Supp. 2d 1377 (N.D. Ga. 2004) ................................. 3

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311 (Fed. Cir. 2001) ................................. 7, 9

*Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005), *petition for cert. filed*, 74 U.S.L.W. 3352 (U.S. Nov. 28, 2005) (No. 05-712) ................................. 7, 9

*General Elec. Co. v. Nintendo Co.*, 179 F.3d 1350 (Fed. Cir. 1999) .......................................... 7, 9

*Gladwell Governmental Servs., Inc. v. County of Marin*, No. C-04-3332 SBA, 2005 WL 2656964 (N.D. Cal. Oct. 17, 2005) ............................................................................ 10

*ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360 (7th Cir. 2000) ......................... 7, 8, 14

*In re Solutia, Inc., Sec. Litig.*, No. C 03-03554 SBA, 2005 WL 701435 (N.D. Cal. Mar. 24, 2005) ............................................................................................................. 12

*Khan v. Park Capital Sec., LLC*, No. C 03 00574 RS, 2004 WL 1753385 (N.D. Cal. Aug. 5, 2004) ................................................................................................................ 12

*Lee v. Burlington N. Santa Fe Ry. Co.*, 245 F.3d 1102 (9th Cir. 2001) ....................................... 15

*Morrison-Knudsen Co. v. Archer*, 655 F.2d 962 (9th Cir. 1981) .................................... 11, 13, 14

*Morton Int'l, Inc. v. Cardinal Chem. Co.*, 967 F.2d 1571 (Fed. Cir. 1992) ............................... 6, 7

*Skysign Int'l, Inc. v. City & County of Honolulu*, 276 F.3d 1109 (9th Cir. 2002) ......................... 9

*Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115 (1974) ............................................................. 9

*Texas v. United States*, 523 U.S. 296 (1998) .......................................................................... 9, 10

*Wood v. GCC Bend, LLC*, 422 F.3d 873 (9th Cir. 2005) ........................................... 11, 12, 13, 16

**RULES**

Fed. R. Civ. P. 54(b) .................................................................................................................*passim*

Civ. L.R. 3.4(e) ........................................................................................................................ 12

**INTRODUCTION**

In another misguided procedural gambit, Digital Envoy asks the Court to ignore the final judgment rule and authorize an immediate appeal on its claims while Google's counterclaims remain pending in the case. To have any hope of justifying this extraordinary relief under Federal Rule of Civil Procedure 54(b), Digital Envoy must show compelling circumstances justifying expedited review, and show that the claims for which it seeks an immediate appeal are unrelated to those Google is still pursuing. Digital Envoy cannot possibly carry this burden.

As Digital Envoy itself recognizes, Google still maintains a counterclaim seeking a declaratory judgment that Google has not breached the parties' contract and that its use of Digital Envoy's data was licensed. Given the near identity of the facts underlying this declaratory relief claim and the facts regarding the claims Digital Envoy wishes to appeal, the persistence of Google's request for declaratory relief alone dooms any possibility of a Rule 54(b) judgment.

Aware of this obstacle to an immediate appeal, Digital Envoy asks the Court to throw out Google's declaratory relief request. It contends that the request was mooted by the Court's decision barring Digital Envoy from obtaining monetary relief on its trade secret claim. But the Court's Order did not put an end to the parties' dispute, as Digital Envoy suggests. Digital Envoy still contends that Google breached the parties' contract, still demands untold millions of dollars for that alleged breach and is still pursuing those claims through the judicial process. It thus makes no sense to argue, as Digital Envoy does, that there is no longer a case or controversy between the parties. As the U.S. Supreme Court and several Courts of Appeal have made clear, until Digital Envoy's claims are finally and conclusively resolved, Google's declaratory relief claim remains ripe and the Court retains subject matter jurisdiction to resolve it.

The Court need go no further to reject Digital Envoy's request for piecemeal appellate review. But with or without Google's declaratory relief claim, there is no basis for a partial judgment under Rule 54(b). As an initial matter, the Ninth Circuit has made clear that a party seeking a 54(b) certification must demonstrate exceptional circumstances justifying a departure from the final judgment rule. Digital Envoy has offered nothing. Moreover, Google's counterclaims for breach of contract and trade secret misappropriation undeniably arise from the

same factual context as Digital Envoy's claims. All of the parties' claims are based upon the same contract, involve the same negotiations and interactions, and will require testimony from the same witnesses. Moreover, in attempting to defend against Google's claims, Digital Envoy will almost certainly invoke the same limitation of liability clause that barred its own monetary recovery. Given the factual and legal overlap between the parties' claims, a 54(b) certification would disserve the interests of judicial economy and lead to multiple appeals.

Under the circumstances, as the Ninth Circuit has recently held, a 54(b) certification is improper as a matter of law. Digital Envoy's motion should be denied in its entirety.

## FACTUAL STATEMENT

As the Court's prior Orders recognize, this action arises from a contractual relationship between Google and Digital Envoy that began in November 2000. Under the contract, Digital Envoy licensed Google the right to use Digital Envoy's geolocation data in Google's business for a few thousand dollars a month. Declaration of David Kramer filed August 17, 2005 ("Aug. 17 Decl."), Ex. A (the "Agreement"). The Court has already seen the series of email messages through which Google's Steve Schimmel and Matt Cutts, and Digital Envoy's Rob Friedman negotiated the parties' contract. *See* Declaration of David Kramer filed February 23, 2005 ("Feb. 23 Decl."), Exs. A-C (negotiation emails), Ex. I (email thread attaching several negotiation emails). It has also already seen the communications that were exchanged by those same individuals in the course of performing the Agreement. *See, e.g.,* Feb. 23 Decl., Ex. I (February 3-6, 2004 parties' email exchange regarding scope of the Agreement).

For years, Digital Envoy knowingly permitted Google to use Digital Envoy's data to support its advertising programs known as AdWords (for ads displayed on Google's own site) and AdSense (for advertisements placed on third party sites). *See* Declaration of David Kramer filed August 10, 2005 ("Aug. 10 Decl."), Ex. E (Friedman Dep.) at 213:2-6. Indeed, Digital Envoy itself participated in both programs starting in 2002. Aug. 10 Decl., Exs. N, O. But in February 2004, amidst the hype surrounding Google's initial public offering, Digital Envoy demanded a massive increase in license fees from Google, claiming for the first time that Google's use of the data in its AdSense program was a breach of the License Agreement.

Feb. 23 Decl., Ex. I (February 3-6, 2004 email exchange between Friedman and Schimmel alleging breach of the Agreement).

When Google refused what it perceived as contrived demands, Digital Envoy filed suit against Google in Georgia, in violation of a forum selection clause in the Agreement requiring all claims regarding the Agreement to be brought in California. Aug. 17 Decl., Ex. A § 12. In response, Google initiated this action, charging Digital Envoy with breach for filing suit in an improper forum. Google also requested that the Court declare that Google had not breached the Agreement through its use of Digital Envoy's data, and that such use was licensed under the Agreement.[1]

In discovery, Google learned that Digital Envoy had breached the Agreement by using Google's well-known brand name and the specifics of Google's use of Digital Envoy's data as a central part of its marketing presentations to Google's direct competitors. *See, e.g.*, Aug. 10 Decl., Ex. F (Digital Envoy powerpoint presentation describing Google's various uses of Digital Envoy's data including use in Google's advertising network). Digital Envoy made these disclosures despite explicit instructions from Mr. Schimmel to Mr. Friedman during the negotiation of the Agreement. *See., e.g.,* Feb. 23 Decl., Ex. B at 5 (email from Schimmel to Friedman noting Google's "hard stance on PR" and classifying Google's use of Digital Envoy's expertise as "confidential" and that such secrecy was "one of [Google's] competitive advantages"). Those instructions, in fact, came in the very same email exchange that Digital Envoy has proffered to support its claims against Google. *See* Declaration of Timothy Kratz filed March 9, 2005, Ex. E at 4 (including November 2000 email exchange between Freedman and Schimmel negotiating Agreement, including Friedman's acknowledgement: "I appreciate Google's reasoning regarding PR – it makes a lot of sense."). Based on Digital Envoy's misconduct, Google sought, and on January, 21 2005 was granted, leave to amend its

---

[1] Recognizing the impropriety of Digital Envoy's choice of forum, the Northern District of Georgia transferred Digital Envoy's case here. *Digital Envoy, Inc. v. Google, Inc.,* 319 F. Supp. 2d 1377 (N.D. Ga. 2004). The parties subsequently stipulated to dismiss the transferred action and proceed with the action initiated by Google with the parties realigned. *See* Stipulation and Order Realigning Parties and Withdrawing Motion to Transfer and/or Stay, filed June 28, 2004.

counterclaims to add claims against Digital Envoy for breach of contract and trade secret misappropriation.

In March 2005, Google moved for summary judgment on Digital Envoy's claims based upon its belief that its conduct was licensed. By Order dated May 20, 2005, the Court denied Google's motion, finding that there was a triable issue of fact regarding the interpretation of the license provisions in the parties' Agreement. To date, the proper interpretation of the provisions remains unresolved, as does the question of whether Google ever breached the Agreement.

Based upon a limitation of liability clause in the Agreement, however, the Court subsequently concluded that Digital Envoy cannot obtain monetary relief from Google because it cannot show that Google engaged in willful misconduct. *See* Orders entered November 8, 2005 and January 24, 2006. Undaunted, Digital Envoy still contends Google violated the parties' Agreement, still seeks exorbitant damages for that breach, and has made clear through this motion that it intends to continue pursuing its claims on appeal. Digital Envoy certainly has not agreed to drop its claims with prejudice.[2] For its part, Google maintains its counterclaim for declaratory relief regarding the Agreement, as well as its counterclaims for breach of the Agreement and trade secret misappropriation. Discovery in the matter closed nearly a year ago and the deadline for discovery-related motions passed in May 2005. Stipulation and Order to Extend Time to File Motions to Compel Discovery, entered May 13, 2005. Very little remains for the parties to do before proceeding to trial on Google's counterclaims.

---

[2] While the Court's recent Orders bar Digital Envoy from obtaining a monetary recovery from Google, they do not address Digital Envoy's additional request for injunctive relief. *See* Amended Complaint of Digital Envoy (filed 8/27/04) at 14 (praying for an injunction prohibiting Google, Inc. from *inter alia* using Digital Envoy's proprietary technology and information "to supply geographically targeted advertisements on third party websites."). In its haste to appeal, Digital Envoy appears to have overlooked or abandoned this request. *See* Mot. at 2:4-7 and 5:28-6:2 (stating that the Court's Orders entirely disposed of its claims). But the request for injunctive relief did not simply disappear. In fact, the request remains viable and by itself demonstrates the ongoing controversy between the parties.

# ARGUMENT

## I. GOOGLE'S COUNTERCLAIM FOR DECLARATORY RELIEF IS NOT MOOT

According to Digital Envoy, the Court no longer has subject matter jurisdiction over Google's declaratory relief counterclaim. It bases that view on the premise that the Court's summary judgment rulings extinguished all controversy between the parties concerning Google's liability for alleged trade secret misappropriation. According to Digital Envoy, because the Court ruled that it "cannot recover money from Google," there is no longer a case or controversy between the parties over Google's use of Digital Envoy's data, and Google's declaratory relief counterclaim must be dismissed as moot. Mot. at 3.[3] That argument is badly misguided.

While the Court's Orders may have disposed of Digital Envoy's affirmative claims (except for its request for injunctive relief, see *supra* n.2), they did not resolve the question of whether Google engaged in any misconduct in its use of Digital Envoy's data. That unresolved issue remains the subject of Google's counterclaim for declaratory relief. It is well established under Supreme Court precedent and numerous decisions of the Federal Courts of Appeals that unless and until Digital Envoy agrees to drop its claims against Google *with prejudice* or the court of last resort affirms the dismissal of those claims, there remains a viable, Article III controversy between the parties as to whether Google acted within the scope of its license. Accordingly, the counterclaim is not moot and is not properly dismissed.

### A. An Ongoing Controversy Exists As Long As Digital Envoy Claims A Right To Damages And The Court Of Last Resort Has Not Ruled On The Issue

As Digital Envoy itself acknowledges, the circumstances presented in this case are akin to those that regularly arise in patent cases. *See* Mot. at 3 (*citing Cover v. Schwartz*, 133 F.2d 541 (2d Cir. 1942) (pre-Federal Circuit patent dispute)). To establish a claim of patent infringement, a plaintiff must demonstrate that a defendant infringes upon a patent that is presumptively valid. Patent suits are often met with declaratory relief counterclaims seeking a

---

[3] Digital Envoy erred in numbering the pages in its Notice of Motion and Motion to Dismiss Google's Declaratory Judgment Counterclaim and Motion for Entry of Judgment ("Mot."). All cites herein to pages of Digital Envoy's Motion are to the pages of Digital Envoy's Memorandum of Points and Authorities, exclusive of its Notice of Motion.

1  determination that the patent-in-suit is invalid.  By establishing its non-infringement of the

2  patent, a defendant prevails on the plaintiff's affirmative claims.  But as court after court has

3  held, even where the plaintiff's affirmative claims have been dismissed, the defendant's

4  declaratory relief counterclaim regarding patent invalidity remains ripe.

5  In *Cardinal Chem. Co. v. Morton Int'l, Inc*., 508 U.S. 83 (1993), the United States

6  Supreme Court considered whether a determination of non-infringement in a patent case

7  terminated the controversy between the parties so as to moot a defendant's counterclaim for a

8  declaration of invalidity.  The Court held that a finding of noninfringement does not strip a court

9  of jurisdiction to consider an invalidity counterclaim; rather, a controversy concerning the

10  validity of the patent at issue persists until the parties' dispute has been finally and conclusively

11  resolved by the highest court:

> Because [the Federal Circuit] is not a court of last resort, a holding of either
> invalidity or noninfringement by [the Federal Circuit] does not render the case
> moot because it is not over.

14  508 U.S. at 97, n.19 (citing *Morton Int'l, Inc. v. Cardinal Chem. Co*., 959 F.2d 948, 953 (Fed.

15  Cir. 1992) (Lourie, C.J.) (concurring opinion)); *see also id*. ("The Federal Circuit's

16  determination that the patents were not infringed is subject to review in this Court, and if we

17  reverse that determination, we are not prevented from considering the question of validity merely

18  because a lower court thought it superfluous.").[4]

---

[4] The Federal Circuit's Chief Judge anticipated the Supreme Court's view in dissenting from the Federal Circuit's decision not to rehear *en banc* its dismissal of the invalidity counterclaim:

> Once the patentee creates a legitimate fear in an adversary that the patent will be
> asserted against it, nothing short of the patentee's unconditional guarantee not to do
> so under any circumstances ordinarily will remove that apprehension and thereby
> jurisdictionally moot the claim for declaratory relief.  In *Bard,* even the affidavit of
> the patentee that it had no intention of suing the declaratory claimant fell short of
> mooting the asserted declaratory claim. [Citation omitted]. Here, Morton has made
> no similar representation to Cardinal.  Indeed, its suit against Cardinal confirmed
> the presence of the necessary controversy on Cardinal's counterclaim respecting at
> least the asserted claims.  Morton's appeal of the invalidity judgment confirms
> again the threat of the patent.  And Cardinal has not *waived* its declaratory claim
> against the asserted claims, as some vindicated defendants have on appeal.  I can
> see no possible basis for holding Cardinal's declaratory claim *jurisdictionally* moot.

(continued...)

In decisions following *Cardinal Chemical*, the Federal Circuit has made clear that despite a finding of non-infringement in a patent case, a district court retains jurisdiction to hear declaratory judgment counterclaims of invalidity or unenforceability, and that such unresolved counterclaims must be adjudicated before an appeal is ripe. *Fort James Corp. v. Solo Cup Co.*, 412 F.3d 1340, 1348-49 (Fed. Cir. 2005), *petition for cert. filed*, 74 U.S.L.W. 3352 (U.S. Nov. 28, 2005) (No. 05-712) ("[A] counterclaim questioning the validity or enforceability of a patent raised issues beyond the initial claim for infringement that are not disposed of by a decision of noninfringement"; ruling that district court erred as a matter of law in holding that it did not retain jurisdiction to consider unenforceability counterclaim); *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1321 (Fed. Cir. 2001) ("Indeed, because OAM had raised the alleged invalidity and unenforceability of the '359 patent in its counterclaim, the court was obligated to rule on these matters as a prerequisite to entering judgment in the case"; vacating district court's entry of judgment and remanding for further proceedings); *see also General Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1356 (Fed. Cir. 1999) ("Even though we conclude that the '899 patent is not infringed, however, we nevertheless must still review the holding of invalidity for anticipation of the '899 patent.").

This tenet of subject matter jurisdiction is not limited to the patent context. In *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 235 F.3d 360, 362 (7th Cir. 2000), the plaintiff sued for copyright infringement, and the defendant counterclaimed seeking, among other things, a declaration that the plaintiff had no copyright in the software at issue. After granting the defendant's motion for summary judgment of noninfringement, the district court then dismissed the defendant's counterclaims without prejudice believing they were moot. *Id.* The Seventh Circuit refused to entertain an appeal, reasoning that there had been no final judgment because the defendant's declaratory relief claims had not been resolved, were still ripe and should not

---

(...continued from previous page)
*Morton Int'l, Inc. v. Cardinal Chem. Co.,* 967 F.2d 1571, 1576 (Fed. Cir. 1992) (Nies, C.J.) (*dissenting from denial of en banc review*).

1  have been dismissed. *Id*. at 363-64.[5]  As the Court of Appeal explained, only if the defendant's
2  counterclaims had been dismissed with prejudice would the controversy between the parties be
3  resolved. *Id.* at 363.

4      The circumstances presented here are no different.  The Court's resolution of the issue of
5  monetary relief does not moot Google's request for declaratory judgment on the question of
6  whether Google breached the parties' Agreement in the first place.  Just as a patent defendant is
7  entitled to continue seeking a declaration of invalidity after successfully defeating a plaintiff's
8  infringement claim, so too is Google entitled to continue seeking to vindicate its rights under the
9  Agreement.  Digital Envoy has not released Google from any supposed liability, and instead has
10 made clear it intends to continue pursuing its claims.  As long as Digital Envoy continues to
11 challenge Google's conduct and seek a remedy for it, the controversy between the parties
12 remains, and the Court retains subject matter jurisdiction over it.

13     **B.     The Cases Cited by Digital Envoy Do Not Support Dismissal of Google's Declaratory Relief Counterclaim**

15     Digital Envoy completely ignores the authorities establishing the continued viability of
16 Google's declaratory relief counterclaim.  Moreover, nearly every case cited by Digital Envoy
17 either fails to stand for the cited proposition or involves a wholly inapposite fact pattern.

18     As noted, Digital Envoy cites a Second Circuit patent case from 1942 for the proposition
19 that "when court finds against plaintiff on the issue of infringement, counterclaim on issue of
20 patent validity becomes moot." Mot. at 3 (*citing Cover v. Schwartz*, 133 F.2d 541 (2d Cir.
21 1942)).  But that is the very proposition rejected by the Supreme Court in *Cardinal Chemical,*

---

[5]  According to the *ITOFCA* panel, a continuing case or controversy existed between the parties because the defendant *might* refile its counterclaims, thereby leaving the district court to consider issues not addressed by the summary judgment rulings:

> In order to create a final judgment under § 1291 and make the order granting summary judgment appealable, the district court had to dispose of all the issues it did not decide in its order.  Yet, it would be disingenuous to suggest that by dismissing the claims without prejudice, the district court did dispose of all those issues.  Given the district court's order, [defendant] was free to refile its counterclaims at any point from the moment they were dismissed.

*Id*. at 363-64.

and in three recent decisions from the Federal Circuit, *Fin Control, General Electric* and *Solo Cup*. To make matters worse, the *Cover* case does not even stand for the now discredited proposition for which Digital Envoy cites it. Mot. at 3. Remarkably, *there was no invalidity counterclaim at issue* in the case. *Cover*, 133 F.2d at 544 (only counterclaim was for infringement of defendant's patents, which was not at issue on appeal). Digital Envoy appears to have simply misunderstood the fact pattern.

Likewise misplaced is Digital Envoy's reliance on *Ashcroft v. Mathis*, 431 U.S. 171 (1977) and *Aldens, Inc. v. Packel*, 524 F.2d 38 (3d Cir. 1975). Mot. at 3. In *Ashcroft*, there was no continuing controversy between the parties because the plaintiff had failed to appeal an adverse ruling on its claim for damages. *Ashcroft,* 431 U.S. at 172. The case was thus procedurally situated *as if* the court of last resort had ruled on the plaintiff's damages claim. Here, by contrast, Digital Envoy persists in its claim against Google and has not waived its ability to appeal. In *Aldens*, the affirmative claim and the declaratory relief counterclaim were mirror images (seeking opposite declarations concerning the constitutionality of a statute). After granting summary judgment on the complaint in favor of defendant that the act was constitutional, the district court had nothing left to decide and no further relief to grant with respect to defendant's counterclaim seeking a declaration of constitutionality. *Aldens,* 524 F.2d at 51. Unlike the current case, where the Court has only resolved a potion of the question before it (Digital Envoy's inability to obtain monetary relief), in *Aldens* there were no issues left unresolved. Accordingly, the defendant's counterclaim in *Aldens* was properly dismissed.[6]

Relying on *Texas v. United States*, 523 U.S. 296 (1998), Digital Envoy argues that the existence of a continuing dispute at the appellate level is irrelevant because the possibility of

---

[6] Two other inapposite cases cited by Digital Envoy discuss the circumstances in which a federal court has continuing jurisdiction to adjudicate declaratory relief claims where disputed conduct at issue has ceased. *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115 (1974) (claim seeking declaration regarding validity of state regulations that provide benefits to striking workers was not moot even after employee strike was over); *Skysign Int'l, Inc. v. City & County of Honolulu*, 276 F.3d 1109, 1115 (9th Cir. 2002) (claim seeking declaration that federal law preempted city from regulating disputed conduct was not moot even after plaintiff ceased conduct in question). To the extent they are relevant at all, these cases reflect a liberal view of declaratory relief jurisdiction and thus support Google's position.

reversal is not "of sufficient immediacy and reality" to maintain a viable controversy between the parties. Mot. at 4. That argument fails for at least two reasons. First, it is directly contrary to the Supreme Court's ruling in *Cardinal* that a controversy is not over until all appeals have been exhausted. Second, the case says no such thing. In *Texas*, the Supreme Court held that a claim brought by the state of Texas seeking a declaration that a federal statute did not prohibit sanctions permitted under state law was not ripe where imposition of such sanctions would only occur if many other events took place first. 523 U.S. at 298-300 ("[W]here 'we have no idea whether or when such [a sanction] will be ordered,' the issue is not fit for adjudication."). The Court does not in any way discuss whether a controversy is mooted by a trial court decision on one aspect of a claim when the trial court decision remains subject to appeal.[7]

In truth, Digital Envoy cites only one case that actually supports the notion that Google's counterclaim may be moot – a slip opinion from Judge Armstrong in *Gladwell Governmental Servs., Inc. v. County of Marin*, No. C-04-3332 SBA, 2005 WL 2656964 (N.D. Cal. Oct. 17, 2005). But the unpublished decision contains only a single conclusory sentence to the effect that an unresolved controversy between litigants disappears upon a trial court's dismissal of the plaintiff's claims, notwithstanding the possibility of appeal. The opinion offers no analysis and cites no authority for that proposition which is at odds with *Cardinal Chemical* and at least four decisions from the Courts of Appeal. The Court should align itself with the great weight of authority and deny Digital Envoy's motion to dismiss.

## II.     RULE 54(B) CERTIFICATION IS NOT WARRANTED

With its claims now dismissed, Digital Envoy asks the Court to enter a partial judgment under Federal Rule of Civil Procedure 54(b), allowing it an immediate appeal while Google's

---

[7] Digital Envoy also relies on *City of Rome, New York v. Verizon Commc'ns, Inc.*, 362 F.3d 168, 182 (2d Cir. 2004). There, the Second Circuit rejected the argument that subject matter jurisdiction could be based on a declaratory relief claim that plaintiff did not raise, but might have raised. But again, the court does not come close to considering whether the possibility of appeal and reversal of a trial court's decision has any effect on the existence of a continuing case or controversy. As before, the decision simply has nothing to do with the proposition for which Digital Envoy cites it.

counterclaims move forward in this Court. But Digital Envoy cannot justify this extraordinary relief. Indeed, controlling authority compels denial of Digital Envoy's request.

### A.   There are No Compelling Circumstances to Justify an Immediate Appeal

Given the inefficiency of duplicative piecemeal appeals and the sheer number of appeals that would result from early appeal of routine cases, the Ninth Circuit has a strong preference that all claims in a case be appealed together. Certification of partial judgments is reserved solely for compelling cases where the urgent need for immediate appeal outweighs the administrative burdens:

> Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.

*Morrison-Knudsen Co. v. Archer*, 655 F.2d 962, 965 (9th Cir. 1981) (vacating judgment and remanding); *accord Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10 (1980) ("Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely.").

The extraordinary nature of Rule 54(b) certification was recently emphasized by the Ninth Circuit in *Wood v. GCC Bend, LLC*, 422 F.3d 873 (9th Cir. 2005). *Wood* involved review of a trial court's certification of a partial judgment in an employment discrimination case. Although there was no question that the certified claim was final (*id.* at 879), there was some overlap in the facts between the certified claim and those that remained, the case was relatively simple, and the plaintiff provided no "seriously important reason" compelling immediate review. *Id.* at 882. Under these circumstances, the Ninth Circuit found the trial court's 54(b) certification to be an abuse of discretion, and dismissed the appeal:

> The caseload of this court is already huge. More than fifteen thousand appeals were filed in the last year. We cannot afford the luxury of reviewing the same set of facts in a routine case more than once without a seriously important reason.

//
//
//
//

*Id*. at 882; *see also id.* at 879 ("At least in our experience, requesting or granting a request for-- certification in ordinary situations such as this is not routine. We believe it should not become so.").[8]

Notably, the *Wood* panel explicitly cited *Curtiss-Wright*, 446 U.S. 1 – a case relied upon by Digital Envoy – as exemplifying the special circumstances necessary to justify Rule 54(b) certification. *Wood*, 422 F.3d at 882. In *Curtiss-Wright*, the defendant owed the plaintiff $19 million, and the only dispute between the parties concerned the timing of payment. 446 U.S. at 12. Because the plaintiff would suffer "severe daily financial loss" from nonpayment of the money, since the prevailing interest rates were higher than the prejudgment interest rate and litigation of the remaining claims was likely to take months or years given their complexity (*id*. at 5), a 54(b) partial judgment was proper. *Id.* at 13. There is nothing remotely similar at issue here.

Digital Envoy never even acknowledges the requirement that it show special or compelling circumstances to justify an immediate appeal, much less attempts to satisfy that requirement. In truth, there are no compelling circumstances warranting immediate appellate review. The best that Digital Envoy can muster is its claim that "[i]f Digital Envoy is compelled to wait until the final disposition of Google's counterclaims before it can commence its appeal, the result will be to delay for months the final determination of this action." Mot. at 6-7. The same argument could be made in any case where certain claims are resolved and others remain to

---

[8] Remarkably, Digital Envoy ignores the Ninth Circuit's controlling decision in *Wood*. Instead, Digital Envoy relies upon two *unpublished* and *uncitable* decisions, as well as a third decision from an *unopposed* motion for Rule 54(b) certification. In direct violation of Ninth Circuit rules, Digital Envoy cites *Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. 04-35553, D.C. No. CV-01-01655-RE, 2006 WL 26210 (9th Cir. Jan. 5, 2006). Mot. at 6. The opinion itself says: "This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3." *Id*. at n.*. Digital Envoy also cites *Khan v. Park Capital Sec., LLC,* No. C 03 00574 RS, 2004 WL 1753385 (N.D. Cal. Aug. 5, 2004) (Seeborg, J.), which this Court expressly labeled "Not for Citation." *See* U.S.D.C. Northern District Case No. C 03 00574 RS [*Khan v. Park Capital Sec., LLC*], Document 169. *See* Civ. L.R. 3.4(e) ("Any order or opinion that is designated: "NOT FOR CITATION," pursuant to Civil L.R. 7-14 or pursuant to a similar rule of any other issuing court, may not be cited to this Court, either in written submissions or oral argument, except when relevant under the doctrines of law of the case, res judicata or collateral estoppel."). Finally, Digital Envoy cites *In re Solutia, Inc., Sec. Litig.*, No. C 03-03554 SBA, 2005 WL 701435 (N.D. Cal. Mar. 24, 2005), which states at n.1 "Plaintiff did not file an Opposition to the instant motion."

be tried. It is hardly a justification for Digital Envoy's claims to be pushed through an early appeal while Google's related claims remain before this Court.

This is a routine contract dispute; it involves a single plaintiff and a single defendant having a discrete relationship. The issues remaining for trial will not be complex or lengthy, and should proceed without delay. That is particularly true since the claims were all scheduled to be tried (and are technically still scheduled to be tried) in April 2006 and most pre-trial activity has been completed. *See* Stipulated Amended Scheduling Order entered July 28, 2005. Requiring Digital Envoy to comply with the final judgment rule in this case will cause no harsh result or undue prejudice. As in *Wood* and *Morrison-Knudsen,* there is no justification for burdening the Ninth Circuit through certification of a partial judgment under Rule 54(b) in this case.

### B. Judicial Economy Weighs Heavily Against Rule 54(b) Certification

Even if Digital Envoy could articulate a reason to depart from the normal practice of allowing for an appeal only after entry of final judgment, there are abundant reasons here why Rule 54(b) certification would be contrary to the interests of judicial economy.

A critical factor in considering the judicial burden of a Rule 54(b) certification is the extent of legal and factual overlap between the claims for which separate judgment is sought and the remaining claims. *Wood*, 422 F.3d at 882. For this analysis, counterclaims are not treated differently than any other claims. *Curtiss-Wright*, 446 U.S. at 9 ("Like other claims, their significance for Rule 54(b) purposes turns on their interrelationship with the claims on which certification is sought."). Given the duplication of effort and obvious inefficiency of multiple appeals concerning overlapping issues, the existence of such issues weighs heavily against entry of judgment:

> The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order. Those findings should include a determination whether, upon any review of the judgment entered under the rule, the appellate court will be required to address legal or factual issues that are similar to those contained in the claims still pending before the trial court. A similarity of legal or factual issues will weight heavily . . . under the rule, and in such cases a Rule 54(b) order will be proper only where necessary to avoid a harsh and unjust result, documented by further and specific findings.

*Morrison-Knudsen*, 655 F.2d at 965. *Accord ITOFCA,* 235 F.3d at 364 ("It is implicit in Rule 54(b) that the retained and appealed claims be factually distinct, for otherwise the court of appeals may be forced to analyze the same facts in successive appeals, a form of piecemeal appealing not authorized by the rule.").[9]

Acknowledging the importance of overlapping issues to the current motion, Digital Envoy blithely contends that none of Google's unadjudicated counterclaims "relate in any way to the subject matter of Digital Envoy's adjudicated claims." Mot. at 7. The argument is untenable. There can be no serious dispute that Google's declaratory judgment counterclaim (seeking a declaration that Google has not breached the parties' Agreement and that its use was licensed under the Agreement) completely overlaps with Digital Envoy's breach of contract and trade secret claims. Digital Envoy itself characterizes Google's counterclaim as "a 'mirror-image' counterclaim." Mot. at 2. Resolution of Digital Envoy's appeal would therefore inevitably require the appellate court to consider the same issues more than once.

Even if Google's declaratory relief counterclaim were moot (which it is not), Google's other counterclaims for breach of contract and trade secret misappropriation also overlap substantially with Digital Envoy's claims. Digital Envoy nowhere identifies the issues it actually intends to take up on an appeal if one were certified, and the Court has to date made numerous rulings that bear on Digital Envoy's claims.[10] Presumably, if granted partial judgment, Digital

---

[9] The cases cited by Digital Envoy to support its contention that certification is appropriate even where there is overlap between the claims sought be appealed and the remaining claims are easily distinguished from the current case. *See* Mot. at 6. In *Angoss II P'ship v. Trifox, Inc.*, No. C 98-1459 SI, 2000 WL 288435 (N.D. Cal. Mar. 13, 2000), the plaintiffs' claim arose out of the breach of a Canadian contract entered in 1993. The facts giving rise to the defendant's counterclaim for trademark and copyright infringement did not occur until 1997. Accordingly, the court determined that "because defendant's counterclaim for trademark and copyright infringement arose out of completely separate facts, an appellate court would not have to review defendant's breach of contract more than once." *Id.* at *3. In *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993), the court certified for immediate appeal the question whether there was subject matter over Swedish defendants; the court explicitly found that "[t]he jurisdictional question at issue here is unrelated to the other issues in the case; thus, entry of final judgment will not lead to undesirable 'piecemeal appeals.'"

[10] These include: (1) that many of Digital Envoy's claims were preempted by the Uniform Trade Secret Act; (2) that Digital Envoy's Lanham Act claim failed as a matter of law; (3) that Google's AdSense for Content program was part of Google's "Business" within the meaning of the Agreement (4) that Digital Envoy had no evidence of any actual damages; (5) that Digital

(continued...)

Envoy would seek review of all or many of these rulings.  That will require interpretation of the Agreement, and in many cases, an examination of the evidence submitted by the parties.  Yet the same Agreement and the same evidence are implicated by Google's counterclaims.[11]  Under Digital Envoy's suggested approach, the Ninth Circuit would have to examine the historical context, negotiations and performance of the Agreement to resolve the issues for the first appeal.  Then, at the conclusion of trial of Google's counterclaims, the appeals court would have to revisit the same Agreement and evidence to resolve a potential second appeal.  That approach makes no sense.[12]

Further, as Google's counterclaims progress, Digital Envoy will invariably contend that they are subject to the same limitation of liability provision that barred it from obtaining monetary relief from Google.   If Digital Envoy were granted an immediate appeal, it would presumably seek to reverse the Court's interpretation and validation of that provision.  Accordingly, Digital Envoy would be appealing the application of a provision that remains the subject of active litigation in this Court.  Again, the approach is neither efficient nor sensible.

---

(...continued from previous page)
Envoy had no evidence of any "willful misconduct" by Google**;** and (6) that a limitation of liability clause in the Agreement barred Digital Envoy from seeking monetary relief from Google.  *See* Orders entered May 20, 2005, November 8, 2005, and January 24, 2006.

[11]  By way of example only, to prove its counterclaims, Google will introduce various Digital Envoy marketing presentations that improperly featured Google and described its use of Digital Envoy's data in the Google advertising network.  Those same presentations are highly relevant to the question of whether Google engaged in "willful misconduct" by using the data in its advertising network, as they show that Digital Envoy itself believed such use was permissible and boasted about it.

[12]  An immediate appeal by Digital Envoy of the Court's rulings against it would put before the Ninth Circuit the question of whether this Court properly denied Google's motion for a summary judgment that it was licensed to use Digital Envoy's data.  *See* Order, May 20, 2005.  Google can and would make the claim that it was licensed as a matter of law as an alternative ground for affirming the dismissal of Digital Envoy's claims.  *See Lee v. Burlington N. Santa Fe Ry. Co.,* 245 F.3d 1102, 1107 (9th Cir. 2001) ("A prevailing party need not cross-petition to defend a judgment on any ground properly raised below, so long as that party seeks to preserve, and not to change, the judgment" defendant may challenge denial of its summary judgment motion on different ground as basis for affirming appeal).  Accordingly, Digital Envoy would have the proper interpretation of the license provisions in the Agreement considered by the appeals court twice:  first, on Digital Envoy's appeal of the 54(b) judgment against it, and, in the event of a reversal, a second time after the parties tried the issue.

1  Digital Envoy argues that allowing immediate appeal could conserve judicial resources,
2  reasoning that if Digital Envoy were to lose on appeal, this Court would never need to adjudicate
3  whether Google is or is not licensed under the Agreement.  Mot. at 4.  Digital Envoy's efficiency
4  argument is illusory.  If Digital Envoy believes it is likely to lose on appeal, then it should not
5  bring the appeal.  More to the point, if Digital Envoy were to win an appeal, that would
6  effectively guarantee *at least* a second appeal on issues of contract interpretation at the
7  conclusion of all district court proceedings.

8  Given the absence of any urgency for an immediate appeal as well as the factual and legal
9  overlap in claims, the Court should allow Google's counterclaims to proceed, and enter a final
10  judgment once they are adjudicated.  Barring a settlement, the parties can then appeal all
11  contested issues.[13]  This approach will guarantee that there is *at most* one appeal concerning the
12  negotiations and meaning of the Agreement, and some chance that there will no appeal at all.
13  *See Wood*, 422 F.3d at 873 (observing that in the absence of Rule 54(b) certification, issues
14  sought to be immediately appealed may never reach the appeals court).

## CONCLUSION

16  For the foregoing reasons, Google Inc. respectfully requests that the Court deny Digital
17  Envoy's motion in its entirety.

19  Dated:  March 1, 2006

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:   /s/ Colleen Bal
         Colleen Bal

Attorneys for Defendant/Counterclaimant
GOOGLE INC.

---

[13] Digital Envoy seems determined to drag the case out for as long as possible without a resolution on the central question of Google's license to use Digital Envoy's data, and leverage the resultant litigation costs into an unjustified settlement.