# EXHIBIT A

Dockets.Justia.com

DAVID H. KRAMER, State Bar No. 168452
TAIT GRAVES, State Bar No. 197923
CHAN PARK, State Bar No. 218328
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Plaintiff
Google Inc.

**ORIGINAL
FILED**

APR 1 6 2004

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

#### SAN JOSE DIVISION

**ADR**

E-FILING

| | |
|---|---|
| GOOGLE INC., | **C04 01497 RS** |
| Plaintiff, | COMPLAINT FOR BREACH OF CONTRACT AND DECLARATORY JUDGMENT |
| v. | |
| DIGITAL ENVOY, INC., | Jury Trial Requested |
| Defendant. | |

CASE NO.

COMPLAINT FOR BREACH OF CONTRACT AND
DECLARATORY JUDGMENT

C:\NrPortb\PALIB1\DAG\2429691_1.DOC

## Introduction

1.    By this action, Google Inc. ("Google") seeks declaratory relief in a dispute with Digital Envoy, Inc. ("Digital Envoy") regarding a contract between the parties.  Google further seeks redress for Digital Envoy's breach of the forum selection clause in its contract with Google.  Despite a provision that expressly requires the parties to file any lawsuit regarding the contract in Santa Clara County, California, Digital Envoy has sued Google in Georgia on claims regarding the contract.

## The Parties

2.    Plaintiff Google Inc. is a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California 94043.  Google is the surviving corporation of a merger between Google Technology, Inc., a California corporation (formerly known as Google, Inc., a California corporation) and Google, Inc., a Delaware corporation.

3.    Defendant Digital Envoy, Inc. is a Georgia corporation with its principal place of business at 250 Scientific Drive, Suite 800, Norcross, Georgia 30092.

## Jurisdiction

4.    This action is between citizens of different states and the amount in controversy exceeds $75,000, thus there is diversity jurisdiction under 28 U.S.C. section 1332.

## Venue

5.    Venue is proper in the Northern District of California, San Jose Division, under 28 U.S.C. section 1391 because a substantial part of the events or omissions that give rise to the claims and controversy occurred in the Northern District of California, San Jose Division, and in addition, a substantial part of the material that is a subject of the claims and controversy is situated in the Northern District of California, San Jose Division.  Moreover, venue is proper in the Northern District of California, San Jose Division, because the forum selection clause in the parties' November 30, 2000 Product and Electronic Database Evaluation and License Agreement – the contract at the heart of this case – states in Section 12 that "[a]ny lawsuit regarding this Agreement shall be filed in the state or federal courts in Santa Clara County, California."

Case 5:04-cv-01497-RS    Document 12    Filed 04/16/2004    Page 3 of 22

**Factual Allegations**

6.    Google is the world's leading Internet search company.  It provides search-related services in a variety of different Internet-based applications.

7.    Digital Envoy, Inc. is one of several companies offering technology that allows one to ascertain certain geographic information from a computer's Internet Protocol (IP) address.  This "geo-targeting" capability can be used to tailor the content of websites based upon a visitor's assumed location.

8.    On or about November 30, 2000, Google and Digital Envoy entered into a license agreement that gave Google contractual rights to use Digital Envoy's "Personum product" and "certain geographic/IP address databases" (the "licensed technology").  A copy of this contract (with its two amendments and subsequent ratification) is attached as Exhibit A (the "Contract").

9.    Under the Contract, Google was granted the right to use the licensed technology in its "Business" at its "offices and data centers."  In particular, the Contract expressly permits Google to "use the Database Libraries to develop indices, services, or applications that are provided to third parties." In exchange for these rights, Google initially agreed to make monthly payments to Digital Envoy of $3000, and as a result of amendments raised the payment to $8000 per month.

10.    The Contract is governed by California law and requires that any lawsuit regarding the Contract be filed in the state or federal courts of Santa Clara County, California.

**The Present Dispute**

11.    Google has fully performed under the parties' Contract.  Further, Google has used Digital Envoy's technology only within the scope of the license granted by Digital Envoy under the Contract.

12.    In February 2004 Digital Envoy contacted Google and demanded that Google increase its payments to Digital Envoy.  Digital Envoy eventually explained that after signing its contract with Google for payments of $8,000 a month, it had separately licensed its technology to a major partner for $35,000 a month and had promised its partner that the partner would receive the best price Digital Envoy offered to any customer for a similar deal.  Digital Envoy in

1   fact demanded that Google pay as least as much as the $35,000 per month paid by this partner,

2   and indicated that in no event would it accept any counteroffer that did not at least match the

3   $35,000 per month paid by the partner.

4         13.    As a pretext for its demand of increased payment, Digital Envoy claimed that

5   Google was using the licensed technology beyond the activities permitted by the Contract.

6   Specifically, it claimed that Google's use of the technology in connection with Google's

7   AdSense program, was not permitted by the Contract.  It made this claim for the first time in

8   February 2004, even though the program had been in existence for many months, and Digital

9   Envoy had long been aware of it.

10        14.    Digital Envoy's claim was false.  To the extent Google used Digital Envoy's

11  technology in its AdSense program, such use was authorized by the Contract.   Google thus

12  rejected Digital Envoy's demands for increased payment.

13        15.    On March 29, 2004, Digital Envoy filed a lawsuit against Google in which its

14  principal contention is that Google's use of Digital Envoy's technology in the AdSense program

15  was not authorized by the parties' Contract.  Despite the express forum selection clause in the

16  Contract calling for any lawsuit "regarding" the Contract to be filed in Santa Clara County,

17  California, Digital Envoy improperly filed the suit in Georgia.  Digital Envoy thus breached the

18  parties' contract and has and will put Google to needless expense of responding to the suit in

19  Georgia.

20                 **First Cause of Action – Breach of Contract**

21        16.    Google incorporates all of the allegations contains in Paragraphs 1-15 of this

22  Complaint.

23        17.    Google and Digital Envoy entered the Contract on or about November 30, 2000.

24        18.    Google has performed all obligations required of Google under the Contract,

25  except for those obligations that have been excused or waived.

26        19.    Digital Envoy breached Section 12 of the Contract, the forum selection clause, by

27  filing a lawsuit regarding the parties' contract against Google in Georgia.

28

20.    As a proximate cause of Digital Envoy's breach of contract, Google has been damaged in an amount to be determined at trial.

### Second Cause of Action – Declaratory Judgment

21.    Google incorporates each of the allegations contained in Paragraphs 1-20 of this Complaint.

22.    There is an actual and justiciable controversy between the parties concerning the scope of Google's license under the Contract to use Digital Envoy's technology.   Digital Envoy has demanded money from Google for actions allegedly outside the scope of the license.  Google denies any unlicensed activity, and denies that any further money is owned to Digital Envoy. Further, on March 29, 2004, Digital Envoy filed a lawsuit against Google in the United States District Court for the Northern District of Georgia, Atlanta Division, alleging that Google had exceeded the scope of the license granted by the Contract.

23.    Google therefore seeks a declaration that it has not exceeded the scope of its license with Digital Envoy, that it has not otherwise breached the Contract with Digital Envoy and that it has not misused any supposed intellectual property licensed to Google by Digital Envoy under the Contract.

### Prayer

WHEREFORE, Google prays for a judgment:

A.    Declaring that Google has not exceeded the scope of its license with Digital Envoy under the Contract, that Google has not otherwise breached the Contract and that Google has not misused any intellectual property licensed by Digital Envoy to Google under the Contract;

B.    Finding Digital Envoy in breach of Section 12 of the Contract and awarding Google damages as proven for that breach along with applicable interest;

C.    Awarding Google its costs of suit; and

D.    Awarding Google any other relief the Court may deem proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Demand for Jury Trial**

Google demands a jury trial.

**Certification of Interested Entities or Persons**

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons,

Case 5:04-cv-01497-RS    Document 1-2    Filed 04/16/2004    Page 6 of 22

associations of person, firms, partnerships, corporations (including parent corporations) or other
entities (i) have a financial interest in the subject matter in controversy or in a party to the
proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be
substantially affected by the outcome of this proceeding: Kleiner, Perkins, Caulfield & Byers
and Sequoia Capital (and various affiliated entities of Kleiner, Perkins, Caulfield & Byers and
Sequoia Capital).

Dated: April 16, 2004

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: _David H. Kramer_

David H. Kramer

Attorneys for Plaintiff
Google Inc.

NOV-30-2000 THU 04:52 PM                    FAX NO.                        P. 02

*Copy-*
*Note: Amendment*
*sec. 2 modifies*
*payment to*
*$4500/mth*
*SS*

**digital**
**envoy**

THIS PRODUCT AND ELECTRONIC DATABASE EVALUATION AND LICENSE
AGREEMENT (this "Agreement") is made and entered into as of the ___ day of
November, 2000, by and between Google, Inc. ("Licensee") and Digital Envoy Inc.
("Licensor"):

### WITNESSETH:

WHEREAS, Licensee is in the business of producing and maintaining information
search technology (the "Business"); and

WHEREAS, Licensee desires to secure from Licensor the right to use Licensor's
Personum product (the "Product") and certain geographic/IP address databases (the
"Database Libraries") for purposes of utilizing the Product and the Database Libraries in
the Business (the "Service");

NOW, THEREFORE, the parties hereto, intending to be legally bound, hereby
agree as follows:

### Section 1
### DATABASE LIBRARIES

Licensor agrees to establish and maintain the Database Libraries in a form
suitable for Licensee's use pursuant to this Agreement. It is agreed that the form suitable
for Licensee's use shall be electronic with data stored in a server database licensed in
conjunction with the Product.

### Section 2
### LICENSOR SUPPORT AND LICENSEE RESPONSIBILITIES

Doc# 273228 V501

Licensor agrees to provide electronic updates of the Database Libraries to Licensee, no less frequent than monthly. The updates shall have the most recent geographic/IP address data compiled by Licensor. It is understood that Licensor shall have no responsibility to maintain or support Licensee's content serving network. The Database Libraries shall be treated as confidential and proprietary information of Licensor, and except as otherwise noted herein the receiving party shall not disclose such information, directly or indirectly, to any third party, without the consent of the disclosing party. Licensor shall provide Licensee with on-going 24/7 technical support.

Licensee shall be responsible for supplying a server that meets the following specifications:

    a. Pentium III Xeon 550 MHz Linux server; dual processors preferred with a minimum of 512 Mb of RAM;
    b. High speed Ethernet card or other network interface card that interfaces with Licensee's network;
    c. Minimum of 10 gigabyte hard drive on a SCSI bus, RAIDing optional;
    d. Providing an Internet routable IP address for the server.

Licensor shall be responsible for providing Licensee with information to configure its server to interface with Licensor's central servers and shall provide Licensee with a C, Java or Perl API that encompasses functions that allow Licensee to interface to Licensor's database. The parties agree to establish commercially reasonable security measures with respect to such interface. Licensor shall not be responsible for supporting Licensee's server(s) or other hardware.

## Section 3
## GRANT OF RIGHTS

Licensor hereby grants Licensee the limited, worldwide right to use in its Business (and not distribute to any third party in whole or in part) the Product and the Database Libraries. Such right shall be nonexclusive. Such rights shall be strictly limited to the right to:

Doc# 273221 v:01

1. Input, download, and store some or all of the Database Libraries in files and memory; and compile some or all of the Database Libraries at the Site. Licensee may also use the Database Libraries to develop Indices, services, or applications that are provided to third parties (e.g., developing a country-specific index of web pages). In no event, however, are the Database Libraries to be sold, licensed, distributed, shared or otherwise given (in any form) to any other party or used outside of the site set forth herein.

2. Access and use the Database Libraries in the Business only at the Site. The "Site" shall be defined as Google's offices and data centers.

## Section 4
## RESERVED RIGHTS

Licensor reserves the right to use the Database Libraries for its own business purposes and reserves the right to distribute the Database Libraries to others in the course of its business as it sees fit. Nothing in this license shall in any way restrict Licensor's or its customers' use of its Database Libraries.

## Section 5
## PAYMENT AND EVALUATION PERIOD

5.1 Licensee shall pay Licensor a monthly fee of three thousand dollars ($3,000) per month during the term of this Agreement for access to Licensor's geographic tailoring Product and the Database Libraries. Notwithstanding the foregoing, Licensor and Licensee acknowledge that it may take a brief period of time for Licensee to evaluate whether the Product and the Database Libraries will be useful in Licensee's business. Hence, subject to the terms and conditions of this License, Licensee shall be permitted to use the Database Libraries and the Product for a period of fourteen (14) days, without

Doc# 272328 V201

charge and may terminate this agreement during such fourteen (14) day period in the event that Licensee, in its reasonable discretion, determines that the Database Libraries and Product are not useful for Licensee's business needs.

5.2 Licensee shall pay to Licensor all amounts accruing with respect to charges billed in each calendar month within 30 days after the said payment is due. There shall be applied to any amounts not paid by Licensee when due a delinquency charge of Eighteen Percent (18%) per annum prorated for partial periods of the unpaid principal balance thereof, commencing to accrue the calendar day after such due date.

## Section 6
## NO OTHER PAYMENT, ETC.

Except as expressly provided in this Agreement, neither party shall be entitled to any payment, cost reimbursement, or other compensation from the other party in respect of its performance, and each party shall bear all its own expenses incurred in rendering performance.

## Section 7
## PROPRIETARY PROTECTION

7.1 As between the parties hereto, Licensor shall be the sole owner of the Database Libraries, including any patents, copyrights or trade secrets associated with the Database Libraries or the underlying applications.

7.1a As between the parties hereto, Licensee shall be the sole owner of any services or products developed using the Database Libraries (but excluding the Database Libraries), including any patents, copyrights or trade secrets associated with such services or products.

7.2 Licensee shall have no right to copy or reverse engineer the Database

DOC# 373226 V#01

Libraries and/or the Product.  Except as set forth in this Agreement, in no event shall Licensee distribute, disclose or otherwise make available the Database Libraries, or any information contained therein to any other party whatsoever or at any other site other than the Site, without the express written consent of Licensor.    Licensee shall hold all of Licensor's product information, including the results of any evaluation or testing thereof, by Licensee in strict confidence and shall in no event share such information with any third parties.

7.3 Licensee shall cooperate with Licensor (at Licensor's expense) with regard to any copyright registration of the Database Libraries, including updated versions thereof, that Licensor may choose to obtain. Both parties agree to cooperate with each other with respect to any other action that may be necessary or appropriate for the protection of the Database Libraries under applicable intellectual property laws.

7.4 In the event that either party discovers an instance of possible infringement of Licensor's rights in the Database Libraries, such party shall promptly notify the other. The parties shall consult with one another with respect to the action that may be appropriate to stop or remedy such infringement.

7.5 If a third party claims that the exercise by Licensee of the rights granted herein, including the provision and use of the Product based on the Database Libraries in accordance with this Agreement, infringes any patent, copyright, trade secret, or other proprietary right of any third party, Licensor will defend Licensee against that claim at Licensor's expense and Licensor will indemnify and hold harmless Licensee from and against any associated loss, liability, damage, or expense (including costs of investigation, court costs, and reasonable attorney's fees). Licensee agrees to cooperate with Licensor to determine the most cost-effective and practical means for responding to and disposing of any such matter.

## Section 8
### WARRANTIES; LIMITATIONS; DISCLAIMER

Licensor warrants that the Product will materially conform with its written specifications during the term of this Agreement. It is mutually acknowledged that data entry, communication and storage are subject to a possibility of human and machine errors, omissions, delays, and losses, including inadvertent loss of data or damage to media, which may give rise to loss or damage. Neither party hereto undertakes any liability to the other for any such errors, omissions, delays, or losses. EXCEPT AS STATED ABOVE, LICENSOR MAKES AND LICENSEE RECEIVES NO WARRANTIES, EXPRESS, IMPLIED, STATUTORY, OR IN ANY OTHER PROVISION OF THIS AGREEMENT OR ANY OTHER COMMUNICATION, REGARDING THE PRODUCT, THE DATABASE LIBRARIES AND THE SERVICES, AND LICENSOR SPECIFICALLY DISCLAIMS ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. NEITHER PARTY UNDERTAKES OR ACCEPTS ANY LIABILITY WHATSOEVER TO THE OTHER FOR ERRORS, OMISSIONS, DELAYS, INTERRUPTIONS, OR LOSSES UNLESS CAUSED BY THEIR WILLFUL MISCONDUCT. EXCEPT FOR INDEMNIFICATION UNDER SECTION 7.5, IN NO EVENT SHALL EITHER PARTY'S DAMAGES IN ANY LAWSUIT OR OTHER ACTION BROUGHT UNDER THIS AGREEMENT EXCEED THE AMOUNTS PAID BY LICENSEE HEREUNDER.

### Section 9
### TERM

This Agreement shall commence to be effective on the date first shown above and shall remain in effect for an initial term of six (6) months from the initial payment hereunder. The Agreement shall be renewable for an additional six (6) month term at the discretion of Licensee. In addition, either party may terminate the Agreement in the event that the other party commits a material breach of this Agreement, provided that the aggrieved party shall first notify the other party of the breach and give such other party at least ten (10) days to cure the breach.

### Section 10
### FORCE MAJEURE

Doc# 272228 V#01

Neither party shall be liable or be deemed to be in default for any delay or failure in performance or interruption resulting directly or indirectly from any cause or circumstance beyond its reasonable control, equipment or telecommunications failure, labor dispute, or failure of any third party to perform any agreement that adversely affects each party's ability to perform its obligations hereunder.

Case 5:04-cv-01497-RS    Document 1-2    Filed 04/16/2004    Page 14 of 22

## Section 11
## NOTICES

All notices or other communications required to be given hereunder shall be in writing and delivered either personally or by mail, courier, or similar reliable means of dispatch and addressed as provided in this Agreement or as otherwise requested by the receiving party. Notices delivered personally shall be effective upon delivery and notices delivered by any other means shall be effective upon their receipt by the party to whom they are addressed.

## Section 12
## GOVERNING LAW

This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of California as it applies to a contract made and performed in such state, excluding conflicts of laws principles. Any lawsuit regarding this Agreement shall be filed in the state or federal courts in Santa Clara County, California.

## Section 13
## MODIFICATION AND WAIVERS

This Agreement represents the entire understanding of the parties concerning its subject matter and may not be modified except by a writing signed by authorized representatives of both parties. A waiver by either party of its rights hereunder shall not be

Doc# 273329 V101

binding unless contained in a writing signed by an authorized representative of the party waiving its rights. The nonenforcement or waiver of any provision of this Agreement on one occasion shall not constitute a waiver of such provision on any other occasion unless expressly so agreed in writing. It is agreed that no use of trade or other regular practice or method of dealing between the parties hereto shall be used to modify, interpret, supplement, or alter in any manner the terms of this Agreement.

**Section 14**

**ASSIGNMENT**

Neither party shall be entitled to assign its rights and obligations under this Agreement to any successor to the ownership, management, or operation of the facilities and services of such party relating to the subject of this Agreement, without the written approval of the other party.

**Section 15**

**NO IMPLIED RIGHTS OR OBLIGATIONS**

Nothing in this Agreement is intended to create any implied right to require, or any implied duty to provide, a level of effort or results (in general or in particular) not expressly stated herein, or to refrain from engaging in any other activity, including any activity involving the same or similar products or services with the same or similar customers or providers.    During the term of this Agreement, Licensor may include Licensee's name in a listing of Licensor's customers.  Before making any such listing available to the public, however, Licensor will submit the listing to Licensee to obtain written approval of its content and intended use, which approval shall not be unreasonably withheld or delayed.  Except for the foregoing, Licensor must first obtain Licensee's written consent before making any public use of Licensee's trade name, trademarks, service marks, logos, or other distinctive brand features, such public use including but not being limited to press releases and other marketing efforts.

Doc\$ 273224 V401

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

DIGITAL ENVOY INC.                           GOOGLE

By: _____                        By: _____
    Authorized Signature                         Authorized Signature

Name: _Rob Friedman_                         Name: _Urs Hölzle_
Title: _Co-President_                         Title: _VP Engineering_

Case 5:04-cv-01497-RS     Document 1-2     Filed 04/16/2004     Page 16 of 22

Doc# 271220 V301

DEC-21-2000 THU 11:01 AM                    FAX NO.                    P. 02

# digital™
### envoy

THIS FIRST AMENDMENT TO THE PRODUCT AND ELECTRONIC
DATABASE EVALUATION AND LICENSE AGREEMENT (the "Agreement") is
made and entered into as of the _21_ day of December, 2000, by and between
Google, Inc. ("Licensee") and Digital Envoy Inc. ("Licensor"):

1. The second paragraph under "WITNESSETH:" shall be amended to read as
follows:

"WHEREAS, Licensee desires to secure from Licensor the right to use Licensor's
Personum product (the "Product") and certain geographic/IP address databases
that provide information at a metropolitan area level (the "Database Libraries") for
purposes of utilizing the Product and the Database Libraries in the Business (the
"Service");"

2. The first sentence of Section 5.1 of the Agreement shall be amended to read as
follows:

"Licensee shall pay Licensor a monthly fee of Four thousand Five Hundred dollars
($4,500) per month during the term of this Agreement for access to Licensor's
geographic tailoring Product and Database Libraries"

3. The remainder of the Agreement shall continue in full force and effect.

DEC-21-2000 THU 11:01 AM                          FAX NO.                      P. 03

IN WITNESS WHEREOF, the parties have executed this Agreement the day and

year first above written.

DIGITAL ENVOY, INC.                          GOOGLE, INC.

By: _____                        By: _____
Authorized Signature                         Authorized Signature

Name: _Rob Friedman_                         Name: _Steve Schimmel_
Title: _Co-President_                        Title: _Business Development_

JUL-17-2001 TUE 03:25 PM                        FAX NO.                        P. 02
07/17/2001 TUE 11:21  FAX  GOOGLE INC.                                        @002/003

# digital
### envoy

**THIS SECOND AMENDMENT TO THE PRODUCT AND ELECTRONIC DATABASE EVALUATION AND LICENSE AGREEMENT (this "Agreement") is** made and entered into as of the 11th day of July, 2001, by and between Google, Inc. ("Licensee") and Digital Envoy Inc. ("Licensor"):

1. Section 9 of the Agreement shall be amended to read as follows:

This Agreement shall commence to be effective on the date first shown above and shall remain in effect for an initial term of eighteen (18) months from the initial payment hereunder. The Agreement shall be renewable for an additional six (6) month term at the discretion of Licensee. In addition, either party may terminate the Agreement in the event that the other party commits a material breach of this Agreement, provided that the aggrieved party shall first notify the other party of the breach and give such other party at least ten (10) days to cure the breach.

2. The remainder of the Agreement shall continue in full force and effect as amended by the First Amendment to the Agreement previously executed by the parties and this Second Amendment.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and
year first above written.

DIGITAL ENVOY, INC.                          GOOGLE, INC.

By:                                          By:
Authorized Signature                         Authorized Signature

Name:                                        Name: WAYNE ROSING
Title: EVP Content Acqusn                     Title: VP ENGINEERING

# **digital**
### *envoy*

THIS RATIFICATION AGREEMENT (this "Agreement") is made and entered into as of the 15th day of January, 2003 (the "Effective Date"), by and between Google Technology Inc. ("Licensee") and Digital Envoy Inc. ("Licensor").

## Background

1. Licensor and Licensee entered into a Product and Electronic Database Evaluation and License Agreement (the "Original Agreement") dated November 30, 2000, pursuant to which Licensee secured from Licensor the rights to use certain Products and Database Libraries (each as defined in that Original Agreement). Licensor and Licensee amended the Original Agreement with a First Amendment to the Product and Electronic Database Evaluation and License Agreement dated December 21, 2000 and a Second Amendment to the Product and Electronic Database Evaluation and License Agreement dated July 17, 2001 (collectively with the Original Agreement, the "Agreement").

2. The Agreement expired as of November 30, 2002. The parties now desire to reinstate the Agreement and the Agreement shall now continue in force as if the same had not expired; provided, however, that the parties desire to amend the Agreement with respect to certain terms, as set forth below.

3. The parties acknowledge that Licensee has continued to use the Product and the Database Libraries after the effective expiration of the Agreement and agree that Licensee paid to Licensor as full consideration for such continued usage a sum in the amount of US$4,500 in December 2002. The parties further acknowledge and agree that such usage by Licensee of the Product and the Database Libraries after the effective expiration of the Agreement shall be governed by and subject to the terms and conditions of the Agreement and Licensor hereby waives all claims that may now or hereafter be brought against Licensee in connection with such continued usage of the Product and the Database Libraries after the effective expiration of the Agreement.

## Terms

1. The first sentence of Section 3.1 of the Agreement shall hereby be amended to read as follows: "From January 2003 through the remainder of the term of this Agreement (including any extensions thereof), Licensee shall pay Licensor a monthly fee of eight thousand dollars ($8,000) per month during the term of this Agreement for access to Licensor's geographic targeting product (with information provided down to the metro-area) and connection-type, ISP and domain data bases."

2. The first two sentences of Section 9 of the Agreement shall be replaced with the following:

"This Agreement shall commence to be effective on the date first shown above and shall remain in effect for an initial term of twenty-four (24) months thereafter (i.e. from November 30, 2000 through November 29, 2002) (the "Initial Term"). Thereafter, this Agreement shall automatically renew for an additional term commencing on November 30, 2002 and ending on January 31, 2005 (the "First

1

GOOGLE CONFIDENTIAL

Renewal Term" and collectively with the Initial Term, the "Term"). Licensee, in its discretion, shall have the option to extend the Agreement for an additional two (2) year term thereafter (the "Extended Term") by providing written notice to Licensor no later than thirty (30) days prior to the expiration of the Term. Additionally, prior to the expiration of the Extended Term, Licensee, in its discretion, shall have the option to extend the Agreement for an additional one (1) year term by providing written notice to Licensor no later than thirty (30) days prior to the expiration of the Extended Term."

3. The remainder of the Agreement shall continue in full force and effect.

This Agreement may be executed in counterparts, including facsimile counterparts.

IN WITNESS WHEREOF, the parties have executed this Agreement the day and year first above written.

DIGITAL ENVOY, INC.                          GOOGLE TECHNOLOGY INC.

By_____                     By_____
   Authorized Signature                          Authorized Signature

Name: _____                      Name: _____

Title: _____                     Title: _____